YAAKOV M. ROTH
*Acting Assistant Attorney General*
*Civil Division*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
BRIAN C. WARD
*Acting Assistant Director*
PATRICK GLEN
*Senior Litigation Counsel*
CAROLINE MCGUIRE
JOSEPH DARROW
ELISSA FUDIM
*Trial Attorneys*
U.S. Department of Justice
Office of Immigration Litigation
General Appeals and Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
caroline.mcguire@usdoj.gov
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAKE THE ROAD NEW YORK, | Case No. 1:25-cv-00190 |
| *Plaintiff*, | |
| | Hon. Jia M. Cobb |
| v. | |
| KRISTI NOEM, *et al*., | |
| *Defendants*. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

LEGAL AND PROCEDURAL BACKGROUND ................................................................. 5

STANDARD OF REVIEW ................................................................................................... 10

ARGUMENT ......................................................................................................................... 11

I.    Plaintiffs' Claims Are Not Justiciable. ........................................................................ 11

    A.    Plaintiff Make The Road Fails to Establish Organizational Standing. ........................ 11

    B.    Plaintiffs' Constitutional and Statutory Claims (Counts 1-3) Are Time-Barred. ......... 15

    C.    Plaintiff Make the Road is Outside the Zone of Interests of the Expedited Removal Statute. ................................................................................................................. 17

    D.    The Designation is Committed to Agency Discretion by Law. .................................... 20

II.   Plaintiffs' Challenge to the Expedited Removal Designation is Foreclosed by the D.C Circuit *Make the Road* Decision. ................................................................................ 21

III.  The Expedited Removal Designation is Consistent with the Statute and the Due Process Clause (Counts One, Three, and Four). ........................................................................ 24

    A.    Plaintiffs' Claims that the Designation Fails to Provide Meaningful Process (Counts One and Three) are Foreclosed by *AILA* and Lack Merit. ............................................ 25

    B.    Plaintiffs' Constitutional and Statutory Due Process Claims Lack Merit. .................. 28

    C.    The Designation Does Not Violate 8 U.S.C. § 1182(a)(7) (Count Two). .................... 37

    D.    Claim Six Also Fails as a Matter of Law. .................................................................. 41

CONCLUSION ...................................................................................................................... 44

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Akhtar v. Dir. USCIS Mt. Laurel Field Off.*,
 No. 23-1577, 2024 WL 1427634 (3d Cir. Apr. 3, 2024) ........................................ 39

*Albathani v. INS*,
 318 F.3d 365 (1st Cir. 2003) ................................................................................. 32

*American Immigration Lawyers Ass'n v. Reno*,
 199 F.3d 1352 (D.C. Cir. 2000) ..................................................................... *passim*

*Arizona Alliance for Retired Americans v. Mayes*,
 117 F.4th 1165 (9th Cir. 2024) ............................................................................. 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .............................................................................................. 11

*American Immigration Lawyers Ass'n v. Reno*,
 18 F. Supp. 2d 38 (D.D.C. 1998) ................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .............................................................................................. 11

*Carlson v. Landon*,
 342 U.S. 524 (1952) .............................................................................................. 34

*Castro v. DHS*,
 163 F. Supp. 3d 157 (E.D. Pa. 2016) .................................................................... 37

*Cheejati v. Blinken*,
 106 F.4th 388 (5th Cir. 2024) ............................................................................... 24

*Clarke v. Secs. Indus. Ass'n*,
 479 U.S. 388 (1987) ........................................................................................ 17, 18

*Colbert v. Potter*,
 471 F.3d 158 (D.C. Cir. 2006) .............................................................................. 16

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
 603 U.S. 799 (2024) .............................................................................................. 16

*Cruz-Miguel v. Holder*,
 650 F.3d 189 (2d Cir. 2011) ................................................................................. 39

*Ctr. for Biological Diversity v. Haaland,*
    849 F. App'x. 2 (D.C. Cir. 2021) ............................................................... 12

*Dave v. Ashcroft,*
    363 F.3d 649 (7th Cir. 2004) ..................................................................... 34

*Dep't of State v. Muñoz,*
    602 U.S. 899 (2024) ..................................................................................... 20

*Dickerson v. District of Columbia,*
    70 F. Supp. 3d 311 (D.D.C. 2014) ............................................................ 11

*Dugdale v. U.S. CBP,*
    88 F. Supp. 3d 1 (D.D.C. 2015) ................................................................. 17

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ..................................................................................... 33

*FDA v. Alliance for Hippocratic Medicine,*
    602 U.S. 367 (2024) ................................................................................ 13, 14

*Fed'n for Am. Immigration Reform, Inc. v. Reno,*
    93 F.3d 897 (D.C. Cir. 1996) ..................................................................... 18

*Fiallo v. Bell,*
    430 U.S. 787 (1977) ..................................................................................... 13

*Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015) ................................................................... 15

*Foti v. INS,*
    375 U.S. 217 (1963) ..................................................................................... 29

*Gulomjonov v. Bondi,*
    131 F.4th 601 (7th Cir. 2025) ............................................................... 27, 28

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ................................................................................ 13, 14

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ..................................................................................... 21

*Ibrahim v. DHS,*
    669 F.3d 983 (9th Cir. 2012) ..................................................................... 31

*Immigrant Rights Project v. USCIS*,
    325 F.R.D. 671 (W.D. Wash. 2016) ...................................................................... 19

*INS v. Legalization Assistance Project of L.A. Cty.*,
    510 U.S. 1301 (1993) .......................................................................................... 19

*Jama v. Immigr. & Customs Enf't*,
    543 U.S. 335 (2005) ....................................................................................... 43, 44

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ............................................................................... 32, 33, 38

*Jilin Pharm. USA, Inc. v. Chertoff*,
    447 F.3d 196 (3d Cir. 2006) ................................................................................ 29

*Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) .................................................................................. 3, 25, 34

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ............................................................................................ 15

*Landon v. Plasencia*,
    459 U.S. 21 (1982) ............................................................................. 3, 13, 29, 31

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*,
    104 F.3d 1349 (D.C. Cir. 1997) ..................................................................... 23, 30

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) ............................................................................................ 12

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................................ 27

*M.M.V. v. Barr*,
    456 F. Supp. 3d 193 (D.D.C. 2020) .................................................................... 16

*M.M.V. v. Garland*,
    1 F.4th 1100 (D.C. Cir. 2021) ....................................................................... 15, 16

*Make The Road New York v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) .................................................................... *passim*

*Make the Road N.Y. v. McAleenan*,
    405 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................ 18

*Marshall County Health Care Auth. v. Shalala,*
   988 F.2d 1221 (D.C. Cir. 1993) ............................................................... 11

*Martinez–Aguero v. Gonzalez,*
   459 F.3d 618 (5th Cir. 2006) .................................................................... 31

*Mathews v. Diaz,*
   426 U.S. 67 (1976) .................................................................................. 31

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ................................................................................ 33

*Matter of M-D-C-V-,*
   28 I. & N. Dec. 18 (B.I.A. 2020) ............................................................. 38

*Morrissey v. Brewer,*
   408 U.S. 471 (1972) ................................................................................ 33

*O.A. v. Trump,*
   404 F. Supp. 3d 109 (D.D.C. 2019) ................................................... 18, 19

*Olim v. Wakinekona,*
   461 U.S. 238 (1983) ................................................................................ 33

*Ortega-Cervantes v. Gonzales,*
   501 F.3d 1111 (9th Cir. 2007) .................................................................. 39

*Osorio-Martinez v. U.S. Att'y Gen.,*
   893 F.3d 153 (3d Cir. 2018) ..................................................................... 31

*Patel v. Garland,*
   596 U.S. 328 (2022) ................................................................................ 25

*People for the Ethical Treatment of Animals v. USDA,*
   797 F.3d 1087 (D.C. Cir. 2015) ............................................................... 12

*Privett v. Sec'y, Dep't of Homeland Sec.,*
   865 F.3d 375 (6th Cir. 2017) .................................................................... 29

*Pub. Citizen v. FTC,*
   869 F.2d 1541 (D.C. Cir. 1989) ............................................................... 23

*Reno v. Flores,*
   507 U.S. 292 (1993) .................................................................................. 3

*Rohrbaugh v. Pompeo,*
    394 F. Supp. 3d 128 (D.D.C. 2019) .................................................................. 11

*Saavedra Bruno v. Albright,*
    197 F.3d 1153 (D.C. Cir. 1999) .................................................................... 20

*Sessions v. Morales-Santana,*
    582 U.S. 47 (2017) ....................................................................................... 15

*Smith v. U.S. CBP,*
    741 F.3d 1016 (9th Cir. 2014) ..................................................................... 40

*Sure-Tan, Inc. v. N.L.R.B.,*
    467 U.S. 883 (1984) ..................................................................................... 19

*Thigulla v. Jaddou,*
    94 F.4th 770 (8th Cir. 2024) ....................................................................... 25

*DHS v. Thuraissigiam,*
    591 U.S. 103 (2020)............................................................................. *passim*

*Torres v. Barr,*
    976 F.3d 918 (9th Cir. 2020) ................................................................. 40, 41

*United States v. Barajas-Alvarado,*
    655 F.3d 1077 (9th Cir. 2011) ..................................................................... 30

*United States v. Gambino-Ruiz,*
    91 F.4th 981 (9th Cir. 2024) ....................................................................... 41

*United States v. Peralta-Sanchez,*
    847 F.3d 1124 (9th Cir. 2017) ................................................................ 35, 37

*United States v. Salerno,*
    481 U.S. 739 (1987)............................................................... 12, 30, 33

*United States v. Texas,*
    599 U.S. 670 (2023)............................................................................. 13, 19

*United States v. Verdugo-Urquidez,*
    494 U.S. 259 (1990) ..................................................................................... 31

*United States v. Villarreal Silva,*
    931 F.3d 330 (4th Cir. 2019) ...................................................................... 34

*Walters v. Nat'l Ass'n of Radiation Survivors*,
    473 U.S. 305 (1985) ........................................................................................................ 34

*Washington v. Confederated Bands and Tribes of Yakima Indian Nation*,
    439 U.S. 463 (1979) ........................................................................................................ 29

*Yamataya v. Fisher*,
    189 U.S. 86 (1903) .......................................................................................................... 33

**Statutes**

5 U.S.C. § 701(a)(2) ............................................................................................................ 20

5 U.S.C. § 702 ...................................................................................................................... 18

8 U.S.C. § 1101(a)(13)(A) ............................................................................................. 38, 40

8 U.S.C. § 1103(a)(1) .......................................................................................................... 27

8 U.S.C. § 1158 ................................................................................................... 4, 5, 10, 42

8 U.S.C. § 1158(a)(1) .......................................................................................................... 42

8 U.S.C. § 1158(a)(2)(B) ..................................................................................................... 42

8 U.S.C. § 1158(c)(2) .......................................................................................................... 44

8 U.S.C. § 1158(d)(7) .......................................................................................................... 43

8 U.S.C. § 1182(a)(6)(C) ............................................................................................ *passim*

8 U.S.C. § 1182(a)(7) .................................................................................................. *passim*

8 U.S.C. § 1184(b) .............................................................................................................. 39

8 U.S.C. § 1202(a) ............................................................................................................... 23

8 U.S.C. § 1225 ............................................................................................................. 26, 27

8 U.S.C. § 1225(a) ........................................................................................................ 16, 25

8 U.S.C. § 1225(a)(1) .................................................................................................... 4, 38

8 U.S.C. § 1225(a)(3) .................................................................................................. 39, 40

