# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAKE THE ROAD NEW YORK, *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security, *et al.*,<br><br>            Defendants. | Case No. 1:25-cv-00190 |

**BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS**
***AMICUS CURAIE* IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS**

MATT A. CRAPO
D.C. Bar No. 473355
CHRISTOPHER J. HAJEC
D.C. Bar No. 492551
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Ste 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
mcrapo@irli.org
Counsel for *Amicus Curiae*
Immigration Reform Law Institute

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

Dated: April 25, 2025                               Respectfully submitted,

                                                    s/ Matt A. Crapo
                                                    MATT A. CRAPO

i

## TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................. iii

INTEREST OF *AMICUS CURIAE* ........................................................................................1

INTRODUCTION ...................................................................................................................1

ARGUMENT............................................................................................................................2

    This Court lacks jurisdiction over Plaintiffs' INA and constitutional claims......................2

CONCLUSION......................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*American Immigration Lawyers Ass'n v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000) ............................................................................. 4, 9
*American Immigration Lawyers Ass'n v. Reno*,
  18 F. Supp. 2d 38 (D.D.C. 1998) ............................................................................ 4, 5
*Ariz. Dream Act Coalition v. Brewer*,
  855 F.3d 957 (9th Cir. 2017) ...................................................................................... 1
*iTech U.S., Inc. v. Renaud*,
  5 F.4th 59 (D.C. Cir. 2021) ......................................................................................... 9
*Make the Rd. N.Y. v. McAleenan*,
  405 F. Supp. 3d 1 (D.D.C. 2019) ................................................................................ 7
*Make the Rd. N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ............................................................................. 1, 7, 9
*Matter of Silva-Trevino*,
  26 I. & N. Dec. 826 (B.I.A. 2016) .............................................................................. 1
*Trump v. Hawaii*,
  585 U.S. 667 (2018) ................................................................................................... 1
*United States v. Baraja-Alvarado*,
  655 F.3d 1077 (9th Cir. 2011) .................................................................................... 5
*United States v. Texas*,
  599 U.S. 670 (2023) ................................................................................................... 1
*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
  50 F.4th 164 (D.C. Cir. 2022) .................................................................................... 1

### STATUTES

8 U.S.C. § 1225(b)(1) ................................................................................................ 3, 4, 8
8 U.S.C. § 1225(b)(1)(A)(i) ............................................................................................... 5
8 U.S.C. § 1225(b)(1)(A)(iii)(I) ......................................................................................... 2
8 U.S.C. § 1225(b)(1)(A)(iii)(II) ............................................................................... 3, 4, 7
8 U.S.C. § 1252(a)(2)(A) ................................................................................................... 3
8 U.S.C. § 1252(a)(2)(A)(ii)-(iv) ....................................................................................... 8
8 U.S.C. § 1252(a)(2)(B)(ii) .............................................................................................. 9
8 U.S.C. § 1252(e)(1)(A) ................................................................................................... 3
8 U.S.C. § 1252(e)(3)(A) ................................................................................................... 3
8 U.S.C. § 1252(e)(3)(A)(ii) .............................................................................................. 3
8 U.S.C. § 1252(e)(3)(B) ...................................................................................... 3, 4, 6, 8
28 U.S.C. § 1331 ................................................................................................................ 3
Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"),
  Pub. L. 104-208, § 302(a) (1996) .............................................................................. 4

## REGULATIONS

8 C.F.R. § 235.3(b)(1)(ii) ................................................................................................... 4, 6, 7
8 C.F.R. § 235.3(b)(2) ............................................................................................................... 5
8 C.F.R. § 235.3(b)(4) ............................................................................................................... 5
8 C.F.R. § 235.3(b)(5) ............................................................................................................... 5
8 C.F.R. § 235.3(b)(7) ............................................................................................................... 5

## MISCELLANEOUS

Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) ........................... 8

Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered
    in the United States or Arriving by Sea, 82 Fed. Reg. 4902 (Jan. 17, 2017) ............................ 6

Exec. Order No. 13767, Border Security and Immigration Enforcement Improvements,
    82 Fed. Reg. 8793 (Jan. 30, 2017) ..................................................................................... 7

H.R. Conference. Report. No. 104-828 (1996) ............................................................................ 2

Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct
    of Removal Proceedings; Asylum Procedures; 62 Fed. Reg. 10312 (Mar. 6, 1997) ............. 4, 5

Notice Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877 (Aug. 11, 2004) ............. 6

Notice Designating Aliens for Expedited Removal, 84 Fed. Reg. 35409 (July 23, 2019) .............. 7

Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii)
    of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68925-26 (Nov. 13, 2002) ....... 6

Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal,
    87 Fed. Reg. 16022 (March 21, 2022) ................................................................................ 7

**INTEREST OF AMICUS CURIAE**

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also organizations and communities seeking to control illegal immigration. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of immigration-related cases before federal courts and administrative bodies, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).[1]

**INTRODUCTION**

Many of the provisions in the Immigration and Nationality Act ("INA") are aimed at protecting the agency's discretion in enforcing the immigration laws from interference by the courts. Congress has conferred upon the Secretary of Homeland Security the "sole and unreviewable discretion" to designate certain classes of aliens to be subject to expedited removal procedures. Congress has further provided that any challenge to such a designation must be initiated within 60 days of the date in which it is *first implemented*. The Secretary first expanded expedited removal to its statutory limits in 2019. Although the expansion decision was timely challenged within the requisite 60-day jurisdictional period, that challenge was unsuccessful. *See Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020) (holding that "there is no cause of

---

[1] No counsel for a party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

action under the APA to scrutinize the Secretary's designation decision so long as it falls within statutory and constitutional bounds").[2]

Here, Plaintiffs challenge the Secretary's 2025 decision to reinstitute the 2019 expansion of expedited removal. But reinstating an expedited removal designation does not restart the 60-day time window in which to seek redress in court. Instead, the statute provides that this Court only retains jurisdiction to review expedited removal procedures when they are first implemented. Because the action challenged here merely reinstates a prior expansion of expedited removal, Plaintiffs case is untimely and must be dismissed for lack of jurisdiction.

## ARGUMENT

**This Court lacks jurisdiction over Plaintiffs' INA and constitutional claims.**

In unequivocal language, Congress delegated discretionary authority to the Secretary of Homeland Security to invoke and implement expedited removal procedures against a designated "subclause II" class of aliens.[3] 8 U.S.C. § 1225(b)(1)(A)(iii)(I) ("Such designation shall be in the *sole and unreviewable discretion* of the [Secretary] and may be modified at any time.") (emphasis added). Subclause II aliens are those who are "not admitted or paroled into the United States," and have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the

---

[2] In their motion to dismiss, Defendants amply demonstrate that Plaintiffs' recycled Administrative Procedure Act ("APA") claims are precluded under *Make the Road*. *See* ECF Doc. 36 at 32-35 (page citations are to the pagination provided in the ECF header, not the internal document pagination).

[3] The purpose of the expedited removal procedure is "to expedite the removal from the United States of aliens who indisputably have no authorization to be admitted …, while providing an opportunity for such an alien who claims asylum to have the merits of his or her claim promptly assessed by officers with full professional training in adjudicating asylum claims." H.R. Conference. Report. No. 104-828, at 209 (1996).

2

date of the determination of inadmissibility" made under "this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

Using the phrase "notwithstanding any other provision of law"—which by its own terms includes both APA jurisdiction and federal question jurisdiction under 28 U.S.C. § 1331—Congress also stripped this Court of jurisdiction to review, inter alia, "a decision" by the Secretary "to invoke the provisions" of the expedited removal statute; "the procedures and policies adopted by the [Secretary] to implement the provisions of" 8 U.S.C. § 1225(b)(1); or the "application of such section to individual aliens." 8 U.S.C. § 1252(a)(2)(A)(ii)-(iv).

For each of these three jurisdiction-stripping subclauses, Congress provided precise and limited exceptions ("as provided in subsection [8 U.S.C. § 1252](e)") to the bars to judicial review in subparagraph § 1252(a)(2)(A). Under subsection (e), review is narrowly available for "determinations under section [1225](b) and its implementation…." 8 U.S.C. § 1252(e)(3)(A). As relevant here, the exceptions include restrictions (1) on venue (U.S. District Court for the District of Columbia), *id.*; (2) on subject matter ("whether … a regulation, or a written policy directive, or … written procedure issued … to implement [section 1225(b)(1)] is unconstitutional; or … not consistent with the applicable provisions of this title or is otherwise in violation of law"), § 1252(e)(3)(A)(ii); and (3) a jurisdictional limitation on the time for filing a challenge ("no later than 60 days after the date the challenged … regulation, directive, … or procedure … *is first implemented*"), § 1252(e)(3)(B) (emphasis added).

