YAAKOV M. ROTH
*Acting Assistant Attorney General*
*Civil Division*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
BRIAN C. WARD
*Acting Assistant Director*
CAROLINE MCGUIRE
ELISSA FUDIM
*Trial Attorneys*
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
caroline.mcguire@usdoj.gov
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAKE THE ROAD NEW YORK, | Case No. 1:25-cv-00190 |
| *Plaintiff*, | Hon. Jia M. Cobb |
| v. | |
| KRISTI NOEM, *et al*., | |
| *Defendants*. | |

## REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    Plaintiffs' Constitutional and Statutory Claims (Counts 1-3, 6) Are Time-Barred. ........... 2

II.   Plaintiffs' Constitutional and Statutory Due Process Claims Lack Merit (Count 1 and
      Count 3). ...................................................................................................................... 8

III.  The Designation Still Does Not Violate 8 U.S.C. § 1182(a)(7) (Count Two).................. 16

IV.   Claim Six Still Fails as a Matter of Law........................................................................ 19

V.    Plaintiffs' Challenge to the Expedited Removal Designation is Foreclosed by *Make the
      Road*. ........................................................................................................................... 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*American Immigration Lawyers Ass'n v. Reno*,
  18 F. Supp. 2d 38 (D.D.C. 1998) ................................................................. *passim*

*American Immigration Lawyers Ass'n* v. *Reno*,
  ("AILA"), 199 F.3d 1352 (D.C. Cir. 2000) ....................................................... *passim*

*Biden v. Texas*,
  597 U.S. 785 (2022) ...................................................................... 1, 7, 17

*Boechler v. Comm'r*,
  596 U.S. 199 (2022) ............................................................................. 4

*Californians v. United States DOE*,
  860 F. Supp. 2d 44 (D.D.C. 2012) ......................................................... 21

*Cruz v. Dep't of Homeland Sec.*,
  No. 19-CV-2727, 2019 WL 8139805 (D.D.C. Nov. 21, 2019) ............................. 13

*D.H.S. v. Thuraissigiam*,
  591 U.S. 103 (2020) ....................................................................... *passim*

*Hamer v. Neighborhood Housing Servs. of Chicago*,
  583 U.S. 17 (2017) ............................................................................. 4

*Harrow v. DOD*,
  601 U.S. 480 (2024) ...................................................................... *passim*

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................... 25

*Jama v. Imm. & Customs*,
  *Enforc.*, 543 U.S. 335 (2005) ............................................................... 17

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ........................................................................... 17

*Kingman Park Civic Ass'n v. Gray*,
  27 F. Supp. 3d 142 (D.D.C. 2014) ......................................................... 22

*Landon v. Plasencia*,
  459 U.S. 21 (1982) ...................................................................... 1, 12, 17

*McNary v. Haitian Refugee Ctr., Inc.*,
498 U.S. 479 (1991) ................................................................. 24, 25

*M.M.V. v. Barr*,
456 F. Supp. 3d 193 (D.D.C. 2020) ........................................................ 3

*M.M.V. v. Garland*,
1 F.4th 1100 (D.C. Cir. 2021) ............................................... *passim*

*Make The Road New York v. Wolf*,
962 F.3d 612 (D.C. Cir. 2020) ................................... 2, 20, 23, 24

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ................................................................. 1, 14

*Matter of Benitez*,
19 I&N Dec. 173 (BIA 1984) ........................................................ 17

*Middlebrooks v. Godwin Corp.*,
722 F.Supp.2d 82 (D.D.C. 2010) ................................................... 19

*Musacchio v. United States*,
577 U.S. 237 (2016) ........................................................................ 4

*Nat'l Ass'n of Mfrs. v. Dep't of Lab.*,
159 F.3d 597 (D.C. Cir. 1998) ....................................................... 8

*ParkView Med. Assocs., L.P. v. Shalala*,
158 F.3d 146 (D.C. Cir. 1998) ...................................................... 25

*Reno v. Cath. Soc. Servs., Inc.*,
509 U.S. 43 (1993) ........................................................................ 25

*Saylab v. Harford Mut. Ins. Co.*,
271 F. Supp. 2d 112 (D.D.C. 2003) ............................................... 23

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ................................................................. 2, 21

*United States v. Gambino-Ruiz*,
91 F.4th 981 (9th Cir. 2024) ........................................................ 17

*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015) ................................................................ 3, 4, 5

*United States v. Salerno,*
   481 U.S. 739 (1987)......................................................................... 1, 8, 10, 15

*United States v. Wells,*
   519 U.S. 482 (1997)................................................................................... 8

*Washington State Grange v. Washington State Republican Party,*
   552 U.S. 442, (2008)............................................................................... 10

*Wong Yang Sung v. McGrath,*
   339 U.S. 33 (1950)............................................................................ 12, 14

*Zadvydas v. Davis,*
   533 U.S. 678 (2001)........................................................................... 10, 11

**<u>Statutes</u>**

5 U.S.C. § 7703(b)(1) ................................................................................ 5, 6

8 U.S.C. § 1101(a)(4) .................................................................................. 17

8 U.S.C. § 1158(a)(2)(B) ............................................................................. 20

8 U.S.C. § 1160(e) ................................................................................. 24, 25

8 U.S.C. § 1182(a)(6)(A) ............................................................................. 18

8 U.S.C. § 1182(a)(7) ............................................................................... 1, 16

8 U.S.C. § 1225(a)(1)............................................................................ *passim*

8 U.S.C. § 1225(b)(l) .................................................................................. 20

8 U.S.C. § 1225a(f)(1) ................................................................................. 25

8 U.S.C. § 1231(a)(6) .................................................................................. 11

8 U.S.C. § 1252(a)(2)(A) .............................................................................. 5

8 U.S.C. § 1252(e)(1)(A) .............................................................................. 5

8 U.S.C. § 1252(e)(1)(B) .............................................................................. 9

8 U.S.C. § 1252(e)(3) ................................................................................ 8, 9

8 U.S.C. § 1252(e)(3)(A) .............................................................................. 9

8 U.S.C. § 1252(e)(3)(B) ................................................................................... 1, 3

8 U.S.C. § 1252(f) .................................................................................................. 7

8 U.S.C. § 1361 ................................................................................................ 17, 18

28 U.S.C. § 1295(a)(9) ........................................................................................... 6

42 U.S.C.A. § 1395ww ......................................................................................... 25

**Rules**

Fed. R. Civ. P. 8(a) ......................................................................................... 20, 23

Fed. R. Civ. P. 8(b) ............................................................................................. 20

**Regulations**

8 C.F.R. § 208.14(c) ............................................................................................ 22

8 C.F.R. § 235.3(b) .............................................................................................. 22

8 C.F.R. § 235.3(b)(2) ......................................................................................... 16

8 C.F.R. § 235.3(b)(5) ......................................................................................... 22

**Other Authorities**

*§ 208.14--Approval, Denial, Referral, or Dismissal of Application*,
    65 Fed. Reg. 76121 (Dec. 6, 2000) ................................................................ 22

**INTRODUCTION**

The Court should dismiss this case. Plaintiffs' constitutional and statutory claims are time-barred under 8 U.S.C. § 1252(e)(3)(B), which their opposition fails to refute. This Circuit has rejected Plaintiffs' arguments for equitable tolling, including their argument that alleged justiciability barriers (standing and ripeness) to filing suit make tolling appropriate. This Circuit has likewise disposed of Plaintiffs' argument that courts should not read § 1252(e)(3)(B) as a jurisdictional limit because it would often thwart judicial review, explaining that "this is precisely what Congress intended." *American Immigration Lawyers Ass'n v. Reno* ("AILA"), 199 F.3d 1352, 1363 (D.C. Cir. 2000). Finally, the holding in *M.M.V. v. Garland*, 1 F.4th 1100, 1109–11 (D.C. Cir. 2021), that § 1252(e)(3)(B) is a jurisdictional time limit, remains binding precedent, and is undisturbed by the holdings in *Harrow v. DOD*, 601 U.S. 480 (2024) and *Biden v. Texas*, 597 U.S. 785 (2022).

