## **DECLARATION OF ANDRES SANTAMARIA CORTES**

1. My name is Andres Santamaria Cortes and I am a supervising attorney at Make the Road New York. I am based in our Queens office, located at 104-19 Roosevelt Avenue Corona, NY 11368 and I specialize in immigration cases including representation of noncitizen clients before the immigration courts and USCIS. I am admitted as an attorney in New York State. I am fluent in Spanish.

2. I was present at the Varick Immigration Court in Manhattan on May 29, 2025 to observe Master Calendar Hearings and witnessed 12 people get detained. Another colleague and I collected the A numbers for all of the individuals detained and asked them about their manner of entry. Every individual I spoke with stated that they entered without inspection, rather than with parole or via the CBP One application. I also witnessed extremely intimidating tactics including large numbers of ICE officers.

3. One of the cases for a Master that day was of two individuals, a mother and father who told us their children were at school while they attended their court hearing. After their hearing concluded, ICE officers came into the courtroom and dragged all of the respondents into the waiting room. They put everyone against the wall, handcuffed and frisked them. Then the ICE officers checked their documents and released two people who were not on their list and detained everyone else. Despite pleading with ICE officers and telling them that they had children at school who were waiting for them to pick them up, ICE arrested the mother and father.

4. On May 30, I observed Master Hearings at the Broadway Immigration Court at 290 Broadway, also in Manhattan. My colleague again spoke with Individuals who were being detained and gathered information about their cases. ICE agents were again using extremely intimidating tactics and were present in large numbers alongside FBI agents inside the court building. Many of these agents masked, entering and sitting inside the courtrooms while the hearings were ongoing. Seeing what was happening, many people were in tears and shaking.

5. In one case, I spoke with a U.S.-citizen family member of a man who was worried her brother would be detained but was not allowed to enter the courtroom with him ostensibly because it was full. But court staff subsequently pulled up an extra chair to accommodate an ICE officer who wanted to sit inside. DHS then moved to dismiss the brother's proceedings and he

was detained by ICE agents as he left the courtroom. His sister broke down in tears and expressed concern because he had not brought important prescription medication for his eyes. I explained this to ICE before they took him away.

6. I also witnessed a member of the press be ejected from the building. A security guard also asked me repeatedly if I was a member of the press, and stated that if I was, I was not allowed to be anywhere in the building. That is false; most immigration court hearings are open to the public, including the media.

7. Later that same day, in a master calendar hearing that I witnessed before Immigration Judge McFarland at the New York Immigration Court at 26 Federal Plaza, also in Manhattan, DHS moved to dismiss the case. The IJ asked the respondent whether he wanted the case to be dismissed, but the respondent expressed confusion. The IJ then denied the motion, noting that the respondent had applied for asylum and that the respondent clearly wanted an opportunity for his case to be adjudicated in Immigration Court. DHS moved again for dismissal, citing a case for its authority over whom to prosecute, but then the IJ reviewed the case; disputed the interpretation that dismissal was in DHS's sole discretion; and denied the motion again. DHS then requested dismissal a *third* time, arguing that the respondent would still be able to seek asylum in expedited removal. The IJ again denied the motion and set the case for a next hearing. But as the respondent left court, he was nonetheless detained.

8. On June 2, I was again at the Broadway Immigration Court observing Master Hearings. Again, I witnessed as DHS moved to dismiss cases. In 5 cases that I observed, the IJ declined to issue a decision on the motion on that day and instead gave respondents 30 days to read the motion, research and/or consult with an attorney to be able to meaningfully respond to the motion and come back to Court with an answer on whether they opposed the motion or not. All of them also had asylum applications pending and expressed fear of return and a desire to oppose dismissal. Despite the motion not being granted, all of the individuals were detained as they made their way to the elevators.

9. Many people I spoke with expressed shock and disbelief that they were being detained because they believed they were following the law and doing the correct thing by showing up to their court hearings. All of them expressed that they wanted to fight their asylum case in Immigration Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: June 9, 2025  
Queens, NY

*Andrés SC*

Andres Santamaria Cortes