## Declaration of Vanessa Dojaquez-Torres

I, Vanessa Dojaquez-Torres, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.  I am a Practice and Policy Counsel at the American Immigration Lawyers Association ("AILA"). Founded in 1946, AILA is a nonpartisan, nonprofit, voluntary bar association that provides continuing legal education, professional services, information, and expertise to more than 17,000 attorneys who practice and teach immigration law. AILA's mission is to promote justice, advocate for fair and reasonable immigration law and policy, advance the quality of immigration and nationality law and practice, and enhance the professional development of AILA members. It has 39 local and regional chapters nationwide.

2.  As a Practice and Policy Counsel, I advance AILA's administrative, congressional, and overall advocacy goals. I track trends and developments in substantive immigration law and policy. I assist AILA members by drafting policy documents, practice resources, legislative and regulatory analysis with a focus on removal proceedings and immigration enforcement.

3.  This declaration summarizes reports I have received from AILA members from across the country regarding the government's new strategy of arresting individuals who appear for their removal proceedings in immigration court. Over the past three weeks, members have reported widespread instances of U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) agents appearing at immigration courts to detain individuals immediately following the dismissal of their removal proceedings. The government's goal is to place individuals into expedited removal proceedings—where they can be deported without being given the opportunity to appear before an immigration judge (IJ)—pursuant to the administration's January 2025 notice expanding expedited removal and related guidance by the Acting Secretary of Homeland Security.[1]

4.  In many instances, ICE has detained individuals even when the IJ denies the government's motion to dismiss, sets it for briefing, or where the respondent has appealed—with the intent of placing those individuals in expedited removal once their removal proceedings are dismissed.

5.  ICE has engaged in enforcement activities at immigration courts in cities nationwide, including Atlanta, GA; Baltimore, MD; Boston, MA; Charlotte, NC; Chicago, IL; Cleveland, OH; Dallas, TX; Denver, CO; Detroit, MI; Fort Snelling, MN; Hartford, CT; Kansas City, MO; Las Vegas, NV; Los Angeles, CA; Miami, FL; New York City, NY; Orlando, FL; Phoenix, AZ; Salt Lake City, UT; San Diego, CA; San Francisco, CA; and Seattle, WA.

---

[1] *See* Designating Aliens for Expedited Removal, 90 Fed. Reg. 8,139 (Jan. 21, 2025); Benjamine C. Huffman, U.S. Dep't of Homeland Security, Guidance Regarding How to Exercise Enforcement Discretion (Jan. 23, 2025), https://perma.cc/W3CL-SNDN.

6.  Most individuals being detained have either lived in the United States for less than two years or were initially apprehended near the border and subsequently released by ICE during that same timeframe.

7.  The detentions include individuals with pending asylum applications who are afraid to return to their home country.

8.  The Department of Homeland Security (DHS) justifies its motions to dismiss by stating that "circumstances have changed." However, reports indicate that DHS is not providing any case-specific reasoning but is rather presenting this limited and "boilerplate" argument. Attorneys who oppose the motion may be granted 10 days to respond in writing. However, in many cases, IJs are granting dismissals without allowing respondents to have adequate time to respond nor are they ensuring that unrepresented respondents are being informed of the consequences of their cases being dismissed.

9.  The Department of Justice has sent written instructions to all immigration judges that they may allow the government to make motions to dismiss without a written motion or any additional documentation or briefing and that such motions to dismiss may be decided from the bench without providing 10 days for the respondent to respond. (Attached as Exhibit A is a true and correct copy of these instructions.)

10. Individuals with ongoing immigration proceedings remain vulnerable to detention—even if DHS motions to dismiss are denied. For example, in one reported case, an individual was still detained after the IJ denied the motion to dismiss, despite their attorney being present and opposing the arrest.

11. Detainees include individuals of all ages, with reports confirming the detention of families with young children, including toddlers as young as two and three years old. One account described ICE detaining children present with their parents at court proceedings and attempting to detain a mother with a nursing infant.

12. Many AILA members report that the individuals being detained have no prior criminal or negative immigration history.

13. The detention of individuals without notice or any opportunity to oppose detention is causing stress and confusion during the moment of arrest. These arrests appear not to be based on a need to detain individuals due to concerns over them being a flight or public safety risk. This raises serious due process concerns as these chaotic detentions will likely make people, who are otherwise trying to comply with the law, scared to appear for their court hearings.

