**Declaration of Timothy Warden-Hertz**

I, Timothy Warden-Hertz, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney licensed to practice law in the state of Washington. My business address is 2209 N. Pearl St., Suite 200, Tacoma, WA 98406.

2. I have been practicing law since 2009. Currently, I am a Directing Attorney in the Tacoma office of the Northwest Immigrant Rights Project (NWIRP). Prior to my position at NWIRP, I was the Legal Director of the immigration law programs at Catholic Social Services of Fall River, Massachusetts.

3. The following is based on my and our legal team's experience providing pro se assistance and representation to individuals who are placed in expedited removal proceedings and/or who are going through the credible fear interview process while detained in Washington State.

4. Generally, the people in expedited removal proceedings who have been detained in Washington have expressed a fear and are transferred here to have credible fear interviews conducted at the ICE detention center in Tacoma. However, when people in expedited removal proceedings who have not already been referred for credible fear interviews are transferred to Washington, they have experienced problems with the process of referrals for credible fear interviews.

5. For example, in late 2016, a group of about 150 Haitian men were transferred from the border to a detention center in Yakima County, Washington. They were all in expedited removal proceedings. My colleagues and I went to the detention center, and we conducted a Know Your Rights presentation with a Creole interpreter. The men reported that they had not had anyone speak to them in Creole for the entire time they had been in immigration detention, which had been at least a month. Despite the requirements that DHS officers inform all noncitizens in expedited removal proceedings of their right to seek asylum and to ask if they fear removal, before our presentation none of the people in this group knew that they were allowed to report that they feared returning to Haiti, and they had not been asked if they feared being removed. After our presentation, about half of the men ended up telling ICE that day that they were afraid to return to Haiti because of fear of persecution.

6. We have regularly had clients who had false information recorded on their expedited removal paperwork by CBP officers, including I-213 Forms (Record of Deportable/Inadmissible Alien). Clients who came to the United States because they are afraid of persecution would have paperwork stating that they came to the United States to work or that would say they are not afraid to return. When we ask them about the paperwork, they report that they clearly told CBP officers that they came because they were afraid.

7. Often, our clients will have signed the expedited removal paperwork that includes the incorrect information. When we ask them why they signed the paperwork, some clients tell us that it is because the agent interviewing them said that they had to sign the papers and that they have no choice. During the summer of 2018, when we saw a lot of women who had been subject to the family separation policy, clients reported that they were threatened that they needed to sign the paperwork to be reunited with their children.

8. There are people in detention in Washington awaiting credible fear interviews who we do not represent. People who do not have legal representation can be shuffled through the process very quickly and may be deported without ever talking to an attorney. If there are problems with their credible fear interviews, they likely do not have anyone to help them challenge the problems. After the government issued a termination order to the Legal Orientation Program (LOP) in April, 2025, it has become even harder for NWIRP to meet with individuals detained at the Tacoma ICE detention center in a timely fashion. LOP is a program funded through the immigration courts that had provided detained individuals who were unrepresented with group orientation sessions, individual intakes and further orientation and referrals to pro bono attorneys.

9. Because most pro se individuals are unable to advocate themselves effectively, they are highly vulnerable to being deported despite having strong asylum claims. This problem has worsened due to a combination of changing policies in recent years, including shifts in the standards applied in credible fear interviews. As a result of these changes, there have been more negative credible fear determinations and more immigration judge (IJ) affirmances of those negative findings. In one case, our client, a Cuban woman who fled because she faced retaliation by the regime for not participating in Communist party activities, had a negative credible fear determination upheld after IJ review despite the clear nexus to a protected ground. After we filed a habeas lawsuit on her behalf, the asylum office reversed its determination. However, had our client not had legal representation, her rubber-stamped IJ credible fear review would have led to her deportation.

10. Even in cases where we are able to represent or otherwise work with asylum seekers, they often do not receive adequate process. For example, we have worked with multiple people who tried to submit new documentation at their IJ credible fear review and were told the IJ would not accept those documents for review.

11. In another example from last year, we represented a woman from Cameroon, who spoke a tribal language and limited English. Her credible fear interview was held in English and, due to the language barrier and the severe trauma she had experienced, she was not able to express all of the harm she experienced. She was given a negative determination and the IJ affirmed that decision. While there theoretically is a pathway to ask the asylum office for a reinterview, when we submitted a significantly documented request, it was denied the next day with a boilerplate letter.

12. And, in an example from this year, we represent a client from Afghanistan. He is Hazara and Shia, but yet was still given a negative credible fear finding, saying he could relocate within Afghanistan. Relocation for someone who is Hazara, in a country controlled by the Taliban, is nonsensical. As the most recent U.S. State Department Human Rights Report for Afghanistan states, "The Hazara, the third largest ethnic group in the country and predominantly Shiite Muslims, bore the brunt of systemic discrimination by the Taliban." The IJ then affirmed that decision. Because our client was in expedited removal, and the process moves so quickly, the credible fear interview and the IJ review both happened before we were even able to meet with him. We are now representing him on a request for a reinterview.

13. In cases where we represent clients in removal proceedings under 8 U.S.C. § 1229a in immigration court, we are able to challenge immigration officers' conduct where our clients have been unlawfully arrested. For example, we have successfully challenged arrests that involved excessive force or racial profiling. For our clients subjected to expedited removal, however, there is no comparable way to challenge government misconduct in those proceedings.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct to the best of knowledge and belief.

Executed on this 5rd day of June 2025 in Tacoma, Washington.

_____
Timothy Warden-Hertz