**Declaration of Stacy Tolchin**

I, Stacy Tolchin, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney licensed to practice law by the State of California. My business address is Law Offices of Stacy Tolchin, 776 E. Green St Suite 210, Pasadena, CA 91101.

2. I am admitted to practice before the United States Supreme Court; the United States Court of Appeals for the Ninth, Tenth, and Second Circuits; the United States District Courts for the Northern District of California, Eastern District of California, Central District of California, and Southern District of California; the United States District Court for New Mexico; and the U.S. Court of Federal Claims.

3. I received my Juris Doctorate from the University of California at Los Angeles in 2001 and have been practicing law for over 23 years.

4. I am a recipient of the American Immigration Lawyers' Association of Southern California Chapter's 2019 Pro Bono Champion Award; University of California at Los Angeles Law School's 2018 Alumni Public Service Award; the National Lawyers Guild of Southern California 2017 annual award; the American Immigration Lawyers Association's 2009 Jack Wasserman Award for Excellence in Immigration Litigation; the 2009 American Civil Liberties Union of Southern California Equal Justice Advocacy Award; the 2008 National Immigration Law Center Annual Award, the 2007 "Unsung Hero" Award for the National Lawyers Guild of the Bay Area; and I was recognized in 2003 by the Arab-American Anti-Discrimination Committee of San Francisco. I have also been named to "Super Lawyers" from 2012-2024.

5. I have represented approximately seven people in expedited removal matters directly, and another approximately ten individuals who have been subject to reinstatement of removal of prior orders of expedited removal or are otherwise in removal proceedings. The following is based on my experiences representing these individuals. I have also represented dozens of noncitizens who were previously in expedited removal proceedings prior to other enforcement actions, and I have reviewed expedited removal orders contained in those clients' immigration files.

6. It has been my experience that expedited removal orders are frequently the result of coercion involving the detention of noncitizens for hours on end, as well as aggressive questioning by officers during the expedited removal process.

7. In addition, while the regulations at 8 C.F.R. § 235.4 provide an opportunity to withdraw an application for admission, in the cases I have seen, officers do not provide applicants for admission with such an option.

8. One case indicative of my clients' experiences with the expedited removal process occurred in 2016. My client entered the United States and was put into expedited removal proceedings.

9. Although regulations at 8 C.F.R. § 235.3(b)(7) require both a Department of Homeland Security officer and supervisory officer to sign the part of a Form I-860 Notice of Expedited Removal Order that serves as an expedited removal order, my client was issued a Form I-860 without either officer's signature on the order.

10. Regulations also require that the recipient of a Form I-860 sign the order, acknowledging receipt. My client did not get the opportunity to sign the Form I-860. In fact, most orders of expedited removal that I have seen do not contain the required signature showing receipt of the order, as set forth in 8 C.F.R. § 235.3(b)(2)(i).

11. Because my client was afraid of returning to Pakistan, he was given a credible fear interview in front of an asylum officer. In that interview, my client explained that his fear was based on the fact that his uncle had tried to kill him because he had converted to Shia Islam and continued to want to kill him. He explained that he had reported the prior attack on him to the police, but because his uncle was friends with the police, that they had done nothing and would not protect him. However, the asylum officer determined that my client did not meet the credible fear threshold.

12. Although regulations require that a supervisory asylum officer sign off on an asylum officer's credible fear determination, no supervisory officer signed off on the decision in my client's case.

13. Although there was still no signed expedited removal order and no final, reviewed credible fear determination, the asylum officer referred my client to an immigration judge for review of the negative credible fear determination.

14. After conducting a brief hearing, the immigration judge issued a finding stating that my client did not establish a significant possibility of persecution. However, the immigration judge made no finding about the possibility my client would face torture if deported, as required by the Convention Against Torture (CAT) and 8 C.F.R. § 1003.42(f). In fact, the immigration judge in this case completed a one-page form that was issued by the Los Angeles immigration court, and the form entirely failed to address the CAT. This leads me to believe that many other individuals who seek credible fear review before immigration judges are not reviewing the required review or decision regarding possible eligibility for protection under the CAT.

15. After I sought both a new credible fear interview and a stay of removal from a federal court, my client was issued a temporary restraining order delaying his removal, and was then provided a new credible fear determination before the asylum office. He was found to have a credible fear and his expedited removal order was rescinded. However, if he had not had my legal representation, my client would have been deported with an expedited removal order after the immigration judge and Department of Homeland officers reviewing his case failed to follow their own regulations. He would have been deported to a country where he faced persecution and torture because of his religion.

16. I also recently had a client from Ukraine who was granted Temporary Protected Status in the United States pursuant to 8 U.S.C. § 1254a, and was also granted travel authorization to leave and return to the United States. However, when she arrived at the airport in the

United States from a trip to France, she was accused of lying on her application for Temporary Protected Status, issued an order of expedited removal, and deported from the United States. I filed a lawsuit in district court to return her to the United States and a motion to reopen the expedited removal order because, by law, Temporary Protected Status recipients must be admitted to the United States, absent narrow exceptions that were not present in the case. Upon filing the lawsuit, the government agreed to facilitate her return to the United States and to reopen and vacate her expedited removal order. Had I not intervened, the client would have remained outside of the United States in violation of the Temporary Protected Status statute.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct to the best of knowledge and belief.

Executed on this 30th day of May 2025, in Pasadena, California.

_____
Stacy Tolchin