BRETT SHUMATE
*Assistant Attorney General*
*Civil Division*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
BRIAN C. WARD
*Acting Assistant Director*
CAROLINE MCGUIRE
ELISSA FUDIM
*Trial Attorneys*
U.S. Department of Justice
Office of Immigration Litigation
General Appeals and Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
caroline.mcguire@usdoj.gov
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAKE THE ROAD NEW YORK, | Case No. 1:25-cv-00190 |
| *Plaintiff*, | Hon. Jia M. Cobb |
| v. | |
| KRISTI NOEM, *et al*., | |
| *Defendants*. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO POSTPONE EFFECTIVE DATE OF AGENCY ACTION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 5

STANDARD OF REVIEW ................................................................................................... 8

ARGUMENT ........................................................................................................................ 9

I.    5 U.S.C. § 705 Does Not Provide a Basis for the Relief Plaintiff Seeks. ........................... 9

a.    Section 1252(f)(1) Bars Jurisdiction to Stay an Agency Action Directing How DHS Will Implement the Rule and Guidance. ..................................................................................... 9

b.    The Court Cannot Stay Agency Action That Has Already Gone Into Effect. .................. 14

c.    The INA Also Does Not Support Granting Plaintiff Preliminary Relief. ......................... 16

II.    Plaintiff Is Unlikely to Succeed on the Merits. .................................................................. 16

a.    Plaintiff's Constitutional and Statutory Claims (Counts 1-3, 6) Are Time-Barred. ..... 17

b.    Make The Road Lacks Associational Standing to Support Count Six. ........................ 20

c.    Plaintiff Make the Road is Outside the Zone of Interests of the Expedited RemovalStatute. ................................................................................................................ 22

d.    The Designation is Committed to Agency Discretion by Law. .................................... 24

e.    Plaintiff's Challenge to the Expedited Removal Designation is Foreclosed by the D.C Circuit *Make the Road* Decision. ................................................................................... 25

f.    Plaintiff is Not Likely to Prevail on the Merits of Its Due Process Claims. ..................... 26

1.    Plaintiff's Members are Entitled to Only the Process Provided by Statute. ..................... 27

2.    Plaintiff's Due Process Claim is Foreclosed by *AILA*, 18 F. Supp. 2d 38 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000). .............................................................................. 29

3. *Mathews* Does Not Apply, And Even If It Did, Does Not Establish A Due Process Violation. ................................................................................................................. 32

g.   Plaintiff Is Unlikely to Prevail on its Claim that the Rule and Guidance Violate the Expedited Removal Statute As Interpreted To Require Adequate Procedures........... 39

h.   Plaintiff Is Unlikely To Prevail On The Merits of Count Two Because The Designation Does Not Violate 8 U.S.C. § 1182(a)(7) (Count Two). .............................................. 42

i.   Claim Six Is Also Unlikely To Succeed On The Merits............................................... 47

III.   Plaintiff Cannot Demonstrate Irreparable Harm or that the Balance of Equities and Public Interest Favor Postponement of Agency Action.............................................. 51

# TABLE OF AUTHORITIES

### Cases

*A.A.R.P. v. Trump,*
   145 S. Ct. 1364 (2025) ........................................................................................... 36

*Abbott v. Perez,*
   585 U.S. 579 (2018) ............................................................................................... 11

*Aberdeen & Rockfish R. Co. v. Students Challenging Regul. Agency Procs.,*
   422 U.S. 289 (1975) ............................................................................................... 13

*Almendarez-Torres v. United States,*
   523 U.S. 224 (1998) ............................................................................................... 43

*Am. Chem. Council v. DOT,*
   468 F.3d 810 (D.C. Cir. 2006) .......................................................................... 20, 21

*Am. Immigration Lawyers Ass'n v. Reno,*
   18 F. Supp. 2d 38 (D.D.C. 1998) ................................................................... *passim*

*American Immigration Lawyers Ass'n v. Reno,*
   199 F.3d 1352 (D.C. Cir. 2000) .................................................................... *passim*

*Animal Legal Def. Fund, Inc. v. Vilsack,*
   111 F.4th 1219 (D.C. Cir. 2024) ........................................................................... 20

*Ark Initiative v. Tidwell,*
   749 F.3d 1071 (D.C. Cir. 2014) ............................................................................ 21

*Biafra v. Blinken,*
   639 F. Supp. 3d 79 (D.D.C. 2022) ........................................................................ 22

*Biden v. Texas,*
   597 U.S. 785 (2022) .......................................................................................... 10, 11

*Brown v. Gilmore,*
   533 U.S. 1301 (2001) ............................................................................................ 13

*Californians v. United States DOE,*
   860 F. Supp. 2d 44 (D.D.C. 2012) ........................................................................ 20

*Carlson v. Landon,*
   342 U.S. 524 (1952) ............................................................................................... 34

*Castro v. DHS*,
    163 F. Supp. 3d 157 (E.D. Pa. 2016) ................................................................. 39

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ................................................... 51, 52, 53

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................ 21, 22

*Clarke v. Secs. Indus. Ass'n*,
    479 U.S. 388 (1987) ............................................................................ 22, 23

*Cronin v. USDA*,
    919 F.2d 439 (7th Cir. 1990) ................................................................... 10

*Cruz v. Dep't of Homeland Sec.*,
    No. 19-CV-2727, 2019 WL 8139805 (D.D.C. Nov. 21, 2019) ................................ 28

*Cruz-Miguel v. Holder*,
    650 F.3d 189 (2d Cir. 2011) ..................................................................... 44

*Ctr. for Biological Diversity v. Regan*,
    597 F. Supp. 3d 173 (D.D.C. 2022) ............................................................ 14

*D&G Holdings v. Burwell*,
    156 F. Supp. 3d 798 (W.D. La. 2016) ......................................................... 9

*Dave v. Ashcroft*,
    363 F.3d 649 (7th Cir. 2004) ..................................................................... 33

*Dugdale v. U.S. CBP*,
    88 F. Supp. 3d 1 (D.D.C. 2015) ................................................................. 18

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ................................................................................. 40

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ................................................................................. 22

*Fed. Express Corp. v. United States DOC*,
    39 F.4th 756 (D.C. Cir. 2022) ................................................................... 43

*Fed'n for Am. Immigration Reform, Inc. v. Reno*,
    93 F.3d 897 (D.C. Cir. 1996) ................................................................... 23

*Fund for Animals v. Frizzell*,
    530 F.2d 982 (D.C. Cir. 1975) ............................................................................ 54

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) .............................................................................. 10, 13, 14

*Guttenberg v. Emery*,
    26 F. Supp. 3d 88 (D.D.C. 2014) ...................................................................... 53

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .......................................................................................... 24

*Huisha-Huisha v. Mayorkas*,
    27 F.4th 718 (D.C. Cir. 2022) .......................................................................... 55

*Hunt v. Washington State Apple Advertising Comm'n*,
    432 U.S. 333 (1977) .................................................................................... 20, 22

*Innovation Law Lab v. McAleenan*,
    924 F.3d 503 (9th Cir. 2019) ............................................................................ 55

*INS v. Legalization Assistance Project of L.A. Cty.*,
    510 U.S. 1301 (1993) .................................................................................. 23, 55

*J. Roderick MacArthur Found. v. FBI*,
    102 F.3d 600 (D.C. Cir. 1996) .......................................................................... 21

*Jama v. Immigr. & Customs Enf't*,
    543 U.S. 335 (2005) .......................................................................................... 49

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) .................................................................................... 40, 43

*Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ...................................................................... 3, 27, 33, 52

*Kucana v. Holder*,
    558 U.S. 233 (2010) .......................................................................................... 38

*Landon v. Plasencia*,
    459 U.S. 21 (1982) ...................................................................................... *passim*

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*,
    104 F.3d 1349 (D.C. Cir. 1997) ...................................................................... 26

*Loper Bright Enterprises v. Raimondo,*
603 U.S. 369 (2024) ................................................................................ 30, 31, 41

*Lopez v. Brewer,*
680 F.3d 1068 (9th Cir. 2012) ............................................................................ 9

*M.M.V. v. Barr,*
456 F. Supp. 3d 193 (D.D.C. 2020) ............................................................ 18, 19

*M.M.V. v. Garland,*
1 F.4th 1100 (D.C. Cir. 2021) ............................................................. 17, 18, 19

*Madsen v. Women's Health Ctr., Inc.,*
512 U.S. 753 (1994) ........................................................................................ 55

*Make the Road N.Y. v. McAleenan,*
405 F. Supp. 3d 1 (D.D.C. 2019) ................................................................ 23, 36

*Make the Road New York v. Wolf,*
962 F.3d 612 (D.C. Cir. 2020) ................................................................. *passim*

*Maryland v. King,*
567 U.S. 1301 (2012) ...................................................................................... 52

*Mathews v. Eldridge,*
424 U.S. 319 (1976) .............................................................................. 26, 32, 33

*Matter of M-D-C-V,*
28 I. & N. Dec. 18 (B.I.A. 2020) ..................................................................... 43

*Middlebrooks v. Godwin Corp.,*
722 F. Supp. 2d 82 (D.D.C. 2010) ................................................................... 47

*Monumental Task Comm., Inc. v. Foxx,*
157 F. Supp. 3d 573 (E.D. La. 2016) ............................................................... 10

*Myers v. United States,*
272 U.S. 52 (1926) .......................................................................................... 52

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell,*
467 F.3d 999 (6th Cir. 2006) ........................................................................... 15

*Nken v. Holder*
556 U.S. 418 (2009) ........................................................................................ 13

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ........................................................................ 23

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*,
  473 U.S. 1301 (1985) ............................................................................................. 15

*Olim v. Wakinekona*,
  461 U.S. 238 (1983) ............................................................................................... 33

*Ortega-Cervantes v. Gonzales*,
  501 F.3d 1111 (9th Cir. 2007) ......................................................................... 43, 44

*Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  878 F.3d 371 (D.C. Cir. 2017) .............................................................................. 16

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................................ 41

*Rai v. Biden*,
  567 F. Supp. 3d 180 (D.D.C. 2021) ...................................................................... 55

*Reno v. Flores*,
  507 U.S. 292 (1993) ................................................................................................. 4

*Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639,
  1996 U.S. App. LEXIS 2324 (D.C. Cir. Jan. 19, 1996) ................................... 14, 15

*Sampson v. Murray*,
  415 U.S. 61 (1974) ............................................................................................. 8, 11

*Scripps-Howard Radio v. Fed. Commc'ns Comm'n*,
  316 U.S. 4 (1942) .................................................................................................. 11

*Sierra Club v. Jackson*,
  833 F. Supp. 2d 11 (D.D.C. 2012) ........................................................................ 10

*Smith v. U.S. CBP*,
  741 F.3d 1016 (9th Cir. 2014) .............................................................................. 45

*Sorenson v. Sec'y of Treasury*,
  475 U.S. 851 (1986) ............................................................................................... 14

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................... 20, 21, 53

vii

*Sure-Tan, Inc. v. N.L.R.B.*,
   467 U.S. 883 (1984) ............................................................................... 23

*Texas v. U.S. Env't Prot. Agency*,
   829 F.3d 405 (5th Cir. 2016) ................................................................. 10

*DHS v. Thuraissigiam*,
   591 U.S. 103 (2020) ...................................................................... *passim*

*Torres v. Barr*,
   976 F.3d 918 (9th Cir. 2020) ................................................................. 46

*Trump v. J.G.G.*,
   145 S. Ct. 1003 (2025) ........................................................................... 36

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) ............................................................................... 20

*United States v. Cortez*,
   449 U.S. 411 (1981) ............................................................................... 55

*United States v. Gambino-Ruiz*,
   91 F.4th 981 (9th Cir. 2024) ...................................................... 44, 46, 47

*United States v. Peralta-Sanchez*,
   847 F.3d 1124 (9th Cir. 2017) ......................................................... 38, 39

*United States v. Quinteros Guzman*,
   No. 3:18-CR-00031-001, 2019 WL 3220576 (W.D. Va. July 17, 2019) ................. 35

*United State v. Texas*,
   599 U.S. 670 (2023) ............................................................................... 23

*United States v. Salerno*,
   481 U.S. 739 (1987) ...................................................................... 9, 32, 43

*United States v. Villarreal Silva*,
   931 F.3d 330 (4th Cir. 2019) ................................................................. 33

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ............................................................................... 12

*Walters v. Nat'l Ass'n of Radiation Survivors*,
   473 U.S. 305 (1985) ............................................................................... 35

*Western Watersheds Project v. Bernhardt,*
   468 F. Supp. 3d 29 (D.D.C. 2020) ........................................................................ 54

*Winter v. NRDC,*
   555 U.S. 7 (2008) .................................................................................................... 9

*Wyoming v. U.S. Dep't of Interior,*
   2018 WL 2727031 (10th Cir. June 4, 2018) ...................................................... 13

*Your Home Visiting Nurse Servs. v. Shalala,*
   525 U.S. 449 (1999) ................................................................................................ 9

## **Statutes**

5 U.S.C. § 701(a)(2) ...................................................................................................... 24

5 U.S.C. § 702 ................................................................................................................. 22

5 U.S.C. § 705 ......................................................................................................... *passim*

8 U.S.C. § 1101(a)(13)(A) ..................................................................................... 43, 45

8 U.S.C. § 1103(a)(3) ..................................................................................................... 30

8 U.S.C. § 1158(a)(1) ..................................................................................................... 48

8 U.S.C. § 1158(a)(2)(B) .......................................................................................... 47, 48

8 U.S.C. § 1158(d)(7) ..................................................................................................... 48

8 U.S.C. § 1182(a)(6)(A) ............................................................................................... 43

8 U.S.C. § 1182(a)(6)(C) ....................................................................................... 6, 7, 49

8 U.S.C. § 1182(a)(7) ............................................................................................. *passim*

8 U.S.C. § 1184(b) .......................................................................................................... 45

8 U.S.C. § 1202(a) .......................................................................................................... 26

8 U.S.C. § 1225 ............................................................................................................... 30

8 U.S.C. § 1225(a) .......................................................................................................... 18

8 U.S.C. § 1225(a)(1) ........................................................................................... 4, 43, 44

8 U.S.C. § 1225(b)(1)(A) ..................................................................................... 3, 27, 48

8 U.S.C. § 1225(b)(1)(C) ....................................................................................... 35, 38, 45