8 U.S.C. § 1225(b)(1) ........................................................................................... 4, 5, 35, 36

8 U.S.C. § 1225(b)(1)(A) ............................................................................ 3, 26, 42

8 U.S.C. § 1225(b)(1)(C) ............................................................................ 6, 35, 36

8 U.S.C. § 1225(b)(1)(F) .................................................................................. 43

8 U.S.C. § 1225(b)(2)(A) .................................................................................. 43

8 U.S.C. § 1229a ............................................................................... 6, 36, 43

8 U.S.C. § 1252 ................................................................................................. 20

8 U.S.C. § 1252(a)(2)(B)(ii) ...................................................................... 24, 25

8 U.S.C. § 1252(e)(2) ................................................................................. 34, 36

8 U.S.C. § 1252(e)(2)(A) .................................................................................. 44

8 U.S.C. § 1252(e)(3) ....................................................................................... 15

8 U.S.C. § 1252(e)(3)(A) ................................................................................. 15

8 U.S.C. § 1252(e)(3)(B) ............................................................................. 2, 16

8 U.S.C. § 1558(a)(2)(B) .................................................................................... 6

8 U.S.C. §  1182(a)(6) .............................................................................. 17, 32

8 U.S.C. § 1182(a)(7) ......................................................................... 10, 17, 32

## Rules

FED. R. CIV. P. 12(b)(6) ................................................................................... 11

## Regulations

8 C.F.R. part 208 ......................................................................................... 4, 10

8 C.F.R. § 208.30 .............................................................................................. 6

8 C.F.R. § 208.30(d)(4) ...................................................................................... 6

8 C.F.R. § 208.30(f) ........................................................................................... 6

8 C.F.R. § 235.3(b)(1)(ii) ................................................................................... 7

8 C.F.R. § 235.3(b)(2)(i) ............................................................................. 5, 35

8 C.F.R. § 235.3(b)(4) ..................................................................................................... 6

8 C.F.R. § 235.3(b)(4), (5) ............................................................................................ 36

8 C.F.R. § 235.3(b)(5) ............................................................................................. 35, 36

8 C.F.R. § 235.3(b)(5)-(6) .............................................................................................. 6

8 C.F.R. § 235.3(b)(7) .................................................................................................... 6

8 C.F.R. § 235.4 ........................................................................................................... 40

8 C.F.R. §§ 235.3 .................................................................................................... 26, 36

8 C.F.R. §§ 1003.42(d) .................................................................................................. 6

8 C.F.R. §§ 1003.42(f) ................................................................................................... 6

**Other Authorities**

Proclamation No. 14,159,
    90 Fed. Reg. 8443 (Jan. 20, 2025)…………………………………………………………9

*Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of
    Removal Proceedings; Asylum Procedures*,
    62 Fed. Reg. 10,312 (Mar. 6, 1997) .................................................................... ,7

*Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the
    Immigration and Nationality Act*,
    67 Fed. Reg. 68,924 (Nov. 13, 2002) ............................................................... 7, 17

*Designating Aliens for Expedited Removal*,
    69 Fed. Reg. 48,877 (Aug. 11, 2004) ............................................................... 7, 17

*Eliminating Exception To Expedited Removal Authority for Cuban Nationals Encountered in the
    United States or Arriving by Sea*,
    82 Fed. Reg. 4902-02 (Jan. 17, 2017) ............................................................. 8, 17

*Designating Aliens for Expedited Removal*,
    84 Fed. Reg. 35 (July 23, 2019) ......................................................................... 8

*Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal*,
    87 Fed. Reg. 16,022 (Mar. 21, 2022) ............................................................... 8, 9

*Designating Aliens for Expedited Removal*,
90 Fed. Reg. 8139 (Jan. 24, 2025) ............................................................................. 1, 2, 9, 21

## INTRODUCTION

This case arises from a single advocacy group's effort to halt, nationwide, the then-Acting Secretary of Homeland Security's discretionary decision to apply expedited removal to inadmissible aliens to the fullest extent authorized by Congress. 8 U.S.C. § 1225(b)(1)(A)(iii); *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025) (the 2025 designation). Critically here, Congress explicitly committed this decision to the Secretary's "*sole and unreviewable discretion*," 8 U.S.C. § 1255(b)(1)(A)(iii)(I) (emphasis added). "Sole and reviewable discretion" means just that—the Secretary's discretion is not subject to judicial review, as Plaintiffs attempt here. Plaintiffs' substantive and procedural challenges to this expedited removal designation are thus foreclosed by the terms of the statute as confirmed by the plain text of § 1255(b). And if the plain text left any doubt as to reviewability here, binding D.C. Circuit precedent mandates the result that the statutory text inexorably required already: Plaintiffs' challenge is barred. What's more, Plaintiffs' claims must be dismissed on additional threshold grounds, including that they are time-barred, and outside the zone of interests.

In 1996, Congress created expedited removal—a mechanism for swiftly removing certain aliens from the United States without a hearing before an immigration judge. Since then, the Attorney General or the Secretary of Homeland Security has had, in their "*sole and unreviewable discretion*," the authority to "designate" as subject to expedited removal certain classes of unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii) (emphasis added). The constitutionality and legality of the expedited removal statute was upheld long ago by the D.C. Circuit in *American Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 199 F.3d 1352 (D.C. Cir. 2000).

1

In keeping with the statute, on January 21, 2025, the then-Acting DHS Secretary designated as subject to expedited removal certain aliens encountered anywhere in the United States within two years of illegally crossing the border. *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). Rejecting a nearly identical lawsuit brought by, *inter alia*, Make The Road, the D.C. Circuit concluded that the Secretary's "sole and unreviewable discretion" to expand expedited removal "at any time" precludes challenges to the exercise of that discretion under the Administrative Procedure Act (APA). *Make The Road New York v. Wolf*, 962 F.3d 612, 633-36 (D.C. Cir. 2020). Despite the plain statutory text and two binding Circuit decisions affirming the Secretary's broad authority to designate aliens for expedited removal, Plaintiffs now ask this Court to re-litigate the long-settled legality of the expedited removal scheme, enjoin it nationwide, and block the then-Acting Secretary's 2025 designation. This Court should deny that extraordinary request—which seeks brazen defiance of binding precedent—and dismiss this case.

To begin, Plaintiffs' claims are not justiciable. Make the Road New York never explains how the 2025 designation "injures" it as an organization or implicates its legally protected interests. Moreover, Plaintiffs' statutory and APA challenges to the procedures implementing expedited removal—procedures that have been in place for nearly 27 years—are time-barred by 8 U.S.C. § 1252(e)(3)(B). *AILA*, 18 F. Supp. 2d 38, 46-47, *aff'd*, 199 F.3d 1352. This provision erects a *60-day* statute of limitations. *Id.* Plaintiffs' claims are thus time-barred more than 150 times over. On top of that, Plaintiffs' APA claims are not viable because "there is no cause of action under the APA to scrutinize the Secretary's designation decision so long as it falls within statutory and constitutional bounds." *Make The Road*, 962 F.3d at 635.

Plaintiffs' claims also fail on the merits. *First*, Plaintiffs' arbitrary-and-capricious and notice-and-comment claims under the APA (Counts Four and Five) are foreclosed by Circuit

precedent because the Secretary's designation authority is "committed to agency discretion by law," and so "there is no cause of action to evaluate the merits of the Secretary's judgment under APA standards." *Make The Road*, 962 F.3d at 633–34.

*Second*, Plaintiffs contend the 2025 designation violates the INA and the Due Process Clause (Counts [[One and Three]]). But the D.C. Circuit has already upheld the legality of the expedited removal statute and its implementing regulations as applied to aliens lacking "substantial connections with the United States." *AILA*, 18 F. Supp. 2d at 58-60, *aff'd*, 199 F.3d at 1357. The reasoning there—that Congress determines what process governs admission to the country—applies fully here: Then, as now, "[w]hatever the procedure authorized by Congress is, it is due process," *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)), because "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Congress has determined that, as a class, certain inadmissible aliens unlawfully present for fewer than two years are entitled only to the procedures provided by the expedited removal statute before they may be removed. That satisfies the Due Process Clause. And the statute and its implementing regulations adequately safeguard any due-process rights that such aliens may have as a class with respect to aliens who indicate an intention to apply for asylum or a fear of persecution or torture. 8 U.S.C. § 1225(b)(1)(A), (B). Plaintiffs thus cannot "establish that no set of circumstances exists under which the [statute and its implementing regulations] would be valid" on either "constitutional" or "statutory" grounds. *Reno v. Flores*, 507 U.S. 292, 301 (1993). Consequently, their facial challenge fails.

*Third*, Plaintiffs' Count [[Two]] contends that the 2025 designation exceeds the Secretary's authority because it permits application of 8 U.S.C. § 1182(a)(7)—which renders inadmissible

aliens lacking entry documents "at the time of their application for admission"—to aliens other than at the moment they seek "entry into the country." Am. Compl. ¶¶ 110–13 ("ECF No. 27"). That is wrong. Such an alien is statutorily deemed to apply for admission to this country at the border *or* after crossing it illegally, which necessarily means that when an alien who entered without admission or parole is later inspected by an immigration officer, he is an applicant for admission. 8 U.S.C. § 1225(a)(1). Section 1225(b)(1) then allows for the expedited removal of *any* alien "described in" § 1225(b)(1)(A)(iii)(II), as designated by the Secretary—that is, any alien not "admitted or paroled into the United States" and "physically present" fewer than two years—who is inadmissible under § 1182(a)(7) at the time of "inspection." Whether that happens at a port of entry or after illegal entry is irrelevant—what matters is whether, when an officer inspects an alien for admission under section 1225(a)(3), that alien lacks entry documents and so is subject to section 1182(a)(7). Thus, the designation lawfully applies to aliens who crossed illegally, since they were not previously inspected. To hold otherwise would reward such aliens for their illegal entry and significantly limit the operation of the expedited removal scheme.

*Finally*, Plaintiffs' Count Six alleges that "[t]he INA and its implementing regulations do not permit the expedited removal of noncitizens who entered without inspection and have filed affirmative asylum applications" for asylum "with USCIS." Am. Compl. ¶¶ 125-28. But none of the statutory or regulatory provisions they cite, 8 U.S.C. §§ 1158, 1225(b)(1)(A), and 8 C.F.R. part 208, support their assertion that a pending affirmative asylum application exempts individuals from expedited removal. Indeed, Congress knows how to exempt aliens with certain immigration statuses from expedited removal, and did not except those with pending affirmative asylum applications. Plaintiffs cannot otherwise articulate a legal basis to advance this claim, and thus cannot succeed as a matter of law. Accordingly, the Court should dismiss the Complaint in its entirety.

## LEGAL AND PROCEDURAL BACKGROUND

*Legal Background*. Congress authorized the Department of Homeland Security (DHS) to expeditiously remove from the United States, without a hearing before an immigration judge, certain inadmissible aliens who arrive at ports of entry or who recently entered the country unlawfully. *See* 8 U.S.C. § 1225(b)(1). Under this expedited removal process, an alien "who is arriving in the United States" who an immigration officer determines lacks valid entry documentation or makes a material misrepresentation shall be "order[ed] … removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *id.* § 1182(a)(6)(C), (a)(7).

Congress delegated authority to the Executive Branch to apply expedited removal beyond those just arriving in the United States at a port of entry. The Secretary "may … designate[]" certain classes of inadmissible, unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" as subject to expedited removal, and that designation "shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii).