Congress directed that unless the jurisdictional venue, subject matter, and time limitation conditions of 8 U.S.C. § 1252(e)(3) are met, no court may "enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) …." 8 U.S.C. § 1252(e)(1)(A) (emphasis added). Absent notice by the Secretary of

3

Homeland Security that expedited removal procedures will be applied to all aliens described in § 1225(b)(1)(A)(iii)(II), no such alien could ever be ordered removed under 8 U.S.C. § 1225(b)(1). The text "any action pertaining to an [expedited removal] order" thus clearly encompasses implementation of such notices, including the agency action challenged by the Plaintiffs.

The 60-day time limitation at 8 U.S.C. § 1252(e)(3)(B) is jurisdictional and not a statute of limitations. "Congress designed the statute so that the 60 days ran from a fixed point, the initial implementation of the challenged provisions, rather than from the date of application of IIRIRA to a particular alien." *American Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 46-47 (D.D.C. 1998), *aff'd* 199 F.3d 1352 (D.C. Cir. 2000) ("*AILA*").

For more than a generation, the agency has progressively implemented expedited removal for subclause II aliens by publishing notices in the Federal Register. First, the expedited removal statute was implemented in 1996. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, § 302(a) (1996). Next, final regulations implementing 8 U.S.C. § 1225(b)(1) were published in 1997. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures; 62 Fed. Reg. 10312 (Mar. 6, 1997). The Attorney General implemented these regulations only after conducting full and proper APA notice-and-comment procedures. The constitutionality and legality of the expedited removal statute and its implementing regulations was upheld long ago by the D.C. Circuit in *AILA*, 199 F.3d 1352 (D.C. Cir. 2000).

The 1997 regulations continue to govern all aspects of expedited removal. Part 235 "regulate[s] how the inspecting officer is to determine the validity of travel documents, how the officer should provide information to and obtain information from the alien, and how and when an expedited removal order should be reviewed." *AILA*, 18 F. Supp. 2d, at 43. *See*, *e.g.*, 8 C.F.R.

4

§ 235.3(b)(1)(ii) (delegating sole discretion to apply expedited removal procedures at any time to any class of aliens described in "subclause II," effective upon publication of a notice in the Federal Register); 8 C.F.R. § 235.3(b)(2) (requiring that an examining immigration officer create a record of the proceedings, inform the alien of due process rights, solicit and record the alien's responses to questions as to status and inadmissibility, and serve a Notice and Order of Expedited Removal); 8 C.F.R. § 235.3(b)(4) (mandatory diversion for credible fear screening); 8 C.F.R. § 235.3(b)(5) (additional review procedures if U.S. citizen, lawful permanent resident, or asylee status is claimed); and 8 C.F.R. § 235.3(b)(7) (requiring concurrence of supervising officer to issue order). Section 235.3 specifies the record an immigration officer must create during the expedited removal process and the advisements that the officer must give to individuals subject to expedited removal. *United States v. Baraja-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011). This Circuit recognizes these regulations as the "implementing regulations" for the expedited removal system. *See AILA*,18 F.Supp. 2d at 43-45.

      Attorney General Janet Reno initially exercised her discretion to apply expedited removal only to the mandatory class of "arriving aliens" seeking entry into the United States. 8 U.S.C. § 1225(b)(1)(A)(i). The 1997 regulations, however, expressly reserved the agency's right "to apply the expedited removal procedures to additional classes of aliens within the limits set by the statute, if, in the Commissioner's discretion, such action is operationally warranted." 62 Fed. Reg. at 10314. Attorney General Reno chose not to apply the screening to any subclause II aliens due to uncertainty at that time about the agency's operational capabilities and resources. *Id.* at 10312-13.