As for Plaintiffs' due process claims (Count 1 and 3), the Court should dismiss them too. Defs.' Mot. at 24–28. Plaintiffs' invocation of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) is unavailing. It does not apply because aliens subject to the 2025 Designation do not have a liberty interest in remaining in the country. Rather, they are applicants for admission who are entitled to only the process that Congress provided by statute. *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). And because Plaintiffs cannot "establish that no set of circumstances exists under which the [statute and its implementing regulations] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987), they cannot prevail on a facial challenge to § 1252(e)(3).

Additionally, Plaintiffs' argument that 8 U.S.C. § 1182(a)(7) applies and serves as a basis for expedited removal only at the moment of physical entry also fails. Congress would not have included aliens already *present in the United States*, along with those physically entering the interior, as applicants for admission, if admission could only be determined upon physical entry. 8

1

U.S.C. § 1225(a)(1) (defining "Aliens treated as applicants for admission"). Finally, Plaintiffs' argument never confronts the Circuit decisions affirming Defendants' interpretation of "admission" in the immigration context. Defs.' Mot. at 38–39 (collecting cases).

Plaintiffs' argument that expedited removal does not apply to aliens who filed affirmative asylum claims (Count 6) similarly fails. Plaintiffs' opposition morphs this count into an *Accardi* claim: that extending expedited removal in this manner violates agency regulations. But Plaintiffs cannot amend their complaint through an opposition to a motion to dismiss, and in any event, this challenge is barred by *Make The Road New York v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020) because the Secretary's discretion to make such a designation is "*sole and unreviewable.*" Plaintiffs also lack associational standing on this claim since they have not shown "*at least one identified member* had suffered or would suffer harm" on this basis. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added). Instead, they articulate facts about a Doe member who is "not in removal proceedings" who has "timely filed an application for affirmative asylum with USCIS." Am. Compl. ¶ 99. That is simply not enough.

Finally, Plaintiffs correctly concede that *Make the Road* forecloses their APA claims (Counts Four and Five), and that concession alone should extinguish those claims. Accordingly, the Court should dismiss Plaintiffs' case in its entirety.

## ARGUMENT

### I. Plaintiffs' Constitutional and Statutory Claims (Counts 1-3, 6) Are Time-Barred.

Plaintiffs' claims are time-barred because they challenge procedures that have been in place for years. Defs' Mot at 15–17. Plaintiffs' arguments to the contrary, Pl. Opp. at 10–14, fail because the "60–day requirement is jurisdictional rather than a traditional limitations period." *AILA*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000). This "jurisdictional time limit does not begin to run when a written policy is applied in a particular geographical

region or to particular individuals[] … the sixty days begins upon 'first implementation,' that is, the first date the policy became effective." *M.M.V. v. Barr*, 456 F. Supp. 3d 193, 220 (D.D.C. 2020), *aff'd M.M.V. v. Garland*, 1 F.4th at 1109–11 (D.C. Cir. 2021). Jurisdictional statutes of limitations *are not subject to equitable tolling*, despite Plaintiffs' protestations for the same.[1] *United States v. Kwai Fun Wong*, 575 U.S. 402, 420 (2015).

First, Plaintiffs complain that Defendants' "position" on the statute of limitations would allow them to "manipulate and eliminate the availability of judicial review." Pl. Opp. at 11. But the District Court in *M.M.V.* rejected this very argument, which the D.C. Circuit later affirmed. *M.M.V.*, 456 F. Supp. 3d at 223 n.17 ("While it is undeniable that these competing jurisdictional principles put plaintiffs in a bind, plaintiffs are mixing apples and oranges here: ripeness and mootness are principles affecting subject matter jurisdiction under Article III, and the sixty-day period is a firm legislative limitation on the Court's power to act that the Court has no equitable power to circumvent, even as new sets of migrants are subjected to the harshness of its terms."), *aff'd M.M.V. v. Garland*, 1 F.4th at 1109–11. The plain language of 8 U.S.C. § 1252(e)(3)(B) renders this time limit jurisdictional. *Id.* Plaintiffs' disagreement with the limits that Congress set under § 1252 are a question for the legislative branch, not this one. *AILA*, 199 F.3d at 1363 ("[T]he organizational plaintiffs reply that 'under the construction of the 60-day limit adopted by the

---

[1] Plaintiffs argue that the 60-day statute of limitations under § 1252(e)(3)(B) is non-jurisdictional, and thus, subject to equitable tolling. Pl. Opp. at 14. Not so. And its jurisdictional nature precludes equitable tolling. *M.M.V. v. Garland*, 1 F.4th at 1109. In any event, the D.C. Circuit foreclosed both of Plaintiffs' arguments undergirding this request for relief. First, the Circuit rejected Plaintiffs' arguments that standing and ripeness are impediments to adhering to the statutory deadline that warrant tolling. *M.M.V. v. Barr*, 456 F. Supp. 3d 193, 223 n.17 (D.D.C. 2020) *aff'd M.M.V. v. Garland*, 1 F.4th at 1109–11. Second, the fact that Plaintiffs filed their lawsuit within 60–days of the Designation ignores this Circuit's holding that the timeline begins to run from a "fixed point, the initial implementation of the challenged provisions[.]" *Id.* at 1109 (citing *AILA*, 18 F. Supp. 2d at 47, *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000)). When Plaintiffs *untimely* lodged this lawsuit should not serve as a justification for why they should receive equitable tolling.

district court, for…aliens arriving after June 1, 1997, there is no possibility of bringing a challenge at all.' True enough. But this is precisely what Congress intended.") (internal citation omitted).

Second, Plaintiffs argue that *Harrow v. DOD*, 601 U.S. 480 (2024) supports their argument that the 60-day limit in § 1252(e)(3) is non-jurisdictional, *see* Pl. Opp. at 11–14, and claim, "*Harrow* "eviscerate[s]' *M.M.V.*'s reasoning and 'effectively overrule[s] it." *Id.* at 13. But the D.C. Circuit has already definitively dubbed the statute of limitations in § 1252(e)(3) "jurisdictional." *M.M.V.*, 1 F.4th at 1109 ("And the statutory time limit begins to run when a 'written policy directive' is 'first implemented,' not when it is first applied to specific facilities or aliens.").