14. ICE officers have been observed in and around immigration court buildings, both in marked and unmarked vehicles. Officers are seen on court premises dressed in varied attire, from full uniform to business or casual clothing. In many reports, officers wear masks to hide their identity. These actions will have a chilling effect if people are too terrified of attending court hearings with the knowledge ICE officers may be waiting to

detain them at any given moment. This fear tactic robs noncitizen respondents of accessing a fair hearing process.

15. Several reports indicate that personnel from agencies other than ICE are involved in these enforcement operations, with some operations reportedly involving over 20 officers from multiple agencies. This includes personnel from the Department of the Treasury, Internal Revenue Service (IRS), Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and the Department of Justice. Given that many arrests are of individuals with no criminal history and that have fully complied with requests from the U.S. government, it is unclear why the government is using the resources of so many other federal agencies in immigration enforcement operations.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of knowledge and belief.

Executed on this 8th day of June 2025 in Washington, D.C.

Vanessa Dojaquez-Torres

# EXHIBIT A

From: Riley, Kevin W. (EOIR) <Kevin.W.Riley@usdoj.gov>
Sent: Friday, May 30, 2025 5:43 PM
To: EOIR-OCIJ All of ACIJs <EOIR-ocij_all_of_acij@doj365.onmicrosoft.com>
Cc: Taylor, Philip P. (EOIR) <Philip.P.Taylor@usdoj.gov>; Riley, Teresa (EOIR) <Teresa.Riley2@usdoj.gov>; Little, Anna C. (EOIR) - C.Little@usdoj.gov>
Subject: Guidance on Case Adjudication

ACIJs -

During the past few months, EOIR has experienced significant changes in its caseload. EOIR's detained caseload has greatly increased in the past few months, and to meet the demands of the increasing workload on the detained dockets, we have re-emphasized goals for detained dockets and reallocated judges from non-detained dockets to detained dockets. There have also been several developments with non-detained cases in the past few weeks. DHS is carrying out enforcement actions in or near EOIR space. Further, DHS attorneys have moved to dismiss cases that are currently pending in court. Given the recent developments the following guidance is provided to ensure the expeditious adjudication of cases:

1. Cases should not be reset for Oral Decision. Oral Decisions must be completed within the same hearing slot on the day testimony and arguments are concluded. If a case is continued after testimony and arguments are concluded without issuance of an oral decision, then a written decision must be issued.

2. DHS Motions to Dismiss may be made orally and decided from the bench. No additional documentation or briefing is required.

The following information regarding DHS Motions to Dismiss may be generally helpful.

The Motion to Dismiss is regulatory based upon INA 239.2(a)(6) *[NTA improvidently issued]* or INA 239.2(a)(7) *[circumstances have changed to such an extent that continuation is no longer in the best interest of the government]*. Generally, if DHS has met the regulatory burden, the oral motion to dismiss may be granted. A 10-day response period is not required.

Respondents who were not continuously present for 2 years before inadmissibility was determined by an immigration officer under 212(a)(6) or 212(a)(7) of the INA may be placed in Expedited Removal (ER) Proceedings under INA 235.3 at the discretion of the AG. Expedited Removal Orders (ERO) carry a 5y bar to reentry to the US.

Respondents in expedited removal proceedings are subject to mandatory detention. Fear claims are reviewed by USCIS via credible fear interviews. Negative credible fear findings are subject to Credible Fear Review before the court. If negative credible fear determinations are affirmed by the court, Respondents are subject to the expedited removal order of the immigration officer. If negative credible fear determinations are vacated by the court, Respondents are placed in 240 Proceedings. Reasonable Fear Determinations, Reasonable Fear Review and Withholding Only Proceedings involve aliens subject to expedited removal under section 238(b) *(aggravated felony)* and aliens subject to reinstatement of prior orders of removal under 241(a)(5) who have a reasonable fear of persecution and torture.

3. DHS Enforcement actions at or near EOIR facilities: Please ensure that you, the Judges under your supervisions and your administrative staff are familiar with Policy Memo 25-06, which is found here. If you encounter any unusual circumstances with an enforcement action, please reach out to your RDCIJ to discuss.

Please ensure your judges are aware of the above guidance. If you have any questions, please contact your supervisor to discuss.

Thank you for all that you do,

Kevin Riley & Philip Taylor

Regional Deputy Chief Immigration Judges (Acting)