8 U.S.C. § 1225(b)(1)(F) ................................................................................................... 49

8 U.S.C. § 1225(b)(2)(A) .................................................................................................. 49

8 U.S.C. § 1225(b)(l) ........................................................................................................ 48

8 U.S.C. § 1229a .............................................................................................................. 49

8 U.S.C. § 1252(e)(1)(A) .................................................................................................. 16

8 U.S.C. § 1252(e)(1)(B) .................................................................................................. 16

8 U.S.C. § 1252(e)(2) ............................................................................................... 35, 38, 39

8 U.S.C. § 1252(e)(2)(A) .................................................................................................. 49

8 U.S.C. § 1252(e)(3) ........................................................................................................ 17

8 U.S.C. § 1252(e)(3)(A) .................................................................................................. 17

8 U.S.C. § 1252(e)(3)(B) ......................................................................................... 2, 10, 18

8 U.S.C. § 1252(f)(1) ................................................................................................. *passim*

8 U.S.C. § 1158 ......................................................................................................... *passim*

28 U.S.C. § 1253 ............................................................................................................... 13

**Rules**

Fed. R. Civ. P. 15(a)(1) ..................................................................................................... 47

Fed. R. Civ. P. 65(c) ........................................................................................................ 55

**Regulations**

8 C.F.R. part 208 ........................................................................................................... 4, 8

8 C.F.R. § 208.14(c) .......................................................................................................... 50

8 C.F.R. § 235.3(b) ........................................................................................................... 50

8 C.F.R. § 235.3(b)(2)(i) .............................................................................................. 35, 36

8 C.F.R. § 235.3(b)(5) ........................................................................ 35, 38, 50

8 C.F.R. § 235.4 .............................................................................................. 45

8 C.F.R. § 208.30 ............................................................................................ 38

8 C.F.R. § 235.3 .............................................................................................. 27

8 C.F.R. § 235.3(b)(4) .................................................................................. 3, 38

90 Fed. Reg. 8139 (Jan. 24, 2025) ........................................................ *passim*

## Other Authorities

*§ 208.14--Approval, Denial, Referral, or Dismissal of Application*,
    65 Fed. Reg. 76121 (Dec. 6, 2000) ........................................................ 50

*Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal*,
    87 Fed. Reg. 16,022 (Mar. 21, 2022). ...................................................... 6

*Designating Aliens for Expedited Removal*,
    90 Fed. Reg. 8139 (Jan. 24, 2025) .................................................. *passim*

Proclamation No. 14,159,
    90 Fed. Reg. 8443 (Jan. 20, 2025) ...................................................... 6, 52

67 Fed. Reg. ..................................................................................................... 19

69 Fed. Reg. 48 ................................................................................................ 19

82 Fed. Reg. 4902 ........................................................................................... 19

H.R. Rep. No. 104-469 .................................................................................... 39

## INTRODUCTION

This belated request for preliminary relief arises from a single advocacy group's effort to halt, nationwide, the then-Acting Secretary of Homeland Security's discretionary decision to apply expedited removal to inadmissible aliens to the fullest extent authorized by Congress. 8 U.S.C. § 1225(b)(1)(A)(iii); *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025) (the 2025 designation). But Congress explicitly committed this decision to the Secretary's "*sole and unreviewable discretion*," 8 U.S.C. § 1225(b)(1)(A)(iii)(I) (emphasis added). "Sole and unreviewable discretion" means just that—the Secretary's discretion is not subject to judicial review. Plaintiff's substantive and procedural challenges to this expedited removal designation are thus foreclosed by the statutory terms as confirmed by the text of § 1225(b)(1). And if the plain text left any doubt as to reviewability here, binding D.C. Circuit precedent mandates the result that the statutory text inexorably already required: Plaintiff's challenge is barred. Plaintiff's application is also foreclosed on threshold grounds, including the statute of limitations, under 8 U.S.C. § 1252(f)(1), and because Plaintiff is outside the zone of interests protected by § 1225(b)(1).

In 1996, Congress enacted the expedited removal provision in § 1225(b)(1)—a mechanism for swiftly removing certain aliens from the United States without a hearing before an immigration judge. Since then, the Attorney General or the Secretary of Homeland Security has had, in their "*sole and unreviewable* discretion," the authority to "designate" as subject to expedited removal certain classes of inadmissible aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii) (emphasis added). The D.C. Circuit upheld the constitutionality and legality of the expedited removal statute long ago in *American Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 199 F.3d 1352 (D.C. Cir. 2000).

1

In keeping with the statute, on January 21, 2025, the then-Acting DHS Secretary designated as subject to expedited removal certain aliens encountered anywhere in the United States within two years of illegally crossing the border. *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). Rejecting a nearly identical lawsuit brought by, *inter alia*, Make The Road, the D.C. Circuit previously concluded that the provision providing that the Secretary has "sole and unreviewable discretion" to expand expedited removal "at any time" precludes challenges to the exercise of that discretion under the Administrative Procedure Act (APA). *Make the Road New York v. Wolf*, 962 F.3d 612, 633-36 (D.C. Cir. 2020). Despite the plain statutory text and two binding Circuit decisions affirming the Secretary's broad authority to designate aliens for expedited removal, Plaintiff now asks this Court to relitigate—on an expedited basis—the long-settled legality of the expedited removal scheme, enjoin it nationwide, and block the then-Acting Secretary's 2025 Designation. This Court should deny that extraordinary request.

To begin, Plaintiff's motion to postpone the effective date of the 2025 Designation is barred by 8 U.S.C. §§ 1252(f)(1) and 1252(e)(1), and it cannot be filed where the action Plaintiff seeks to stay has already taken effect. Plaintiff's claims are also not justiciable, and thus are unlikely to succeed on the merits. Make the Road New York, the only Plaintiff seeking this relief, never explains how the 2025 designation "injures" it as an organization, explains how the 2025 designation implicates its legally protected interests, or articulates a basis for associational standing as to Count Six. Moreover, Plaintiff's statutory and APA challenges to the procedures implementing expedited removal—procedures that have been in place for nearly 27 years—are time-barred by 8 U.S.C. § 1252(e)(3)(B). *Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 46-47 (D.D.C. 1998), *aff'd*, 199 F.3d 1352. This provision erects a 60-day statute of limitations and Plaintiff's claims are thus time-barred. *Id.* On top of that, Plaintiff's APA claims are not viable because "there is no

cause of action under the APA to scrutinize the Secretary's designation decision so long as it falls within statutory and constitutional bounds." *Make the Road*, 962 F.3d at 635. Because the Secretary's authority is "committed to agency discretion by law," "there is no cause of action to evaluate the merits of the Secretary's judgment under APA standards." *Id.* at 633–34. Thus, all of Plaintiff's claims are foreclosed by Circuit precedent.

Even if the Court reaches the merits, Plaintiff's claims still fail. *First*, Plaintiff contends the 2025 designation violates the INA and the Due Process Clause (Counts [[One and Three]]). But the D.C. Circuit already upheld the legality of the expedited removal statute and its implementing regulations as applied to aliens lacking "substantial connections with the United States." *AILA*, 18 F. Supp. 2d at 58-60, *aff'd*, 199 F.3d at 1357. The reasoning there—that Congress determines what process governs admission to the country—applies fully here: Then, as now, "[w]hatever the procedure authorized by Congress is, it is due process," *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)), because "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application," *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Congress has determined that, as a class, certain inadmissible aliens unlawfully present for less than two years prior to the date of the determination of inadmissibility are entitled only to the procedures provided by the expedited removal statute before they may be removed. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). That satisfies the Due Process Clause. And the statute and its implementing regulations adequately safeguard any due-process rights that such aliens may have as a class with respect to aliens who indicate an intention to apply for asylum or a fear of return or of persecution or torture. 8 U.S.C. § 1225(b)(1)(A), (B); 8 C.F.R. §§ 235.3(b)(4), 208.30, 1003.42, 1208.30. Plaintiff thus cannot "establish that no set of circumstances exists under which the [statute and its implementing

3

regulations] would be valid" on either "constitutional" or "statutory" grounds. *Reno v. Flores*, 507 U.S. 292, 301 (1993). As such, their facial challenge fails.

*Second*, Plaintiff's Count [[Two]] contends that the 2025 designation exceeds the Secretary's authority because it permits application of 8 U.S.C. § 1182(a)(7)—which renders inadmissible aliens lacking entry documents "at the time of their application for admission"—to aliens other than at the moment they seek "entry into the country." Am. Compl. ¶¶ 110–13 ("ECF No. 27"). That is wrong. An alien is statutorily deemed to apply for admission to this country at the border *or* after crossing it illegally, which necessarily means that when an alien who entered without admission or parole is later inspected by an immigration officer, he is an applicant for admission. 8 U.S.C. § 1225(a)(1). Section 1225(b)(1) then allows for the expedited removal of *any* alien "described in" § 1225(b)(1)(A)(iii)(II), as designated by the Secretary—that is, any alien not "admitted or paroled into the United States" and "physically present" fewer than two years—who is inadmissible under § 1182(a)(7) at the time of "inspection." Whether that happens at a port of entry or after illegal entry is irrelevant—what matters is whether, when an officer inspects an alien for admission under § 1225(a)(3), that alien lacks entry documents and so is subject to §1182(a)(7). Thus, the designation lawfully applies to aliens who crossed illegally, since they were not previously inspected. To hold otherwise would reward such aliens for their illegal entry and significantly limit the operation of the expedited removal scheme.

*Finally*, Plaintiff's Count Six alleges that "[t]he INA and its implementing regulations do not permit the expedited removal of noncitizens who entered without inspection and have filed affirmative asylum applications" for asylum "with USCIS." Am. Compl. ¶¶ 125-28. But none of the statutory or regulatory provisions they cite, 8 U.S.C. §§ 1158, 1225(b)(1)(A), and 8 C.F.R. part 208, support their assertion that a pending affirmative asylum application exempts individuals

from expedited removal. Indeed, Congress knows how to exempt aliens with certain immigration statuses from expedited removal and did not exempt those with pending affirmative asylum applications. Plaintiff thus cannot succeed on the merits of this claim.

Plaintiff also cannot demonstrate irreparable harm or that the balance of equities and/or the public interest favors it, as it must show to warrant preliminary relief. Plaintiff waited five months to lodge this emergent request, despite the fact that this administration has fully enforced the immigration laws, including using expedited removal, since Plaintiff filed its Complaint. And aliens who are subject to expedited removal have no right to remain in the United States, and their interest in remaining here in contradiction to the policies set for the by Congress and the President are not cognizable. Moreover, the United States and the public would be harmed by halting expedited removal procedures as applied to aliens subject to the 2025 Designation. Indeed, the Executive has a paramount sovereign interest in maintaining the integrity of our borders, in enforcing the immigration laws, and in ensuring that immigration cases can be adjudicated swiftly. Accordingly, the Court should deny Plaintiff's request for preliminary relief because they cannot establish any of the prongs to warrant it.

## BACKGROUND

*Legal Background*.[1] Congress authorized the Department of Homeland Security (DHS) to expeditiously remove from the United States, without a hearing before an immigration judge, certain inadmissible aliens who arrive at ports of entry or who recently entered the country unlawfully. 8 U.S.C. § 1225(b)(1). Under this expedited removal process, an alien "who is arriving in the United States" who an immigration officer determines lacks valid entry documentation or makes

---

[1] Defendants respectfully refer the Court to their motion to dismiss for the full legal background of expedited removal, including information on all prior designations. ECF No. 36 at 5–10.

a material misrepresentation shall be "order[ed] … removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *id.* § 1182(a)(6)(C), (a)(7). Congress delegated authority to the Executive Branch to apply expedited removal beyond those just arriving in the United States at a port of entry. The Secretary "may … designate[]" certain classes of inadmissible, unlawfully present  aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" as subject to expedited removal, and that designation "shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii).

*2025 Designation.* The Secretary (and earlier, the Attorney General) has designated aliens for expedited removal under section 1225(b)(1)(A)(iii) on five occasions. Prompted by Executive Order 14159, *Protecting the American People from Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025), on January 24, 2025, the Acting Homeland Security Secretary published a Federal Register notice rescinding the 2022 Rescission Notice, 87 Fed. Reg. 16,022, and restoring the expedited removal scope to "the fullest extent authorized by Congress." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). The notice enabled DHS "to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under [8 U.S.C. § 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," who were not covered by prior designations. *Id.* at 8139-40.