Implementing regulations establish procedures to be used before effectuating an expedited removal order. Immigration officers must "advise the alien of the charges against him or her," provide "an opportunity to respond to those charges in the sworn statement," and provide an interpreter if needed. 8 C.F.R. § 235.3(b)(2)(i). Aliens are afforded an opportunity to establish that they have been admitted or paroled, physically present continuously for the 2-year period immediately prior to the date of determination of inadmissibility, lawfully admitted for permanent residence or as a refugee, or granted asylum. *See* 8 U.S.C. § 1225(b)(1)(C); 8 C.F.R. § 235.3(b)(5)-(6). "[A]ny removal order," the "sworn statement," and any claims concerning an alien's status, "must be

reviewed and approved by the appropriate supervisor before the order is considered final." 8 C.F.R. § 235.3(b)(7). Additional procedures apply if an alien indicates an intention to apply for asylum[1], expresses a fear of persecution or torture, or of return to the alien's country. 8 U.S.C. § 1225(b)(1)(A)(ii); *see* 8 C.F.R. § 235.3(b)(4). In that situation, the alien is provided a non-adversarial interview with an asylum officer, and the officer determines whether the alien has a "credible fear of persecution" or torture. *Id.* § 1225(b)(1)(A)(ii), (b)(1)(B)(iii)(II), (b)(1)(B)(iv), (v); *see* 8 C.F.R. § 208.30. The individual may also pursue *de novo* review of that determination by an immigration judge. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 1003.42(d), 1208.30(g).

Failure to request a review of the negative credible fear determination may result in imminent removal. If the asylum officer or immigration judge determines that the alien has a credible fear of persecution or torture, the individual is generally placed in removal proceedings under 8 U.S.C. § 1229a. *See* 8 C.F.R. § 208.30(f). If the officer and immigration judge do not find a credible fear of persecution or torture, the alien shall be "removed from the United States without further hearing or review." 8 U.S.C. §§ 1225(b)(1)(B)(iii)(I), (b)(1)(C); 1252(a)(2)(A)(iii), (e)(2); 8 C.F.R. §§ 1003.42(f), 1208.30(g)(2)(iv)(A). During the credible fear process, the alien may consult with an attorney or representative and engage an interpreter. 8 C.F.R. § 208.30(d)(4), (5).

***Prior Designations.*** The Secretary (and previously the Attorney General) has designated aliens for expedited removal under section 1225(b)(1)(A)(iii) on five prior occasions. In 1997, the Attorney General, consistent with 8 U.S.C. § 1225(b)(1)(A)(i), issued a regulation applying expedited removal to aliens arriving in the United States at a port of entry and aliens interdicted in international or United States waters. *Inspection and Expedited Removal of Aliens; Detention and*

---

[1] Aliens must apply for asylum one year after arriving into the United States, 8 U.S.C. § 1558(a)(2)(B), except if the alien can demonstrate "extraordinary circumstance" that justify moving that deadline. *Id.* § 1558(a)(2)(D).

*Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312 (Mar. 6, 1997). She also established a mechanism for later designations of aliens subject to expedited removal. 8 C.F.R. § 235.3(b)(1)(ii). The Attorney General observed that "a proposed expansion of the expedited removal procedures may occur at any time and may be driven either by specific situations such as a sudden influx of illegal aliens motivated by political or economic unrest or other events or by a general need to increase the effectiveness of enforcement operations at one or more locations." 62 Fed. Reg. at 10,312.

In 2002, the Immigration and Naturalization Service (INS) Commissioner designated for expedited removal aliens "who arrive in the United States by sea, … who are not admitted or paroled" into the United States, and who "have not been physically present in the United States continuously for the two-year period prior to the determination of inadmissibility under" the designation. *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act*, 67 Fed. Reg. 68,924 (Nov. 13, 2002).

Subsequently, in 2004, the Secretary of Homeland Security authorized DHS officials to apply expedited removal to certain aliens encountered within 100 air miles of the border and within fourteen days of their date of illegal entry regardless of the alien's arrival method. *Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48,877-01 (Aug. 11, 2004). The 2004 Notice explained that, to focus limited resources "upon unlawful entries that have a close spatial and temporal nexus to the border," the 2004 designation did not implement "the full nationwide expedited removal authority available to DHS." *Id.* at 48,879. It did, however, expressly reserve DHS's option of "implementing the full nationwide enforcement authority of the statute through publication of a subsequent Federal Register notice." *Id.*

In 2017, the Secretary extended all prior designations to Cuban nationals, who had previously been exempted from expedited removal. *See Eliminating Exception To Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902-02 (Jan. 17, 2017).

In 2019, the Acting Secretary of Homeland Security invoked section 1225(b)(1)(A)(iii)(I) to designate as subject to expedited removal "aliens determined to be inadmissible under [8 U.S.C. § 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States, and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," who were not covered by previous designations. *Designating Aliens for Expedited Removal*, 84 Fed. Reg. 35,409-01 (July 23, 2019). He noted "the large number of aliens who entered illegally and were apprehended and detained within the interior of the United States, and DHS's insufficient detention capacity both along the border and in the interior of the United States," and explained that the designation would allow DHS "to use more effectively and efficiently its limited resources to fulfill its mission to enforce the immigration laws and ensure the security of the Nation's borders." *Id.* at 35,411. In 2022, the 2019 Designation was rescinded, reducing the scope of expedited removal to that provided by the 2002, 2004, and 2017 Designations. *Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal*, 87 Fed. Reg. 16,022 (Mar. 21, 2022).

**The 2025 Designation.** Prompted by Executive Order 14159, *Protecting the American People from Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025), on January 24, 2025, the Acting Secretary of Homeland Security published a Federal Register notice rescinding the 2022 Rescission Notice, 87 Fed. Reg. 16,022, and restoring the scope of expedited removal to "the fullest extent

authorized by Congress." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). The notice enabled DHS "to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under [8 U.S.C. § 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," who were not covered by previous designations. *Id.* at 8139-40.

The notice explained that this action aimed to "enhance national security and public safety—while reducing government costs—by facilitating prompt immigration determinations" and would "enable DHS to address more effectively and efficiently the large volume of aliens who are present in the United States unlawfully … and ensure the prompt removal from the United States of those not entitled to enter, remain, or be provided relief or protection from removal." *Id.* at 8139. On January 23, 2025, the then-Acting Secretary published an internal memorandum entitled, "Guidance Regarding How to Exercise Enforcement Discretion," explaining "how to exercise enforcement discretion in implementing these policies." Memorandum from Benjamine C. Huffman, Acting Secretary to [Senior DHS Officials] re *Interim Policy Changes Regarding Charging, Sentencing, And Immigration Enforcement* (Jan. 23, 2025) ("Huffman Memo"). The Huffman Memo instructs immigration enforcement to take "all steps necessary to review [an] alien's case" to evaluate and consider whether individuals should be placed into expedited removal. *Id.* Moreover, the memo prompts consideration of, *inter alia*, "aliens eligible for expedited removal who failed to apply for asylum within the statutory deadline." *Id.* (citations omitted). Finally, the memo directs that "[t]he actions contemplated by this memorandum shall be taken in a manner consistent with applicable, statutes, regulations, and court orders." *Id.*

***This Lawsuit.*** On January 22, 2025, Plaintiff, Make the Road, filed this suit seeking to invalidate the 2025 designation. On March 21, 2025, Plaintiff amended its complaint, adding parties and claims. ECF Nos. 25–28. *First*, Plaintiffs include two Doe Defendants, who they allege were placed in expedited removal proceedings and removed to Mexico on January 28, 2025. Am. Compl. ¶¶ 12, 13, 105. Plaintiffs likewise incorporate allegations of four members of Make the Road: all of which entered the country illegally, are not in removal proceedings, and do not have a final order of removal. *Id.* ¶¶ 98–101. One of these individuals allegedly filed an affirmative asylum application with USCIS, which remains pending. *Id.* ¶ 99. *Second*, Plaintiffs reallege that the designation (1) violates the Fifth Amendment Due Process Clause by failing to deliver "meaningful process," (Count 1), *id.* ¶¶ 107–09, (2) unlawfully "extend[s] authority to place into expedited removal individuals in the interior of the United States who have been physically present for up to two years based on a determination that they are inadmissible under 8 U.S.C. § 1182(a)(7)," (Count 2), *id.* ¶¶ 110–13, (3) violates the INA because the statute does not "provide minimal procedures to persons faced with expedited removal," (Count 3), *id.* ¶¶ 114–16, (4) violates the APA because it is arbitrary and capricious, (Count 4), *id.* ¶¶ 117–18, and (5) was improperly issued without notice-and-comment rulemaking, (Count 5), *id.* ¶¶ 119–24. Moreover, Plaintiffs add a claim under 8 U.S.C. §§ 1158, 1225(b)(1) and 8 C.F.R. part 208, alleging that expedited removal should not be expanded to aliens who filed affirmative asylum applications. *Id.* ¶¶ 125–28 (Count 6). Finally, Plaintiffs integrated claims about the Huffman Memo into Counts One, Three, and Four. *Id.* ¶¶ 23, 107, 114–18.

## STANDARD OF REVIEW

***Rule 12(b)(1).*** A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction. Under this Rule, Plaintiffs "bear[] the burden of establishing jurisdiction by a preponderance of the evidence." *Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 131 (D.D.C. 2019).

Additionally, "the court need not accept unsupported inferences or legal conclusions cast as factual allegations" to make a finding of subject matter jurisdiction. *Dickerson v. District of Columbia*, 70 F. Supp. 3d 311, 318 (D.D.C. 2014).

**Rule 12(b)(6).** Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Finally, as "a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage." *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). The Court can make this adjudication without a record when the complaint "actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." *Id.* "As a result, the sufficiency of the complaint is the question on the merits[.]" *Id.*

**Facial Claims.** To prevail on a facial claim, plaintiffs "must establish that no set of circumstances exists under which the [challenged action] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

## ARGUMENT

I.    **Plaintiffs' Claims Are Not Justiciable.**

    A.  **Plaintiff Make The Road Fails to Establish Organizational Standing.**

Plaintiff, Make the Road New York, is an organization that provides legal, educational, community and civic services to predominantly "Spanish-speaking immigrant communities" in "New York City, Westchester County, and Long Island." Am. Compl. ¶ 95. Plaintiffs' pleadings do not establish Article III injury on behalf of itself or its members.

Plaintiff Make the Road has arguably waived any reliance on organizational standing by failing to plead it in its Complaint. *See Ctr. for Biological Diversity v. Haaland*, 849 F. App'x. 2, 4 (D.C. Cir. 2021) ("Yet the Center did not purport to raise an organizational injury below.… To the extent the Center advances any other basis for organizational standing on appeal, those arguments are waived."). But even if the Court declines to find waiver, Make the Road cannot establish jurisdiction because it does not allege facts demonstrating the 2025 designation directly regulates it or implicates its legally protected interests. *People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) ("*PETA*")). Plaintiff Make the Road appears to suggest that the 2025 designation indirectly impacts it via its effect on aliens who may be clients and subjected to expedited removal procedures. Am. Compl. ¶¶ 94–105. But a plaintiff—organization or otherwise—generally "lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Two recent Supreme Court cases confirm this organization's lack of standing to challenge the then-Acting Secretary's designation here: *United States v. Texas*, 599 U.S. 670 (2023), and *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024).