      But in 2002, invoking its authority to designate "any … aliens" described in subclause II, the agency applied expedited removal screening for aliens who arrived by sea, were not admitted or paroled, and, prior to a determination of inadmissibility by an immigration officer, had not been

continuously physically present in the United States for two years. The designation and implementation for this expanded class were made, as required by 8 C.F.R. § 235.3(b)(1)(ii), by notice published in the Federal Register. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68925-26 (Nov. 13, 2002). By operation of the jurisdictional deadline, the final date for challenges to (1) the validity of implementation of the full temporal extent of expedited removal screening to "any" subclause II aliens, (2) the validity of agency practices used to determine "continuous presence" during the two-year period, or (3) the use of publication of a notice in the Federal Register to "implement" expanded application of expedited removal screening procedures, would have been no later than January 13, 2003. 8 U.S.C. § 1252(e)(3)(B).

In 2004, the government again expanded the use of expedited removal to an additional class of subclause II aliens, those encountered by an immigration officer within 100 air miles of a land border who fail to establish to the satisfaction of an immigration officer that they had been continuously physically present in the United States for 14 days. Again, implementation occurred through notice in the Federal Register. *See* Notice Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877 (Aug. 11, 2004). The 2004 notice applied the new designation but otherwise made no changes whatsoever to the procedures or practices needed to apply expedited screening to this additional class of subclause II aliens, practices that the agency had fully implemented years earlier under the 1997 regulations. Any challenge to the 2004 designation would have been due by October 11, 2004.

In 2017, the acting Secretary exercised her discretion to eliminate an existing exemption—for subclause II aliens who were Cuban nationals—from the expedited removal screening designations implemented by the 2002 and 2004 Federal Register notices. *See* Eliminating

6

Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea, 82 Fed. Reg. 4902 (Jan. 17, 2017). As in 2002 and 2004, the Secretary designated the new class by notice in the Federal Register. The 1997 regulations continued to govern all other aspects of implementation.

Later that month, President Trump published an Executive Order directing the Secretary of Homeland Security to apply expedited removal to "all" aliens described in subclause II who had not already been designated for such screening. *See* Exec. Order No. 13767, Border Security and Immigration Enforcement Improvements, 82 Fed. Reg. 8793 (Jan. 30, 2017) ("Executive Order"). A fourth notice—issued pursuant to the Executive Order and 8 C.F.R. § 235.3(b)(1)(ii)—designated as subject to expedited removal all remaining subclass II aliens described in 8 U.S.C. § 1225(b)(1)(A)(iii)(II) who were "not previously designated" in 2002, 2004, or 2017. *See* Notice Designating Aliens for Expedited Removal, 84 Fed. Reg. 35409 (July 23, 2019). The 60-day time limit to timely challenge the 2019 designation expired on September 21, 2019, or the following business day, September 23, 2019, at the latest.

Various plaintiffs timely challenged the 2019 designation of all subclause II aliens on August 6, 2019, and the district court granted a preliminary injunction. *See generally Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1 (D.D.C. 2019). The D.C. Circuit reversed, however, holding that there is "no cause of action under the APA to scrutinize the Secretary's designation decision so long as it falls within statutory and constitutional bounds." *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020). Following remand, the plaintiffs voluntarily dismissed their case shortly after the 2019 designation was rescinded. *See* Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal, 87 Fed. Reg. 16022 (March 21, 2022); *see also Make the Rd. N.Y. v. McAleenan*, No. 1:19-cv-02369, Docket entry 91 (D.D.C. June 3, 2022).

7

On January 24, 2025, the second Trump administration again designated all subclause II aliens as being subject to expedited removal. *See* Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Plaintiffs in this case filed their Complaint the day after the 2025 designation became effective.

Again, Congress has clearly stated that no court shall have jurisdiction to review, inter alia, "a decision" by the Secretary "to invoke the provisions" of the expedited removal statute; "the procedures and policies adopted by the [Secretary] to implement the provisions of" 8 U.S.C. § 1225(b)(1); or the "application of such section to individual aliens." 8 U.S.C. § 1252(a)(2)(A)(ii)-(iv). For each of these jurisdiction-stripping subclauses, Congress only allowed exceptions "as provided in subsection (e)." *Id.* Most relevant here is subsection (e)'s 60-day jurisdictional time limitation, which permits the filing a challenge "no later than 60 days after the date the challenged … regulation, directive, … or procedure … *is first implemented*." 8 U.S.C. § 1252(e)(3)(B) (emphasis added).