Despite Plaintiffs' far-fetched interpretation of *Harrow*, Pl. Opp. at 11–14, *M.M.V.* remains binding precedent. Plaintiffs allege that *Harrow* supports the view that § 1252(e)(3) is a non-jurisdictional procedural requirement because Congress did not clearly state otherwise. Pl. Opp. at 12. *Harrow* was clear, however, that a time-bar is jurisdictional if it curtails the Court's authority to hear the case. *Harrow*, 601 U.S. at 485. That is because "[w]hen Congress enacts a jurisdictional requirement, it 'mark[s] the bounds' of a court's power: A litigant's failure to follow the rule 'deprives a court of all authority to hear a case.'" *Id.* at 484 (citing *Boechler v. Comm'r*, 596 U.S. 199, 203 (2022)). "So a court must enforce the rule even if no party has raised it[,]" "'even if equitable considerations would support' excusing its violation." *Id.* (citing *Kwai Fun Wong*, 575 U.S. at 409). As relevant here, time limits curtail a court's authority to hear a case (and are thus, jurisdictional) when Congress makes a "clear statement" that the time limit is jurisdictional. *Id.* (citing *Hamer v. Neighborhood Housing Servs. of Chicago*, 583 U.S. 17, 25 (2017)). "This clear-statement rule is satisfied if the statute expressly 'speak[s] in jurisdictional terms,' *M.M.V.*, 1 F.4th at 1109 (quoting *Musacchio v. United States*, 577 U.S. 237, 246 (2016)), or 'conditions the jurisdictional grant on the limitations period[.]'" *Id.* (quoting *Kwai Fun Wong*, 575 U.S. at 412)).

As this Circuit explained in *M.M.V.*, Congress has clearly announced that § 1252(e)(3)(B) is jurisdictional in nature because it both "speaks in jurisdictional terms" and enshrines jurisdictional conditions. *M.M.V.*, 1 F.4th at 1109–11. First, § 1252 "states that 'no court shall have jurisdiction to review' agency 'procedures and policies' to implement the expedited removal of aliens, 'except as provided in subsection (e).'" *Id.* at 1109 (citing 8 U.S.C. § 1252(a)(2)(A)). "Subsection (a) thus conditions jurisdiction on satisfaction of the requirements of subsection (e)." *Id.* "[T]he first paragraph of subsection (e) likewise provides that 'no court may … enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection.'" *Id.* (citing 8 U.S.C. § 1252(e)(1)(A)). "This formulation—restricting the courts rather than conferring rights and duties on the parties—is also framed in jurisdictional terms." *Id.* (citing *Kwai Fun Wong*, 575 U.S. at 410–11, n.4) ("[J]urisdictional statutes speak about jurisdiction, or more generally phrased, about a court's powers"). Section 1252 further conditions jurisdiction "on satisfying the requirements that follow later in the subsection." *Id.* Indeed, § 1252(e)(3)(A) authorizes judicial review "limited to" certain challenges to statutes, regulations, and written policies, "with a deadline for '[a]ny action instituted under this paragraph, *id.* § 1252(e)(3)(B).'" *Id.* Thus, § 1252 conditions jurisdiction on the statute of limitations at least two times, "which makes the time limit itself jurisdictional." *Id.* at 1109-10 (collecting cases at 1110).

The statute of limitations at issue in *Harrow* was decidedly different and has none of the tells present in § 1252(e)(3)(B). That provision (5 U.S.C. § 7703(b)(1)) instructs that a litigant must appeal a Merit Systems Protection Board decision to the Federal Circuit Court of Appeals within 60 days. *Harrow*, 601 U.S. at 482. It states:

> [A] petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit.

> Notwithstanding any other provision of law, any petition for review
> shall be filed within 60 days after the Board issues notice of the final
> order or decision of the Board.

*Id.* at 485. The Court concluded that in § 7703(b)(1), "[t]here is no mention of the Federal Circuit's jurisdiction, whether generally or over untimely claims." *Id.* at 485–86. As Plaintiffs point out, the Government argued, *inter alia*, that 28 U.S.C. § 1295(a)(9) rendered § 7703(b)(1) jurisdictional. Pl. Opp. at 13–14. 28 U.S.C. § 1295(a)(9) grants "[t]he United States Court of Appeals for the Federal Circuit" "exclusive jurisdiction" over "an appeal from a final order or final decision of the Merit Systems Protection Board, *pursuant to* sections 7703(b)(1) and 7703(d) of title 5." 28 U.S.C. § 1295(a)(9) (emphasis added). The Supreme Court focused on the phrase "pursuant to," concluding that this "phrase often functions as a legalese synonym for 'under'" that "identifies the provision that served as the basis for the filing, but without addressing whether the latter conformed to the former's every requirement." *Id.* (internal citations omitted). In other words, the jurisdictional limit in § 1295 is not inextricably linked to the time limit in § 7703(b)(1) such that the Court would lack jurisdiction over the case if the time limit was not satisfied. The Court could have found "that Harrow filed his appeal 'pursuant to' § 7703(b)(1) even though he failed to satisfy that section's time bar." *Id.* at 487 ("Section 1295(a)(9)'s use of the words 'pursuant to' does not 'plainly show' that § 7703(b)(1)'s deadline has 'jurisdictional consequences.'") (citation omitted).

The Court's reasoning in *Harrow* is inapplicable to § 1252(e)(3)(B). Section 1252(a)(2)(A), specifically entitled "Judicial review of orders of removal," forecloses all judicial review related to expedited removal unless § 1252(e) expressly restores jurisdiction, and § 1252(e)(3)(B) clearly conditions any jurisdiction under § 1252(e)(3) on meeting the 60-day statute of limitations. *AILA*, 199 F.3d at 1354 ("8 U.S.C. § 1252 provides the exclusive jurisdictional basis for challenging the removal procedures[.]"). And as thoroughly explained in *M.M.V.*, the 60-day

6

time-limit in § 1252(e)(3)(B) is both framed in jurisdictional terms and conditioned on the same. 1 F.4th at 1109–11; *see AILA*, 18 F. Supp. 2d at 47 ("The Court finds that the 60-day requirement is jurisdictional rather than a traditional limitations period …. because Congress designed the statute so that the 60 days ran from a fixed point, the initial implementation of the challenged provisions, rather than from the date of application of IIRIRA to a particular alien."), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000). In contrast, in § 7703(b)(1) "[t]here is no mention of the Federal Circuit's jurisdiction, whether generally or over untimely claims." *Harrow*, 601 U.S. at 482. Despite the fact that *Harrow* post-dates *M.M.V.*, the *M.M.V.* Court relied on the same framework the Supreme Court deployed in *Harrow* when concluding that § 1252(e)(3)(B)'s 60-day time limit is jurisdictional. *Compare M.M.V.*, 1 F.4th at 1109 *with Harrow*, 601 U.S. at 483–84, 488–89. Thus, *Harrow* does not overrule *M.M.V.*, which remains controlling in this case.