The notice explained that this action aimed to "enhance national security and public safety—while reducing government costs—by facilitating prompt immigration determinations"

and would "enable DHS to address more effectively and efficiently the large volume of aliens who are present in the United States unlawfully … and ensure the prompt removal from the United States of those not entitled to enter, remain, or be provided relief or protection from removal." *Id.* at 8139. On January 23, 2025, the then-Acting Secretary published an internal memorandum entitled, "Guidance Regarding How to Exercise Enforcement Discretion," explaining "how to exercise enforcement discretion in implementing these policies." Memorandum from Benjamine C. Huffman, Acting Secretary to [Senior DHS Officials] re *Interim Policy Changes Regarding Charging, Sentencing, And Immigration Enforcement* (Jan. 23, 2025) ("Huffman Memo"). The Huffman Memo instructs immigration enforcement to take "all steps necessary to review [an] alien's case" to evaluate and consider whether individuals should be placed into expedited removal. *Id.* Moreover, the memo prompts consideration of, *inter alia*, "aliens eligible for expedited removal who failed to apply for asylum within the statutory deadline." *Id.* (citations omitted). Finally, the memo directs that "[t]he actions contemplated by this memorandum shall be taken in a manner consistent with applicable, statutes, regulations, and court orders." *Id.*

 ***This Lawsuit.*** On January 22, 2025, Plaintiff, Make the Road, filed this suit seeking to invalidate the 2025 designation. On March 21, 2025, Plaintiff amended its complaint, adding parties and claims. ECF Nos. 25–28. *First*, Plaintiff included two Doe Defendants who they allege were placed in expedited removal proceedings and removed to Mexico on January 28, 2025. Am. Compl. ¶¶ 12, 13, 105. Plaintiff likewise incorporated allegations of four Make the Road members: all of whom  entered the country illegally, are not in removal proceedings, and do not have final orders of removal. *Id.* ¶¶ 98–101. One of these individuals allegedly filed an affirmative asylum application with USCIS, which remains pending. *Id.* ¶ 99. *Second*, Plaintiff realleges that the designation (1) violates the Fifth Amendment Due Process Clause (Count 1), *id.* ¶¶ 107–09, (2)

unlawfully extends expedited removal authority to individuals in the United States interior "who have been physically present for up to two years based on a determination that they are inadmissible under 8 U.S.C. § 1182(a)(7)," (Count 2), *id.* ¶¶ 110–13, (3) violates the INA because the statute does not "provide minimal procedures to persons faced with expedited removal," (Count 3), *id.* ¶¶ 114–16, (4) violates the APA because it is arbitrary and capricious, (Count 4), *id.* ¶¶ 117–18, and (5) was improperly issued without notice-and-comment rulemaking, (Count 5), *id.* ¶¶ 119–24. Plaintiff added a claim under 8 U.S.C. §§ 1158, 1225(b)(1) and 8 C.F.R. part 208, alleging that expedited removal should not be expanded to aliens with affirmative asylum applications. *Id.* ¶¶ 125–28 (Count 6). Plaintiff integrated claims about the Huffman Memo into Counts One, Three, and Four. *Id.* ¶¶ 23, 107, 114–18. The parties fully briefed Defendants' motion to dismiss on May 21, 2025, which is now pending before this Court. ECF Nos. 37, 44, 46. Notwithstanding, approximately five months after initiating this case, Plaintiff now lodges a motion to postpone the effective date of the agency action under 5 U.S.C. § 705. ECF No. 50. Plaintiff argues this relief is warranted because it is likely to succeed on the merits of its due process claims (Counts 1 and 3). Plaintiff likewise argues it will prevail on its allegations that the 2025 Designation is inapplicable to those with pending affirmative asylum applications (Count 6), or those individuals in the interior (Count 2). *Id.* at 13–40. Plaintiff claims it will suffer irreparable harm if the 2025 Designation remains in effect, and that the public interest and balance of equities favors pausing it. *Id.* at 41–44. Plaintiff does not premise their motion on either Count 4 (arbitrary and capricious) or on Count 5 (notice and comment process). Only Plaintiff Make the Road brings this motion. *Id.* at 2 n.1.

## STANDARD OF REVIEW

The standards of review for relief under 5 U.S.C. § 705 is the same as for preliminary injunctions. *See Sampson v. Murray*, 415 U.S. 61, 80 (1974). Preliminary injunctions are "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). To obtain relief, a party must show "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  To prevail on a facial claim, plaintiff "must establish that no set of circumstances exists under which the [challenged action] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

## ARGUMENT

**I.      5 U.S.C. § 705 Does Not Provide a Basis for the Relief Plaintiff Seeks.**

### a.  Section 1252(f)(1) Bars Jurisdiction to Stay an Agency Action Directing How DHS Will Implement the Rule and Guidance.

The relief Plaintiff seeks would have the effect of enjoining or restraining DHS's implementation of Section 1225 and is thus barred by 8 U.S.C. § 1252(f)(1). Invoking 5 U.S.C. § 705, Plaintiff asks this Court to "postpone" implementation of the 2025 Designation and its implementing guidance. *See* Pl. Mot. at 13. Section 705 provides that where a rule has not yet become effective, and "an agency finds that justice so requires," it may postpone the effective date of action taken by it, pending judicial review," and that:

> [o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

However, "Section 705 of the APA is not an independent grant of subject matter jurisdiction," and the "Supreme Court has stated that the APA does not provide a mechanism to override the jurisdictional requirements of" more specific statutes that govern review of a particular agency's actions. *D&G Holdings v. Burwell*, 156 F. Supp. 3d 798, 811 (W.D. La. 2016) (citing *Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S. 449, 457-58 (1999)).

Section 1252(f)(1) is such a provision. Section 1252(f)(1) provides: "*Regardless of the nature of the action or claim* or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter … other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). The Supreme Court held that Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)). Section 1225(b) is one of the statutory provisions covered by Section 1252(f)(1). *Id.* Section 1252(f)(1) thus eliminates the Court's authority to issue coercive orders restraining implementation of Section 1225.

A court order postponing agency action under Section 705 is such a coercive order. Such an order would "restrain" the agency's actions with respect to how it will implement 8 U.S.C. § 1225(b)(1)(A)(iii), and is thus analogous to a preliminary injunction in that an order under Section 705 purports to maintain the status quo pending resolution of the merits. 5 U.S.C. § 705 (referencing "preserv[ation of] status or rights"). Indeed, Courts routinely note that the standard for a Section 705 stay "is the same as the standard for issuance of a preliminary injunction." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 586 (E.D. La. 2016), *aff 'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017); *see, e.g.*, *Texas v. U.S. Env't Prot. Agency*, 829 F.3d 405, 424 (5th Cir. 2016); *Cronin v. USDA*, 919 F.2d 439, 446 (7th Cir. 1990); *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 19 (D.D.C. 2012). And here, an order under section 705 postponing the effective date of the 2025 Designation "order[s] federal officials to take

or to refrain from taking actions to enforce, implement, or otherwise carry out" the 2025 Designation. *Texas*, 597 U.S. at 797; *see* Injunction, Black's Law Dictionary (12th ed. 2024) (defining injunction as "[a] court order commanding or preventing an action"). Thus, Plaintiff's requested stay calls for an identical analysis as a preliminary injunction. Likewise, section 705 does not create a distinct remedy from an injunction, or any new remedies beyond the traditional equitable relief that existed at the time of the APA's passage. Even if Plaintiff could show a pre-APA tradition of courts of appeals staying agency *orders* challenged in special statutory review proceedings, *Scripps-Howard Radio v. Fed. Commc'ns Comm'n*, 316 U.S. 4, 16-17 (1942), Plaintiff has not identified any pre-APA historical tradition of *district* courts staying agency *policies*.

There is no evidence that when Congress adopted Section 705 it intended to expand preexisting authority by allowing district courts to enjoin agency policies. Instead, Congress simply codified existing equitable remedies. Section 705 allows a court to issue only that "process" that is "necessary and appropriate." And the Supreme Court long ago concluded that "[t]he relevant legislative history of that section … indicates that it was primarily intended to reflect existing law" permitting appeals courts to stay certain agency actions pending direct review authorized by statute in the same manner that appellate courts can, in certain circumstances, stay a district court decision pending appeal. *Sampson*, 415 U.S. at 68 n.15; *see Scripps-Howard Radio*, 316 U.S. at 9-10 ("It has always been held … a federal court can stay the enforcement of a judgment pending the outcome of an appeal"). Section 705 was not intended "to fashion new rules of intervention for District Courts." *Sampson*, 415 U.S. at 68 n.15. Section 705 thus does not create any remedies distinct from traditional equitable relief. *Abbott v. Perez*, 585 U.S. 579, 595 (2018) ("[W]e have not allowed district courts to shield their orders from appellate review by avoiding the label injunction.") (cleaned up).

11

The Senate Report prepared in advance of the APA's enactment explains that the "first sentence" of Section 705—relating to an agency's authority to postpone the effective date of a rule—simply "states existing law," while the "second sentence may be said to change existing law *only* to the extent that the language of the opinion in *Scripps-Howard* … may be interpreted to deny to reviewing courts the power to permit an applicant for a renewal of a license to continue to operate as if the original license had not expired, pending conclusion of the judicial review proceedings." S. Rep. No. 79-752, at 44 (1945), *reprinted in* GPO, Administrative Procedure Act: Legislative History, 1944-46, at 230 (1946), *available at* www.justice.gov/sites/default/files/jmd/legacy/2014/03/20/senaterept-752-1945.pdf. The House Report separately noted that relief under Section 705 requires a "proper showing" of the traditional prerequisites for relief. H.R. Rep. No. 79-1980, at 43-44 (1946), *reprinted in* GPO, Administrative Procedure Act: Legislative History, 1944-46, at 277-78 (1946).

The Attorney General's Manual on the APA further supports the conclusion that Section 705 does not create any new remedies. The Supreme Court has accorded deference to this manual because it was issued contemporaneously with passage of the APA and because of the "role played by the Department of Justice in drafting the legislation." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 546 (1978). The Manual explains that "[t]he provisions of section 10 [the APA's judicial review provisions] constitute a general restatement of the principles of judicial review embodied in many statutes and judicial decisions," and "generally leave[] the mechanics of judicial review to be governed by other statutes and by judicial rules." U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 93 (1946). Referring to Section 705, the Manual emphasizes that the "general procedural provisions governing the issuance of preliminary injunctions . . . appear to be applicable to the exercise of the power conferred

12

by that subsection." *Id.* at 107. Thus, the text, context, legislative history, sources contemporary to the APA's passage, and relevant case law all show that Section 705 does nothing more than preserve traditional equitable relief—relief that is barred here by Section 1252(f)(1).

Plaintiff does not ask this Court for an order on an *agency adjudication* pending judicial review of that adjudication. It asks this Court to "prevent" the government from implementing its chosen "course of action" with respect to 8 U.S.C. § 1225(b)(1)(A)(iii). *See Aleman Gonzalez*, 596 U.S. at 549 (orders requiring government to "refrain from actions that (again in the Government's view) are allowed" by a covered provision are barred by Section 1252(f)). Such an order, even if labeled a stay, is injunctive in effect and prohibited by Section 1252(f)(1). *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers) ("[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute"); *Wyoming v. U.S. Dep't of Interior*, 2018 WL 2727031, at *1 (10th Cir. June 4, 2018) ("[t]he district court's 'stay' effectively enjoins enforcement of the Rule"). Indeed, the *Nken v. Holder* Court explained that "[a] stay 'simply suspends *judicial alteration of the status quo*, while injunctive relief *grants judicial intervention*" in the first instance. 556 U.S. 418, 429 (2009).[2]

Regardless, even if the Court otherwise concluded that a stay here does not "enjoin" operation of the 2025 Designation under *Nken*, Section 1252(f)(1) is broader than Section 1252(f)(2), given that it strips courts of jurisdiction to "enjoin *or restrain* the operation" of the covered

---

[2] The Supreme Court has likewise accorded a broad interpretation to terms such as "injunction" in other statutes. For example, the Court interpreted a statute conferring appeal jurisdiction from an "*injunction* in any civil action ... required ... to be heard and determined by a district court of three judges," 28 U.S.C. § 1253 (emphasis added), to apply to orders with a "coercive ... effect." *Aberdeen & Rockfish R. Co. v. Students Challenging Regul. Agency Procs.*, 422 U.S. 289, 307 (1975). In so concluding, the Court commented that it had "repeatedly exercised jurisdiction under [the provision] over appeals from orders ... not cast in injunctive language but which by their terms simply 'set aside' or declined to 'set aside' orders of the [agency]." *Id.* at 308 n.11.

provisions, rather than just prohibiting enjoining individual removal orders. 8 U.S.C. § 1252(f)(1). As the *Aleman* Court held, to "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989); Webster's Third New International Dictionary, at 1936. An order preventing the 2025 Designation from remaining in effect would prevent or stop its operation, and so constitutes an order "restraining" federal officials "from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Aleman Gonzalez*, 596 U.S. at 550. Notably, Plaintiff provides zero explanation for seeking a stay, rather than a preliminary injunction. The only discernable reason for this gamesmanship is to avoid the consequences of 8 U.S.C. § 1252(f)(1). Thus, 8 U.S.C. § 1252(f)(1) bars Plaintiff's application because it is indistinguishable from an injunction, and because the Court lacks jurisdiction to grant any other relief that restrains DHS's implementation of § 1225(b).

    **b. The Court Cannot Stay Agency Action That Has Already Gone Into Effect.**

    Even if the Court finds that Section 1252(f) does not apply, Section 705 by its own terms does not authorize a postponement of the 2025 Designation and its implementing guidance. Courts construing Section 705 have concluded that the phrase "postpone the effective date" of an agency action authorizes the "postpone[ment of] the effective date of *a not yet effective rule*, pending judicial review," but not suspension of a rule that is already in effect. *See, e.g.*, *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996); *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 204 (D.D.C. 2022). While these cases address an agency decision to "postpone the effective date," Section 705 uses identical language when referring to "the reviewing court ... postpon[ing] the effective date of an agency action." The use of an identical phrase in the first and second sentences of Section 705 must be presumed to be intentional. *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory

construction assumes that identical words used in different parts of the same act are intended to have the same meaning."). Given its plain meaning, the language in Section 705 allowing a court or agency to "postpone the effective date" can only be read to mean that the statute allows the court "to put off until a future time," "defer," or "delay" the "operative" date of the agency action. *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/postpone (last visited June 12, 2025) (defining "postpone" as "to put off to a later time: defer"); *see also* Postpone, Black's Law Dictionary (2d. Ed.) (defining "postpone" as "To put off; defer; delay; continue[.]"). One cannot "defer" or "put off" an action that has already occurred. Thus, it would be perverse to interpret the statute as permitting the issuance of a stay after the operative date of the 2025 Designation (here, January 21, 2025) has passed. 90 Fed. Reg. 8139 (Jan. 24, 2025). Thus, there is no plausible basis for Plaintiff to argue that the 2025 Designation decision is "not yet effective." *Safety-Kleen Corp.*, 1996 U.S. App. LEXIS 2324, at *2-3.

Finally, the fact that Section 705 is disjunctive, permitting reviewing courts to "postpone the effective date of an agency action *or* to *preserve status or rights* pending conclusion of the review proceedings" (emphasis added), cannot change this result. That second clause is subject to the same temporal limitation as the first clause for the simple reason that the status quo, once a rule goes into effect, is that the rule is in effect. An order staying a rule or policy after it goes into effect does not preserve, but alters, the status quo. *See Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) (explaining an order "preventing the implementation of new regulations" would "disturb[]" rather than preserve "the status quo"); *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305 (1985) (explaining that had the district court issued an order stopping rule from taking effect, that would

alter the "status quo"). Here, the status quo is that the 2025 Designation is operative and the expedited removal authority has been expanded to the fullest extent authorized by Congress.