In *Texas*, the Supreme Court held that States lacked standing to challenge immigration enforcement guidelines because, *inter alia*, discretionary immigration enforcement decisions relating to third parties involve no exercise of coercive power over the plaintiff; challenges to those

decisions implicate Article II and foreign-policy concerns; and courts lack "meaningful standards" to assess such decisions. 599 U.S. at 678–81.

Each of those reasons applies with even stronger force to the 2025 designation, given the Secretary's "sole and unreviewable" discretionary powers. 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Courts have long recognized that "the power to admit or exclude aliens" is committed to the sound discretion of the political branches, with extremely limited judicial involvement. *Thuraissigiam*, 591 U.S. at 139 (quoting *Landon*, 459 U.S. at 32); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). Here, Congress afforded the Executive broad discretion to expeditiously remove aliens at issue through expedited removal. 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Accordingly, just as the plaintiff States in *Texas* lacked a judicially cognizable interest in discretionary decisions over immigration enforcement, Plaintiff Make the Road here lacks that same interest arising from the Executive's exercise of discretionary power to expand the application of expedited removal. *Texas*, 599 U.S. at 678.

*Alliance*, which held that an organization did not have standing to challenge the FDA's approval of an abortion drug, 602 U.S. at 393–94, further confirms that Plaintiff lacks standing here. The Court explained that organizations "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Thus, to allege a concrete injury, an unregulated organizational plaintiff must allege "far more than simply a setback to the organization's abstract social interests." *Havens*, 455 U.S. at 379. As *Alliance* made clear, it is not enough that "an organization diverts its resources in response to defendant's actions" even if it will "expend considerable time, energy, and resources" in response to a policy change. 602 U.S. at 394-95. Instead, an unregulated organization must allege sufficient facts to show that the challenged action "perceptibly impair[s]" or "interferes with" its activities by imposing an affirmative "impediment" to performing those

13

activities. *Id.* As the Supreme Court's reasoning in *Alliance* makes pellucid, courts may "not allow the diversion of resources *in response* to a policy to confer standing—instead, the organization must show that the new policy directly harms its *already-existing* core activities." *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165, 1177 (9th Cir. 2024) (emphasis in original) (explaining impact of *Alliance* on Ninth Circuit precedent concerning the diversion of-resources theory). To hold otherwise would impermissibly allow organizations to manufacture standing to challenge any policy that touches upon their mission. *See Alliance*, 602 U.S. at 394.

The organizational Plaintiff's allegations do not satisfy this standard. *Alliance*, 602 U.S. at 394 ("Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest, or because of strong opposition to the government's conduct[.]") (citations omitted). Although Make the Road explains its mission and membership base, *see* Am. Compl. ¶¶ 10–11, 94–105, it does not allege that the new expedited removal designation perceptibly impairs or interferes with its pre-existing activities. Indeed, it does not provide any explanation as to how the 2025 designation harms its *organization*. *Id.* And even if the 2025 designation has the incidental effect of temporarily frustrating Plaintiff's organizational mission—which Plaintiff does not allege—such "frustration of an organization's objective" alone cannot constitute a cognizable Article III injury. *Food & Water Watch*, *Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). Accordingly, Make the Road lacks organizational standing.[2]

___

[2] Plaintiffs cannot and do not rely on a third-party standing theory to bring this suit. Importantly, the D.C. Circuit rejected third-party organizational standing by the American Immigration Lawyers Association itself as a basis to sue under Subsection 1252(e)(3). *AILA*, 199 F.3d at 1358. Likewise, Plaintiffs' pleadings preclude invocation of that doctrine here. "Ordinarily, a party must assert his own legal rights and cannot rest his claim to relief on the legal rights of third parties." *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (cleaned up). Third party standing is only appropriate in limited circumstances where the plaintiff has "a close relationship with the person who possesses the right" who is somehow hindered from representing his or her own interests. *Id.*

### B. Plaintiffs' Constitutional and Statutory Claims (Counts 1-3) Are Time-Barred.

Any jurisdiction this Court possesses to review the 2025 designation is circumscribed by the terms of 8 U.S.C. § 1252(e)(3), which has a strict 60-day time limitation on challenges to the expedited removal system. *Make the Road*, 962 F.3d at 626 (holding that if jurisdiction exists for "judicial review 'relating to section 1225(b)(1),'" it exists only "as provided in subsection (e)"). Section 1252(e)(3), entitled "Challenges on validity of the system," authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation" in D.C. district court. 8 U.S.C. § 1252(e)(3)(A). Such review is "limited to determinations of—(i) whether [section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." *Id.* Suits "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure … is first implemented." *Id.* § 1252(e)(3)(B); *see M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021) (time limit "is jurisdictional" and is "not subject to tolling"). That means the 60-day requirement runs "from a fixed point," rather "from the date of application of [the challenged procedures] to a particular alien." *Id.* Thus, under this provision, the Court lacks jurisdiction over Counts One through Three.

Plaintiffs' claims pursuant to Fifth Amendment Due Process (Count 1), 8 U.S.C. § 1182(a)(7) (Count 2), and 8 U.S.C. § 1225(a), (b)(1) (Count 3) are time-barred because each count challenges features of the procedures implementing expedited removal that have been in

---

(alteration in original); *see also Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). Here, Plaintiffs do not articulate any hindrance to the ability of aliens subject to the 2025 expedited removal designation to bring their own claims challenging that designation. Am. Compl. ¶¶ 94–105.

place since the statute's adoption decades ago. 8 U.S.C. § 1252(e)(3)(B). As the D.C. Circuit has affirmed, the "60–day requirement is jurisdictional rather than a traditional limitations period." *AILA*, 18 F. Supp. 2d at 47, *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000). This "jurisdictional time limit does not begin to run when a written policy is applied in a particular geographical region or to particular individuals[] … the sixty days begins upon 'first implementation,' that is, the first date the policy became effective." *M.M.V. v. Barr*, 456 F. Supp. 3d 193, 220 (D.D.C. 2020), *aff'd sub nom. M.M.V. v. Garland*, 1 F.4th 1100, 1109–11 (D.C. Cir. 2021). That is because a *jurisdictional* time limit, as opposed to a traditional time limit, is not subject to limits such as tolling, estoppel, and waiver.[3] *Id.* at 1109; *cf. Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006).

Counts One through Three allege that the designation is unlawful because it does not provide for additional procedures on top of those already in place. Am. Compl. ¶¶ 107–16. Those claims, although framed in terms of challenging the 2025 designation, in fact challenge the existing regulations and policies implementing expedited removal, because these claims assert that those existing statutory and regulatory provisions fail to provide "meaningful process." *Id.* ¶¶ 102, 108–109. But the bases for these challenges—the statute and its implementing regulations—arose decades ago, not at the time of the 2025 designation. *AILA*, 199 F.3d at 1354 (acknowledging that expedited removal procedures of IIRIRA were implemented in 1996); *Dugdale v. U.S. CBP*, 88 F. Supp. 3d 1, 8 (D.D.C. 2015) (rejecting a constitutional due process challenge to the expedited removal system because "[a]s the REAL ID Act was passed in May 2005, the 60-day limit on review has long since expired"), *aff'd* 672 F. App'x 35 (D.C. Cir. 2016).

---

[3] Thus, the Supreme Court's decision in *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.* does not impact this analysis. 603 U.S. 799 (2024). There, the Court addressed a traditional time bar—not (as here) a jurisdictional one. *Id.*

Count Two also is time-barred against a different benchmark: it purports to challenge the 2025 designation's application to certain aliens unlawfully present in the United States who are inadmissible under section 1182(a)(7). Am. Compl. ¶¶ 110–13. But Congress gave the Secretary that authority 27 years ago. *See* 8 U.S.C. § 1225(b)(1)(A)(iii). Congress was clear when it provided that "an alien … who is arriving in the United States *or is described in clause (iii)*"—that is, present for less than two years—and "*is inadmissible under* section 1182(a)(6)(C) or *1182(a)(7)* of this title," shall, unless they apply for asylum, be "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added). And the government has been implementing section 1225(b)(1) by applying section 1182(a)(7) to certain aliens unlawfully present in the United States since at least 2002. *See* 67 Fed. Reg. 68,923, 69 Fed. Reg. 48,877, 82 Fed. Reg. 4902. Thus, Plaintiffs' challenge in 2025 to these long-standing statutes and regulations is untimely. Many times over.

## C.  Plaintiff Make the Road is Outside the Zone of Interests of the Expedited Removal Statute.

Even assuming Plaintiff Make the Road had Article III standing and that its challenges to the expedited removal system are permissible under § 1252(e)(3), Plaintiff Make the Road's APA claims must be dismissed because the organization is outside the zone of interests of the statutes. The APA does not "allow suit by every person suffering injury in fact." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 395 (1987). Rather, it provides a cause of action only to one "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. For Make the Road to be "aggrieved," "the interest sought to be protected by the complainant" must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Clarke*, 479 U.S. at 396 (alteration in original) (citation omitted). More specifically, this means individuals to whom Congress intended to accord privately

enforceable rights. *See id.* at 399. Plaintiff Make the Road does not articulate that it is in the zone of interests of the expedited removal provisions and separately does not invoke such interest here.

Nothing in the expedited removal statute protects the interests of organizations providing, *inter alia*, legal services to aliens. Neither section 1225 nor section 1252 evinces any concern with organizations or their interest in representing individuals subject to expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I); *see also id.* § 1252(e)(1)(B) (limiting class certification for matters subject to judicial review in subsection (e) of the section). These provisions do not regulate the organizational Plaintiff's conduct or create any benefits for which the organization may be eligible. For example, section 1252(e)(3) is a jurisdiction-conferring statute and does not separately create a cause of action. *Make the Road N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 36 (D.D.C. 2019) (explaining that section 1252(e)(3) does not "provid[e] plaintiffs with a cause of action to challenge the government's implementation of the expedited removal system"); *O.A. v. Trump*, 404 F. Supp. 3d 109, 140 (D.D.C. 2019) (finding no "feature of § 1252(e)(3) suggesting that it provides a cause of action, much less an exclusive cause of action for claims brought challenging implementation of the expedited removal statute"). And the D.C. Circuit has concluded that immigration statutes are directed at aliens, not organizations advocating for them. *AILA*, 199 F.3d at 1364 (D.C. Cir. 2000) ("[P]laintiff organizations do not have standing to raise claims, whether statutory or constitutional, on behalf of aliens subjected to IIRIRA's expedited removal system."); *see Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 900-04 (D.C. Cir. 1996) (affirming the district court's dismissal of the complaint, reasoning Congress did not "seek to protect the interests of the Federation's members by intending them as beneficiaries or as suitable challengers of violations").

When confronted with a similar challenge brought by "organizations that provide legal help to immigrants," Justice O'Connor concluded that the Immigration Reform and Control Act

of 1986 "was clearly meant to protect the interests of undocumented aliens, not the interests of organizations[,]" and the fact that a "regulation may affect the way an organization allocates its resources … does not give standing to an entity which is not within the zone of interests the statute meant to protect." *INS v. Legalization Assistance Project of L.A. Cty.*, 510 U.S. 1301, 1305 (1993) (O'Connor, J., in chambers). That reasoning fully applies here. Because Plaintiff Make the Road is outside the statutory scheme, any alleged effects on its resources (although none are explained in the complaint) are outside the statutory zone of interests. *Nw. Immigrant Rights Project v. USCIS*, 325 F.R.D. 671, 688 (W.D. Wash. 2016) ("Nor can the text of the relevant provisions be fairly read to implicate Organizational Plaintiffs' interest in the efficient use of resources.").