There is no dispute that full expansion of expedited removal, or the designation of *all* subclause II aliens for expedited removal procedures, was first implemented on July 23, 2019. *See* 84 Fed. Reg. at 35411 (describing the 2019 designation as "[f]ully exercising DHS's statutory expedited removal authority"). And the 2025 Notice simply reinstated the 2019 designation. *See* 90 Fed. Reg. 8139 ("[T]he intended effect of this notice is to apply expedited removal to the fullest extent authorized by statute").

The 60-day jurisdictional deadline for challenging the Secretary's discretionary decision to apply expedited removal procedures to *all* subclause II aliens runs from the 2019 designation because that is when that policy choice was "first implemented." The 2025 Notice cannot restart the jurisdictional 60-day time window for challenging that discretionary policy choice because the

8

2025 Notice merely reinstated the 2019 designation. In other words, to the extent that the 2025 Notice is an implementation of this policy choice, it is not its "first implement[ation]." The challenge Plaintiffs bring before this Court is therefore untimely and should be dismissed for lack of jurisdiction.

In sum, the 1996 expedited removal statute and the 1997 regulations were the final government actions that first "implemented" virtually all aspects of expedited removal procedures, and the constitutionality and legality of the statute and its implementing regulations were upheld by the D.C. Circuit in *AILA*, 199 F.3d 1352 (D.C. Cir. 2000). The 60-day jurisdictional deadline passed for challenging the Secretary's discretionary decision to apply expedited removal procedures to *all* subclause II aliens in September 2019, and the challenge to that first implementation of expedited removal to that class of aliens was unsuccessful. *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020).[4] Congress restricted this Court's jurisdiction to review only the *first* implementation of any expedited removal policy choice. Because the 2025 Notice challenged here reinstates a prior, unsuccessfully challenged, designation or policy choice, Plaintiffs challenge is untimely and the Court lacks jurisdiction over this case.

---

[4] Defendants observe that the D.C. Circuit "declined to shutter judicial review on the basis of 8 U.S.C. § 1252(a)(2)(B)(ii)," while preserving their claim that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review here. ECF Doc. 36 at 35, n.7 (citing *Make the Rd. N.Y. v. Wolf.* 962 F.3d at 630); *see also* 8 U.S.C. § 1252(a)(2)(B)(ii) (stripping courts of jurisdiction to review "an other decision or action of the Attorney General or the Secretary of Homeland Security the authority of which is specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security"). *Amicus* IRLI notes that the D.C. Circuit's holding in *Make the Road* with respect to the jurisdictional bar at § 1252(a)(2)(B)(ii) is on shaky ground. In *Make the Road*, the Circuit read "Clause (ii)'s bar" as being focused "on individualized forms of discretionary relief from removal or exclusion." 962 F.3d at 630. But the D.C. Circuit has subsequently declared that clause (ii) "is not a narrowly cabined provision" limited to denials of discretionary relief. *iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 64 (D.C. Cir. 2021); *see also id.* at 65 ("[I]f Congress intended 'any other decision or action' to be limited to those actions 'regarding the granting of relief,' it either would have said so in the relevant portion of clause (ii), or left out the limiting language in clause (i).").

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss this case for lack of jurisdiction.

Dated: April 25, 2025　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　s/ Matt A. Crapo
　　　　　　　　　　　　　　　　　　MATT A. CRAPO
　　　　　　　　　　　　　　　　　　D.C. Bar No. 473355
　　　　　　　　　　　　　　　　　　CHRISTOPHER J. HAJEC
　　　　　　　　　　　　　　　　　　D.C. Bar No. 492551
　　　　　　　　　　　　　　　　　　Immigration Reform Law Institute
　　　　　　　　　　　　　　　　　　25 Massachusetts Ave., NW, Suite 335
　　　　　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　　　　　(202) 232-5590
　　　　　　　　　　　　　　　　　　mcrapo@irli.org
　　　　　　　　　　　　　　　　　　chajec@irli.org

　　　　　　　　　　　　　　　　　　Counsel for *Amicus Curiae*
　　　　　　　　　　　　　　　　　　Immigration Reform Law Institute