Moreover, despite Plaintiffs' contention, the Court's holding in *Biden v. Texas*, 597 U.S. 785 (2022), with respect to 8 U.S.C. § 1252(f) does not support an argument that § 1252(e)(3)(B) is a traditional time limit. Pl. Opp. at 14. In *Texas*, the Court determined that § 1252(f)(1) was a limit on the type of relief a court can grant rather than a limit on jurisdiction because that section, unlike most other provisions of § 1252, was specifically entitled, "Limit on injunctive relief." *Texas*, 597 U.S. at 798. This holding—which assesses a section *separate* from the provision governing judicial review—was predicated, in part, on the statutory structure, which "unambiguously" denied subject matter jurisdiction in other sections. *Id.* at 786–87 (citing § 1252(a)(2)). As *M.M.V.* noted, those other sections include § 1252(a)(2)(A), which provides that "no court shall have jurisdiction to review" claims related to expedited removal unless a plaintiff satisfies the conditions on jurisdiction in § 1252(e), including the time limit in § 1252(e)(3)(B). 1 F.4th at 1109-10. If anything, *Texas* strengthens this Circuit's conclusion that the time limit is jurisdictional because

Congress had the foresight to separate jurisdiction from relief. This distinction demonstrates that § 1252(e)(3)(B) is jurisdictional and bars Plaintiffs' claims.

## II.    Plaintiffs' Constitutional and Statutory Due Process Claims Lack Merit (Count 1 and Count 3).

Plaintiffs assert a facial challenge under 8 U.S.C. § 1252(e)(3) to the application of the expedited removal statute to all aliens designated in the 2025 Designation.[2] "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In other words, the fact that the 2025 Designation "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id*. That is the rule established by *Salerno*.

Plaintiffs argue *Salerno* does not apply to challenges under § 1252(e)(3). Pl. Opp. at 15–17. They do not cite any case law for this proposition but instead reason that Congress must have intended to exempt § 1252(e)(3) from *Salerno*, because if *Salerno* were applied to § 1252(e)(3), very few facial challenges under § 1252(e)(3) could be raised and even fewer would be successful. *Id*. at 16. But that appears to be precisely what Congress intended. Certainly, when Congress enacted § 1252(e)(3) in 1996, it was aware of the Supreme Court's *Salerno* decision almost ten years earlier. *See United States v. Wells*, 519 U.S. 482, 495 (1997) ("[W]e presume that Congress expects its statutes to be read in conformity with [the Supreme Court's] precedents...."); *Nat'l Ass'n of Mfrs. v. Dep't of Lab.*, 159 F.3d 597, 601 (D.C. Cir. 1998) (same). Yet, Congress never indicated that it intended to exempt § 1252(e)(3) from *Salerno*.

---

[2] For the reasons set forth in Defendants' opening motion, Plaintiffs lack standing to challenge the 2025 Designation as to "all aliens designated in the 2025 Designation." Defs.' Mot. at 11–14.

Indeed, it is unclear how Plaintiffs' position is tenable. Section 1252(e)(3) authorizes challenges to the validity of the expedited removal system. 8 U.S.C. § 1252(e)(3). But nothing in § 1252(e)(3) indicates it authorizes challenges to the system that are untethered from a specific removal order or as applied to aliens who are not plaintiffs. To reinforce that the focus of § 1252(e)(3) is on individual plaintiffs, § 1252(e)(1)(B) specifically prohibits any court from "certify[ing] a class under Rule 23 … in any" (e)(3) action. 8 U.S.C. § 1252(e)(1)(B). Plaintiffs argue the title of § 1252(e)(3), "Challenges on validity of the system," supports the view that this provision permits "facial, systemic" challenges. Pl. Opp. at 16. But the statute specifically focuses on review of individual orders, albeit on the grounds that the orders were entered pursuant to an unlawful statute or regulation. *See* 8 U.S.C. § 1252(e)(3)(A); *AILA*, 199 F.3d at 1359 ("One cannot come away from reading this section without having the distinct impression that Congress meant to allow litigation challenging the new system by, and only by, aliens against whom the new procedures had been applied.").

Even if this Court disagrees and believes that § 1252(e)(3) contemplates broader challenges to the validity of the system as Plaintiffs argue, it still does not follow that § 1252(e)(3) is exempt from *Salerno*. Indeed, the rule enunciated in *Salerno* does little more than draw a distinction between a facial challenge (an allegation that a statute or regulation is unlawful as drafted) and an as-applied challenge (an allegation that a statute or regulation is unlawful because of how it was applied). The former, by definition, contemplates that the statute or regulation is *inherently* unlawful—or *always* unlawful—because it is unlawful *as written*. Facial challenges are disfavored for several reasons: (i) they often require speculation, raising the risk of premature adjudication based on sparce "factually barebones records"; (ii) they run contrary to the principle of judicial restraint by encouraging the courts to "formulate a rule of constitutional law broader than is required"; and

(iii) they short-circuit the democratic process. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, (2008) (internal citations omitted). If Congress intended to override these principles, it is fair to assume it would have done so more clearly. Instead, it put limits on the scope of review, such as the limit on class actions in this context, which are inconsistent with an intention to permit a broader review.

Plaintiffs argue that if *Salerno* were applied to § 1252(e)(3) "even a rule that was unconstitutional 95 percent of the time could not be voided facially." Pl. Opp. at 17. As noted above, Defendants dispute whether "void[ing]" a rule is a proper remedy under either § 1252(e)(3) or the APA, but putting aside the question of *remedy*, Plaintiffs' statement is otherwise correct. For a legislative rule to be *facially* unlawful, it must be unlawful *as written*, which is the same thing as saying that to prevail, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. Plaintiffs suggest it is preposterous to allow a rule that is unconstitutional ninety-five percent of the time to survive a facial challenge. Pl. Opp. at 17. But that is specifically what *Salerno*'s "no-set-of-circumstances" standard establishes. By suggesting that *Salerno* does not apply to § 1252(e)(3), Plaintiffs seek to erase the distinction between a *facial* challenge and an *as-applied* challenge. Plaintiffs' disagreement with *Salerno* is for the Supreme Court alone and provides no basis for relief here.

Seemingly realizing the infirmities of their *Salerno* argument, Plaintiffs pivot to argue that "the Rule and Guidance *are* unconstitutional in all their applications." Pl. Opp. at 17. They assert that "[p]eople apprehended 'within the United States' more than two weeks after entry cannot be removed without due process." *Id*. And they cite a string of cases for that proposition. *Id*. For example, Plaintiffs cite *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) for this proposition: "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their

presence here is lawful, unlawful, temporary, or permanent." Pl. Opp. at 17.[3] But the question is

not whether certain inadmissible aliens present in the United States for more than two weeks can

be removed without due process, the question is what constitutes due process in such circum-

stances. The Supreme Court has answered that question. As to "foreigners who have [not] been

admitted into the country," "the decisions of executive or administrative officers, acting within

powers expressly conferred by Congress, are due process of law." *Thuraissigiam*, 591 U.S. at 138-

139 ("This rule would be meaningless if it became inoperative as soon as an arriving alien set foot

on U.S. soil."); Defs.' Mot. at 36–37. Plaintiffs dispense with *Thuraissigiam* in one sentence by

noting that there, the Court held that an alien who stepped "25 yards into U.S. territory" could not

"be said to have 'effected an entry.'" Pl. Opp. at 18 (quoting *Thuraissigiam*, 591 U.S. at 139-140).