### c. The INA Also Does Not Support Granting Plaintiff Preliminary Relief.

Section 1252(e)(1) provides that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." As to section 1252(e)(3), the sole remedy authorized is a "determination[]" on the *merits* of "whether [section 1225(b)], or any regulation issued to implement such section, is constitutional" or "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." However, section 1252(e)(3) does not provide for any *interim* relief premised on such a determination. Congress authorized litigation "by, and only by, aliens against whom the new procedures had been applied," *AILA*, 199 F.3d at 1360, but did not authorize any preliminary relief or any "declaratory, injunctive, or other equitable relief" preventing the application of such procedures to other aliens during the course of litigation. 8 U.S.C. § 1252(e)(1)(A). Congress also barred class actions in 8 U.S.C. § 1252(e)(1)(B), providing further evidence that Congress intended to limit broad relief like Plaintiff seeks in the stay motion.

## II.    Plaintiff Is Unlikely to Succeed on the Merits.

Plaintiff is unlikely to succeed on the merits of its claims because multiple threshold issues bar the Court from even reaching them. *See Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 375 (D.C. Cir. 2017) ("A plaintiff unlikely to have standing is *ipso facto* unlikely to succeed, and when the plaintiff is unlikely to succeed, 'there is

no need to consider the remaining factors'[.]") (internal citations omitted). First, as articulated in Defendants' motion to dismiss, Plaintiff's claims are time-barred pursuant to 8 U.S.C. § 1252(e)(3), they lack standing to advance certain claims, their claims are outside the zone of interests of the expedited removal statute, and the 2025 Designation is committed to agency discretion by law. Moreover, their lawsuit is precluded by binding D.C. Circuit precedent.

### a. Plaintiff's Constitutional and Statutory Claims (Counts 1-3, 6) Are Time-Barred.

Plaintiff's motion is anchored in their Counts One through Three and Six. But any jurisdiction this Court possesses to review the 2025 Designation (and those Counts in particular) is circumscribed by the terms of 8 U.S.C. § 1252(e)(3), which has a strict 60-day time limitation on challenges to the expedited removal system. *Make the Road*, 962 F.3d at 626 (holding that if jurisdiction exists for "judicial review 'relating to section 1225(b)(1),'" it exists only "as provided in subsection (e)"). Section 1252(e)(3), entitled "Challenges on validity of the system," authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation" in D.C. district court. 8 U.S.C. § 1252(e)(3)(A). Such review is "limited to determinations of—(i) whether [section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." *Id.* Suits "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure … is first implemented." *Id.* § 1252(e)(3)(B); *M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021); *AILA*, 18 F. Supp. 2d at 47, *aff'd*, 199 F.3d 1352. That means the 60-day requirement runs "from a fixed point," rather "from the date of application of [the challenged procedures] to a particular alien." *M.M.V.*, 1 F.4th at 1109. Under this provision, the Court lacks jurisdiction over Counts One through Three, and Six.

Plaintiff's claims pursuant to Fifth Amendment Due Process (Count 1), 8 U.S.C. § 1182(a)(7) (Count 2), 8 U.S.C. § 1225(a), (b)(1) (Count 3), and 8 U.S.C. §§ 1158, 1225(b)(1) (Count 6) are time-barred because each count challenges features of the procedures implementing expedited removal that have been in place since the statute's adoption decades ago. 8 U.S.C. § 1252(e)(3)(B). As the D.C. Circuit has affirmed, the "60–day requirement is jurisdictional rather than a traditional limitations period." *AILA*, 18 F. Supp. 2d at 47, *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000). This "jurisdictional time limit does not begin to run when a written policy is applied in a particular geographical region or to particular individuals[] … the sixty days begins upon 'first implementation,' that is, the first date the policy became effective." *M.M.V. v. Barr*, 456 F. Supp. 3d 193, 220 (D.D.C. 2020), *aff'd sub nom. M.M.V. v. Garland*, 1 F.4th 1100, 1109–11 (D.C. Cir. 2021). That is because a *jurisdictional* time limit, as opposed to a traditional time limit, is not subject to exceptions such as tolling, estoppel, and waiver. *Id.* at 1109.

Counts One through Three allege that the 2025 Designation is unlawful because it does not provide for additional procedures on top of those already in place. Am. Compl. ¶¶ 107–16. Those claims, although framed in terms of challenging the 2025 Designation, in fact challenge the existing regulations and policies implementing expedited removal, because these claims assert that those existing statutory and regulatory provisions fail to provide "meaningful process." *Id.* ¶¶ 102, 108–109. But the bases for these challenges—the statute and its implementing regulations—arose decades ago, not at the time of the 2025 designation. *AILA*, 199 F.3d at 1354 (acknowledging that expedited removal procedures of IIRIRA were implemented in 1996); *Dugdale v. U.S. CBP*, 88 F. Supp. 3d 1, 8 (D.D.C. 2015) (rejecting a constitutional due process challenge to the expedited removal system because "[a]s the REAL ID Act was passed in May 2005, the 60-day limit on review has long since expired"), *aff'd* 672 F. App'x 35 (D.C. Cir. 2016).

Count Two also is time-barred against a different benchmark: it purports to challenge the 2025 Designation's application to certain aliens unlawfully in the United States who are inadmissible under section 1182(a)(7). Am. Compl. ¶¶ 110–13. But Congress gave the Secretary that authority 27 years ago. *See* 8 U.S.C. § 1225(b)(1)(A)(iii). Congress was clear when it articulated that "an alien … who is arriving in the United States *or is described in clause (iii)*"—that is, present for less than two years—and "*is inadmissible under* section 1182(a)(6)(C) or *1182(a)(7)* of this title," shall, unless they apply for asylum, be "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added). The government has implemented section 1225(b)(1) by applying section 1182(a)(7) to certain aliens unlawfully in the United States since at least 2002.[3] 67 Fed. Reg. 68,923, 69 Fed. Reg. 48,877, 82 Fed. Reg. 4902.

Plaintiff may complain that the statute of limitations should be rejected because it would never permit judicial review. *See* ECF No. 44 at 11. But the District Court in *M.M.V.* rejected this very argument, which the D.C. Circuit later affirmed. *M.M.V.*, 456 F. Supp. 3d at 223 n.17 ("While it is undeniable that these competing jurisdictional principles put plaintiffs in a bind … ripeness and mootness are principles affecting subject matter jurisdiction under Article III, and the sixty-day period is a firm legislative limitation on the Court's power to act that the Court has no equitable power to circumvent, even as new sets of migrants are subjected to the harshness of its terms."), *aff'd*, *M.M.V. v. Garland*, 1 F.4th at 1109–11. The limits that Congress set under § 1252 are a question for the legislative branch, not this one. *AILA*, 199 F.3d at 1363 ("[T]he organizational plaintiffs reply that 'under the construction of the 60-day limit adopted by the district court,

---

[3] Similarly, since 2002, expedited removal has applied to unlawfully present aliens who, by virtue of their presence, were in a position to file affirmative asylum applications. Thus, Plaintiff's Count Six is also time-barred because it could have been raised when DHS first implemented this authority.

for…aliens arriving after June 1, 1997, there is no possibility of bringing a challenge at all.' True enough. But this is precisely what Congress intended.") (internal citation omitted). Thus, Plaintiff's challenge in 2025 to these long-standing statutes and regulations is untimely.

### b. Make The Road Lacks Associational Standing to Support Count Six.[4]

Plaintiff cannot establish associational standing to move forward on Count Six, because they do not identify any individual in this lawsuit that has suffered from an alleged "injury" or has standing to raise it. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (Plaintiff organization must show "*at least one identified member* had suffered or would suffer harm." (emphasis added)); *Californians v. United States DOE*, 860 F. Supp. 2d 44, 48 (D.D.C. 2012) (same).

For an organization to sue on behalf of its members via associational standing, it must demonstrate: "(1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)); *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1225 (D.C. Cir. 2024) (same). An organization must name its participating members so Defendants may confirm whether Plaintiff has met its burden of proof for standing. *Californians*, 860 F. Supp. 2d at 48 ("Rather, the organization must name at least one member who has suffered the requisite harm."). Where an organization fails to identify "*at least one identified member* had suffered or would suffer harm," it lacks associational standing. *Summers*, 555 U.S. at 498 (emphasis added); *Am. Chem. Council v. DOT*, 468 F.3d 810, 820 (D.C. Cir. 2006). Without that information, "how is the court to assure

---

[4] Defendants preserve their argument regarding organizational standing, which is more thoroughly explained in Defendants' motion to dismiss. *See* ECF No. 36 at 11–14.

itself" that an association has any members or confirm that any one of those members meet the prerequisites for standing? *Summers*, 555 U.S. at 499.

Here, Plaintiff's pleadings undercut any claim to associational standing. In their Sixth Claim, Plaintiff alleges that "[t]he INA and its implementing regulations do not permit the expedited removal of noncitizens who entered without inspection and have filed affirmative asylum applications with USCIS." Am. Compl. ¶¶ 125–28. But Plaintiff has not named "one *specifically-identified member* [who] has [allegedly] suffered an injury-in-fact" by name with respect to Count Six. *Am. Chem. Council*, 468 F.3d at 820 (emphasis added). Instead, they articulate facts about a Doe member [John Doe 2] who is "not in removal proceedings and does not have a final order of removal" and has "timely filed an application for affirmative asylum with USCIS, which remains pending." Am. Compl. ¶ 99. Plaintiff has thus not plausibly alleged that John Doe 2 is subject to actual or imminent injury. *See Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (setting forth required elements of standing). To be sure, the D.C. Circuit has clarified that such "someday" speculations are categorically insufficient to demonstrate standing: "It is not enough for the [organization] to assert that it [or its members] might suffer an injury in the future, or even that it is *likely* to suffer an injury at some unknown future time." *J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C. Cir. 1996).

Thus, since Make the Road premises John Doe 2's standing on a projected future injury, Article III demands not merely a possibility of injury, but a showing that the threatened future injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). That deficiency is particularly important here, where the D.C. Circuit has already rejected associational standing premised on identical allegations of fears "that members of the associations might someday be subject to summary removal." *AILA*, 199 F.3d at 1357. Such injuries, premised on showing

21

that (1) their members illegally "ent[ered] into the United States," (2) "with no documentation or with fraudulent documentation," and (3) "*will be* found inadmissible and be removed from the United States,"—a "chain of events [that] is greatly attenuated"—"are, at most, only speculative." *AILA*, 18 F. Supp. 2d at 51. Indeed, Plaintiff's predicted injury as to John Doe 2 is contingent on the unpredictable behavior of multiple third parties—that is, that immigration officers will take enforcement action against John Doe 2 before he either leaves the country voluntarily or succeeds in obtaining legal status. But Plaintiff cannot "rely on speculation about the unfettered choices made by independent actors not before the courts.'" *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 383 (2024) ("*Alliance*") (quoting *Clapper*, 568 U.S. at 415). Given that Plaintiff has not alleged that any of its members with a pending asylum application are currently subject to expedited removal under the 2025 designation, "the lack of any substantive detail about [] Doe['s] circumstances makes it all but impossible to determine whether [he] face[s] imminent injury." *See Biafra v. Blinken*, 639 F. Supp. 3d 79, 85 (D.D.C. 2022) (Cobb, J.). Therefore, as Plaintiff fails to satisfy the first associational standing requirement for Count Six, that the "members would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343.

### c. Plaintiff Make the Road is Outside the Zone of Interests of the Expedited Removal Statute.

Plaintiff also is unlikely to succeed on the merits because the organization is outside the zone of interests of the statutes. The APA does not "allow suit by every person suffering injury in fact." *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 395 (1987). Rather, it provides a cause of action only to one "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. For Make the Road to be "aggrieved," "the interest sought to be protected by the complainant" must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Clarke*, 479 U.S. at 396 (alteration in original)

(citation omitted). More specifically, this means individuals to whom Congress intended to accord privately enforceable rights. *Id.* at 399. Make the Road does not articulate that it is in the zone of interests of the expedited removal provisions and separately does not invoke such interest here.

Nothing in the expedited removal statute protects the interests of organizations providing, *inter alia*, legal services to aliens. Neither section 1225 nor section 1252 evinces any concern with organizations or their interest in representing individuals subject to expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I); *see also id.* § 1252(e)(1)(B) (limiting class certification for matters subject to judicial review in subsection (e) of the section). These provisions do not regulate the organizational Plaintiff's conduct or create any benefits for which the organization may be eligible, so it is outside the zone of interests for bringing suit. *See INS v. Legalization Assistance Project of L.A. Cty.*, 510 U.S. 1301, 1305 (1993) (O'Connor, J., in chambers); *Make the Road N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 36 (D.D.C. 2019); *O.A. v. Trump*, 404 F. Supp. 3d 109, 140 (D.D.C. 2019); *AILA*, 199 F.3d at 1364 (D.C. Cir. 2000); *Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 900-04 (D.C. Cir. 1996). Defendants acknowledge that some courts in this District have sometimes held that the zone-of-interests test should be applied permissively and have found organizations that satisfy it, even in the context of the INA. *See, e.g.*, *O.A.*, 404 F. Supp. 3d at 144. However, this relaxed standard does not (and cannot) survive the Supreme Court's *United States v. Texas* decision. 599 U.S. 670 (2023). The Court clarified—relying on principles that inform the Article III scope and the APA's cause of action—that third parties like Make the Road have no cognizable interest in the way the Executive enforces the immigration laws against others. 599 U.S. at 674, 677; *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 897 (1984) ("[P]rivate persons such as petitioners have no judicially cognizable interest in procuring enforcement of the immigration laws[.]").

**d.  The Designation is Committed to Agency Discretion by Law.**

Plaintiff's APA claims also fail because the Secretary's expedited removal designation decisions are committed to agency discretion for the same reasons the D.C. Circuit articulated in rejecting Plaintiff's 2019 suit. *Make The Road*, 962 F.3d at 631–34.