Defendants acknowledge that some courts in this District have sometimes held that the zone-of-interests test should be applied permissively and have found organizations satisfy it, even in the context of the INA. *See, e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 144 (D.D.C. 2019). However, this relaxed standard does not (and cannot) survive the Supreme Court's *United States v. Texas* decision. 599 U.S. 670. The Court clarified—relying on principles that inform the scope of Article III and the APA's cause of action—that third parties like Make the Road have no cognizable interest in the way the Executive enforces the immigration laws against others. 599 U.S. at 674, 677; *see also Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 897 (1984) ("[P]rivate persons such as petitioners have no judicially cognizable interest in procuring enforcement of the immigration laws[.]").

Finally, none of the statutes Plaintiff invokes confers a judicially cognizable interest on any third party in the United States regarding alien admission. Sections 1225 and 1252 confer discretionary authority on the Executive branch, not rights on private parties. And the removal provisions Make the Road cites address "aliens," not organizations or other entities. Even in

19

circumstances where the INA permits a relative to petition for a visa for an alien abroad, nothing in the INA permits that petitioner to challenge any separate decision to deny the alien relative admission to the United States. *See Dep't of State v. Muñoz*, 602 U.S. 899, 909 (2024) ("[A] citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country."). *A fortiori*, those persons or entities that lack a sufficient relationship with the alien to even file a visa petition on the alien's behalf also lack a general APA cause of action to enforce any rights those aliens might have under the INA, "and have no right of review under the APA." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1164 (D.C. Cir. 1999). As Congress generally provides for judicial review only at the behest of the affected alien, under certain circumstances, 8 U.S.C. § 1252 forecloses review of actions lodged by third parties.

### D.  The Designation is Committed to Agency Discretion by Law.

Plaintiffs' APA claims also fail because the Secretary's expedited removal designation decisions are committed to agency discretion for the same reasons the D.C. Circuit articulated in rejecting Plaintiffs' 2019 suit. *Make The Road*, 962 F.3d at 631-34.

The APA's waiver of sovereign immunity does not extend to any "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). By providing that it "shall be in the *sole and unreviewable discretion* of the [Secretary]" to designate groups for expedited removal, and by further providing that the designation "may be modified at any time," 8 U.S.C. § 1225(b)(1)(A)(iii), Congress made clear that any designation made pursuant to the statute is committed to agency discretion. "There could hardly be a more definitive expression of congressional intent to leave the decision about the scope of expedited removal, within statutory bounds, to the Secretary's independent judgment." *Make The Road*, 962 F.3d at 632. Further, the D.C. Circuit held that section 1225(b)(1) "provides no discernible standards by which a court could evaluate the Secretary's judgment." *Id.*; *see Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (finding

that when a statute offers "no meaningful standard against which to judge the agency's exercise of discretion," that decision is committed to agency discretion). The *only* limit placed on the designation authority is that the groups must fall within the statutory bounds—that is, the aliens have not been admitted or paroled and have not demonstrated continuous physical presence in the United States for the two-year period immediately preceding the date of the inadmissibility determination. *Make The Road*, 962 F.3d at 632 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(I)). Plaintiffs do not allege that the 2025 designation—which expressly goes no further than "the fullest extent authorized by Congress" in section 1225(b)(1)(A)(iii)(I), 90 Fed. Reg. 8139—exceeds the statute. Within these statutory bounds, "[n]either the statutory text nor structure provides any other legal standards constraining the Secretary's discretionary judgment." *Make The Road*, 962 F.3d at 633. Thus, Plaintiff cannot obtain judicial review under the APA because it challenges a designation decision committed to agency discretion by law. *Id.* at 633-34.

## II.    Plaintiffs' Challenge to the Expedited Removal Designation is Foreclosed by the D.C Circuit *Make the Road* Decision.

Plaintiffs' APA claims (Counts Four and Five) are squarely foreclosed by binding Circuit precedent.[4] Plaintiffs claim that the 2025 designation is arbitrary and capricious because Defendants "failed to articulate a reasoned explanation for their decision, which represents a change in the agency's longstanding policy; entirely failed to consider important aspects of the problem; and offered explanations for their decision that run counter to the evidence before the agency." Am.

---

[4] The Government acknowledges that the Circuit squarely decided what are Counts Four and Five here, *Make the Road New York v. Wolf*, 962 F.3d 612, 630–35 (D.C. Cir. 2020), and did not decide Counts One and Three. *Id.* at n.14. Count Two was lodged after the Circuit decision. *Make The Road New York, v. McAleenan*, No. 1:19-cv-5298, ECF No. 55 (Am. Compl. dated October 19, 2020). However, the reasoning of the Circuit decision applies to all of Plaintiffs' claims here, because Congress committed the designation-making authority to the agency's discretion, and because the agency only implemented the January 2025 designation to the "fullest extent authorized by Congress." *See* Section I.D., *supra*; *see also* Section III.C., *infra*.

Compl. ¶¶ 117-18. Plaintiffs also complain of a lack of notice and comment process undergirding the 2025 designation. *Id.* ¶¶ 119–24. However, the D.C. Circuit has squarely held—in a case involving the *very same Plaintiff* (Make the Road) and equivalent APA claims—that judicial review over "actions committed to agency discretion by law" are precluded "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Make the Road*, 962 F.3d at 631.

Here, the relevant statutory provision explicitly provides that the expansion of expedited removal procedures is to be made "in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." *Id.* at 632 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(I)). And Plaintiffs' grievance—that the reasoning behind the designation was lacking—contravenes this statutory language, imbuing the Secretary with "sole and unreviewable discretion," and authority to "modify" the designation "at any time." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Indeed, the Circuit noted, "[t]here could hardly be a more definitive expression of congressional intent to leave the decision about the scope of expedited removal, within statutory bounds, to the Secretary's independent judgment." *Make the Road*, 962 F.3d at 632–33 ("[W]hen the Secretary stays within statutory bounds," the court cannot "substantively superintend the Secretary's designation judgment."). The prohibition against judicial review includes determining whether the Secretary, in making the designation, properly considered evidence regarding the accuracy and fairness of the expedited removal process. *Id.*; *see Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs* ("*LAVAS*"), 104 F.3d 1349, 1353 (D.C. Cir. 1997) (concluding that 8 U.S.C. § 1202(a) commits consular venue decisions "entirely to the discretion of the Secretary of State," thus, providing no "substantive standards against which the Secretary's determination could be measured."). *Make the Road* thus precludes Plaintiffs' arbitrary-and-capricious claim. 962 F.3d at 631–

33. And when the Circuit last examined 8 U.S.C. § 1225(b)(1)(A)(iii)(I)[5] to find "judicially administrable standards by which to judge the Secretary's decision," the Court concluded "that language is an empty vessel." *Make the Road*, 962 F.3d at 633. Thus, Plaintiffs' Count Four contradicts Congress's allotment of power to the Secretary, and the Secretary alone. *Id.*; 8 U.S.C. § 1225(b)(1)(A)(iii)(I).

Count Five suffers from the same infirmity. This notice-and-comment claim is plainly precluded by binding D.C. Circuit precedent—prompted by Plaintiff Make the Road's near identical 2019 litigation. *Make the Road*, 962 F.3d at 633–35. The D.C. Circuit rejected this same claim when Plaintiff lodged it against the July 23, 2019 designation.[6] *Id.* at 634. This Court must do the same for the recycled claim here.

The goals undergirding the notice-and-comment process are simply incompatible with statutory language here. *Id.* at 634–35. For example, one objective is "to subject agency decision making to public input and to obligate the agency to consider and respond to the material comments and concerns that are voiced." *Id.* at 634 (collecting cases). Another goal is to develop a record for judicial review. But these objectives serve no purpose where the statutory language explicitly entrusts decisions to the "Secretary's '*sole*' discretion[.]" *Id.* (emphasis added) (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(I)). This means "that the Secretary *alone* has the power to make the

---

[5] Even if section 1225(b)(1)(A)(iii)(I), as interpreted in *Make the Road*, provided for APA review of the 2025 designation, there is no requirement that the agency "second-guess Congress' calculations" in exercising its statutory authority. *Pub. Citizen v. FTC*, 869 F.2d 1541, 1557 (D.C. Cir. 1989). Congress gave the Secretary the authority to designate aliens for expedited removal, but did not mandate that the agency consider the alleged systemic "flaws" that Plaintiffs demand the agency consider in applying the statutory authority Congress provided. *See Make the Road*, 962 F.3d at 633-36.

[6] Importantly, the authority underlying the July 2019 designation and the January 2025 designation is the same. 8 U.S.C. § 1225(b)(1)(A)(iii).

designation entirely independent of the views of others." *Id.* (emphasis added). This independent and unreviewable judgment is not subject to the second guessing of either Plaintiffs or the courts.

In addition, the provision includes language that permits the Secretary to modify the designation "at any time." *Id.* at 635. These instructions make a notice-and-comment process untenable since "the usually lengthy notice and comment rulemaking process" would preclude the Secretary's ability to exercise her authority "at any time." *Id.* That the Secretary may exercise her power "at any time," in her "sole discretion" "also means that the Secretary would be free to ignore the comments that the process produces." *Id.* at 634–35 ("Under those circumstances, the notice-and-comment procedure would be … all form and no substance."). Thus, the exercise would be for form only, yielding no tangible benefits—an empty gesture that the APA does not require. *Id.* Plaintiffs' APA claims thus fail under the governing statutory language and binding precedent.[7]

## III. The Expedited Removal Designation is Consistent with the Statute and the Due Process Clause (Counts One, Three, and Four).

To the extent Plaintiffs argue that *Make the Road* and the APA do not preclude their due process and statutory claims, those claims are indeed foreclosed by *AILA*. Alternatively, Plaintiffs

---

[7] *Make the Road* declined to shutter judicial review on the basis of 8 U.S.C. § 1252(a)(2)(B)(ii). 962 F.3d at 630 ("In short, the statutory text, confirmed by the Supreme Court's holding in *Kucana* and reaffirmed in *Nasrallah*, focuses Clause (ii)'s bar on individualized forms of discretionary relief from removal or exclusion, which is not the type of generally applicable rulemaking governing removal *procedures* undertaken by the Secretary in this case.") (emphasis in original). However, since deciding *Make the Road* in 2020, other Circuits have expanded 8 U.S.C. § 1252(a)(2)(B)(ii) to cover the types of policy claims Plaintiffs assert here. *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024), *cert. denied*, No. 24-401, —S.Ct.—, 2025 WL 247456 (U.S. Jan. 21, 2025) ("Under *Patel*, 'any' operates to augment the purview of § 1252(a)(2)(B)(ii) to preclude judicial review of DOS's and USCIS's retrogression hold policies, which are practical applications of the discretion afforded the Attorney General in § 1255(a).") (citing *Patel v. Garland*, 596 U.S. 328 (2022)); *see also Thigulla v. Jaddou*, 94 F.4th 770, 776 (8th Cir. 2024) ("The text of § 1252(a)(2)(B)(ii) and § 1255(a) is clear and convincing evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions about the status adjustment process under § 1255(a), like the Adjudication Hold Policy."). Therefore, Defendants preserve that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review here.

also fail to state a claim upon which relief can be granted.

### A. Plaintiffs' Claims that the Designation Fails to Provide Meaningful Process (Counts One and Three) are Foreclosed by *AILA* and Lack Merit.