But the Court's holding in *Thuraissigiam* was not limited to circumstances where immigration

enforcement apprehends the alien shortly after entering the country or close to the border.[4] The

Court clarified that the same limited statutory process would be due to an alien "paroled elsewhere

in the country for years pending removal." *Thuraissigiam*, 591 U.S. at 139. The Court explained:

> The reason for our century-old rule regarding the due process rights
> of an alien seeking initial entry [] rests on fundamental propositions:
> The power to admit or exclude aliens is a sovereign prerogative; the
> Constitution gives the political department of the government ple-
> nary authority to decide which aliens to admit; and a concomitant of
> that power is the power to set the procedures to be followed in de-
> termining whether an alien should be admitted.

---

[3] *Zadvydas* was not decided on due process in any event. There, the Court invoked the doctrine of
constitutional avoidance to decide the case, where the issue was whether 8 U.S.C. § 1231(a)(6)
permits indefinite detention of aliens ordered removed when there is no significant likelihood of
removal in the reasonable foreseeable future. *Zadvydas*, 533 U.S. at 707.
[4] If Vijayakumar Thuraissigiam evaded capture from immigration enforcement twenty-five yards
from the border for fifteen days, there is no reason to think the Supreme Court's decision would
have been different, such that Thuraissigiam would have been entitled to greater due-process
rights. As Plaintiffs lodge only a facial challenge subject to *Salerno*, this hypothetical alone fore-
closes Plaintiffs' argument that the statute and Designation violate due process as written.

This rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U.S. soil. When an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country for the purposes of this rule. On the contrary, aliens who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are 'treated' for due process purposes 'as if stopped at the border.' *Id*. (cleaned up) (emphasis added).

The Court's holding in *Thuraissigiam* is consistent with its earlier holding in *Landon v. Plasencia*, 459 U.S. 21 (1982). In *Landon*, the Court observed that only "once an alien gains admission to our country and begins to develop the ties that go with permanent residence [does] his constitutional status change[]." 459 U.S. at 32. In *Thuraissigiam*, the Court reiterated that "established connections" contemplate "an alien's *lawful entry* into this country." 591 U.S. at 106-07. Plaintiffs do not meaningfully engage with *Landon*, instead dismissing it out-of-hand because "that case never held that unlawful entrants later apprehended in the interior lacked due process protections." Pl. Opp. at 18. They likewise seek to distinguish several cases cited by Defendants to address what constitutes "established connections" or "ties that go with permanent residence," Pl. Mot. at 18. But Plaintiffs miss the point. Defendants cited *Landon* and its progeny, *see* Defs.' Mot. at 31, to highlight that regardless of what may constitute "established connections," in the United States, "[w]hat is clear is that *none* of the aliens subject to the 2025 designation will have been *admitted* or have been *lawfully* present in this country" as required by *Landon* and *Thuraissigiam* to claim due process rights that go beyond what § 1225(b)(1) provides.[5] Defs.' Mot. at 31. The D.C. Circuit has already upheld the legality of the expedited removal statute and its implementing regulations, which apply equally to all aliens subject to expedited removal. *AILA*, 18 F. Supp. 2d

---

[5] Even the Court's cases recognizing due process rights for aliens who are deported after admission carefully distinguish those who "entered clandestinely." *Wong Yang Sung v. McGrath*, 339 U.S. 33, 49-50 (1950).

at 58-60, *aff'd*, 199 F.3d at 1357; Defs.' Mot. at 25–28. Plaintiffs argue, however, that the holdings in *AILA* were limited to aliens seeking initial entry to the country, whereas the "individuals subject to the Rule here . . . have already entered the United States." Pl. Opp. at 19. While it's true the plaintiffs in *AILA* were seeking entry, legally this is a distinction without a difference. Individuals subject to the 2025 Designation are, by definition, inadmissible and subject to expedited removal under § 1225(b)(1). Although such aliens may be inside the United States, legally they are considered to be at the border. *Cruz v. Dep't of Homeland Sec.*, No. 19-CV-2727, 2019 WL 8139805, at *5 (D.D.C. Nov. 21, 2019) ("[A]lthough aliens seeking admission into the United States may be physically allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and, hence, never having effected entry into this country."). It would make little sense that an alien who presents at a designated port of entry and applies for admission would have fewer due process protections than an alien who unlawfully sneaks across the border and escapes into the interior. And indeed, that is not the case. Congress has plenary power with respect to the procedures for admitting aliens. *Thuraissigiam*, 591 U.S. at 139. Aliens cannot evade Congress's plenary powers over those procedures by violating those procedures. Thus, whether an alien presents at a port of entry and applies for admission or enters unlawfully, he remains an applicant for admission. *See* 8 U.S.C. § 1225(a)(1) ("An alien "present in the United States who has not been admitted or who arrives in the United States … shall be deemed … an applicant for admission."). The INA places no time limit on how long an alien who has entered the United States remains an applicant for admission. Defs.' Mot. at 38–39. Thus, those apprehended within the United States between two weeks and two years after illegally entering the country find themselves legally in the same position as the aliens in *AILA*: as applicants for admission fictionally at the border. Thus, the same conclusion applies—the expedited removal

statute and its implementing regulations, as well as the 2025 Designation are lawful and satisfy due process.

Plaintiffs persist in arguing that additional process is due under the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Pl. Opp. at 20. Not so. The *Mathews* factors do not apply here because the statute is not ambiguous. Defs.' Mot. at 32–33. Further, there is no liberty interest to balance—the first step in *Mathews*—because aliens subject to expedited removal have no liberty interest in avoiding removal. *Id.* at 33. Plaintiffs cite to a string of cases for the proposition that removal implicates a "weighty liberty" interest. Pl. Opp. at 20–21. But the question is not whether removal may implicate a weighty liberty interest—of course it can—but whether it does so with respect to inadmissible applicants for admission subject to expedited removal. And there, the answer is no. Congress has determined that aliens who have not been admitted or paroled who are present for less than two years lack *any* liberty interest in avoiding removal or to certain procedures beyond what is provided for by § 1225(b). 8 U.S.C. § 1225(b)(1)(A)(iii)(II). The cases Plaintiffs cite, *see* Pl. Mot. at 20, pre-date § 1225(b)(1) and concern the deportation of long-term alien residents who entered the country lawfully, and do not suggest that applicants for admission at the border—which those subject to the 2025 Designation are considered to be—have a liberty interest in admission to the country.

Plaintiffs argue that Congress's decision to permit expedited removal of aliens who have lived in the United States for up to two years is not dispositive of whether those aliens have a liberty interest because Congress cannot determine whether someone has "effected an entry" and is therefore a person "within the United States" for the purpose of due process. Pl. Opp. at 21. They then cite a string of cases for the more general proposition that Congress cannot determine what processes satisfy the Due Process Clause. *Id*. While it is true that due process is a

14

constitutional construct for the courts to determine, the courts have done so. They have held that Congress may establish procedures for arriving aliens seeking admission to the country, and as to such aliens, such process is due process. *Thuraissigiam*, 591 U.S. at 138-139. "[A]liens who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are 'treated' for due process purposes 'as if stopped at the border,'" *id.* at 139, such that they have "only those rights regarding admission that Congress has provided by statute." *id.* at 140.