The APA's waiver of sovereign immunity does not extend to any "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). By providing that it "shall be in the *sole and unreviewable discretion* of the [Secretary]" to designate groups for expedited removal, and by further providing that the designation "may be modified at any time," 8 U.S.C. § 1225(b)(1)(A)(iii), Congress made clear that any designation made pursuant to the statute is committed to agency discretion. "There could hardly be a more definitive expression of congressional intent to leave the decision about the scope of expedited removal, within statutory bounds, to the Secretary's independent judgment." *Make The Road*, 962 F.3d at 632. Further, the D.C. Circuit held that section 1225(b)(1) "provides no discernible standards by which a court could evaluate the Secretary's judgment." *Id.*; *see Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (finding that when a statute offers "no meaningful standard against which to judge the agency's exercise of discretion," that decision is committed to agency discretion). The *only* limit placed on the designation authority is that the groups must fall within the statutory bounds—that is,  aliens who are not admitted or paroled and have not demonstrated continuous physical presence in the United States for the two-year period immediately preceding the date of the inadmissibility determination. *Make The Road*, 962 F.3d at 632 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(I)). Plaintiff does not allege that the 2025 Designation—which expressly goes no further than "the fullest extent authorized by Congress" in section 1225(b)(1)(A)(iii)(I), 90 Fed. Reg. 8139—exceeds the statute. Within these statutory bounds, "[n]either the statutory text nor [the] structure provides any other legal standards constraining the Secretary's discretionary judgment." *Make The Road*, 962 F.3d at 633. Thus,

Plaintiff cannot obtain judicial review under the APA because it challenges a designation decision committed to agency discretion by law. *Id.* at 633-34.

   **e. Plaintiff's Challenge to the Expedited Removal Designation is Foreclosed by the D.C Circuit *Make the Road* Decision.**

Although the D.C. Circuit did not decide the specific claims Plaintiff raises in the stay motion, *see* ECF No. 36 at 21, n.4, the reasoning of the Circuit decision applies to all of Plaintiff's claims here, because Congress committed the designation-making authority to the agency's discretion, and because the agency only implemented the January 2025 designation to the "fullest extent authorized by Congress." *See Make the Road New York*, 962 F.3d at 630–35.

The D.C. Circuit has squarely held—in a case involving the *very same Plaintiff* and equivalent APA claims—that judicial review over "actions committed to agency discretion by law" are precluded "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* Here, the relevant statutory provision explicitly provides that the expansion of expedited removal procedures is to be made "in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." *Id.* at 632 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(I)). And Plaintiff's grievances—that more due process is owed (Counts One and Three), or that expedited removal should not be applied to those in the interior (Count Two) or to those with affirmative asylum applications (Count Six)—contravenes this statutory language, imbuing the Secretary with "sole and unreviewable discretion," and authority to "modify" the designation "at any time." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). That is especially true when the 2025 Designation has expanded expedited removal only to the fullest extent authorized by Congress. Indeed, the Circuit noted, "[t]here could hardly be a more definitive expression of congressional intent to leave the decision about the scope of expedited removal, within statutory bounds, to the Secretary's independent judgment." *Make the Road*, 962 F.3d at 632–33

("[W]hen the Secretary stays within statutory bounds," the court cannot "substantively superintend the Secretary's designation judgment."); *see Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 104 F.3d 1349, 1353 (D.C. Cir. 1997) (concluding that 8 U.S.C. § 1202(a) commits consular venue decisions "entirely to the discretion of the Secretary of State," thus, providing no "substantive standards against which the Secretary's determination could be measured"). When the Circuit last examined 8 U.S.C. § 1225(b)(1)(A)(iii)(I) for "judicially administrable standards by which to judge the Secretary's decision," the Court resolved "that language is an empty vessel." *Make the Road*, 962 F.3d at 633. This independent and unreviewable judgment is not subject to the second guessing of either Plaintiff or the courts. Plaintiff's request for preliminary relief thus fails under the governing statutory language and binding precedent.[5]

### f.   Plaintiff is Not Likely to Prevail on the Merits of Its Due Process Claims.

Plaintiff claims that it is likely to succeed on the merits of its Due Process challenge because aliens subject to the 2025 Designation "have a strong liberty interest in avoiding removal from the country," and they are entitled to "far more [due process] than the Rule provides." Pl. Mot. at 14. In reaching this conclusion, Plaintiff focuses almost exclusively on the analysis memorialized by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which outlines the factors that determine what constitutes due process. Pl. Mot. at 16–26. But Plaintiff is operating under the wrong rubric. *Mathews* is irrelevant. It does not apply because aliens subject to the 2025 Designation are applicants for admission who have no liberty interest in avoiding removal and are entitled to only the process that Congress provided by statute. As to such aliens, "[w]hatever the procedure

---

[5] Defendants preserve their argument that 8 U.S.C. § 1252(a)(2)(B)(ii) shutters judicial review of this case, as fleshed out more thoroughly in Defendants' motion to dismiss. ECF No. 36 at 24 n.7.

authorized by Congress…is due process." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *accord Thuraissigiam*, 591 U.S. at 139; *Landon*, 459 U.S. at 21.

Congress authorized the Secretary to apply expedited removal to certain inadmissible aliens present in the country for fewer than two years prior to the date of determination of inadmissibility, 8 U.S.C. § 1225(b)(1)(A)(iii), and DHS has afforded procedural protections for aliens subject to expedited removal—including those under the 2025 Designation. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(A), (B); 8 C.F.R. §§ 235.3, 208.30, 1003.42, 1208.30. These procedures satisfy any due process requirements, and because the statute does not require any of the additional procedures that Plaintiff suggests, Plaintiff is not likely to succeed on the merits of its due process claim. Simply put, because the 2025 Designation is consistent with the statute, it satisfies due process.

### 1. Plaintiff's Members are Entitled to Only the Process Provided by Statute.

Congress provided that certain aliens who are not admitted or paroled into the country, who have been physically present for fewer than two years, and lack a credible fear of persecution or torture, may be removed expeditiously. 8 U.S.C. § 1225(b)(1)(A)(iii). The Supreme Court has held that such aliens are entitled to only that process provided for by Congress. *Thuraissigiam*, 591 U.S. at 138-139 ("This rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U.S. soil."); *Landon*, 459 U.S. at 32 ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative").

Plaintiff dispenses with *Thuraissigiam* in one sentence by noting that there, the petitioner was "apprehended soon after crossing the border and thus could not be said to have 'effected an entry.'" Pl. Mot. at 14 (quoting, *Thuraissigiam*, 591 U.S. at 140). But the Court's holding in *Thuraissigiam* was not limited temporarily or geographically. The Court stated that the same

limited statutory process would be due to an alien "paroled elsewhere in the country for years pending removal." *Thuraissigiam*, 591 U.S. at 139. The Court explained:

> The reason for our century-old rule regarding the due process rights of an alien seeking initial entry [] rests on fundamental propositions: The power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political department of the government plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted. *Id.*

And that rule makes sense because applicants for admission who have not yet been inspected are considered to still be at the border for legal purposes. *Cruz v. Dep't of Homeland Sec.*, No. 19-CV-2727, 2019 WL 8139805, at *5 (D.D.C. Nov. 21, 2019) ("[A]lthough aliens seeking admission into the United States may be physically allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and, hence, never having effected entry into this country."). It would make little sense that an alien who presents at a designated port of entry and applies for admission would have fewer due process protections than an alien who unlawfully sneaks across the border and escapes into the interior. Indeed, that is not the case. Congress has plenary power with respect to the procedures for admitting aliens. *Thuraissigiam*, 591 U.S. at 139. Aliens cannot evade Congress's plenary powers over those procedures by violating them. Thus, whether an alien presents at a port of entry and applies for admission or enters unlawfully, he is "'treated' for due process purposes 'as if stopped at the border.'" *Id.* (cleaned up).

The Court's holding in *Thuraissigiam* is consistent with its earlier holding in *Landon*. In that case, the Court observed that only "once an alien gains admission to our country and begins to develop the ties that go with permanent residence [does] his constitutional status change[]." *Landon*, 459 U.S. at 32. In *Thuraissigiam*, the Court reiterated that "established connections"

contemplate "an alien's *lawful entry* into this country." 591 U.S. at 106-07. *None* of the aliens subject to the 2025 Designation have been *admitted* or have been *lawfully* present in this country as required by *Landon* and *Thuraissigiam* to claim due process rights that go beyond what § 1225(b)(1) provides. *See* ECF No. 36 at 31. Simply put, as a matter of law, aliens subject to the 2025 Designation are owed nothing more than what the statute provides.

### 2. Plaintiff's Due Process Claim is Foreclosed by *AILA*, 18 F. Supp. 2d 38 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000).

Plaintiff's due process claim is also destined to fail because binding precedent foretells its defeat. Plaintiff argues that the 2025 Designation—which does nothing more than invoke the statute—deprives its members of their due process rights because it has insufficient safeguards to prevent misapplication; fails to provide adequate access to counsel, language interpreters, information about charges, and an opportunity to rebut those charges; and lacks neutral review. Pl. Mot. at 16–26. But these arguments are not new. Plaintiff is challenging the adequacy of the protections in the expedited removal statute and its implementing regulations—just as a similar group of plaintiffs did twenty-five years ago. Indeed, the D.C. Circuit upheld the legality of the statute and its implementing regulations, which apply equally to all aliens subject to expedited removal. *AILA*, 18 F. Supp. 2d at 58-60, *aff'd*, 199 F.3d at 1357. This Court should do the same.

In *AILA*, the plaintiffs alleged that the expedited removal statute and its implementing regulations "violate[d] Congress's intent" of "establish[ing] fair procedures" by "providing insufficient protections, therefore creating an unreasonably high risk that individuals will be erroneously removed." *Id.* at 52–53. The plaintiffs alleged, *inter alia*, that the regulations do not provide "fair procedures" because they (1) did not allow aliens to "communicat[e] with family, friends and counsel during secondary inspection," (2) failed to provide adequate access to counsel, language interpreters, information about charges and procedures, and an opportunity to rebut those charges,

and (3) improperly applied these procedures "to individuals with facially valid documents." *Id.* at 53, 57–58. The plaintiffs further challenged the agency's alleged failure to follow the regulations in individual cases, and claimed the statute and regulations violated inadmissible aliens' due process rights. *Id.* The district court rejected those claims in full, *id.* at 52-60, a decision the D.C. Circuit found so persuasive it stated: "We see no reason to disturb the district court's analysis, and so we affirm the dismissal of these claims substantially for the reasons stated in the court's thorough opinion." *AILA*, 199 F.3d at 1357.

First, the district court held that the regulations were "entitled to the highest degree of deference" because Congress instructed the agency to implement the statute with rules. *AILA*, 18 F. Supp. 2d at 53.[6] Next, the district court addressed and rejected each of the plaintiffs' claims. As to the right to "consult with a person or persons of the alien's choosing prior to the [credible fear] interview," 8 U.S.C. § 1225(b)(1)(B)(iv)—which plaintiffs argued required allowing access to an attorney at various stages of the inspection and admission process—the court held that "the

---

[6] *Loper Bright Enterprises v. Raimondo* does not undermine the deference this Court afforded the Executive Branch in *AILA*. As *Loper Bright* recognized, "the statute's meaning may well be that" Congress has "authorized [the agency] to exercise a degree of discretion" or "empower[ed the] agency to prescribe rules to 'fill up the details' of a statutory scheme." 603 U.S. 369, 370, 394 (2024). The INA generally, and the expedited removal provisions at issue in this case specifically, reflect that scheme. Congress has provided that the Secretary "shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter," 8 U.S.C. § 1103(a)(3), making its intent clear that the Secretary "fill up the details" of the expedited removal scheme. *Loper Bright*, 603 U.S. at 395. Congress further provided in multiple places that the Secretary shall issue regulations to implement expedited removal procedures. 8 U.S.C. § 1225. And Congress made clear that the specific decision to expand expedited removal is at the "sole and unreviewable discretion" of the Secretary, afforded not just a "degree of discretion," but unfettered discretion. 8 U.S.C. § 1225(b)(1)(A)(iii)(I); *Loper Bright*, 603 U.S. at 395. Thus, under *Loper Bright*, DHS is utilizing its discretionary authority to fill up the details to interpret and apply the expedited removal provisions. *See* 603 U.S. at 413 ("when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it").

Attorney General reasonably concluded" that access to counsel could be limited as the regulation provided. *Id.* at 52, 54. As to "adequate language interpretation," the court held that the statute did not require interpreters, but the regulations nevertheless provided for "interpretive assistance," and that such provision was more than adequate under the statute. *Id.* at 55. To the allegation that the statute did not provide a meaningful opportunity to "contest" the "charges" against an alien, *id.*, the court held that the statute did "not set forth any requirement or notice, opportunity for rebuttal, or review." *Id.* at 56. However, the Court acknowledged that the regulations require that aliens "be advised of the inadmissibility charges against them and be given an opportunity to respond." *Id.* To that end, the Court found that "[p]laintiffs cannot impose upon the Attorney General any obligation to afford more procedures than the governing statute explicitly requires or that she has chosen to afford in her discretion." *Id.* The Court likewise rejected plaintiffs' claim that "expedited removal procedures should apply only to aliens whose travel documentation is 'facially' invalid," *id.*, reasoning that the statute lacks such a requirement, and instead, mandates officers inspect aliens for admission and consider their admissibility even if they have a valid visa. *Id.* at 57.

Like in *AILA*, Plaintiff Make the Road asserts that the government will misapply expedited removal to individuals who are ineligible. Compl. ¶¶ 5, 82–86; Pl. Mot. at 21–22. But the Court in *AILA* rejected this claim, concluding that "based on the clear language of [§ 1252(e)(3)(A)(ii)], the court cannot review unwritten policies or practices but rather must limit its review to a 'regulation, a written policy directive, written policy guideline, or written procedure.'" *AILA*, 18 F. Supp. 2d at 58. Like the plaintiffs in *AILA*, Plaintiff argues that the 2025 Designation does not provide for interpretative services. Pl. Mot. at 24. But the Court in *AILA* noted the statute does not require that, and found that the services actually provided are sufficient. *Id.* at 55. Like the plaintiffs in *AILA*, Plaintiff argues that error rates are high and that, in isolated cases, immigration officers have not

adhered to existing regulations. Compl. ¶¶ 64–70; Pl. Mot. at 21-23. But Plaintiff has raised a facial attack on the statute and thus must show that it is *always* unconstitutional—not that it may sometimes be, as applied. *United States v. Salerno*, 481 U.S. 739, 745 (1987). *See* Dkt. No. 36 at 11, 30, 33; ECF No. 46 at 8–12. Furthermore, here, Plaintiff's claims are even more attenuated than those in *AILA* because they are based on hearsay reports, news articles dating back twenty-five years, and isolated legal cases, many of which are more than a decade old. *Id.*; Pl. Mot. at 22; *see* ECF Nos. 50-9, 50-11, 50-12 (Plaintiff's Declarations).