First, Plaintiffs' Due Process Clause challenge (Count 1), Am. Compl. ¶ 108, and challenge under 8 U.S.C. § 1225(a), (b)(1) (Count 3), *id.* ¶ 115, claim that the 2025 designation is unlawful because the expedited removal statute must be interpreted to provide aliens "meaningful process." Both fail for the same reason: the 2025 designation is consistent with the statute and, on its face, satisfies due process.

This Circuit has already upheld the very same expedited removal provisions as applied to aliens who are not "permanent residents or [who lack] 'substantial connections' to the United States." *AILA*, 18 F. Supp. 2d at 59, *aff'd*, 199 F.3d at 1356-57. And for good reason: for recently arrived applicants for admission, "[w]hatever the procedure authorized by Congress … is due process." *Knauff*, 338 U.S. at 544; *accord Thuraissigiam*, 591 U.S. at 139. Congress authorized the Secretary to apply expedited removal to certain inadmissible aliens present for fewer than two years, 8 U.S.C. § 1225(b)(1)(A)(iii), and DHS has afforded procedural protections for aliens subject to expedited removal—including those under the 2025 designation. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(A), (B); 8 C.F.R. §§ 235.3, 208.30, 1003.42, 1208.30. These procedures satisfy any due process requirements, and because the statute does not require any additional procedures that Plaintiffs suggest, *Make the Road* bars any statutory claim demanding more. 962 F.3d at 633-36.

Plaintiffs' Due Process Clause claim (Count One) and 8 U.S.C. § 1225 claim (Count Three) challenge the existing statutory and regulatory procedures. Am. Compl. ¶¶ 107-09, 114-16. But twenty-five years ago, the D.C. Circuit upheld the legality of the statute and its implementing regulations, which apply equally to all aliens subject to expedited removal. *AILA*, 199 F.3d at 1357.

In *AILA*, the plaintiffs alleged that the expedited removal statute and its implementing regulations "violate[d] Congress's intent" of "establish[ing] fair procedures" by "providing insufficient protections, therefore creating an unreasonably high risk that individuals will be erroneously removed." *Id.* at 52-53. The plaintiffs alleged, *inter alia*, that the regulations do not provide "fair procedures" because they (1) did not allow aliens to "communicat[e] with family, friends and counsel during secondary inspection," (2) failed to provide adequate access to counsel, language interpreters, information about charges and procedures, and an opportunity to rebut those charges, and (3) improperly applied these procedures "to individuals with facially valid documents." *Id.* at 53, 57-58. Plaintiffs further challenged the agency's alleged failure to follow the regulations in individual cases, and claimed the statute and regulations violated inadmissible aliens' due process rights. *Id.* This Court rejected those claims in full, *id.* at 52-60, a decision the D.C. Circuit emphatically affirmed and endorsed: "We see no reason to disturb the district court's analysis, and so we affirm the dismissal of these claims substantially for the reasons stated in the court's thorough opinion." *AILA*, 199 F.3d at 1357. And so Defendants discuss that thorough opinion below.

*First*, the district court held that the regulations were "entitled to the highest degree of deference" because Congress instructed the agency to implement the statute with rules. *AILA*, 18 F. Supp. 2d at 53.[8] Next, the court addressed and rejected each of the plaintiffs' claims. As to the

---

[8] The *AILA* court invoked *Chevron* deference, which was abrogated in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). But *Loper Bright* made clear that it did not "call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful … are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Id.* at 412. Thus, *AILA* still binds this Court. In addition, *Loper Bright* recognized that sometimes "the best reading of a statute is that it delegates discretionary authority to an agency" or "empower[s] an agency to prescribe rules to 'fill up the details' of a statutory scheme," and that courts must respect those delegations. *Id.* at 395. Both are true here: the INA makes clear that the specific decision to expand expedited removal is at the "sole and unreviewable discretion" of the Secretary, 8 U.S.C. § 1225(b)(1)(A)(iii)(I), and it expressly authorizes the Secretary to fill

right to "consult with a person or persons of the alien's choosing prior to the [credible fear] inter-

view," 8 U.S.C. § 1225(b)(1)(B)(iv)—which plaintiffs argued required allowing access to an at-

torney at various stages of the inspection and admission process—the court held that "the Attorney

General reasonably concluded" that access to counsel could be limited as the regulation provided.

*Id.* at 52, 54. As to "adequate language interpretation," the court held that the statute did not require

interpreters, but the regulations nevertheless provided for "interpretive assistance," and that such

provision was more than adequate under the statute. *Id.* at 55. To the allegation that the statute did

not provide a meaningful opportunity to "contest" the "charges" against an alien, *id.*, the court held

that the statute did "not set forth any requirement or notice, opportunity for rebuttal, or review."

*Id.* at 56. However, the Court acknowledged the regulations require that aliens "be advised of the

inadmissibility charges against them and be given an opportunity to respond." *Id.* To that end, the

Court found that "[p]laintiffs cannot impose upon the Attorney General any obligation to afford

more procedures than the governing statute explicitly requires or that she has chosen to afford in

her discretion." *Id.* The Court likewise rejected plaintiffs' claim that "expedited removal proce-

dures should apply only to aliens whose travel documentation is 'facially' invalid," *id.*, reasoning

that the statute lacks such a requirement, and instead, mandates officers inspect aliens for admis-

sion and consider their admissibility even if they have a facially valid visa. *Id.* at 57.

Like in *AILA*, Plaintiffs here allege that the government will misapply the regulations be-

cause immigration officers sometimes do not adhere to existing regulations. Am. Compl. ¶¶ 5, 67–

---

in the details of the expedited removal scheme, *see* 8 U.S.C. § 1225; *see also* 8 U.S.C. § 1103(a)(1),
(3) (authorizing the issuance of regulations and providing that the "determination and ruling by
the Attorney General with respect to all questions of law shall be controlling"); *cf. Gulomjonov v.
Bondi*, 131 F.4th 601, 609 (7th Cir. 2025) (discussing *Loper Bright* and similarly broad delegation
of discretionary authority to the Attorney General under another INA provision). Accordingly,
*AILA*'s holding is correct even without any deference to the agency's interpretation of the INA.

73, 85–89. But the Court rejected this claim, concluding that "based on the clear language of [8 U.S.C. § 1252(e)(3)(A)(ii)], the court cannot review unwritten policies or practices but rather must limit its review to a 'regulation, a written policy directive, written policy guideline, or written procedure.'" *AILA*, 18 F. Supp. 2d at 58. And here, Plaintiffs' identical claims are even more attenuated because they are based on hearsay reports. Am. Compl. ¶¶ 64–68, 72–73.

Finally, similar to *AILA*, Plaintiffs allege that the statute and its implementing regulations violate Due Process because "individuals will be erroneously removed from the United States and thus deprived of liberty and property." *Compare* Am. Compl. ¶¶ 107–09, *with AILA*, 18 F. Supp. 2d at 58. But the court rejected that claim, concluding that "aliens seeking initial admission to the United States have no constitutional rights with respect to their immigration status," and thus lack due process rights regarding their applications for admission that "permanent residents or those with 'substantial connections' to the United States" have. *AILA*, 18 F. Supp. 2d at 59. Accordingly, *AILA* confirms that the Court should dismiss Counts One and Three on the merits.

### B. Plaintiffs' Constitutional and Statutory Due Process Claims Lack Merit.

Because the statute requires none of the additional procedures Plaintiffs seek, their statutory and Constitutional due process claims fail (Counts One and Three). Regardless of how Plaintiffs frame these claims, they are barred to the extent that they challenge *how* the Secretary exercises her discretion, including whether she was required to add new procedures. *See Privett v. Sec'y, Dep't of Homeland Sec*., 865 F.3d 375, 381 (6th Cir. 2017); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 206 (3d Cir. 2006). That is because "in order to adjudicate these claims, [the Court] would be required to give the Secretary's decision not to [take the actions Plaintiffs demand] a central role in [its] review." *Privett*, 865 F.3d at 381. Plaintiffs' claim that something more is due, Am. Compl. ¶ 115, is tantamount to contending the Secretary should have exercised her sole and unreviewable discretion in a different manner. *Make the Road*, 962 F.3d at 636.

Because "evaluating these constitutional claims requires [the Court] to revisit and review the" Secretary's exercise of discretion, they are barred. *Jilin*, 447 F.3d at 206.

Indeed, the 2025 designation only announces that DHS will begin exercising its authority under section 1225(b)(1)(A)(iii)(I) regarding aliens not subject to previous designations. This public notice of change in the sovereign's prosecutorial discretion exercise "creates no new [] offenses but merely extends jurisdiction over certain classes of offenses defined elsewhere" by the statute. *Washington v. Confederated Bands and Tribes of Yakima Indian Nation*, 439 U.S. 463, 468 n.5 (1979). The statute and regulations establish the "procedures" aliens subject to expedited removal receive, and there is "nothing anomalous about the fact that a change in the administrative regulations may effectively broaden or narrow the scope" of who may be subject to the statute. *Foti v. INS*, 375 U.S. 217, 229 (1963). To that end, aliens subject to expedited removal lack any protected liberty interest in remaining in this country once they receive the process available to them under the statute and its implementing regulations. *Landon*, 459 U.S. at 32 ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). As to "foreigners who have [not] been [legally] admitted into the country," "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Thuraissigiam*, 591 U.S. at 138–39 ("This rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U.S. soil."); *see LAVAS*, 104 F.3d at 1352 ("[P]laintiffs do not have a substantive right to any particular process for having their applications considered.").

Through section 1225(b)(1)(A)(iii), Congress provided that certain aliens who are not admitted or paroled into the country, who have been physically present for fewer than two years and lack a credible fear of persecution or torture, may be removed expeditiously. Section

1225(b)(1)(B)(iii) thus provides the entirety of rights that Plaintiffs' members possess regarding their ability to remain in this country—which do not include any right to specific procedures, let alone removal proceedings under section 1229a. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011) ("Congress could have created an expedited removal scheme based entirely on the [Secretary's] discretion, [but] it created" "limited procedural rights for arriving aliens" subject to expedited removal). That being so, Plaintiffs cannot assert a liberty interest in obtaining additional procedures to facilitate admission into the United States beyond those already provided by law. *See LAVAS*, 104 F.3d at 1352.

Moreover, because Plaintiffs assert a facial challenge to section 1225(b)(1) as to aliens covered by the 2025 designation, it "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "The fact that [section 1225(b)(1)] might operate unconstitutionally under some conceivable set of circumstances is insufficient." *Id*. Plaintiffs cannot make this "difficult" showing, *id.*, because it cannot demonstrate that all aliens who have not been admitted or paroled present for less than two years in the United States, as a class, are entitled to *any* procedures regarding their admission to this country beyond those provided by statute, much less a categorical right not to be removed expeditiously from the country after receiving the process provided by section 1225(b)(1) and its implementing regulations. *See Thuraissigiam*, 591 U.S. at 138-40; *Landon*, 459 U.S. at 32. Congress makes rules concerning aliens that "depend on both the character and the duration of his residence," *Mathews v. Diaz*, 426 U.S. 67, 83 (1976), and it is well-settled that "aliens receive constitutional protections when they have come within the territory of the United States and developed *substantial connections* with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (emphasis added). Only "once an alien *gains admission* to our country and *begins to develop the ties that go*

*with permanent residence* [does] his constitutional status change[] accordingly." *Landon*, 459 U.S. at 32 (emphasis added); *see Thuraissigiam*, 591 U.S at 106-07 (alien must possess "established connections in this country" to "have due process rights in deportation proceedings").