As to the second *Mathews* factor, Plaintiffs allege they have plausibly alleged a risk of error from the Designation's application, that would be reduced by additional procedural safeguards. Pl. Opp. at 22–28. Even assuming that *Mathews* applied here, the Court lacks jurisdiction to consider allegations that the statute or regulations, as-applied, will affect *non-parties* in error. *AILA*, 18 F. Supp. 2d at 58 , *aff'd,* 199 F.3d at 1356. Moreover, in a facial challenge, the issue is not whether the statute or rule could be written in a "better" way, the question is whether the statute or rule is unlawful as written—*i.e.* that it is universally unlawful. *Salerno*, 481 U.S. at 745. It is not. So while Plaintiffs suggest a variety of scenarios whereby the 2025 Designation might result in erroneous application, Pl. Opp. at 22–28, they simply imagine circumstances where individual aliens may have a basis to raise a future § 1252(e)(2) challenge. And to the extent they raise such challenges now, ostensibly under § 1252(e)(3), those challenges are time barred (*see* Section I, *supra*) and need to be raised as-applied challenges. As for Mary and John Doe, the plaintiffs who were erroneously issued expedited removal orders under the 2025 Designation, DHS is willing to allow them to return to the United Sates to be placed in removal proceedings. Mary and John Doe are considering this offer. Notwithstanding, Mary and John Doe's circumstances do not provide a basis for concluding that expedited removal can never be applied in the interior or up to two years after an alien unlawfully entered the country without violating due process. Plaintiffs argue the

risk of error extends beyond Mary and John and is not likely to be a "rare exception," as evidenced by various hearsay reports.[6] Pl. Opp. at 26. But these same arguments failed in *AILA*. 18 F. Supp. 2d at 52-57, *aff'd*, 199 F.3d at 1357; *see also* Defs' Mot. at 26–18. Additionally, if the alien asserts that he should not be subject to expedited removal because he is a lawful permanent resident, refugee, or asylee, or claims to be a U.S. citizen, regulations require further inquiry. 8 C.F.R. § 235.3(b)(2), (5), (6); *see* Defs.' Mot. at 5-6, 25, 35.

Plaintiffs argue that the government's interest, *see* Defs' Mot. at 36–37, does not outweigh the private interests at stake because Congress never *mandated* that expedited removal be applied to aliens who have managed to evade apprehension for up to two years; it simply allowed for that option. Pl. Opp. at 28. But Congress gave the Executive branch the option to use the tools now needed for dealing with the "crisis at the land border" that involves "hundreds of thousands of illegal aliens" entering annually. H.R. Rep. No. 104-469 at 107. And, as explained, one cannot balance the government's interest with the private interest here, because aliens subject to the 2025 Designation lack the necessary liberty interest to trigger any balancing in the first place. Plaintiffs' opposition fails to change the fate of its Due Process claim, and the Court should dismiss it.

### III.     The Designation Still Does Not Violate 8 U.S.C. § 1182(a)(7) (Count Two).

Plaintiffs' argument that inadmissibility under 8 U.S.C. § 1182(a)(7) can be determined only at the time of entry, and that any expedited removal on the basis of § 1182(a)(7) is similarly limited, is incorrect. Defs.' Mot. at 30–35. The INA makes clear that an alien remains an applicant for admission until she is inspected and admitted by an immigration officer. *See* 8 U.S.C. § 1225(a)(1), (3). Inadmissibility determinations are not limited to the time of physical entry because

---

[6] Plaintiffs argue they can rely upon hearsay in their complaint. Pl. Opp. at 26. That is true as far as it goes. But, as Defendants previously noted, "reliance on hearsay, extra-record reports about examples of alleged errors in the application of expedited removal, does not demonstrate a categorical likelihood of liberty deprivation." Defs.' Mot. at 34.

both individuals who arrive in the United States prior to being admitted, and those present in the United States after entering unlawfully without admission, are "applicant[s] for admission" under the statute. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018); *see* Defs.' Mot. at 30–35.

Plaintiffs argue that aliens subject to expedited removal under § 1182(a)(7) cannot include "those who have already entered the United States because it applies only at the time when a noncitizen seeks permission to physically enter the United States territory." Pl. Opp. at 30–31. Plaintiffs contend that § 1182(a)(7) applies only at the point of physical entry because an entry document is required "to lawfully cross the border." *Id.* at 31. This is incorrect. Section 1182(a)(7) permits expedited removal for those who cross the border undetected, without valid travel documents. *Compare* 8 U.S.C. § 1225(b)(1)(A)(i) *with United States v. Gambino-Ruiz*, 91 F.4th 981, 988 n.6 (9th Cir. 2024) ("If Gambino-Ruiz were considered an arriving alien despite his entry outside a designated port, he would be 'deemed' an applicant for admission under 8 U.S.C. § 1225(a)(1). Then he would be inadmissible under § 1182(a)(7) for having applied without valid entry documents.").[7]

---

[7] Plaintiffs argue that an "applicant for admission" "refers to the moment of applying for entry into the country." Pl. Opp. at 32, n.12. But § 1225(a)(1) defines "applicant for admission" as including any "alien present in the United States who has not been admitted." Plaintiffs contend their interpretation is "consistent with how the INA elsewhere uses the term 'application for admission,'" citing 8 U.S.C. § 1361 to support their position that seeking physical entry is required to be an "applicant for admission." *Id.* But Congress defined the term "application for admission." 8 U.S.C. § 1101(a)(4). While § 1101(a)(4) excludes a visa application, it does not exclude applications for admission from aliens already inside of the United States, and Plaintiffs should not ask this court to rewrite the statute to add a caveat that Congress chose not to include. *See Texas*, 597 U.S. at 803 (citing *Jama v. Imm. & Customs Enforc.*, 543 U.S. 335, 341 (2005)). That the INA uses the term "application for admission" consistent with its statutory definition is demonstrated in § 1361, which refers to applications for a visa as distinct from applications for admission. By providing that applicants for admission in removal proceedings must prove their "time, place, and manner of . . . entry," § 1361 expressly includes applicants for admission who have already made a physical entry into the United States. *See Matter of Benitez*, 19 I&N Dec. 173, 177 (BIA 1984) (holding § 1361 applicability to various grounds of deportability, which necessarily required entry, including

Plaintiffs similarly acknowledge that a neighboring provision, 8 U.S.C. § 1182(a)(6)(A), determines inadmissibility based on an alien's unlawful presence in the United States. Pl. Opp. at 32. Plaintiffs posit that the decision to exclude § 1182(a)(6)(A) as a perquisite for expedited removal indicates that Congress "did not intend for expedited removal to apply to people who are present in the United States without valid entry documents." *Id.* This is wrong, because § 1182(a)(7) is not limited to inadmissibility determinations at the border. Defs.' Mot. at 30–35. Instead, the relevant time is "at the time of application for admission." *Id.* Indeed, an application for admission may or may not occur at a port of entry or upon physical entry. *Id.* Section 1225(a)(1) defines "Aliens treated as applicants for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)[.]" Congress would not need to distinguish between those aliens already *present in the United States*, from those physically entering the interior if admissibility could only be determined upon physical entry.[8] Additionally, § 1225(b)(1)(A)(iii)(II) contemplates that expedited removal may apply to an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been *physically present in the United States continuously for the 2-year period* immediately prior to the date of the determination of inadmissibility under this

---

"[o]f course" charges of "entry without inspection"). Thus, 8 U.S.C. § 1361, if anything, undermines Plaintiffs' argument that an "application for admission" is limited to the time of physical entry.