Finally, similar to *AILA*, Plaintiff alleges that the statute and its implementing regulations violate the Due Process Clause because "individuals will be erroneously removed from the United States and thus deprived of liberty and property." *Compare AILA*, 18 F. Supp. 2d at 58 *with* Am. Compl. ¶¶ 102–104. But the court rejected that claim, concluding that "aliens seeking initial admission to the United States have no constitutional rights with respect to their immigration status," and thus lack due-process rights regarding their applications for admission that "permanent residents or those with 'substantial connections' to the United States" have. *AILA*, 18 F. Supp. 2d at 59. Absent such "substantial connections," aliens "cannot avail themselves of the protections of the Fifth Amendment to guarantee certain procedures with respect to their admission." *Id.* The same is true here: Plaintiff does not show that *all* aliens subject to the designation as a class possess "substantial connections" such that they may even invoke the Due Process Clause to demand more procedures than provided by statute. Accordingly, *AILA* confirms that contrary to Plaintiff's bald assertion in its motion, they are not likely to succeed on the merits of its due process claims.

### 3. *Mathews* Does Not Apply, And Even If It Did, Does Not Establish A Due Process Violation.

*Mathews* created the three-part balancing test applicable when analyzing "the specific dictates of due process." *Mathews,* 424 U.S. at 335. The Supreme Court explained that "[p]rocedural

due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 332. The Supreme Court continued, that where the government seeks to deprive an individual of such an interest, the courts must consider the following factors in determining what administrative safeguards are required: first, the private interest at stake; second, the risk of erroneous deprivation; third, the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including fiscal and administrative burdens. *Id.* at 335. Thus, *Mathews* applies only where an individual has a liberty or property interest, and the government seeks to deprive the individual of that interest.

Aliens subject to expedited removal have no liberty interest in avoiding removal. An "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983). Congress has determined that aliens who have not been admitted or paroled, and those who are present for fewer than two years *as a class* lack any liberty interest in avoiding removal or to certain procedures. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). They are entitled only to the "procedure authorized by Congress," *Knauff*, 338 U.S. at 544, which grants the Secretary authority to designate certain aliens for expedited removal at her "sole and unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). Thus, aliens cannot assert a protected property or liberty interest in the designation decision or additional procedures not provided by statute. *Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004). Indeed, "it is well established that Congress is constitutionally authorized to provide for expedited removals without [judicial] review." *United States v. Villarreal Silva*, 931 F.3d 330, 335 (4th Cir. 2019). "The power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, with such

33

opportunity for judicial review of their action as Congress may see fit to authorize or permit." *Carlson v. Landon*, 342 U.S. 524, 537 (1952). Because Plaintiff's members who are subject to section 1252(b)(I)(a)(iii)(i) have no liberty interest in avoiding removal, *Mathews* simply does not apply, and the Court should reject Plaintiff's arguments regarding the same.

Even if the Court considers Plaintiff's arguments under *Mathews*, the result is the same: Plaintiff has failed to establish that the 2025 Designation violates due process. The first factor is the private interest at stake. Plaintiff cites to a string of cases for the proposition that removal implicates a "weighty liberty" interest. Pl. Mot. at 16–17. But the question is not whether removal may implicate a weighty liberty interest but whether it does so with respect to inadmissible applicants for admission subject to expedited removal. And there, the answer is no. Congress has determined that aliens who have not been admitted or paroled and who are present for less than two years lack *any* liberty interest in avoiding removal or to certain procedures beyond what is provided for by § 1225(b). 8 U.S.C. § 1225(b)(1)(A)(iii)(II). The cases Plaintiff cites, Pl. Mot. at 20, predate § 1225(b)(1) and concern the deportation of long-term alien residents who lawfully entered the country, and do not suggest that applicants for admission at the border—which those subject to the 2025 Designation are considered to be—have a liberty interest in admission to the country.

As to the second factor, risk of erroneous deprivation, Plaintiff argues that the risk is high. Pl. Mot. at 18–26. Putting aside whether that is true—and Defendants dispute that it is, as explained *infra*—this Court lacks jurisdiction to consider allegations that the statute or regulations, as-applied, will affect non-parties in error. *AILA*, 18 F. Supp. 2d at 58. Plaintiff asserts a facial attack on the statute and thus must establish not that it may be unconstitutional, as applied, but that it is always unconstitutional, even when applied as intended. That is because due process "rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases,

not the rare exceptions" or "the result obtained in any individual case." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985). Nor does due process "require that the procedures used to guard against an erroneous deprivation … be so comprehensive as to preclude any possibility of error." *Id.* As-applied challenges exist for such circumstances.[7]

That aside, the risk of erroneous application is not high. Whether an alien may be subject to expedited removal proceedings is straightforward: the immigration officer must determine only whether an alien was admitted or paroled and has valid entry documents or has misrepresented material information about himself and then determine whether the alien has been present for fewer than two years. *See* 8 U.S.C. § 1225(b)(1); 8 C.F.R. § 235.3(b)(2)(i), (6)-(7). To show that the risk is high, Plaintiff points to instances where errors have occurred in the past. Pl. Mot. at 22. But those are isolated instances, which date back over a decade, some even longer. *Id.* (citing individual erroneous removals from 2000, 2009, 2012, and 2014). This, in contrast to hundreds of thousands of expedited removal orders issued.

Further, if the alien asserts that he should not be subject to expedited removal, because he is a lawful permanent resident, refugee, or asylee, or claims to be a U.S. citizen, the regulations require that a thorough inquiry occur prior to any removal proceedings, both before the immigration officer and an immigration judge. *See* 8 U.S.C. § 1225(b)(1)(C); 8 C.F.R. § 235.3(b)(5); *see also United States v. Quinteros Guzman*, No. 3:18-CR-00031-001, 2019 WL 3220576, at *11 (W.D. Va. July 17, 2019) (finding no deprivation in similar circumstances). Thus, as a categorical matter, Plaintiff fails to demonstrate a high risk of erroneous deprivation.

---

[7] Indeed, because Congress already addressed the precise (and narrow) circumstances when someone subject to an expedited removal order can obtain judicial review, review is not permitted otherwise. 8 U.S.C. § 1252(e)(2) (habeas review "shall be limited to" specific factual determinations laid out in the statute).

As for the third factor, Plaintiff alleges that the expedited removal process is "rife with errors," Pl. Mot. at 2, 6, and that additional safeguards would mitigate the risk of erroneous application. *Id.* at 27. Plaintiff proposes four additional safeguards tied to what it contends are the factors that create erroneous risk. First, Plaintiff claims that "[t]here is no advance notice of the charges or of the government's evidence," because "notice of charges are issued at the same time and on the same form as expedited removal order." *Id.* at 14. But that is not a function of the 2025 Designation; it is what the regulation provides for. 8 C.F.R. § 235.3(b)(2)(1)(ii) ("The examining immigration officer shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement."). Plaintiff argues, nonetheless, that aliens "should be given greater notice of and an opportunity to rebut the government's charges against them," Pl. Mot. at 27, and that the Supreme Court's recent decisions in *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025), and *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025), stand for the proposition that greater notice is required. Pl. Mot. at 14, 23, 27. Not so. *J.G.G.* and *A.A.R.P.* did not concern expedited removal under section 1225(b)(1), but rather processing under the Alien Enemies Act.[8] The last court to consider the adequacy of the notice provisions in 8 C.F.R. § 235.3(b)(2)(i) was the D.C. Circuit in *AILA*. That court rejected the plaintiffs' claim that the regulations provided insufficient notice and meaningful opportunity to contest the expedited removal charges. *AILA*, 18 F. Supp. 2d at 55 ("Plaintiffs cannot impose upon the Attorney General any obligation to afford more procedures than the governing statute explicitly requires or that she has chosen to afford in her discretion.").

---

[8] Further, the *A.A.R.P.* Court noted that in the circumstances presented there, twenty-four hours' notice of removal was insufficient, but declined "to determine in the first instance the precise process necessary to satisfy the Constitution in this case." 145 S. Ct. at 1368.

Second, Plaintiff complains that aliens must bear "the burden" of showing that they were admitted or paroled, or are not inadmissible, Pl. Mot. at 15, 19, and that instead the government should bear the burden of showing removability, *Id.* at 28. But the fact that aliens bear the burden is not a function of the 2025 Designation, that is simply what the statute provides. To change that, this Court would have to declare section 1225(b)(1)—which requires that aliens demonstrate their entitlement to be admitted to this country or to asylum, 8 U.S.C. §§ 1225(b)(1)(A)(i), (b)(2)(A), 1229a(c)(2)(A)—unlawful. But Congress's decision on who should bear the burden is wholly appropriate: applicants for admission—not the government—have information about their right, if any, to enter, which is what led Congress to conclude that such aliens as a *class*, when "released into the general population," "do not return for their hearings," H.R. Rep. No. 104-469, 117-18, thus necessitating expedited removal in the first place.

Third, Plaintiff complains that the 2025 Designation does not require that aliens "be provided an opportunity to make a phone call to a friend or family member who can help them," and suggests additional safeguards could rectify this. Pl. Mot. at 19–20, 28. As noted *supra*, the 2025 Designation adheres to the statute and regulations, which do not require specific opportunities for aliens to make such calls. In *AILA*, the plaintiffs also made similar arguments, which this Circuit rejected. *AILA*, 18 F. Supp. 2d at 52, 54. Plaintiff cites two cases discussing the importance of giving aliens in deportation proceedings the ability to consult with such individuals. Pl. Mot. at 28. But those cases pre-date the creation of the expedited removal statute and thus obviously do not address the adequacy of the procedures for consultation already in place—procedures that the D.C. Circuit already held were adequate.

Fourth, Plaintiff argues that "a neutral adjudicator such as an IJ should review the questions of removability and applicability of expedited removal (including length of presence) and whether

the noncitizen has a fear of removal." Pl. Mot. at 28. But in making this argument, Plaintiff does not simply challenge the 2025 Designation; Plaintiff asks this Court to rewrite the statute, and to do so in a manner that completely undermines the purpose of the expedited removal scheme. "Congress adopted IIRIRA's expedited removal scheme to substantially shorten and speed up the removal process." *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 618 (D.C. 2020).[9]

Further, Plaintiff's "added value procedures" must be weighed against the fact that "requiring more process would fundamentally alter Congress's scheme without adding any significant protection for aliens in expedited removal proceedings." *United States v. Peralta-Sanchez*, 847 F.3d 1124, 1137 (9th Cir. 2017) (subsequent history omitted). The regulations already provide aliens with protections. Aliens who indicate an intent to apply for asylum or a fear of persecution or torture or of return are entitled to further process under section 1225(b)(1) before removal can take place, *id*. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4), (5), including the right to a non-adversarial interview before a trained asylum officer, administrative review before an immigration judge, and limited judicial review. 8 U.S.C. § 1252(e)(2); 8 C.F.R. §§ 208.30, 235.3, 1208.30. Likewise, as Plaintiff begrudgingly admits, Pl. Mot. at 22, individuals claiming to be U.S. citizens, and aliens asserting that they should not be subject to expedited removal because they are a lawful permanent resident, have been granted asylum, or have been admitted as a refugee, may seek administrative review by an immigration judge, 8 U.S.C. § 1225(b)(1)(C); 8 C.F.R. § 235.3(b)(5), and seek further review and relief in habeas as-applied cases. 8 U.S.C. § 1252(e)(2). If aliens

---

[9] Congress intended "to deter individuals from entering the [U.S.] illegally and to streamline what had been a lengthy, resource-intensive process… that could take months or years to complete." *Combined Written Testimony for a Hearing On Asylum Abuse: Is It Overwhelming Our Borders? Before The House Committee on the Judiciary*, Dec. 12, 2013; *see Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("Congress amended the INA aggressively to expedite removal of aliens lacking a legal basis to remain in the United States.").

demonstrate that they are not properly subject to expedited removal procedures, they are entitled to further proceedings under section 1229(a). *Id.* § 1252(e)(4). Aliens who—because of their status or credible fear claims—should not be subject to expedited removal thus have ample protections in administrative proceedings and habeas review under section 1252(e)(2).

Finally, for the last *Mathews* factor, the government's interest, requiring the government to provide the "safeguards" Plaintiff seeks—which are essentially those available in 240 proceedings—would interfere with the government's weighty interest in effectively enforcing the expedited removal statute as drafted by Congress. *See Castro v. DHS*, 163 F. Supp. 3d 157, 174 (E.D. Pa. 2016) ("The procedures Petitioners urge—necessitating pleadings, formal court proceedings, evidentiary review, and the like—would make expedited removal of arriving aliens impossible."), *aff'd*, 835 F.3d 422 (3d Cir. 2016); *see also Peralta-Sanchez*, 847 F.3d at 1137 (similar). Congress determined that expedited removal is necessary "to expedite the removal from the United States of aliens who indisputably have no authorization to be admitted," H.R. Rep. 104-828 at 209, and for dealing with the "crisis at the land border" that involves "hundreds of thousands of illegal aliens" entering each year. H.R. Rep. No. 104-469 at 107; *id.* at 117 ("threat of expedited exclusion, which has been considered by Congress since 1993, may also have had a deterrent effect").

In short, aliens subject to the designation will lack the requisite due-process interests that trigger the *Mathews* due process analysis in the first place and Congress carefully cabined review when warranted. Thus, Plaintiff is unlikely to prevail on the merits of its due process claim.

### g.  Plaintiff Is Unlikely to Prevail on its Claim that the Rule and Guidance Violate the Expedited Removal Statute As Interpreted To Require Adequate Procedures.