Such connections require a showing that the alien was "in the United States voluntarily and … had accepted some societal obligations," *Verdugo*, 494 U.S. at 273, which means something more than "regularly com[ing] to the United States [lawfully] to visit [family]." *AILA*, 18 F. Supp. 2d at 60 n.17. One court has found that lawfully studying for four years at an American university would be sufficient, while certain lawfully admitted aliens such as "tourists, business visitors, and all student visa holders" might not satisfy that test. *See Ibrahim v. DHS*, 669 F.3d 983, 997 (9th Cir. 2012). In the same vein, presence for *several years* combined with the grant of lawful status has been found to be sufficient, *see Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 168 (3d Cir. 2018), or that the "*regular* and *lawful entry* ... and [] *acquiescence in the U.S. system of immigration*" can "constitute [] voluntary acceptance of societal obligations." *Martinez–Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2006) (emphases added). What is clear is that *none* of the aliens subject to the 2025 designation will have been *admitted* or have been *lawfully* present in this country and so have not formed voluntary societal obligations. Thus, in virtually all circumstances, they will lack the requisite substantial connections under any of these formulations. *See Thuraissigiam*, 591 U.S. at 106-07 (suggesting that "established connections" contemplates "an alien's *lawful entry* into this country"); *Albathani v. INS*, 318 F.3d 365, 375 (1st Cir. 2003) ("As an unadmitted alien present in the United States, Albathani's due process rights are limited.").

Plaintiffs seemingly invoke the canon of "constitutional avoidance" when it claims that the statute must "be interpreted to provide minimal procedures to persons faced with expedited removal, to ensure that the process is administered fairly … since otherwise it would violate the

Constitution." Am. Compl. at ¶ 115. But this claim fails. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction. In the absence of more than one plausible construction, the canon simply has no application." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). That Plaintiffs allege the statute *could* raise constitutional concerns in as-applied circumstances, Am. Compl. at ¶ 89, is irrelevant: "Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases. Instead, the canon permits a court to choose between competing plausible interpretations of a statutory text," and only where the statute is in fact "ambiguous." *Id.* at 298. There is nothing ambiguous about section 1225(b)(1)(A)(iii). "If an immigration officer *determines* that an alien … who is arriving in the United States *or is described in clause (iii)* is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer *shall* order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added). That provision reaches any "alien … who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph," so long as the Secretary so "designate[s]." *Id.* § 1225(b)(1)(A)(iii). There is no "competing plausible interpretation[]" of the text. *Jennings*, 583 U.S. at 296. The statute unambiguously describes who may be subject to it and authorizes the Secretary to apply the statute to those people "at any time." Thus, Plaintiffs' allegation that the statute must be read to include additional process fails. *See FCC v. Fox Television Stations*, *Inc*., 556 U.S. 502, 516 (2009) ("We know of no precedent for applying [the canon] to limit the scope of authorized executive action.").

Even if the statute were ambiguous, Plaintiffs' statutory claim still fails because it is only after a claim "survives substantive due process scrutiny" that a procedural due process analysis—to ensure that such government action is implemented in a fair manner—is utilized. *Salerno*, 481 U.S. at 746. The crux of due process is simply "notice and an opportunity to be heard." *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903). As "due process is flexible and calls for such procedural protections as the particular situation demands," what constitutes adequate process is circumstance dependent. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Assessing what is required turns on: the private interests at stake, the risk of erroneous deprivation and the probable value of additional safeguards, and the government's interests. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The fundamental problem for Plaintiffs is that aliens subject to expedited removal have no liberty interest in avoiding removal—and thus no interest to balance. An "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983). Congress has determined that aliens who have not been admitted or paroled who are present for less than two years *as a class* lack *any* liberty interest in avoiding removal or to certain procedures. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). They are entitled only to the "procedure authorized by Congress," *Knauff*, 338 U.S. at 544, which authorizes the Secretary to designate certain aliens for expedited removal at her "sole and unreviewable discretion." Thus, aliens cannot assert a protected property or liberty interest in the designation decision or additional procedures not provided by statute. *Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004). Indeed, "it is well established that Congress is constitutionally authorized to provide for expedited removals without [judicial] review." *United States v. Villarreal Silva*, 931 F.3d 330, 335 (4th Cir. 2019). "The power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, with such

opportunity for judicial review of their action as Congress may see fit to authorize or permit." *Carlson v. Landon*, 342 U.S. 524, 537 (1952).

Plaintiffs allege, however, that some individuals who are not subject to expedited removal may be deprived of due process because the "risk of error in the expedited removal process is particularly high." Am. Compl. at ¶ 53. But again, the Court lacks jurisdiction to consider allegations that the statute or regulations, as-applied, will affect non-parties in error. *AILA*, 18 F. Supp. 2d at 58. Moreover, Plaintiffs' reliance on hearsay, extra-record reports about examples of alleged errors in the application of expedited removal, does not demonstrate a categorical likelihood of liberty deprivation, because even if taken as true, due process "rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions" or "the result obtained in any individual case." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985). Nor does due process "require that the procedures used to guard against an erroneous deprivation … be so comprehensive as to preclude any possibility of error." *Id.* As-applied challenges exist for such circumstances. 8 U.S.C. § 1252(e)(2) (allowing for limited review of habeas claims). Plaintiffs' facial challenge is no substitute even if this Court had jurisdiction to consider it.

Further, the "risk of erroneous deprivation," Am. Compl. ¶¶ 85–89, is categorically low for aliens who have not been admitted or paroled who cannot show sufficient evidence of continuous physical presence that could establish a cognizable liberty interest. Whether an alien may be subject to expedited removal proceedings is straightforward: the immigration officer must determine only if the alien is inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7), has not been admitted or paroled into the United States, and has not been physically present continuously for the 2-year period immediately prior to the date of the determination of inadmissibility. *See* 8 U.S.C.

34

§ 1225(b)(1); 8 C.F.R. § 235.3(b)(2)(i), (6)-(7). And if the alien asserts that he should not be subject to expedited removal, because he is a lawful permanent resident, refugee, or asylee, or claims to be a U.S. citizen, the regulations require that a thorough inquiry occur, both before the immigration officer and an immigration judge, prior to any removal of the alien. *See* 8 U.S.C. § 1225(b)(1)(C); 8 C.F.R. § 235.3(b)(5). Thus, as a categorical matter, Plaintiffs fail to demonstrate a high risk of erroneous deprivation.

As for "added value procedures," that factor must be weighed against the fact that "requiring more process would fundamentally alter Congress's scheme without adding any significant protection for aliens in expedited removal proceedings." *United States v. Peralta-Sanchez*, 847 F.3d 1124, 1137 (9th Cir. 2017), *reh'g granted, opinion withdrawn*, 868 F.3d 852 (9th Cir. 2017) (subsequent history omitted). Plaintiffs allege that the expedited removal process is "rife with errors," Am. Compl. at ¶ 4, and that the statute must be read to incorporate additional procedures to ensure it is "administered fairly[.]" Am. Compl. at ¶ 115. These bare assertions wrongly imply that the statute and regulations lack procedural safeguards. But the regulations already contain procedures giving aliens notice and an opportunity to confront evidence, to create a written record, and to demonstrate that they were admitted or paroled and have been continuously present for more than two years or otherwise are not properly subject to expedited removal. And aliens who indicate an intent to apply for asylum or a fear of persecution or torture or of return are entitled to further process under section 1225(b)(1) before removal can take place, *id*. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4), (5), including the right to a non-adversarial interview before a trained asylum officer, administrative review before an immigration judge, and limited judicial review for habeas corpus proceedings. 8 U.S.C. § 1252(e)(2); 8 C.F.R. §§ 235.3, 1208.30. Likewise, aliens asserting that they should not be subject to expedited removal because they are a U.S. citizen, lawful

permanent resident, asylee, or refugee, may seek administrative review by an immigration judge, 8 U.S.C. § 1225(b)(1)(C); 8 C.F.R. § 235.3(b)(5), and seek further review and relief in habeas as-applied cases. 8 U.S.C. § 1252(e)(2). If aliens demonstrate that they are not properly subject to expedited removal procedures, they are entitled to further proceedings under section 1229a. *Id.* § 1252(e)(4). Aliens who—because of their status or credible fear claims—should not be subject to expedited removal thus have ample protections in administrative proceedings and habeas review under section 1252(e)(2). And while Plaintiffs complain that aliens must bear "the burden" of showing that they were not admitted or paroled, or are not inadmissible, Am. Compl. at ¶¶ 5, 52, 54, that is simply what the statute provides. To change that, this Court would have to declare section 1225(b)(1)—which requires that aliens demonstrate their entitlement to be admitted to this country or to asylum, 8 U.S.C. §§ 1225(b)(1)(A)(i), (b)(2)(A), 1229a(c)(2)(A)—unconstitutional. But Congress's decision on who should bear the burden is wholly appropriate: applicants for admission have information about their right, if any, to enter. Their use of that knowledge to circumvent legal requirements is what led Congress to conclude that such aliens as a *class*, when "released into the general population," "do not return for their hearings," H.R. Rep. No. 104-469, 117-18, thus necessitating expedited removal in the first place.

Finally, as to the government's interest, requiring the government to provide "safeguards" similar to those available in "regular removal proceedings," Am. Compl. at ¶ 52, would interfere with the government's weighty interest in effectively enforcing the expedited removal statute as drafted by Congress. *See Castro v. DHS*, 163 F. Supp. 3d 157, 174 (E.D. Pa. 2016) ("The procedures Petitioners urge—necessitating pleadings, formal court proceedings, evidentiary review, and the like—would make expedited removal of arriving aliens impossible."), *aff'd*, 835 F.3d 422 (3d Cir. 2016); *see also Peralta-Sanchez*, 847 F.3d at 1137 (similar). Congress determined that

expedited removal is necessary "to expedite the removal from the United States of aliens who indisputably have no authorization to be admitted," H.R. Rep. 104-828 at 209, and for dealing with the "crisis at the land border" that involves "hundreds of thousands of illegal aliens" entering each year. H.R. Rep. No. 104-469 at 107; *see id.* at 117 ("threat of expedited exclusion, which has been considered by Congress since 1993, may also have had a deterrent effect."). In short, most—if not all—aliens subject to the 2025 designation will lack the necessary liberty interest to trigger the *Mathews* due process analysis in the first place. Moreover, the statute and regulations adequately safeguard any minimal due-process rights that aliens who enter illegally and are present for fewer than two years may have. For these reasons, Plaintiffs' first and third causes of action fail and should be dismissed.

### C.  The Designation Does Not Violate 8 U.S.C. § 1182(a)(7) (Count Two).

Plaintiffs claim that the 2025 designation is contrary to law based on its reading of 8 U.S.C. § 1182(a)(7). Am. Compl. ¶¶ 110-13. As an initial matter, this claim is barred by this Circuit's decision in *Make the Road*. 962 F.3d at 633. Plaintiffs complain that the 2025 designation unlawfully "extend[s] authority to place into expedited removal individuals in the interior of the United States who have been physically present for up to two years based on a determination that they are inadmissible under 8 U.S.C. § 1182(a)(7)," Compl. ¶ 114. But the statute explicitly authorizes just that. 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Thus, *Make the Road* precludes this claim. 962 F.3d at 633.