[8] For this reason too, Plaintiffs' attempt to distinguish *Gambino-Ruiz* is unavailing. Pl. Opp. at 34. The designation does not "modify the grounds of inadmissibility that the statute explicitly makes a predicate for placement in expedited removal." *Id.* Instead, it expands it to its limit. *See* 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Even prior to the designation, § 1182(a)(7) was used as a basis for expedited removal for aliens who had already entered but had been present for less than 14 days.

subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (emphasis added). Plaintiffs' flawed interpretation of § 1182(a)(7) would frustrate Congress's instruction that expedited removal may apply to any unadmitted alien "physically present in the United States" for up to two years.

Plaintiffs also contend that an application for admission is not a "real event," but instead reflects Congress's endeavor to ensure that aliens who entered the country unlawfully and those stopped at the border would have "similar procedural rights in removal proceedings." Pl. Opp. at 32. Plaintiffs cite no legal authority for this conclusion. Plaintiffs' argument also ignores the bevy of Circuit decisions affirming Defendants' interpretation of what "admission" means in the immigration context. Defs.' Mot. at 38–39 (collecting cases). Thus, § 1182(a)(7) may apply to aliens in the interior who lacked valid entry documents when they entered the United States. DHS may make § 1182(a)(7)-based inadmissibility determinations for expedited removal purposes as Congress contemplated in § 1225(b)(1)(A)(iii).[9] Accordingly, the Court should dismiss Count Two.

## IV. Claim Six Still Fails as a Matter of Law.

In their operative complaint, Plaintiffs allege in their Sixth Claim that "[t]he INA and its implementing regulations do not permit the expedited removal of noncitizens who entered without inspection and have filed affirmative asylum applications with USCIS." Am. Compl. ¶¶ 125-28. But in their opposition, Plaintiffs effectively seek to amend that claim, by clarifying that they only challenge the "Guidance alone and withdraw their challenge to the rule," and then for the first time, style Count Six as an *Accardi* claim. Pl. Opp. at 35, n.17. Importantly, Plaintiffs cannot amend their complaint in their opposition to Defendants' motion to dismiss. *Middlebrooks v. Godwin Corp.*, 722 F.Supp.2d 82, 87 n.4 (D.D.C. 2010), *aff'd,* 424 F. App'x 10 (D.C. Cir. 2011).

---

[9] Notably, Plaintiffs' acknowledgment that the government can apply expedited removal to an alien whose affirmative asylum application is denied contradicts their argument that expedited removal may only be applied at the time of physical entry. Pl. Opp. at 30–34.

Defendants cannot adequately defend against Plaintiffs' surprise claim, which contradicts the basic notions of fairness that support Rule 8. FED. R. CIV. P. 8(a), (b).

Plaintiffs claim, without support, that § 1225(b)(1)(A)(iii)(I) precludes judicial review of only the Designation, but not guidance implementing it. Pl. Opp. at 35 n.17. Section 1225(b)(1)(A)(iii)(I) clearly precludes judicial review of the Designation. 8 U.S.C. § 1225(b)(1)(A)(iii)(I) ("Such *designation* shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.") (emphasis added). But it also precludes review of the implementing Guidance. It makes little sense that Congress would grant the Secretary vast discretion to create the Designation, while simultaneously exposing its implementing guidance to litigation. *See Make The Road*, 962 F.3d at 632 ("The forceful phrase 'sole and unreviewable discretion, by its exceptional terms, heralds Congress's judgment to commit the decision exclusively to agency discretion.") (internal quotations omitted). Plaintiffs' interpretation would nullify Congress's decision about subject matter jurisdiction. Even if Plaintiffs could challenge the Guidance without challenging the Designation, the Guidance does not support an *Accardi* claim. The Guidance prioritizes the expedited removal of aliens "who failed to apply for asylum within the statutory deadline," *see* Huffman Memo (citing 8 U.S.C. § 1158(a)(2)(B)), instructs that "the expedited removal process *includes asylum screening*, which is sufficient to protect the reliance interests of any alien *who has applied for asylum or planned to do so in a timely manner*," *id.* (citing 8 U.S.C. § 1225(b)(l)) (emphasis added), and twice advises immigration enforcement to "[t]ake all steps necessary to review the alien's case and consider, in exercising your enforcement discretion, whether to apply expedited removal." *Id.* Nothing in the Guidance supports the *Accardi* claim that Plaintiffs proffer now.

Importantly, regardless of how Plaintiffs ultimately proceed, it does not even appear that Plaintiffs could establish associational standing to move forward on this claim, since they do not identify any individual in this lawsuit that has suffered from this alleged "injury" or has standing to raise it. *Summers*, 555 U.S. at 498 (Plaintiff organization must show "*at least one identified member* had suffered or would suffer harm." (emphasis added)); *Californians v. United States DOE*, 860 F. Supp. 2d 44, 48 (D.D.C. 2012) ("Rather, the organization must name at least one member who has suffered the requisite harm."). Instead, they articulate facts about a Doe member who is "not in removal proceedings and does not have a final order of removal" and has "timely filed an application for affirmative asylum with USCIS, which remains pending." Am. Compl. ¶ 99. But Plaintiffs do not identify its allegedly injured member "by name" or "allege facts sufficient to establish harm to th[ose] member[s]." *AILA*, 18 F. Supp. 2d at 51, *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000); *accord Summers*, 555 U.S. at 498 (requiring that organizations identify "at least one identified member had suffered or would suffer harm" to establish associational standing (emphasis added)).

Although Plaintiffs now say they are challenging the "Guidance alone," Pl. Opp. at 35, n.17, they continue to challenge the application of expedited removal to aliens with affirmative asylum applications. *Id.* at 36–38. Even if Plaintiffs could raise this claim, it fails. Plaintiffs argue[10] that "[t]he regulations permit an affirmative applicant to be placed in expedited removal in

---

[10] Plaintiffs likewise indicate, "Indeed, the language of § 1225(b) itself makes this clear: § 1225(b)(1)(A)(i) directs the immigration officer to subject the noncitizen to expedited removal 'unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution.' Since affirmative applicants *already* have indicated their fear of persecution and intention to apply for asylum, § 1225(b)(1)'s statutory language does not apply to them." Pl. Opp. at 37–38. However, an asylum claim is not a barrier to expedited removal, it simply determines what set of procedures under expedited removal an individual receives. 8 U.S.C. § 1225(b)(1)(A)(i), (ii). For example, there is a process for pursing an asylum claim *in expedited removal*. *Id.* § 1225(b)(1)(A)(ii).

only one situation: where the asylum seeker was previously paroled into the United States and their parole has expired or been terminated." Pl. Opp. at 36 (citing 8 C.F.R. § 208.14(c)(4)(ii)). That regulation addresses the processes after USCIS decides an asylum application, specifically providing that USCIS can consider placing such an alien in expedited removal, but it does not purport to cover the full range of circumstances where expedited removal is authorized. Other regulations speak to that. For example, 8 C.F.R. § 235.3(b) provides broad authority for the government to initiate expedited removal proceedings, including for those individuals who have already "entered" the United States. Additionally, 8 C.F.R. § 235.3(b)(5) lists classes of aliens who shall not be subject to expedited removal, which includes aliens granted asylum, but not those who are asylum applicants. The plain language of 8 C.F.R. § 208.14(c) indicates that its sub-provision (4)(ii) would apply only to those individuals who have had an asylum interview when the asylum officer is poised to issue a denial on the merits. The regulation says nothing about DHS's general authority to apply expedited removal to an alien who simply has a pending asylum application. *See § 208.14--Approval, Denial, Referral, or Dismissal of Application*, 65 Fed. Reg. 76121, 76128 (Dec. 6, 2000) ("New §§ 208.14(c)(3) and 208.14(c)(4) were added, and detail how the Service processes asylum applications of aliens who were paroled into the United States, depending upon the decision an asylum officer makes on the application and the validity of the parole.").