Plaintiff argues that it is "likely to prevail on its claim that the Rule and Guidance violate the expedited removal statute which, as properly construed to avoid constitutional defects, requires procedurally fair determinations." Pl. Mot. at 29. At the outset, Plaintiff is wrong because the

doctrine of constitutional avoidance does not apply. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction. In the absence of more than one plausible construction, the canon simply has no application." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). That Plaintiff argues the statute *could* raise constitutional concerns in as-applied circumstances is irrelevant: "Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases. Instead, the canon permits a court to choose between competing plausible interpretations of a statutory text," and only where the statute is in fact "ambiguous." *Id.* at 298. There is nothing ambiguous about section 1225(b)(1)(A)(iii). "If an immigration officer *determines* that an alien … who is arriving in the United States *or is described in clause (iii)* is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer *shall* order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added). That provision reaches any "alien … who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph," so long as the Secretary so "designate[s]." *Id.* § 1225(b)(1)(A)(iii). There is no "competing plausible interpretation[]" of the text. *Jennings*, 583 U.S. at 296. The statute unambiguously describes who may be subject to it and authorizes the Secretary to apply the statute to those people "at any time." Thus, Plaintiff's allegation that the statute must be read to include additional process fails. *See FCC v. Fox Television Stations*, *Inc*., 556 U.S. 502, 516 (2009) ("We know of no precedent for applying [the canon] to limit the scope of authorized executive action.").

Plaintiff argues, however, that the statutory text is ambiguous as to "to the *process* by which immigration officers are to 'determine' inadmissibility," and as to the "procedures for making [the admission or parole] showing 'to the satisfaction of an immigration officer.'" Pl. Mot. at 32. Plaintiff goes further to argue that the government has acknowledged that these provisions are ambiguous. *Id*. at 33. That is false. The government acknowledged the statute is silent as to these procedures. But silence is not always ambiguity. Here, Congress expressly instructed the agency to promulgate regulations carrying out these general statutory mandates. *AILA*, 18 F. Supp. 2d at 53 (citing IIRIRA § 309(b)).[10]

Plaintiff argues, however, that "[c]ourts have long construed removal statutes to require due process protections, even where the statute does not expressly provide such safeguards." Pl. Mot. at 30. But the cases Plaintiff cites concern statutes related to removal proceedings under section 1229a, *see* Pl. Mot. at 31, or statutes relating to detention, *id*. at 30-31. They do not identify any case where a court has relied on constitutional avoidance to read additional due process protections into Section 1225(b)(1).[11] This Court should not be the first to do so.

But even if the statute were ambiguous, and this Court were to apply the doctrine of constitutional avoidance, Plaintiff's statutory claim still fails. Whether process is sufficient to satisfy due process—whether under the Constitution or under the doctrine of constitutional avoidance— is analyzed under *Mathews*. But as noted above, that analysis hits a roadblock at the very first step

---

[10] The *AILA* court invoked *Chevron* deference, which was abrogated in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). But *Loper Bright* made clear that it did not "call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful … are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Id.* at 412. Thus, *AILA* still binds this Court.

[11] *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 186-88, 190 (D.D.C. 2015), tangentially concerned expedited removal, as the plaintiff was initially placed into expedited removal proceedings. But the issue in that case concerned subsequent detention under Section 1226(a). *Id.* at 171. Therefore, this case is inapplicable here.

because aliens subject to expedited removal do not have a liberty interest in avoiding removal and entitled only to that process that Congress has provided. *See* section II(f)(1), *supra*. And Plaintiff fails the other prongs of *Mathew* as set forth above.

### h. Plaintiff Is Unlikely To Prevail On The Merits of Count Two Because The Designation Does Not Violate 8 U.S.C. § 1182(a)(7) (Count Two).

Plaintiff claims that the 2025 designation is contrary to law based on its flawed reading of 8 U.S.C. § 1182(a)(7). Am. Compl. ¶¶ 110-13; Pl. Mot. at 34–36. As an initial matter, this claim is barred by this Circuit's decision in *Make the Road*. 962 F.3d at 633. Plaintiff complains that the 2025 Designation unlawfully "extend[s] authority to place into expedited removal individuals in the interior of the United States who have been physically present for up to two years based on a determination that they are inadmissible under 8 U.S.C. § 1182(a)(7)," Am. Compl. ¶ 113. But the statute explicitly authorizes just that. 8 U.S.C. § 1225(b)(1)(A)(i), (iii).

Moreover, aliens who are inadmissible under section 1182(a)(7), in pertinent part, for "not [being] in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document" "at the time of application for admission," 8 U.S.C. § 1182(a)(7), are subject to expedited removal. 8 U.S.C. § 1225(b)(1)(A)(i). Plaintiff contends that aliens who have been physically present inside the country for up to two years prior to the date of the determination of inadmissibility may not be subject to expedited removal on this basis "because they have already entered the United States" and so "the time of application for admission" has passed. Am. Compl. ¶ 113. To this end, Plaintiff insists that admission should be measured at the time of physical entry into the country because an entry document is required "to lawfully cross

the border."[12] Pl. Mot. at 34–36. Plaintiff's interpretation is an incorrect reading of the statute. The INA places no time limit on how long an alien who has entered the United States remains an applicant for admission, but rather makes clear that an alien remains an applicant for admission until she is inspected and admitted by an immigration officer. *See* 8 U.S.C. § 1225(a)(1), (3). "Admission" in the immigration context means "the lawful entry" of an alien "into the United States" which only occurs "after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). It is pursuant to such "inspection," that "an immigration officer determines [whether the] alien … is inadmissible under section … 1182(a)(7)[.]" *Id.* § 1225(b)(1)(A)(i). Thus, both individuals who arrive in the United States prior to being admitted, and those present in the United States after entering unlawfully without admission, are "applicant[s] for admission" under the statute. *Jennings*, 583 U.S. at 287; *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1118 (9th Cir. 2007) (same); *see also Matter of M-D-C-V*, 28 I. & N. Dec. 18, 20-21 (B.I.A. 2020).

Plaintiff further contends that the decision to exclude § 1182(a)(6)(A) as a perquisite for expedited removal indicates that Congress "did not intend for expedited removal to apply to people who are present in the United States without valid entry documents." Pl. Mot. at 35–36. 8 U.S.C. § 1182(a)(6)(A) is a neighboring statute that makes aliens who are present in the United States without admission or parole inadmissible. Plaintiff's interpretation is wrong, because § 1182(a)(7)

---

[12] Relatedly, Plaintiff contends that the canon of constitutional avoidance "resolves any remaining doubt that Plaintiff's construction must be adopted." Pl. Mot. at 36. "[T]hose who invoke the doctrine must believe that the alternative is a serious likelihood that the statute will be held unconstitutional." *Fed. Express Corp. v. United States DOC*, 39 F.4th 756, 772 (D.C. Cir. 2022) (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 238 (1998)). However, as explained in Section II.f, *supra*, Plaintiff "must establish that no set of circumstances exists under which the [challenged action] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). *Salerno* precludes application of this doctrine; if Plaintiff's facial due process challenge does not meet the *Salerno* standard, there is no "serious likelihood" that the statute will be held unconstitutional should the Court adopt Defendants' interpretation.

is not limited to inadmissibility determinations at the border. Specifically, section 1225(a)(1) defines "Aliens treated as applicants for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)[.]" Congress would not need to have designated certain aliens already *present in the United States* as inadmissible, § 1182(a)(6)(A)(i), in addition to those in the process of physically entering the United States, if admissibility could only be determined upon physical entry. Further, Plaintiff's strained reading of § 1182(a)(7) would render § 1225(b)(1)(A)(iii) largely insignificant, as it would apply only to aliens who are inadmissible under § 1182(a)(6)(C) for willful misrepresentation or fraud, a result that Congress certainly did not intend in devising this signature removal scheme.

Finally, Plaintiff's argument that the statute's reference to a travel document bolsters their interpretation that this provision is limited to the moment of physical entry is incorrect. Pl. Mot. at 35. Section 1182(a)(7) permits expedited removal for those who have crossed the border undetected, without valid travel documents, even if not apprehended at the moment of the unlawful entry. *Compare* 8 U.S.C. § 1225(b)(1)(A)(i) *with United States v. Gambino-Ruiz*, 91 F.4th 981, 988 n.6 (9th Cir. 2024) ("If Gambino-Ruiz were considered an arriving alien despite his entry outside a designated port, he would be 'deemed' an applicant for admission under 8 U.S.C. § 1225(a)(1). Then he would be inadmissible under § 1182(a)(7) for having applied without valid entry documents."). Courts of Appeals have affirmed that aliens present within the United States without having been admitted remain applicants for admission, with all the opportunities and limitations that status confers, unless and until inspected and admitted by an immigration officer. *Cruz-Miguel v. Holder*, 650 F.3d 189, 198 (2d Cir. 2011); *Ortega-Cervantes*, 501 F.3d at 1118

("All applicants for admission, whether they are at the border or already physically present inside the country, must 'be inspected by immigration officers' who will determine their admissibility.").

The INA's context also refutes Plaintiff's interpretation. Section 1184(b), titled "Presumption of status," provides that every alien, with limited exceptions not relevant here, "shall be presumed to be an immigrant until he establishes to the satisfaction of … the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 1101(a)(15) of this title." 8 U.S.C. § 1184(b). Section 1184(b) thus ties "the time of application for admission" to the time an "immigration officer[]" determines if an alien is an intending "immigrant" or "nonimmigrant." Yet that determination only happens when an alien is "inspected by immigration officers." *Id.* § 1225(a)(3); *Smith v. U.S. CBP*, 741 F.3d 1016, 1018–19 (9th Cir. 2014) (explaining how U.S. Customs and Border Protection's determination whether an alien seeks admission as "an intending immigrant under" 8 U.S.C. § 1182(a)(7)(A)(i)(I) occurs during "inspection"). That inspection is a condition precedent to determining whether an alien is inadmissible as either an immigrant or nonimmigrant lacking proper documentation. 8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(3), (b)(1). And that admissibility determination occurs during inspection concerning an alien's "application for admission." *Id.* §§ 1101(a)(13), 1225(a)(3).

Further, section 1225(a)(4), which appears immediately after section 1225(a)(3)'s requirement that all "applicants for admission" be "inspected by immigration officers," provides that "[a]n alien applying for admission may … be permitted to withdraw the application for admission and depart immediately from the United States." Congress plainly understood that an "applicant for admission" may withdraw "the application for admission" upon "inspect[ion] by an immigration officer." H.R. Rep. No. 104-469, pt. 1, at 228 (1995). DHS may grant permission to withdraw to "any alien applicant for admission," not only those inspected at a port of entry. 8 C.F.R. § 235.4.

Thus, the statute unequivocally precludes Plaintiff's argument that an "application for admission" can only occur at the border prior to physical entry, and that aliens present in the interior, without inspection and admission, lose their "applicant for admission" status merely through passage of time. Am. Compl. ¶¶ 110–13.

Plaintiff cites the Ninth Circuit's unrelated holding that an alien who "lawfully entered the CNMI [Commonwealth of Northern Mariana Islands] in 1997 before the INA went into effect" "never submitted an application for admission into the United States" and so "fell outside the scope of" section 1182(a)(7), *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (en banc), for the proposition that section 1182(a)(7) does not apply to aliens already present within U.S. territory because it only applies at "the time when a noncitizen seeks permission to physically enter United States territory." Pl. Mot. at 34. This would be an overly broad and inaccurate reading of *Torres*. As the Ninth Circuit subsequently explained, *Torres* dealt with "peculiar circumstances" where, due to the change in immigration law governing the CNMI territory as a result of the introduction of the INA, Torres "never crossed the U.S. border; the border crossed [her]," rendering her unlawfully present despite her previous lawful residence in the CNMI. *United States v. Gambino-Ruiz*, 91 F.4th 981, 989 (9th Cir. 2024). Aliens who were never lawfully present in the United States are not similarly situated, and *Torres* says nothing about aliens who enter United States territory unlawfully without initial inspection. Further, the *Torres* holding is limited to its unusual circumstances; indeed, the *Torres* Court declined to opine on its implications for expedited removal authority. 976 F.3d at 929 n.13 (stating the court "need not resolve the full scope of § 1225(b)(1)(A)(iii) in order to conclude that § 1182(a)(7) does not apply to a noncitizen in Torres's situation"); *see Gambino-Ruiz*, 91 F.4th at 989 (noting *Torres* "did not involve expedited removal, much less designation by the Attorney General under [section 1225(b)(1)(A)](iii)").

*Torres*'s cabined conclusion is further confirmed by the fact that the Ninth Circuit has not broadly extended it. *See Gambino-Ruiz*, 91 F.4th at 989. In fact, *Gambino-Ruiz* held that *Torres* did not preclude the government from determining that an alien is inadmissible under section 1182(a)(7) and subject to expedited removal when the government encounters that alien unlawfully present inside the United States. *Id.* at 989-90 (explaining that "[u]nlike *Torres*, however, *Gambino-Ruiz* was not in danger of the Attorney General treating him as a perpetual applicant for admission because the INA limits the Attorney General's authority to a two-year period after the alien enters the United States.") (citing 8 U.S.C. § 1225(b)(1)(A)(iii))). If anything, Ninth Circuit precedent only confirms Defendants' position that an alien present without inspection for up to the two years provided by section 1225(b)(1)(A)(iii) and the 2025 Designation, remains an applicant for admission and is still inadmissible under section 1182(a)(7).

> ### i. Claim Six Is Also Unlikely To Succeed On The Merits.