Moreover, aliens who are inadmissible under section 1182(a)(7), in pertinent part, for "not [being] in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document" "at the time of application for admission," 8 U.S.C. § 1182(a)(7), are subject to expedited removal. 8 U.S.C. § 1225(b)(1)(A)(i). Plaintiffs contend that aliens who have been physically present inside the country for up to two years may not be subject

to expedited removal on this basis "because they have already entered the United States" and so "the time of application for admission" has passed. Am. Compl. ¶ 113. The Court should dismiss this claim because this is an incorrect reading of the statute. The INA places no time limit on how long an alien who has entered the United States remains an applicant for admission, but rather makes clear that an alien remains an applicant for admission until she is inspected and admitted by an immigration officer. *See* 8 U.S.C. § 1225(a)(1), (3). "Admission" in the immigration context means "the lawful entry" of an alien "into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). An alien "present in the United States who has not been admitted or who arrives in the United States … shall be deemed … an applicant for admission." 8 U.S.C. § 1225(a)(1). Thus, both individuals who arrive in the United States prior to being admitted, and those present in the United States after entering unlawfully without admission, are "applicant[s] for admission" under the statute. *Jennings*, 583 U.S. at 287; *see also Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 20-21 (B.I.A. 2020) (holding that § 1182(a)(7)(A)(i) applied to alien who illegally entered the United States between ports of entry). Such "applicants for admission" and any other noncitizens "seeking admission" must be "inspected by immigration officers," 8 U.S.C. § 1225(a)(3); it is pursuant to such "inspection," that "an immigration officer determines [whether the] alien … is inadmissible under section … 1182(a)(7)[.]" *Id.* § 1225(b)(1)(A)(i).

Courts of Appeals have affirmed that aliens present within the United States without having been admitted remain applicants for admission, with all the opportunities and limitations that status confers, unless and until inspected and admitted by an immigration officer. *Cruz-Miguel v. Holder*, 650 F.3d 189, 198 (2d Cir. 2011); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1118 (9th Cir. 2007) ("All applicants for admission, whether they are at the border or already physically present inside the country, must 'be inspected by immigration officers' who will determine their

admissibility.") (citing 8 U.S.C. § 1225(a)(3))); *cf. Akhtar v. Dir. USCIS Mt. Laurel Field Off.*, No. 23-1577, 2024 WL 1427634, at *3-4 (3d Cir. Apr. 3, 2024) ("Akhtar was inadmissible when he first entered the United States in 1999 because he was not then inspected and admitted or paroled. . . .  Akhtar did not leave the country [thereafter] and was never inspected at a port of entry where a decision to parole could be made. . . .  Accordingly, Akhtar remained inadmissible when he applied for adjustment of status on May 7, 2010 because he had not been inspected and paroled.").

The INA's context also refutes Plaintiffs' claim. Section 1184(b), titled "Presumption of status," provides that every alien, with limited exceptions not relevant here, "shall be presumed to be an immigrant until he establishes to the satisfaction of … the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 1101(a)(15) of this title." 8 U.S.C. § 1184(b). Section 1184(b) thus ties "the time of application for admission" to the time an "immigration officer[]" determines if an alien is an intending "immigrant" or "nonimmigrant." Yet that determination only happens when an alien is "inspected by immigration officers." *Id.* § 1225(a)(3); *see Smith v. U.S. CBP*, 741 F.3d 1016, 1018–19 (9th Cir. 2014) (explaining how U.S. Customs and Border Protection's determination whether an alien seeks admission as "an intending immigrant under" 8 U.S.C. § 1182(a)(7)(A)(i)(I) occurs during "inspection"). That inspection is a condition precedent to determining whether an alien is inadmissible as either an immigrant or non-immigrant lacking proper documentation. 8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(3), (b)(1), 1184(b). And, as explained, that admissibility determination occurs during inspection concerning an alien's "application for admission." *Id.* §§ 1101(a)(13), 1225(a)(3).

Further, section 1225(a)(4), which appears immediately after section 1225(a)(3)'s requirement that all "applicants for admission" be "inspected by immigration officers," provides that "[a]n

alien applying for admission may … be permitted to withdraw the application for admission and depart immediately from the United States." Congress plainly understood that an "applicant for admission" may withdraw "the application for admission" upon "inspect[ion] by an immigration officer." H.R. Rep. No. 104-469, pt. 1, at 228 (1995). DHS may grant permission to withdraw to "any alien applicant for admission," not only those inspected at a port of entry. 8 C.F.R. § 235.4. Thus, the statute unequivocally precludes Plaintiffs' argument that an "application for admission" can only occur at the border prior to physical entry, and that aliens present in the interior, without inspection and admission, lose their "applicant for admission" status merely through passage of time. Am. Compl. ¶¶ 110–13.

Plaintiffs may seek to rely on the Ninth Circuit's unrelated holding that an alien who "lawfully entered the CNMI [Commonwealth of Northern Mariana Islands] in 1997 before the INA went into effect" "never submitted an application for admission into the United States" and so "fell outside the scope of" section 1182(a)(7), *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (en banc), to argue that section 1182(a)(7) does not apply to aliens already present within U.S. territory because they are at that point no longer "at the time of application for admission." 8 U.S.C. § 1182(a)(7). This would be an overly broad and inaccurate reading of *Torres*. As the Ninth Circuit subsequently explained, *Torres* dealt with "peculiar circumstances" where, due to the change in immigration law governing the CNMI territory as a result of the introduction of the INA, Torres "never crossed the U.S. border; the border crossed [her]," rendering her unlawfully present despite her previous lawful residence in the CNMI. *United States v. Gambino-Ruiz*, 91 F.4th 981, 989 (9th Cir. 2024). Aliens who were never lawfully present in the United States are not similarly situated, and *Torres* says nothing about aliens who enter United States territory unlawfully without initial inspection. Further, the *Torres* holding is limited to its unusual circumstances; indeed, the *Torres*

Court declined to opine on its implications for expedited removal authority. 976 F.3d at 929 n.13

(stating the court "need not resolve the full scope of § 1225(b)(1)(A)(iii) in order to conclude that

§ 1182(a)(7) does not apply to a noncitizen in Torres's situation"); *see Gambino-Ruiz*, 91 F.4th at

989 (noting *Torres* "did not involve expedited removal, much less designation by the Attorney

General under [section 1225(b)(1)(A)](iii)"). *Torres*'s cabined conclusion is further confirmed by

the fact that the Ninth Circuit has not broadly extended it. *See Gambino-Ruiz*, 91 F.4th at 989. In

fact, *Gambino-Ruiz* held that *Torres* did not preclude the government from determining that an

alien is inadmissible under section 1182(a)(7) and subject to expedited removal when the govern-

ment encounters that alien unlawfully present inside the United States. *Id.* at 989-90 (explaining

that "[u]nlike *Torres*, however, *Gambino-Ruiz* was not in danger of the Attorney General treating

him as a perpetual applicant for admission because the INA limits the Attorney General's authority

to a two-year period after the alien enters the United States.") (citing 8 U.S.C.

§ 1225(b)(1)(A)(iii))). If anything, Ninth Circuit precedent only confirms Defendants' position

that an alien present without inspection for up to the two years, provided by section

1225(b)(1)(A)(iii) and the Secretary's 2025 designation, remains an applicant for admission and

may still be deemed inadmissible under section 1182(a)(7). Thus, the Court should dismiss Count

Two.

### D.  Claim Six Also Fails as a Matter of Law.

In their Sixth Claim, Plaintiffs allege that "[t]he INA and its implementing regulations do

not permit the expedited removal of noncitizens who entered without inspection and have filed

affirmative asylum applications with USCIS." Am. Compl. ¶¶ 125-28. None of the statutory or

regulatory provisions they cite support their assertion that the filing of affirmative asylum exempts

individuals from expedited removal. Plaintiffs' Count Six lacks a legal basis, cannot succeed as a matter of law, and must be dismissed.[9]

Indeed, the two statutory provisions Plaintiffs cite, 8 U.S.C. § 1158 and 8 U.S.C. § 1225(b)(1)(A), provide no such guarantee based on filing an affirmative asylum application. Section 1158 provides that "[a]ny alien who is physically present in the United States or who arrives in the United States … may apply for asylum in accordance with this section *or, where applicable, section 1225(b) of this title*." 8 U.S.C. § 1158(a)(1) (emphasis added). Section 1225(b)(1) provides, as explained, that if an inadmissible alien eligible for expedited removal indicates a fear of persecution or torture, they will be referred for a credible fear screening by USCIS, and if this determination is positive, that individual will be afforded the opportunity to apply for asylum in removal proceedings. 8 U.S.C. § 1225(b)(1)(A), (B). Thus, section 1158 expressly contemplates that an alien seeking asylum may have to do so "where applicable" through the expedited removal process. But never does it say that the two provisions are mutually exclusive or that noncitizens affirmatively seeking asylum are ineligible for expedited removal. *See* 8 U.S.C. § 1158(d)(7) (covering "asylum procedure" and setting out that the agency "shall establish a procedure for consideration of asylum applications filed under [section]" 1158(a), but also providing that: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." The absence of any such provision is meaningful, in light of the fact that

---

[9] Plaintiffs also do not provide any basis for this speculative scenario. The guidance expressly prioritizes expedited removal of aliens "who failed to apply for asylum within the statutory deadline." Huffman Memo (citing 8 U.S.C. § 1158(a)(2)(B)). Likewise, Plaintiffs do not attach any individual to this lawsuit that has suffered from this alleged "injury" or has standing to raise it. Instead, they articulate facts about a Doe member who is "not in removal proceedings and does not have a final order of removal" and has "timely filed an application for affirmative asylum with USCIS, which remains pending." Am. Compl. ¶ 99.

Congress clearly knows how to exempt aliens with certain immigration statuses from expedited removal. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(F) (providing that expedited removal "shall not apply to an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry"); 8 U.S.C. § 1225(b)(2)(A) (providing that aliens not inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7) and not otherwise "clearly and beyond a doubt entitled to" admission are to be placed into removal proceedings under 8 U.S.C. § 1229a, rather than expedited removal proceedings); *see also* 8 U.S.C. § 1232(a)(5)(D)(i) (providing that if an alien is an unaccompanied minor, they generally must be placed into removal proceedings under 8 U.S.C. § 1229a, rather than expedited removal proceedings).

A court "do[es] not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply" and its "reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). Congress expressly provided that only select, specific immigration statuses provide a basis to challenge the erroneous application of expedited removal: a persons who is not an alien at all or who is "an alien lawfully admitted for permanent residence," or who "has been admitted as a refugee," or who "has been granted asylum … such status not having been terminated." 8 U.S.C. § 1252(e)(2)(A), (C). That Congress explicitly required the alien to "ha[ve] been granted" asylum, and for that status to have continued unabated, to fall outside of the scope of expedited removal, *id.*, indicates that merely having applied for asylum without it yet being granted has no such exemption effect. *See Jama*, 543 U.S. at 341; *see also* 8 U.S.C. § 1158(c)(2), (3).

Aside from these clear implications from the statutory text, Plaintiffs do not (and cannot) point to any statutory language or case law providing that filing an affirmative asylum application renders the individual ineligible for expedited removal. The Court therefore should find as a matter of law that there is no legal basis for their assertion of any such right and dismiss this claim.

## CONCLUSION

For the reasons discussed herein, the Court should dismiss the Complaint in its entirety.

DATED: April 18, 2025

Respectfully Submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*
Civil Division

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

PATRICK GLEN
*Senior Litigation Counsel*

ELISSA FUDIM
JOSEPH DARROW
CAROLINE MCGUIRE
*/s/ Caroline McGuire*
CAROLINE MCGUIRE
(NY Bar No. 5854823)
*Trial Attorneys*
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals
P.O. Box 868, Benjamin Franklin Station
Washington. D.C. 20044