To this end, Plaintiffs argue that placing affirmative asylum applicants in expedited removal is "arbitrary and capricious" because the Guidance "failed to consider … important aspects of the problem," and other factors. Pl. Opp. at 38–39. Notably, an arbitrary and capricious claim is wholly absent from Plaintiffs' Count Six, Am. Compl. ¶¶ 125-28, and amendment here is

---

If an individual indicates an intent to seek asylum, how that individual is processed afterwards depends on what happens at an asylum interview.

inappropriate. *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014). What's more, is that this theory is plainly barred by *Make the Road*, as Plaintiffs eventually concede in their opposition. Pl. Opp. at 39–40. *See* Defs.' Mot. at 21–24 (explaining that Plaintiffs' APA claims are barred by *Make the Road*). Indeed, this Circuit noted, "[t]here could hardly be a more definitive expression of congressional intent to leave the decision about the scope of expedited removal, within statutory bounds, to the Secretary's independent judgment." *Make the Road*, 962 F.3d at 632–33 ("[W]hen the Secretary stays within statutory bounds," the court cannot "substantively superintend the Secretary's designation judgment."). The prohibition against judicial review includes determining whether the Secretary, in making the designation, properly considered evidence regarding the accuracy and fairness of the expedited removal process. *Id.* The Court should decline to entertain Plaintiffs' belated attempt to amend the Complaint. Plaintiffs' Count Six—however they frame it—fails to state a claim upon which relief can be granted, and Plaintiffs lack standing to raise this claim regardless.

## V.    Plaintiffs' Challenge to the 2025 Designation is Foreclosed by *Make the Road*.

Plaintiffs correctly concede that *Make the Road* forecloses their APA challenges. Pl. Opp. at 39. That concession alone should put an end to those claims. *Saylab v. Harford Mut. Ins. Co.*, 271 F. Supp. 2d 112, 115 (D.D.C. 2003) ("The complaint must set forth sufficient information to suggest that there exists some recognized legal theory upon which relief can be granted."). However, Plaintiffs still seek to "preserve these claims for further review," clarifying that they "do not challenge the ultimate decision to designate new groups for expedited removal but only the procedure utilized to reach such a decision." Pl. Opp. at 39. According to Plaintiffs, "the D.C. Circuit failed to recognize the distinction between the two types of challenges." *Id.* As this theory is not alleged in Plaintiffs' Complaint, it is improper to assert it here for the first time. FED. R. CIV. P. 8(a). Plaintiffs identify a "distinction" without a difference. That is because their purported

challenge to the process undergirding the designation is at odds with the discretionary powers that Congress endowed the with Secretary in 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Defs.' Mot. at 22–23. It also runs headlong into the Circuit's core reasoning in *Make the Road*, "that the Secretary *alone* has the power to make the designation entirely independent of the views of others." 962 F.3d at 633 (emphasis added). This independent and unreviewable designation power—that the Secretary can "modify at any time"—is not subject to the second guessing of either Plaintiffs or the courts.

*Make the Road* eliminated Plaintiffs' previous, mirror image notice-and-comment claim, and the reasoning underlying that decision is instructive. The oversight that the notice-and-comment process involves is incompatible with § 1225(b)(1)(A)(iii)(I). *Id.* at 634–35. For example, obtaining and considering public input on agency decision-making, and developing a record for judicial review serves no purpose where the statutory language explicitly entrusts decisions to the "Secretary's '*sole*' discretion[.]" *Id.* (emphasis added) (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(I)). Moreover, that the Secretary may exercise her power "at any time," in her "sole discretion" "also means that the Secretary would be free to ignore the comments that the process produces." *Id.* at 634–35 ("Under those circumstances, the notice-and-comment procedure would be … all form and no substance."). Under that same reasoning, Plaintiffs' attempt to reframe their case fails. The discretionary language in the statute does not leave room for judicial review of the "procedure utilized" to reach the designation. That is plainly precluded by *Make the Road*.

Finally, none of the cases Plaintiffs cite, *see* Pl. Opp. at 39–40, demonstrate that this new claim is cognizable; the statutes at issue in those cases were lacking the clear language that definitively usurps judicial review here. 8 U.S.C. § 1225(b)(1)(A)(iii)(I) ("Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time."). For example, the Special Agriculture Workers (SAW) statute at issue in *McNary v. Haitian*

*Refugee Ctr., Inc.*, 8 U.S.C. § 1160(e), provides for some avenues of judicial review. 498 U.S. 479, 483–85 (1991). Thus, the Court permitted the plaintiffs' challenge to the underlying process to "a determination respecting an application" for SAW status "given the absence of clear congressional language mandating preclusion of federal jurisdiction and the nature of respondents' requested relief." *Id.* However, § 1225(b)(1)(A)(iii)(I) speaks in the absolutist terms that 8 U.S.C. § 1160(e) was so lacking, which presents a complete barrier for judicial review.

Similarly, the *Reno v. Cath. Soc. Servs., Inc.* Court determined that just because 8 U.S.C. § 1225a(f)(1) precluded judicial review over the denial of a *single application*, that that jurisdictional limit did not extend to the underlying processes to reach that determination. 509 U.S. 43, 56 (1993). Section § 1225(b)(1)(A)(iii)(I) does not allow for the same bifurcation—the language sapping judicial review is sweeping. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (finding when a statute offers "no meaningful standard against which to judge the agency's exercise of discretion," that decision is committed to agency discretion). This Circuit followed that same reasoning in *ParkView Med. Assocs., L.P. v. Shalala*, when it decided that 42 U.S.C.A. § 1395ww, which shielded judicial review of certain payment determinations, did not create the same barrier to review the underlying process buoying that decision. 158 F.3d 146, 147 (D.C. Cir. 1998). Notably, all of Plaintiffs' proffered authority delineates between judicial review of a decision on a single application, and the process underlying the decision-making. But here, the Secretary's designation is the policy and Congress fashioned the statute in a way to shield that from judicial review. Thus, the Court should dispose of Claims Four and Five.

## CONCLUSION

For the reasons discussed herein, the Court should dismiss the Complaint in its entirety.

DATED: May 21, 2025

YAAKOV M. ROTH
*Acting Assistant Attorney General*
Civil Division

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

Respectfully Submitted,

ELISSA FUDIM
*Trial Attorney*

*/s/ Caroline McGuire*
CAROLINE MCGUIRE
(NY Bar No. 5854823)
*Trial Attorney*
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals
P.O. Box 868, Benjamin Franklin Station
Washington. D.C. 20044