In Count Six, Plaintiff alleges that "[t]he INA and its implementing regulations do not permit the expedited removal of noncitizens who entered without inspection and have filed affirmative asylum applications with USCIS." Am. Compl. ¶¶ 125-28. Although absent from its operative pleadings, Plaintiff now seeks to amend Count Six in its motion by styling Count Six as an *Accardi* claim to challenge the Guidance. Pl. Mot. at 37. Plaintiff employed a similar tactic when opposing Defendants' motion to dismiss. ECF No. 44 at 35, n.17. Amendment is inappropriate here and the Court should not entertain it. FED. R. CIV. P. 15(a)(1); *see Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011).[13]

---

[13] Even if Plaintiff could challenge the Guidance without challenging the Designation, the Guidance does not support an *Accardi* claim. The Guidance prioritizes the expedited removal of aliens "who failed to apply for asylum within the statutory deadline," Huffman Memo (citing 8 U.S.C. § 1158(a)(2)(B)), instructs that "the expedited removal process *includes asylum screening*, which is sufficient to protect the reliance interests of any alien *who has applied for asylum or planned to*

Notwithstanding Plaintiff's improper amendment, Count Six is unmoored from statutory authority and must be dismissed. Indeed, the two statutory provisions Plaintiff cites, 8 U.S.C. §§ 1158 and 1225(b)(1)(A), Am. Compl. ¶¶ 125–128, provide no exemption from expedited removal premised on filing an affirmative asylum application. Section 1158 provides that "[a]ny alien who is physically present in the United States or who arrives in the United States … may apply for asylum in accordance with this section *or, where applicable, section 1225(b) of this title.*" 8 U.S.C. § 1158(a)(1) (emphasis added). Section 1225(b)(1) provides, as explained, that if an inadmissible alien eligible for expedited removal indicates a fear of persecution or torture, they will be referred for a credible fear screening by USCIS, and if this determination is positive, that individual will be afforded the opportunity to apply for asylum in removal proceedings. 8 U.S.C. § 1225(b)(1)(A), (B). Thus, section 1158 expressly contemplates that an alien seeking asylum may have to do so "where applicable" through the expedited removal process.[14] But never does it say that the two provisions are mutually exclusive or that noncitizens affirmatively seeking asylum are exempt from expedited removal. *See* 8 U.S.C. § 1158(d)(7) (covering "asylum procedure" and setting out that the agency "shall establish a procedure for consideration of asylum applications filed under [section]" 1158(a), but also providing that: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any

---

*do so in a timely manner,*" *id.* (citing 8 U.S.C. § 1225(b)(l)) (emphasis added), and twice advises immigration enforcement to "[t]ake all steps necessary to review the alien's case and consider, in exercising your enforcement discretion, whether to apply expedited removal." *Id.* Nothing in the Guidance supports the *Accardi* claim that Plaintiff proffer now.

[14] Plaintiff highlights the differences between due process during an affirmative asylum application and in expedited removal, which is the credible fear process. Pl. Mot. at 39. That one process has more due process than another has no bearing on Plaintiff's claim because "[w]hatever the procedure authorized by Congress is, it is due process," *Thuraissigiam*, 591 U.S. at 139, because "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon*, 459 U.S. at 32.

party against the United States or its agencies or officers or any other person."). The absence of

any such provision is meaningful, in light of the fact that Congress clearly knows how to exempt

aliens with certain immigration statuses from expedited removal. *See, e.g.*, 8 U.S.C.

§ 1225(b)(1)(F) (providing that expedited removal "shall not apply to an alien who is a native or

citizen of a country in the Western Hemisphere with whose government the United States does not

have full diplomatic relations and who arrives by aircraft at a port of entry"); 8 U.S.C.

§ 1225(b)(2)(A) (providing that aliens not inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7)

and not otherwise "clearly and beyond a doubt entitled to" admission are to be placed into removal

proceedings under 8 U.S.C. § 1229a, rather than expedited removal proceedings); *see also* 8 U.S.C.

§ 1232(a)(5)(D)(i) (providing that if an alien is an unaccompanied minor, they generally must be

placed into removal proceedings under 8 U.S.C. § 1229a, rather than expedited removal).

A court "do[es] not lightly assume that Congress has omitted from its adopted text require-

ments that it nonetheless intends to apply" and its "reluctance is even greater when Congress has

shown elsewhere in the same statute that it knows how to make such a requirement manifest."

*Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). Congress expressly provided that

only select, specific immigration statuses provide a basis to challenge the erroneous application of

expedited removal: a persons who is not an alien at all or who is "an alien lawfully admitted for

permanent residence," or who "has been admitted as a refugee," or who "has been granted asylum

… such status not having been terminated." 8 U.S.C. § 1252(e)(2)(A), (C). That Congress explic-

itly required the alien to "ha[ve] been granted" asylum, and for that status to have continued una-

bated to fall outside of the scope of expedited removal, *id.*, indicates that merely having applied

for asylum without it yet being granted has no such exemption effect. *See Jama*, 543 U.S. at 341.

Plaintiff posits that "[t]he regulations permit an affirmative applicant to be placed in expedited removal in only one situation: where the asylum seeker was previously paroled into the United States and their parole has expired or been terminated." Pl. Mot. at 38 (citing 8 C.F.R. § 208.14(c)(4)(ii)). That regulation addresses the processes after USCIS decides an asylum application, specifically providing that USCIS can consider placing such an alien in expedited removal. However, it does not purport to cover the full range of circumstances where expedited removal is authorized. Other regulations speak to that. For example, 8 C.F.R. § 235.3(b) provides broad authority for the government to initiate expedited removal proceedings, including for those individuals who have already "entered" the United States. Likewise, 8 C.F.R. § 235.3(b)(5) lists classes of aliens who shall not be subject to expedited removal, which includes aliens granted asylum, but not those who are asylum applicants. The plain language of 8 C.F.R. § 208.14(c) indicates that its sub-provision (4)(ii) would apply only to those individuals who have had an asylum interview when the asylum officer is poised to issue a denial on the merits. But the regulation says nothing about DHS's authority to apply expedited removal to an alien who has a pending asylum application. *See § 208.14--Approval, Denial, Referral, or Dismissal of Application*, 65 Fed. Reg. 76121, 76128 (Dec. 6, 2000) ("New §§ 208.14(c)(3) and 208.14(c)(4) were added, and detail how the Service processes asylum applications of aliens who were paroled into the United States, depending upon the decision an asylum officer makes on the application and the validity of the parole.").

Finally, Plaintiff argues that placing affirmative asylum applicants in expedited removal is "arbitrary and capricious" because the Guidance "failed to consider … important aspects of the problem," and other factors. Pl. Opp. at 38–39. Notably, an arbitrary and capricious claim is wholly absent from Plaintiff's Count Six, Am. Compl. ¶¶ 125-28, and amendment here is inappropriate. What's more, is that this theory is plainly barred by *Make the Road*, as Plaintiff conceded in their

opposition to Defendants' Motion to dismiss. ECF No. 44 at 39–40. *See* ECF No. 36 at 21–24 (explaining that Plaintiffs' APA claims are barred by *Make the Road*). Indeed, this Circuit noted, "[t]here could hardly be a more definitive expression of congressional intent to leave the decision about the scope of expedited removal, within statutory bounds, to the Secretary's independent judgment." *Make the Road*, 962 F.3d at 632–33 ("[W]hen the Secretary stays within statutory bounds," the court cannot "substantively superintend the Secretary's designation judgment."). The prohibition against judicial review includes determining whether the Secretary, in making the designation, properly considered evidence regarding the accuracy and fairness of the expedited removal process. *Id.* Plaintiff's Count Six—however they frame it—does not warrant preliminary relief, and Plaintiff lacks standing to raise this claim regardless. *See* Section II(b), *supra.*

### III.    Plaintiff Cannot Demonstrate Irreparable Harm or that the Balance of Equities and Public Interest Favor Postponement of Agency Action.

Plaintiff also cannot show that they will be irreparably harmed, or that the balance of equities and the public interest favors granting their application. Indeed, the "failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The D.C. Circuit "has set a high standard for irreparable injury. First, the injury must be both certain and great; it must be actual and not theoretical." *Id.* "The moving party must show" that the "injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* "Second, the injury must be beyond remediation,"; "[m]ere injuries, however substantial, in terms of money, time and

energy necessarily expended ... are not enough." *Id.* Rather, Plaintiff must support that showing with evidence. *Id.* at 295, 297.

The United States would suffer immense injury if this Court were to override Congress's judgment in creating the expedited removal system. Indeed, the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). Defendants' harm is magnified given the significance of expedited removal to the Government's immigration enforcement efforts. Congress designed the expedited removal system to bypass the more "cumbersome and duplicative" procedures for noncitizens "who arrive in the United States with no valid documents." *Thuraissigiam*, 591 U.S. at 107. Furthermore, vigorous enforcement of the immigration laws and the prompt removal of inadmissible aliens is one of the President's top priorities. *See, e.g.*, *Executive Order Protecting the American People Against Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025); *Securing Our Borders*, 90 Fed. Reg, 8467 (Jan. 20, 2025) (Jan. 30, 2025). The President is "a representative of the people" and holds "the mandate of the people to exercise his executive power." *Myers v. United States*, 272 U.S. 52, 123 (1926). The government has a substantial interest in implementing the President's policies. The United States suffers a form of irreparable harm to its democratic system when it is prohibited from effectuating those policies. *Knauff*, 338 U.S. at 542 ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"). That harm worsens when, as here, a stay would undermine the Executive Branch's constitutional and statutory authority over the admission and removal of aliens.

Moreover, Plaintiff's alleged injury is entirely undeveloped and unsupported. Plaintiff Make the Road is the only Plaintiff bringing this motion, ECF No. 50 at 2, n.1, and has completely failed to show irreparable harm. That is because they have neither identified organizational harm, nor have they shown that apprehension in immigration court for the purposes of expedited removal is an imminent injury for any of their members. Plaintiff must specifically show "*at least one identified member* had suffered or would suffer harm." *Summers*, 555 U.S. at 498. Plaintiff has not done so. And their reference to individuals who may or may not have been detained for expedited removal purposes in immigration court, *see* ECF No. 50-2 at ¶ 36, does not even clarify whether these individuals are Make the Road members, much less specifically identify them. Although Make the Road identifies one member with a recent immigration court date, this individual "was able to leave the courthouse." ECF No. 50-2 at ¶ 35. Thus, Make the Road fails to show "imminent harm," and the Court should deny their application. *England*, 454 F.3d at 298 ("Such an injury is far too speculative to warrant preliminary injunctive relief."). Finally, the factual predicates for Plaintiff's present application occurred on January 23, 2025, and January 28, 2025. Am. Compl. ¶¶ 12, 13, 23. Therefore, Plaintiff could have moved for this relief sooner than almost five months after they initiated this case, and before the parties completed briefing on Defendants' motion to dismiss. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014) ("Only after defendants filed their motion to dismiss did plaintiffs communicate any urgency in enjoining defendants (recall that plaintiffs also request injunctive relief in their complaint), and that urgency is not justified by any new facts or allegations."). Thus, the Court should deny Plaintiff's request for preliminary relief.

To that end, although Plaintiff argues that relief is warranted under 5 U.S.C. § 705, they waited almost five months to file this motion—a motion they could have lodged along with their amended complaint on March 22, 2025, if not sooner, or cross moved with when opposing

Defendants' motion to dismiss. Plaintiff's substantial delay in seeking this relief undercuts that they will imminently be "irreparably harmed." *Fund for Animals v. Frizzell*, 530 F.2d 982, 986 (D.C. Cir. 1975) (finding that a delay of 45 days before bringing action for injunctive relief was 'inexcusable,' and 'bolstered' the 'conclusion that an injunction should not issue,' particularly where the party seeking an injunction knew of the pending, alleged irreparable harm.); *Western Watersheds Project v. Bernhardt*, 468 F. Supp. 3d 29, 50 (D.D.C. 2020) (similar) (collecting cases).

Plaintiff justifies the timing of its motion by claiming that "[i]n the past weeks, the Trump Administration has utilized the Rule and Guidance on an unprecedented, national scale to sweep into expedited removal people who were already undergoing regular removal proceedings before an immigration judge ("IJ")." Pl. Mot. at 1. In other words, Plaintiff claims that Defendants' immigration enforcement efforts have been escalating in immigration court. *Id.* at 41–43. However, expedited removal in the interior, including in spaces like immigration court, have always been an initiative of this administration. *See United States v. New York*, No. 1:25-cv-0744 (N.D.N.Y. filed June 12, 2025) (lawsuit by the United States challenging a New York law preventing courthouse arrests). Plaintiff's alleged harm is not a new development that would support an ask for preliminary relief. *Id.* And many of Plaintiff's declarations recount what they have always alleged are "systemic" problems within the expedited removal process. *Compare* ECF Nos. 50-16–50-22 with ECF No. 50-1 at 24; *see* Am. Compl. ¶¶ 51–89; Compl. ¶¶ 50–88. For example, Plaintiff began this litigation lamenting about, *inter alia*, alleged inaccurate reporting on forms, and flaws in the credible fear interview process. Am Compl. ¶¶ 65, 75–84. Despite identifying these claims when filing this case in January, Plaintiff now inexplicably deploys them in support of this request for

preliminary relief. Plaintiff offers no explanation for this belated request for relief as to these claims. Thus, they should not be the basis for preliminary relief now.

The balance of equities and public interest also do not favor Plaintiff. Here, "[t]he balance of equities and the public interest 'merge when the Government is the opposing party.'" *Rai v. Biden*, 567 F. Supp. 3d 180, 201 (D.D.C. 2021). "'When a private party seeks injunctive relief against the government,' those two remaining factors 'generally call for weighing the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined.'" *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 734 (D.C. Cir. 2022) (citation omitted). Indeed, a stay of the 2025 Designation is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *Legalization Assist. Project*, 510 U.S. at 1305-06. That is especially so when Congress delegated the Secretary "*sole and unreviewable*" discretion to make this designation. *Make the Road New York* 962 F.3d at 632. Indeed, Congress did not intend for judicial review in this area, much less a preliminary injunction. *AILA*, 199 F.3d at 1363. Finally, the public interest factor weighs against granting Plaintiff's motion, as the public interest "favors the efficient administration of the immigration laws at the border," *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019), and an injunction would frustrate the "public interest in effective measures to prevent the entry of illegal aliens" at the Nation's borders. *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981). For the reasons discussed herein, the Court should deny Plaintiff's request for preliminary relief.[15]

---

[15] If the Court granted Plaintiff's requested relief, it should be strictly limited to individual aliens who are Make the Road members, currently in expedited removal and actually identified by Plaintiff in this suit. *Madsen v. Women's Health Ctr., Inc*., 512 U.S. 753, 765 (1994) (finding that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). Likewise, Defendants respectfully request that the Court require Plaintiffs to post security for any taxpayer funds expended during the pendency of the Court's order. FED. R. CIV. P. 65(c).

DATED: June 24, 2025

BRETT SHUMATE
*Assistant Attorney General*
Civil Division

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

Respectfully Submitted,


ELISSA FUDIM
CAROLINE MCGUIRE
*/s/ Caroline McGuire*
CAROLINE MCGUIRE
(NY Bar No. 5854823)
*Trial Attorneys*
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals
P.O. Box 868, Benjamin Franklin Station
Washington. D.C. 20044