**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MAKE THE ROAD NEW YORK, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | No. 1:25-cv-00190-JMC |
| v. | ) | |
| | ) | |
| KRISTI NOEM, Secretary of the U.S. Department | ) | |
| of Homeland Security, in her official capacity, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO POSTPONE EFFECTIVE DATE
OF AGENCY ACTION**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

   I.     Defendants' Threshold Arguments Fail. ................................................................ 2

      A.     Plaintiffs' Claims Are Not Time-Barred ................................................. 2

      B.     Plaintiff's Members Fall Within the Zone Of Interests. ......................... 6

      C.     Plaintiff's Claims Are Not Foreclosed By *Make The Road New York v. Wolf* ....... 6

   II.    Section 705 Relief is Available ............................................................................ 6

      A.     8 U.S.C. § 1252(f)(1) Does Not Bar Postponement Under the APA ...... 6

      B.     Defendants' Other Remedy Arguments Fail. .......................................... 9

   III.   Plaintiff Is Likely To Prevail On The Merits. .................................................... 9

      A.     *AILA* Does Not Foreclose Plaintiff's Due Process Claim ...................... 9

      B.     *Salerno* Does Not Apply And Is Satisfied In Any Event. ...................... 10

      C.     The Rule And Guidance Likely Violate Due Process. .......................... 12

         1. A Weighty Liberty Interest Is At Stake. ............................................... 13

         2. The Risk Of Error Is Unacceptably High. ............................................. 17

         3. The Remaining *Mathews* Factors Favor Plaintiffs. ............................. 18

      D.     Plaintiff Is Likely To Prevail On Its Claim That The Rule and Guidance Violate The Expedited Removal Statute As Interpreted To Require Adequate Procedures. ............. 20

      E.     Plaintiff Is Likely To Prevail On Its Claim That 8 U.S.C. § 1182(a)(7) Does Not Apply To Noncitizens In The Interior Who Lack Valid Entry Documents. ......................... 22

      F.     Plaintiff Is Likely To Prevail On Its Claims That Expedited Removal Cannot Lawfully Be Applied to Affirmative Asylum Applicants. .................................................. 26

   IV.   The Equitable Factors Favor A Stay. ................................................................. 29

CONCLUSION ............................................................................................................... 31

CERTIFICATE OF SERVICE ....................................................................................... 1

## INTRODUCTION

The Due Process Clause does not permit the deportation of people from within the United States without reasonable notice of the charges and a meaningful opportunity to contest them before a neutral adjudicator. Defendants' argument that the Rule and Guidance are lawful therefore hinges on the premise that only people lawfully admitted to the United States have a liberty interest in remaining here. On that view, the Constitution would permit summary removal of people who have lived in this country not just for months but for decades. That defies over a century of Supreme Court precedent making clear that noncitizens who have entered the United States, even if unlawfully, can only be removed after receiving due process.

However, the Court need not reach that constitutional question because it can interpret the statute to require minimal safeguards that the Rule and Guidance fail to provide. Properly interpreted, the statute also does not permit the expedited removal of noncitizens in the interior based on lack of valid *entry* documents or of affirmative asylum applicants.

Defendants' threshold arguments lack merit. For instance, Plaintiff's claims are not "committed to agency discretion" since the Secretary has no *discretion* to violate the Constitution or the INA. The D.C. Circuit has rejected Defendants' assertion that 8 U.S.C. § 1252(e) limits relief in cases like this, which are explicitly authorized by that subsection. And courts have likewise repeatedly rejected Defendants' claims that agency actions cannot be stayed once they take effect and that such relief is equivalent to an injunction.

On the equities, Defendants' claim that Plaintiff's motion is "belated" ignores Defendants' massive new initiative applying the Rule and Guidance in immigration courts and communities across the country. This aggressive new initiative threatens Plaintiff's members with irreparable harm: Every day, noncitizens are unlawfully being torn away from their families and summarily removed, including to countries where they face persecution or torture.

1

**ARGUMENT**

**I.      Defendants' Threshold Arguments Fail.**

**A.  Plaintiffs' Claims Are Not Time-Barred.**

Defendants argue that several of Plaintiff's claims are barred by the 60-day limitation in § 1252(e)(3) on the theory that Plaintiff challenges the original 1997 implementation of expedited removal. Opp. 17-20. But under Defendants' view, the population the Rule newly subjects to expedited removal could *never* challenge the legality of the procedures it imposes—not in 1997, because those procedures did not yet apply to them (and so any challenge would have failed on standing and ripeness grounds), and not now, because it is supposedly too late. Defendants' "heads I win, tails you lose" theory cannot be squared with § 1252(e)(3), which authorizes exactly the type of systemic challenges to expedited removal that Plaintiff raises here.

The Rule and Guidance are new writings that subject significant new groups of noncitizens to expedited removal for the first time. Section 1252(e)(3) specifically authorizes actions to challenge whether "a regulation, or a written policy directive, written policy guideline, or written procedure" implementing the expedited removal statute is "in violation of law." 8 U.S.C. § 1252(e)(3)(A)(ii). An action "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure"—i.e. the challenged *writing*—"is first implemented." *Id*. § 1252(e)(3)(B). The Rule and Guidance are such writings, and this action was filed within 60 days of their first implementation. And Plaintiffs' claims go directly to whether these writings—which apply the statute and prior regulations to this new group for the first time— are "constitutional" or "otherwise in violation of law." *Id.* § 1252(e)(3)(A)(i)-(ii).

In their view, Defendants can adopt regulations applicable to a limited population (noncitizens stopped at or near the border), then issue new written directives that apply those procedures to an entirely different population with different (and stronger) constitutional and

statutory claims, and then assert that the latter group is time-barred from challenging those new writings. But in enacting § 1252(e)(3), Congress specifically provided for judicial review of any new expedited removal "regulation, directive, guideline, or procedure." It could not have meant to allow the government to control the availability of judicial review, as Defendants would have it.

Defendants suggest that *M.M.V. v. Garland,* 1 F.4th 1100 (D.C. Cir. 2021), held otherwise. Opp. 19. But the plaintiffs there challenged policies more than 60 days after they were implemented. 1 F.4th at 1108-09, 1110-11. Here, by contrast, Plaintiff challenge new policies within the 60-day timeframe.

In the alternative, the 60-day deadline is non-jurisdictional and subject to equitable tolling. *M.M.V.*'s contrary conclusion has been eviscerated by subsequent Supreme Court decisions in *Biden v. Texas,* 597 U.S. 785 (2022), *Harrow v. Department of Defense,* 601 U.S. 480 (2024), and *Riley v. Bondi*, 606 U.S. ___, 2025 WL 1758502 (June 26, 2025).

Last year, *Harrow* held that a "time-bar provision" requiring litigants to file appeals from agency decisions to the Federal Circuit within 60 days was not jurisdictional because it did not "speak[] to a court's authority to hear a case." 601 U.S. at 485. The Court explained that it has identified only *one* type of "exceptional" time limit "that counts as jurisdictional": "statutory deadlines to appeal from one Article III court to another." *Id*. at 488-89 (cleaned up).

Just last week, *Riley* applied *Harrow* to § 1252 itself. It held that § 1252(b)(1)—which provides that a "petition for review must be filed not later than 30 days after the date of the final order of removal," 8 U.S.C. § 1252(b)(1)—is non-jurisdictional because it "tells *aliens* what they must do if they want judicial review," but "lacks any language 'demarcating a court's power,'" *Riley*, 2025 WL 1758502, at *8 (cleaned up) (quoting *Harrow*, 601 U.S. at 484).

Under *Harrow* and *Riley*, § 1252(e)(3)(B)'s 60-day deadline is non-jurisdictional. The provision is titled "[d]eadlines for bringing actions" and states that "[a]ny action . . . must be filed

no later than 60 days after the date the challenged [writing] is first implemented." 8 U.S.C. § 1252(e)(3)(B). Like the provisions in *Harrow* and *Riley*, § 1252(e)(3)(B) "describes how a litigant can obtain judicial review of [agency action]" and "sets a deadline" of 60 days. *Harrow*, 601 U.S. at 485. It does not "speak[] to a court's authority to hear a case" or mention the court's "jurisdiction, whether generally or over untimely claims." *Id.* at 485-86; *accord Riley*, 2025 WL 1758502, at *8, 10. Nor does it address an appeal between Article III courts. *Harrow* and *Riley* thus "eviscerate" *M.M.V.*'s reasoning and "effectively overrule" it. *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1334 (D.C. Cir. 2024).[1]

Moreover, *Texas*, *Harrow*, and *Riley* eviscerate *M.M.V.*'s reasoning about two neighboring provisions. First, *M.M.V.* analyzed § 1252(a)(2)(A), which states that "no court shall have jurisdiction to review" expedited removal procedures and policies "except as provided in subsection (e)." 8 U.S.C. § 1252(a)(2)(A)(iv). The court reasoned that this "conditions jurisdiction on satisfaction of the requirements in subsection (e)"—including the 60-day deadline. *M.M.V.*, 1 F.4th at 1109. *Harrow* similarly involved a jurisdictional provision (28 U.S.C. § 1295) requiring appeals be filed "pursuant to" a separate provision (5 U.S.C. § 7703), which set forth a time limit. But the Supreme Court rejected the argument that the time limit itself therefore became a "jurisdictional prerequisite" because reading "pursuant to" in this manner would transform a "bevy of procedural rules" into jurisdictional requirements. 601 U.S. at 486, 488. *M.M.V.*'s reading of "except as provided in subsection (e)" suffers from the same fatal flaw: that logic would incorrectly

---

[1] The fact that § 1252(e)(3)(B) is phrased in mandatory terms "is of no consequence to the jurisdictional issue." *Harrow*, 601 U.S. at 485 (cleaned up).

render jurisdictional a bevy of § 1252's procedural rules for filing and briefing deadlines, venue, and service—including the very provision, § 1252(b)(1), that *Riley* held to be non-jurisdictional.[2]

Second, *M.M.V.* relied on a remedial provision, § 1252(e)(1)(A), which states that "no court may . . . enter" particular relief "except as specifically authorized in a subsequent paragraph of this subsection." *M.M.V.*, 1 F.4th at 1109. But *Texas* subsequently held that a neighboring remedial provision, § 1252(f)(1), only "withdraws a district court's 'jurisdiction or authority' to grant a particular form of relief" and does *not* "deprive the lower courts of . . . subject matter jurisdiction." *Texas*, 597 U.S. at 798. The Court reached this conclusion based on § 1252(f)(1)'s text (which refers to the power to "enjoin or restrain"); its title ("Limit on injunctive relief"); and Congress's use of explicit language elsewhere in § 1252 to deny subject matter jurisdiction. *Id*. at 798-99. Those same factors confirm that § 1252(e)(1)(A) is a bar on relief and not review: its text ("no court may enter declaratory, injunctive, or other equitable relief"); its title ("Limitations on relief"); and Congress's use of explicit jurisdictional language elsewhere in § 1252.

Because the 60-day deadline is non-jurisdictional, it is subject to equitable tolling. And tolling is warranted because Plaintiff (1) "pursu[ed] [its] rights diligently," and (2) an "extraordinary circumstance stood in [its] way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (cleaned up). First, even assuming that Plaintiff could have met the 60-day deadline by filing suit decades ago, an "extraordinary circumstance" stood in its way: the fact that the government had not yet designated people like its members for expedited removal. Any attempt to sue years prior to that designation would have failed for lack of standing or ripeness.

---

[2] *See* 8 U.S.C. § 1252(a)(1) ("[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, *except as provided in subsection (b)*") (emphasis added); *id.* § 1252(b)(1)-(3) (setting forth rules on filing deadline, venue, forms, service, and briefing deadlines); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 422-23 (2023) (rejecting the view that such procedural rules are jurisdictional).

Second, Plaintiff acted diligently by filing suit within 60 days of the first implementation of the Rule and Guidance, consistent with the 60-day timeframe that Congress enacted.

### B.  Plaintiff's Members Fall Within the Zone Of Interests.

Defendants argue that Plaintiff does not fall within the INA's zone of interests, Opp. 22-23, but make no such argument as to Plaintiff's members. As Plaintiff previously explained, its members easily satisfy the undemanding zone-of-interests test as people at risk of expedited removal under the Rule and Guidance. ECF No. 44 at 10 (collecting analogous cases).

### C.  Plaintiff's Claims Are Not Foreclosed By *Make The Road New York v. Wolf*.

Defendants argue that *Make the Road N.Y. v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020), interpreted 8 U.S.C. § 1225(b)(1)(A)(iii)(I) to preclude *all* judicial review and therefore bars Plaintiffs' constitutional and statutory challenges to the Rule. Opp. 24-26. To the contrary, that decision addressed only arbitrary-and-capricious and notice-and-comment claims and concluded that "there is no cause of action under the APA to scrutinize the Secretary's designation decision *so long as it falls within statutory and constitutional bounds*." 962 F.3d at 635 (emphasis added); *accord id.* at 631-32, 634 n.14. Plaintiff's claims that the Rule exceeds those bounds are reviewable. *Cf. Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir. 2016) (holding in FTCA context that agencies lack "discretion to make unconstitutional policy choices" or "violate a federal statute") (cleaned up).

## II.    Section 705 Relief is Available.

### A.  8 U.S.C. § 1252(f)(1) Does Not Bar Postponement Under the APA.

Section 1252(f)(1) is "nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999). It "generally prohibits lower courts from entering [certain] *injunctions*." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022)

(emphasis added). It therefore does not restrict courts' separate authority under 5 U.S.C. § 705 to stay agency action pending judicial review.

The Supreme Court has "distinguished injunctive relief" from stays generally. *Immigrant Defs. L. Ctr. v. Noem*, No. 20-cv-9893, 2025 WL 1172442, at *14 (C.D. Cal. Apr. 16, 2025). "A stay . . . temporarily suspend[s] the source of authority to act"; unlike an injunction, it does not "direct[] an actor's conduct." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 428-29 (2009)). Therefore, like vacatur, a stay is a "less drastic remedy" than an injunction. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Indeed, a stay under § 705 is an even "lesser form of [relief than] vacatur." *Texas v. Biden*, 646 F. Supp. 3d 753, 768 (N.D. Tex. 2022). Unlike injunctions, stays do "not 'order federal officials to take or to refrain from taking actions to . . . carry out the specified statutory provisions'" covered by § 1252(f)(1). *Id.* at 769 (quoting *Aleman Gonzalez*, 596 U.S. at 550); *accord Immigrant Defs. L. Ctr.*, 2025 WL 1172442, at *13-15.

Defendants cite *Biden v. Texas*, 597 U.S. 785 (2022), Opp. 10-11, but that decision explicitly reserved the question of whether § 1252(f)(1) applies to APA relief, *id.* at 801 n.4; and the district court on remand rejected Defendants' view, *Texas*, 646 F. Supp. 3d at 768. Indeed, every court to consider it has rejected the argument that § 1252(f)(1) applies to APA relief. *E.g.*, *Texas v. United States*, 40 F.4th 205, 219-20 (5th Cir. 2022); *see Immigrant Defs. L. Ctr.*, 2025 WL 1172442, at *14-15 (collecting cases).

Defendants nonetheless claim that a stay "would have the effect of enjoining or restraining DHS's implementation" of the expedited removal statute. Opp. 9. But virtually all orders against the government have the "effect" of restraining officials in some sense. If § 1252(f)(1) prohibited them, it would also bar declaratory relief, which it does not. *Make the Road N.Y.*, 962 F.3d at 635.

Moreover, Defendants' reading would also effectively eviscerate § 1252(e)(3), which expressly "provide[s] . . . for more traditional judicial review of 'challenges on [the] validity of

the [expedited removal] system.'" *Make the Road N.Y.*, 962 F.3d at 625. Construing § 1252(f)(1) as Defendants propose to eliminate APA relief, and apparently even declaratory relief, would render § 1252(e)(3) a nullity. It is therefore unsurprising that the government previously conceded that courts in § 1252(e)(3) actions have "authority to '[declare] any reviewable action unlawful and set it aside.'" *Grace v. Barr*, 965 F.3d 883, 894, 908 (D.C. Cir. 2020). This Court should reject reading § 1252(f)(1) to "impute to Congress a purpose to paralyze with one hand what it sought to promote with the other" when it simultaneously enacted § 1252(e)(3). *Grace*, 965 F.3d at 893.

Finally, Defendants cite a footnote in *Sampson v. Murray*, 415 U.S. 61 (1974), to argue that § 705 permits only courts of appeals, but not district courts, to stay agency action. Opp. 11. To the contrary, that footnote stated that § 705 was "intended to reflect existing law under the *Scripps-Howard* doctrine" predating the APA. *Sampson*, 415 U.S. at 68 n.15. And *Scripps-Howard* held that reviewing courts generally had authority to stay agency action. *Scripps-Howard Radio v. FCC*, 316 U.S. 4, 17 (1942). While *Scripps-Howard* itself concerned review by a court of appeals, the Court's reasoning concerned the power of the "reviewing court" more generally. *Id.* at 10, 15; *see also id.* at 15-16 (depending on the judicial review scheme, agency actions were "equally susceptible of being stayed" by a district or circuit court). Meanwhile, the reason the agency action could not be stayed in *Sampson* was not because the reviewing court was a district court but rather because the agency action had not yet "become final." *Sampson*, 415 U.S. at 74. Therefore, even if § 705 "'state[d] existing law'" concerning "principles of judicial review" when the APA was enacted, Opp. 12, *Scripps-Howard* held that reviewing courts—including district courts—had power to stay agency action at that time. Indeed, *Scripps-Howard* contravenes Defendants' atextual argument that § 1252(f)(1) bars stays despite never mentioning stays or postponement: *Scripps-Howard* held that "[w]here Congress wished to deprive the courts of this historic power" to stay

8

agency action, "it knew how to use apt words." 316 U.S. at 17; *accord Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 25 (D.D.C. 2012).

### B.  Defendants' Other Remedy Arguments Fail.

Defendants contend that § 705 does not authorize courts to stay agency actions that have taken effect. Opp. 14-16. To the contrary, "[c]ourts—including the Supreme Court—routinely stay already-effective agency action under Section 705." *Texas*, 646 F. Supp. 3d at 770 (collecting cases); *accord Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *5 (D.D.C. June 3, 2025). Relief "under Section 705 (even after the effective date) restores the [] status quo *ex ante*" that existed before the challenged agency action. *Texas*, 646 F. Supp. 3d at 771.[3]

Finally, Defendants argue that 1252(e) bars any remedy but a final "determination" on the merits. Opp. 16. The D.C. Circuit rejected an equivalent argument in *Grace*, 965 F.3d at 907, and squarely held that § 1252(e) does not dictate "the relief available" in § 1252(e)(3) actions, *id.* at 908.

### III.    Plaintiff Is Likely To Prevail On The Merits.

### A.  *AILA* Does Not Foreclose Plaintiff's Due Process Claim.

Defendants contend that Plaintiff's due process claim is foreclosed by *American Immigration Lawyers Association v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998) ("*AILA*"), aff'd, 199 F.3d 1352 (D.C. Cir. 2000)). Opp. 29-32. But apart from the organizational plaintiffs' First Amendment claims, which are irrelevant here, *AILA* only addressed the merits of claims by two

---

[3] Defendants' cases are not to the contrary. *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006), did not address § 705 at all. *OPM v. American Federation of Government Employees*, 473 U.S. 1301, 1303-06 (1985), is a single-justice order concerning appellate jurisdiction. *Center for Biological Diversity v. Regan*, 597 F. Supp. 3d 173 (D.D.C. 2022), and *Safety-Kleen Corporation v. EPA*, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. 1996), concerned the authority of *agencies* rather than *courts* to postpone already-effective rules. Unlike a court order, an agency's postponement of a rule that has taken effect is "tantamount to amending or revoking a rule," which requires APA compliance. *Texas*, 646 F. Supp. 3d at 771 (cleaned up).

noncitizens denied admission at ports of entry who challenged regulations applicable only at ports of entry. *See* 18 F. Supp. 2d at 45, 47, 58-60. The district court held that those plaintiffs had no liberty interest in seeking initial entry. *Id*. at 58-60. The court relied heavily on cases involving noncitizens outside the country or those stopped at the border or at sea before they could enter. *Id*. Here, by contrast, Plaintiff's members have already entered the United States—and therefore have a liberty interest in remaining regardless of "whether their presence here is lawful." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). *AILA* did not and could not have addressed the claims of such noncitizens, since expedited removal did not even apply to them at the time.[4]

### B.  *Salerno* Does Not Apply And Is Satisfied In Any Event.

Defendants incorrectly argue that Plaintiff's constitutional claim fails under *United States v. Salerno*, 481 U.S. 739 (1987). Opp. 3-4, 9, 32, 34. As Plaintiff has explained, however, *Salerno* does not apply to facial, systemic challenges under § 1252(e)(3). ECF No. 44 at 16-17. Defendants' counterarguments are unpersuasive. Defendants claim that the Court should presume that Congress was aware of *Salerno* when it enacted § 1252(e)(3). ECF No. 46 at 8. But § 1252(e)(3)'s text and structure overcome any such presumption. ECF No. 44 at 16-17; *see, e.g.*, *Holland*, 560 U.S. at 646 (citing cases where similar presumption was overcome).

Defendants also argue that § 1252(e)(3) permits *only* challenges by people already issued expedited removal orders. ECF No. 46 at 9. But the D.C. Circuit held that § 1252(e)(3) "expressly provides for jurisdiction over the very type of claim" that Plaintiff brought against the 2019 Rule

---

[4] Similarly, *AILA* examined the plaintiffs' statutory and regulatory claims through the lens of the only plaintiffs before it—noncitizen tourist visa-holders seeking entry at the border. 18 F. Supp. 2d at 52-58. For instance, in upholding the regulations' lack of a right to "consultation during the period between secondary inspection and the credible fear interview," the court observed that the government processed "ten million" people at ports of entry every year. *Id.* at 54-55; *see also id.* at 55 (upholding denial of access to counsel during secondary inspection as "reasonable" under the circumstances). Such concerns are inapplicable in the interior.

"on behalf of [its] individual members," *Make the Road N.Y.*, 962 F.3d at 628, even though none of them—and apparently no one at all—had yet "been placed into the [expanded] expedited removal process," *Make the Road N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 33 (D.D.C. 2019).

Nor must the Court merely "imagine circumstances" where the Rule "might result in erroneous application" of expedited removal. *See* ECF No. 46 at 15. Plaintiff's members include noncitizens who were never admitted "and have been continuously present for longer than two years." ECF No. 50-2 (Fontaine Decl.) ¶ 18. "These members may be erroneously placed into expanded expedited removal either because they do not have, or do not carry, documentation of their continuous length of residence or would not be able to present that documentation on the short timeline envisioned by the Rule, especially if they are detained by immigration authorities." *Id.* And while they do not seek relief through this motion, the experience of Plaintiffs Mary and John—who were removed under the Rule and Guidance despite having lived in the United States for over a decade—likewise demonstrates the concrete risk of error that Make the Road New York's members face under the Rule and Guidance. Mot. 18, 21, 26; ECF 50-7 (Mary Decl.). Plaintiff has also cited numerous other examples of people present in the United States longer than two years who have been subjected to expedited removal proceedings under the Rule and Guidance, Mot. 21, and submitted extensive evidence of past erroneous applications of more limited iterations of expedited removal, Mot. 20-26. The Court therefore need not "rest on speculation" about the risks the Rule and Guidance impose. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

Defendants also suggested that those subjected to "erroneous application" of the Rule and Guidance "may have a basis to raise a future § 1252(e)(2) challenge." ECF No. 46 at 15; *see* 8 U.S.C. § 1252(e)(2). But Defendants' position is that 8 U.S.C. § 1252(e)(2) is "narrow," Opp. 35 n.7, and does not permit noncitizens to challenge the legality of expedited removal orders or their

factual predicates, aside from claims to citizenship or certain types of lawful status. *See, e.g.*, Resp. in Opp. to TRO at 1, 6, *Domingos-Ros v. Archambault*, No. 25-cv-1208 (S.D. Cal. May 14, 2025) (citing 8 U.S.C. § 1252(e)(2), (e)(5)). Thus, on Defendants' view, § 1252(e)(2) *cannot* provide meaningful review of an unlawful expedited removal order.

In any event, even assuming *Salerno* applies, the Rule and Guidance are facially unconstitutional under the *Salerno* standard, which requires showing either that a challenged policy "is unconstitutional in all of its applications" or has no "plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449 (cleaned up). Prior to the Rule, expedited removal largely applied at ports of entry or to people apprehended soon after crossing the border who "cannot be said to have 'effected an entry.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). By contrast, the Rule and Guidance have no plainly constitutional sweep because they apply *only* to people who have entered the United States and have a liberty interest in remaining here. On their face, the Rule and Guidance thus inherently violate the Fifth Amendment by depriving people of that liberty interest without baseline safeguards. Mot. 14-18; *infra* 13-16; *see also* ECF No. 46 at 9 (acknowledging that an "*inherently* unlawful" process would be facially unconstitutional under *Salerno*). Moreover, risk of erroneous deprivation is assessed in "the generality of cases." *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976). Under that standard, Plaintiff is likely to show that the Rule and Guidance are inadequate for *all* people in the interior of the country. Mot. 18-26; *infra* 17-19.

**C. The Rule And Guidance Likely Violate Due Process.**

The Rule and Guidance have inherent procedural defects that render them unconstitutional: lack of reasonable notice or time to respond to the government's allegations; placement of the burden on the noncitizen; lack of right to counsel or consultation; and lack of a neutral adjudicator or neutral review of key issues. Mot. 14-15; *see, e.g.*, *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367-68 (2025); *Propert v. District of Columbia*, 948 F.2d 1327, 1333-35 (D.C. Cir. 1991); *Daskalea v.*

*Washington Humane Soc'y*, 480 F. Supp. 2d 16, 31-32, 33-35 (D.D.C. 2007).

Defendants' position that the Rule and Guidance are nonetheless lawful depends almost entirely on the assertion that people continuously present in the United States for less than two years who have not previously been admitted "have no liberty interest in avoiding removal." Opp. 26, 33, 34. Indeed, that is the *only* way that the procedures imposed could be constitutional, since they are clearly intolerable for adjudicating a constitutionally protected liberty interest. *See* Mot. 14-15. The people to whom the Rule and Guidance apply, however, *do* have a liberty interest in continuing to live in this country. And given the severe facial deficiencies in the procedures that the Rule and Guidance impose, the other *Mathews* factors likewise favor Plaintiff.

### 1. A Weighty Liberty Interest Is At Stake.

Defendants are incorrect that Plaintiff's members lack any protected liberty interest in remaining in the United States because they have not been lawfully admitted. Opp. 26-28, 32-34. The Supreme Court's repeated holdings that "the removal of people from within the United States implicates a weighty' liberty interest," Mot. 16-17 (collecting cases), encompass people who have entered the United States unlawfully and without being admitted.

The noncitizen in *Yamataya v. Fisher*, 189 U.S. 86 (1903), was arrested and charged with deportation just four days after the government asserted she had "surreptitiously, clandestinely, unlawfully, and without any authority come into the United States." *Id.* at 87; *see also* Br. for U.S. 1, 7-8, 10, 12, Tr. of Record, *Yamataya v. Fisher*, 189 U.S. 86 (Oct. 2, 1901) (No. 171) (attached hereto as Exhibit 1) (stating noncitizen had entered the United States "clandestinely" and "surreptitiously" through "evasion of inspection"). The Court nonetheless held that she could not be "deprived of [her] *liberty*" without receiving "due process of law." 189 U.S. at 100-01 (emphasis added); *see also id.* at 100 (deportation is an issue "involving the liberty of persons").

The Supreme Court has therefore "long held that 'no person shall be' *removed from the*

*United States*" without due process. *A.A.R.P.*, 145 S. Ct. at 1367 (emphasis added) (quoting *Yamataya*, 189 U.S. at 101). Noncitizens "who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (citing *Yamataya*, 189 U.S. at 100-01); *accord Zadvydas*, 533 U.S. at 693 ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (The Fifth Amendment applies to noncitizens "whose presence in this country is unlawful, involuntary, or transitory."); *Maldonado-Perez*, 865 F.2d 328, 329-30, 332 (D.C. Cir. 1989) (noncitizen apprehended one day after unlawful entry entitled to due process); *Zheng v. Mukasey*, 552 F.3d 277, 279, 286 (2d Cir. 2009) (same for noncitizen apprehended one week after entry).

Defendants' contrary argument relies principally on *Thuraissigiam*. Opp. 3, 26-29, 33-34. But that decision merely concluded that a noncitizen apprehended "25 yards into U.S. territory" was entitled only to the process Congress provided because he had not "'effected an entry.'" *Thuraissigiam*, 591 U.S. at 139-140. Because that was the only situation *Thuraissigiam* addressed, it did not and could not overrule the Supreme Court's earlier holdings that noncitizens who *have* entered the United States, even if unlawfully, have due process rights.

Defendants claim that *Thuraissigiam* instead stands for the sweeping proposition that only "'an alien's *lawful entry* into this country'" confers due process rights. Opp. 28-29 (quoting 591 U.S. at 107). But the sentence they cite states that because "Congress is entitled to set the conditions for an alien's lawful entry," "an alien *at the threshold of initial entry* cannot claim any greater rights under the Due Process Clause." 591 U.S. at 106 (emphasis added). Moreover, it cannot be right that noncitizens acquire due process rights only upon lawful admission. If Defendants were correct,

14

Congress could constitutionally authorize the expedited removal of people who entered the United States without inspection and have lived in this country for five, ten, or twenty years rather than two. But Congress cannot dictate whether someone has "effected an entry" and is therefore a person "within the United States" for due process purposes. *Zadvydas*, 533 U.S. at 693; *see also id.* at 695 ("Executive and Legislative Branch decisionmaking" concerning removal "is subject to important constitutional limitations"); *cf. Boumediene v. Bush*, 553 U.S. 723, 765 (2008) (rejecting the notion that "the political branches have the power to switch the Constitution on or off at will").

Defendants are also mistaken that "*Thuraissigiam* was not limited temporarily [sic] or geographically." Opp. 27. Defendants cite the Court's statement that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" 591 U.S. at 139 (quoting *Mezei*, 345 U.S. at 215). But *Mezei* and similar cases concerned noncitizens denied entry at ports and held on U.S. soil rather than "aboard the vessel" they arrived on, or otherwise allowed to remain in the United States via parole or other "temporary arrangements" "pending determination of their admissibility." *Mezei*, 345 U.S. at 215; *see Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) (describing "parole of aliens seeking admission" as "a device through which needless confinement is avoided while administrative proceedings are conducted"). The Court has viewed such "arrangements as not affecting an alien's status; he is treated as if stopped at the border." *Mezei*, 345 U.S. at 215. In *Thuraissigiam*, the Court's analogy to *Mezei* was limited to "an alien like [the] respondent" "detained shortly after unlawful entry" who "cannot be said to have 'effected an entry'": "Like an alien detained after arriving at a port of entry, an alien *like respondent* is 'on the threshold.'" *Id.* at 140 (emphasis added). Here, by contrast, Plaintiff's members are not "like the respondent" in *Thuraissigiam* because they are *not* "on the threshold": they have already "effected an entry" and are living in the interior. Indeed, as noted above, *Mezei* reaffirmed *Yamataya*'s

holding that noncitizens who have already "passed through our gates, *even illegally* may be expelled only after . . . due process." *Mezei*, 345 U.S. at 212 (emphasis added).

United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 (1950), is likewise inapposite. *See* Opp. 26-27, 33. *Knauff* too involved a noncitizen seeking admission at a port of entry. 338 U.S. at 539-40; *see also United States v. Villarreal Silva*, 931 F.3d 330, 333 (4th Cir. 2019) (cited at Opp. 33) (same). Thus, *Knauff*'s language regarding the due process rights of "an alien denied entry" at a port, 338 U.S. at 544, has no bearing on the rights of people who *have* entered.

Defendants' reliance on *Landon v. Plasencia*, 459 U.S. 21 (1982), is also misplaced. *See* Opp. 3, 26-28. Defendants gloss *Landon* as indicating that a protected liberty interest attaches "*only* 'once an alien gains admission to our country and begins to develop the ties that go with permanent residence.'" Opp. 28 (emphasis added) (quoting *Landon*, 459 U.S. at 32). But *Landon* did not use the critical word—*only*—on which Defendants' theory depends. Moreover, the Court in *Landon* was explaining that the lawful permanent resident there possessed a liberty interest in *re*-entering the United States due to her prior connection with the country, even though a noncitizen who had not previously entered the country would not have a liberty interest in "seeking *initial* admission." 459 U.S. at 32-33 (emphasis added). The Court was *expanding* protections for certain noncitizens seeking entry, not curtailing protections for those already within the country.[5]

---

[5] Defendants' remaining cases are equally inapt. *See* Opp. 33-34. *Carlson v. Landon* reaffirmed that removal proceedings must be implemented in "a manner consistent with due process" and held the detentions there constitutional. 342 U.S. 524, 538, 541-42 (1952). And the Seventh Circuit's decision in *Dave v. Ashcroft* held there was no "liberty or property interest in obtaining purely discretionary relief" like cancellation of removal; it did not state that there was no liberty interest in remaining in the United States. 363 F.3d 649, 653 (7th Cir. 2004).

### 2.  The Risk Of Error Is Unacceptably High.

As Plaintiff's motion detailed, the Rule and Guidance lack basic procedural safeguards: no advance notice, placement of the burden on the noncitizen, no right to consultation or counsel at key stages, and no neutral determination or review over critical questions. Mot. 14-15. And the lack of these safeguards creates an impermissibly high risk of erroneous deprivations of liberty at critical junctures throughout the process. Mot. 18-26.

In response, Defendants first argue that "this Court lacks jurisdiction to consider allegations that the statute or regulations, as-applied, will affect non-parties in error." Opp. 34 (citing *AILA*, 18 F. Supp. 2d at 58). As explained above, however, *AILA* did not and could not foreclose Plaintiff's timely challenge to the Rule and Guidance, *supra* 9-10; and even if the Court concludes that Plaintiff's challenge implicates the statute and regulations rather than just the Rule and Guidance, equitable tolling is available and warranted, *supra* 3-6.

Defendants next argue that Plaintiff does not show sufficient risk of erroneous deprivation because "due process 'rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions.'" Opp. 34-35. But Plaintiff alleges more than rare exceptions. For example, a congressionally commissioned study by the U.S. Commission on International Religious Freedom ("Commission" or "USCIRF") found that immigration officers failed to refer noncitizens who expressed fear of removal for credible fear interviews in *15 percent* of observed cases. ECF No. 50-23 at 46 (Steinberg. Decl. Ex. 4, USCIRF 2005, at 6) (emphasis added); *see also* ECF No. 50-24 at 106 (Steinberg Decl. Ex. 33, Borderland Immigr. Council 2017, at 12) (finding that DHS erroneously failed to refer people who expressed fear of removal for credible fear interviews "[i]n 12% of cases"). Erroneously removing more than *one out of ten* people to danger without required screenings is hardly a "rare exception."

Defendants make the conclusory assertion that that the risk of error is not high because whether a noncitizen "may be subject to expedited removal proceedings is straightforward." Opp. 35. But Plaintiffs have identified systemic flaws that have made these purportedly "straightforward" determinations error-prone in the past—even when expedited removal has been applied at the border where its factual predicates are comparatively straightforward. Mot. 18. And the fact that Plaintiff's evidence shows that these errors have occurred routinely for *decades* without being resolved underscores rather than mitigates the ongoing risk of error. *Cf.* Opp. 35. Indeed, the Commission's latest report concluded that "many of the problems it has repeatedly documented," "including flawed screening and documentation practices," "remain unaddressed." ECF No. 50-23 at 121 (Steinberg Decl. Ex. 6, USCIRF 2025, at 3). Because the Rule and Guidance create no additional safeguards, there is every reason to expect that these recurring errors will continue or be even more frequent given the more difficult continuous-presence determinations required. Mot. 18-21.

Finally, Defendants argue that "as a categorical matter, Plaintiff fails to demonstrate a high risk of erroneous deprivation" because the expedited removal statute and regulations permit a noncitizen to claim "that he should not be subject to expedited removal, because he is a lawful permanent resident, refugee, or asylee, or claims to be a U.S. citizen" and seek IJ review of that issue. Opp. 35. But Plaintiffs have shown repeated errors even in this aspect of the process. Mot. 21-23. And even greater risk inheres in other critical aspects of the process over which there is no neutral review, including length of continuous presence, removability on the specified grounds, and whether a noncitizen fears persecution or torture. Mot. 18-26.

### 3.    The Remaining *Mathews* Factors Favor Plaintiffs.

As to the value of additional or substitute procedural safeguards, Defendants *concede* that there is no advance notice of removal charges or reasonable opportunity to respond, no right to

contact counsel or others who could help them contest removal, no neutral adjudication or review of critical questions, and that the noncitizen bears the burden. Opp. 36-38. Clearly, the substitute safeguards Plaintiff proposed on these issues would help prevent the kinds of errors that are all too likely under the Rule and Guidance—and which are already occurring. Mot. 11, 20-26; *e.g.*, ECF 50-7 (Mary Decl.); ECF No. 50-2 (Fontaine Decl.) ¶¶ 18, 41-44; *see also, e.g.*, Pet. for Writ of Habeas Corpus, ECF No. 1, *Lopes Ramiro v. Moniz*, No. 1:25-cv-11851(D. Mass. June 27, 2025) (noncitizen who entered United States in 2024 subjected to Rule despite lawful Special Immigrant Juvenile Status).

Defendants instead assert that each of the improvements Plaintiff suggested would require changes to the statute or regulations. Opp. 36-38. But Defendants provide no explanation for why that matters to the *constitutional* analysis. *Cf., e.g.*, *Daskalea*, 480 F. Supp. 2d at 36 (concluding that statute did "not provide the procedural safeguards" required under the *Mathews* analysis). Moreover, requiring additional safeguards would not "fundamentally alter Congress's scheme." Opp. 38 (quoting *United States v. Peralta-Sanchez*, 847 F.3d 1124, 1137 (9th Cir. 2017), *opinion withdrawn*, 868 F.3d 852, *decided on other grounds on reh'g*, 705 F. App'x 542)). Even assuming the withdrawn opinion Defendants cite has persuasive value, the result of staying the Rule and Guidance would be that people newly subject to expedited removal would instead be afforded regular removal proceedings under § 1229a. That is the default procedure under "Congress's scheme"—which until now applied to nearly all noncitizens in the country longer than fourteen days. While it may be possible for Defendants to fashion sufficient safeguards *within* expedited removal to satisfy due process as to this population, no such safeguards currently exist.[6]

---

[6] To the extent they are relevant at all, some of Defendants' assertions that Plaintiff's proposed improvements would require changes to the statute or regulations are inaccurate. Defendants state that "the statute and regulations . . . do not require specific opportunities" for noncitizens to contact

Nor do the government's interests outweigh the need for additional safeguards. Mot. 29. Defendants argue that "Congress determined that expedited removal is necessary." Opp. 39. But Congress specifically did *not* mandate that expedited removal be applied to people who have been in the United States for weeks, months, or years—and with only narrow exceptions, it has not been applied to this population before. Mot. 5. Instead, until now, people like Plaintiff's members have received the more robust protections of regular removal proceedings. If anything, Congress's decision not to require application of expedited removal indicates that Congress recognized that the regime raised serious due process concerns and may have anticipated it would be implemented with additional safeguards or in narrow circumstances. Moreover, the government has an interest in fair and accurate removal procedures. *See Nken*, 556 U.S. at 436.

### D. Plaintiff Is Likely To Prevail On Its Claim That The Rule and Guidance Violate The Expedited Removal Statute As Interpreted To Require Adequate Procedures.

The Court "need not rule on constitutional grounds" because the expedited removal statute, 8 U.S.C. § 1225(b), "contains numerous ambiguous terms that make application of the constitutional avoidance canon appropriate." Mot. 29, 32. In response, Defendants first contend that there is no statutory ambiguity. Opp. 39-40. But they have no textual response concerning the ambiguities Plaintiff identifies as to the procedures to "determin[e]" removability and assess continuous presence "to the satisfaction of an immigration officer," or decide if a noncitizen "indicates" fear of removal. Mot. 32. To the contrary, the government has "acknowledged the

---

counsel, family, or others. Opp. 37. By the same token, they also do not foreclose such opportunities. Defendants also claim that "the statute provides" that "aliens bear the burden" on removability. Opp. 37. But only the first of the three provisions they cite applies in expedited removal proceedings, and it is silent as to burden. 8 U.S.C. § 1225(b)(1)(A)(i). The second provision they cite explicitly does not apply in expedited removal because it explicitly does "not apply to an alien . . . to whom paragraph [1225(b)](1) applies." *Id.* § 1225(b)(2)(B)(ii). And the third provision applies in *regular* removal proceedings. 8 U.S.C. § 1229a(c)(2)(A).

statute is silent as to these procedures." Opp. 41. Defendants suggest that this is somehow irrelevant because Congress has authorized the agency to issue regulations. *Id.* But that says nothing about whether the language of these provisions is unambiguous, since agencies routinely issue regulations concerning ambiguous statutory text.[7]

Defendants note that Plaintiff does not rely on a prior case applying the avoidance canon specifically to § 1225(b)(1). Opp. 41. But Defendants give no reason why "section 1229a" or immigration "statutes relating to detention" can be interpreted in accordance with procedural due process requirements, but not § 1225(b)(1). Opp. 41; *see also, e.g.*, *Gray Panthers v. Schweiker*, 652 F.2d 146, 152 & n.15 (cited at Mot. 32) (applying avoidance canon outside of immigration entirely to statute that did not "explicitly detail what process is due"). Moreover, *Yamataya*— which Plaintiffs discussed in detail, Mot. 30—concerned a statutory scheme predating the INA altogether. 189 U.S. at 94-96. As in § 1225(b)(1), the statutory provisions there did not specify procedures for inspecting noncitizens or deciding excludability. *Id.* at 95-96. Applying the government's approach here, therefore, the *Yamataya* provisions could have been read to permit a noncitizen's deportation "without previous notice of any purpose to deport him, and without any opportunity on his part to show by competent evidence . . . that he is not here in violation of law." *Id.* at 99. However, to "bring them into harmony with the Constitution," the Court instead interpreted the provisions to allow a noncitizen a fair "opportunity to be heard upon the questions involving his right to be and remain in the United States." *Id.* at 101.

Finally, Defendants argue that even if the constitutional avoidance doctrine applies, Plaintiff's claim fails "because aliens subject to expedited removal do not have a liberty interest

---

[7] Defendants' citation to *AILA* on this point is puzzling, Opp. 41 & n.10, since the paragraph they cite just states the standard for arbitrary-and-capricious review, which is not at issue in this claim. 18 F. Supp. 2d at 53. *AILA* accordingly did not hold the statutory language at issue here unambiguous.

in avoiding removal and [are] entitled only to that process that Congress has provided." Opp. 41-42. As explained above, however, noncitizens who have already entered the United States—even if unlawfully and without being admitted—do have a liberty interest in remaining here. *Supra* 13-16. Moreover, even assuming *arguendo* that not all noncitizens at risk of removal under the Rule and Guidance have such a liberty interest, *some* of them certainly would, even under an "established connections" test. *See, e.g.*, ECF No. 50-2 (Fontaine Decl.) ¶ 17-26; *see also* ECF No. 50-7 (Mary Decl.) ¶¶ 6-11. That alone is sufficient to trigger application of the avoidance canon, under which courts "give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation." *Clark v. Martinez*, 543 U.S. 371, 380 (2005).[8]

### E. Plaintiff Is Likely To Prevail On Its Claim That 8 U.S.C. § 1182(a)(7) Does Not Apply To Noncitizens In The Interior Who Lack Valid Entry Documents.

The text, structure, and context of the ground of inadmissibility at 8 U.S.C. § 1182(a)(7) show that it applies only to those who lack valid travel documents "at the time of the application for admission"—meaning the time when a noncitizen seeks permission to physically enter the United States. That ground does not apply to people who have already entered, like Plaintiff's members and others who face expedited removal under the Rule and Guidance. Mot. 34-36.

Defendants do not grapple with the text of § 1182(a)(7) itself and instead focus on INA provisions addressing *procedures* for determining inadmissibility. Defendants argue that an

---

[8] Defendants' contention that the *Salerno* standard applies to constitutional avoidance analysis therefore gets things backwards. *See* Opp. 43 n.12. "[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—*whether or not those constitutional problems pertain to the particular litigant before the Court*." *Clark*, 543 U.S. at 380-81 (emphasis added). That is the opposite of the heightened *Salerno* standard that applies to certain facial *constitutional* challenges.

application for admission can be made from the interior of the United States. Opp. 43. But even assuming that is correct, it has no bearing on the construction of § 1182(a)(7), which applies when a noncitizen "submits an application to physically enter" the United States. *Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020). Here, physical entry has already occurred.

Defendants also argue that because the Rule and Guidance target people who have not been admitted, their processing for expedited removal is "the time of [their] application for admission," Opp. 42-43. That is incorrect: At no point in the expedited removal process do noncitizens make an application for admission. They are simply screened for inadmissibility and then, if they claim a fear of removal, referred for a credible fear interview. The credible fear process requires no application and, if successful, results in placement in full removal proceedings—not admission. And even if a credible fear interview were understood as a way to seek *asylum* by those who fear removal, it is not a means of seeking *admission*: Under the INA, "a grant of asylum" is not "a form of 'admission' into the United States." *Matter of V-X-*, 26 I. & N. Dec. 147, 151 (BIA 2013); *accord Bare v. Barr*, 975 F.3d 952, 973 (9th Cir. 2020); *compare, e.g.*, 8 U.S.C. § 1255(a) (providing general authority for "admitted" noncitizens to adjust status to lawful permanent residence), *with id.* § 1159(b) (providing separate adjustment of status authority for those "granted asylum").

Defendants' textual arguments lack merit. First, they argue that a noncitizen already present in the United States somehow makes an "application for admission" at the moment they are placed in expedited removal by an immigration officer. Opp. 43-44. But the provision Defendants rely on, 8 U.S.C. § 1184(b), addresses the very different question of how an immigration officer should determine whether a noncitizen coming into the country is "entitled to nonimmigrant status," i.e., temporary immigration status. The INA instead uses the term "application for admission" in reference to noncitizens seeking *entry* into the United States.  Mot. 35.

Second, Defendants seek to define § 1182(a)(7) based on provisions of § 1225. Opp. 42-44. But § 1225 sets out only *procedures* for determining inadmissibility; it does not define the grounds of inadmissibility themselves. Those are set forth in § 1182, titled "Inadmissible aliens." Defendants cite § 1225(a)(1), which "deem[s]" a noncitizen who enters without inspection an "applicant for admission," and argue that it transforms someone already within the United States into an "applicant for admission" at the moment they are placed in expedited removal. Opp. 43-44. But § 1225(a)(1) serves a different purpose. Congress enacted it to eliminate prior distinctions between noncitizens who entered the country unlawfully and those stopped at the border, and establish that both groups—now deemed "applicants for admission"—would have similar rights in removal proceedings.[9] Therefore, being deemed "an 'applicant for admission' under [§ 1225(a)(1)]" does not mean that one is "applying . . . for admission to the United States" under other INA provisions; it merely means that one is "entitle[d] . . . to a removal hearing" under § 1229a. *Matter of Y-N-P-*, 26 I. & N. Dec. 10, 13 (BIA 2012). Defendants erroneously treat a "fictive legal status for purposes of removal proceedings, as altering the meaning of a substantive ground of inadmissibility that refers to the time of a real event: an actual application for admission." *Torres*, 976 F.3d at 928.[10]

---

[9] Before 1996, the INA provided noncitizens who had entered the country (lawfully or unlawfully) with greater procedural protections in their immigration cases than those who had not entered. *See Hing Sum v. Holder*, 602 F.3d. 1092, 1100 (9th Cir. 2010) ("Prior to 1996, the INA primarily distinguished individuals on the basis of 'entry' and not 'admission'"); H.R. Rep. 104-469, pt. 1, at 225 (discussing the change). Section 1225(a)(1) largely erased that distinction by providing that an "applicant for admission" now bears the burden of showing that they are "clearly and beyond doubt entitled to be admitted and [are] not inadmissible." 8 U.S.C. § 1229a(c)(2)(A).

[10] Defendants rely on *Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 20-21 (BIA 2020), Opp. 43, but that decision did not address the textual and structural arguments presented here and concerned "only" the question of "whether the respondent, who was apprehended just inside the border . . . [was] properly considered to be 'arriving.'" 28 I. & N. Dec. at 23. Thus, *M-D-C-V-* had no occasion to address the application of § 1182(a)(7) to someone physically present for more than two weeks. And neither *Cruz-Miguel v. Holder*, 650 F.3d 189, 198 (2d Cir. 2011), nor *Ortega-Cervantes v.*

Defendants rely on *United States v. Gambino-Ruiz*, 91 F.4th 981 (9th Cir. 2024), Opp. 44, 46-47, but it is unpersuasive and distinguishable. It made the same error of looking to the procedural provisions in § 1225 to define the separate ground of inadmissibility. The panel reasoned that because Congress authorized the designation of noncitizens in the interior for expedited removal, Congress meant to treat people apprehended shortly after entry "as the equivalent of an arriving alien applying for admission at a port of entry." *Id.* at 989. But that conclusion has no basis in the statutory text. Section 1225(b)(1)(A)(i) creates an expedited process for a noncitizen "who is arriving"—someone applying for admission at a port of entry—*or* for someone "described" in subsection 1225(b)(1)(A)(iii). The Secretary can apply expedited removal to a noncitizen in the second category—someone not "physically present in the United States continuously" for two years—only if that person is inadmissible under either § 1182(a)(7) or § 1182(a)(6)(C). *See* 8 U.S.C. § 1225(b)(1)(A)(i), (iii). The statutory authority to designate classes of noncitizens who are subject to the expedited removal process does not include the authority to modify the grounds of inadmissibility that the statute makes a predicate for placement in expedited removal. Moreover, *Gambino-Ruiz* concerned a noncitizen—like that in *Thuraissigiam*— apprehended "near the border" "[s]hortly after" crossing. 91 F.4th at 983. It had no occasion to address § 1182(a)(7)'s application to those inspected months or years after physical entry.

Under Plaintiffs' correct interpretation, Defendants remain free to apply expedited removal against noncitizens apprehended near the border without entry documents as under § 1182(a)(7). And they may still apply expedited removal to noncitizens in the interior who have been here for less than two years if they are inadmissible for fraud under § 1182(a)(6)(C).

---

*Gonzales*, 501 F.3d 1111, 1118 (9th Cir. 2007) (cited at Opp. 43-45), addressed the meaning of § 1182(a)(7), let alone the statutory trigger of the "time of application for admission."

**F. Plaintiff Is Likely To Prevail On Its Claims That Expedited Removal Cannot Lawfully Be Applied to Affirmative Asylum Applicants.**

Plaintiff is also likely to prevail on its claims that the Guidance is contrary to the asylum regulations and arbitrary and capricious. Mot. 37-41.

Defendants first contend that Plaintiff lacks standing for these claims because it does "not identify any individual in this lawsuit" with standing. Opp. 20. But, as Defendants acknowledge, Plaintiff *has* identified a member, John Doe 2, who "timely filed an application for affirmative asylum" and is now amenable to expedited removal under the Guidance. Opp. 21; *see* ECF No. 50-2 (Fontaine Decl.) ¶ 21. Defendants seem to suggest that this pseudonymous identification is insufficient for standing. Opp. 20. But the problem in the cases they cite was not pseudonymity; it was a failure to identify members at all. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497-99 (2009); *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 819-20 (D.C. Cir. 2006). "[A]nonymity is no barrier to standing," where, as here, providing members' actual names "adds no essential information bearing on the injury component of standing." *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022); *accord Speech First, Inc. v. Shrum*, 92 F.4th 947, 951-52 (10th Cir. 2024).

Defendants also argue that Plaintiff lacks standing for these claims because it is speculative that member John Doe 2 will be placed in expedited removal "before he either leaves the country voluntarily or succeeds in obtaining legal status." Opp. 22. John Doe 2 is in danger of harm because he entered in December 2023 and so is presently susceptible to expedited removal under the Rule and Guidance. ECF No. 50-2 (Fontaine Decl.) ¶ 21. Recent reports indicate that Defendants are planning to dismiss the asylum claims of hundreds of thousands of affirmative asylum seekers like John Doe 2 and place them in expedited removal. *See, e.g.*, Priscilla Alvarez, *New Trump Administration Plan Could End Asylum Claims and Speed Deportations for Hundreds*

26

*of Thousands of Migrants*, CNN (June 25, 2025, 12:50 PM), https://perma.cc/64CW-FCKL. And as noted above, the D.C. Circuit previously held that Plaintiff could challenge the 2019 Rule on behalf of its members, *Make the Rd. N.Y.*, 962 F.3d at 628-29, even though none of its members— nor anyone else—had yet been subjected to that policy, *Make the Rd. N.Y.*, 405 F. Supp. at 33.

Next, Defendants argue that Plaintiff's motion seeks to amend its complaint. Opp. 47. But the operative complaint sets out claims specifically alleging both that the Guidance is arbitrary and capricious, ECF No. 27 ¶¶ 117-18 (Claim Four); and that it violates the asylum statute's "implementing regulations" which "do not permit the expedited removal of noncitizens who . . . have filed affirmative asylum applications," *id.* ¶¶ 126-28 (Claim Six); *see also id.* ¶¶ 23, 97, 99 (alleging factual basis for both claims). Plaintiff thus properly pled these claims. *See* Fed. R. Civ. P. 8(a)(1) (requiring only "a short and plain statement of the claim").

On the merits, Defendants assert that 8 C.F.R. § 208.14(c)(4)(ii) applies only to noncitizens who have had asylum interviews and not to other affirmative asylum applicants. Opp. 50. That ignores that "'[m]ention of one thing' implies 'exclusion of another thing.'" Mot. 38 (quoting *Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1137 (D.C. Cir. 2022)).

Moreover, Defendants read § 208.14(c)(4)(ii) in isolation, but "regulations are to be read as a whole." *Am. Fed'n of Gov't Emps., Local 2782 v. Fed. Lab. Rels. Auth.*, 803 F.2d 737, 740 (D.C. Cir. 1986). The asylum regulations set up a cohesive system for the adjudication of affirmative applications from filing until disposition: USCIS shall have jurisdiction over an "asylum application filed by a [noncitizen]," 8 C.F.R. § 208.2(a)(1)(i); it "shall adjudicate the claim of each asylum applicant whose application is complete," *id.* § 208.9(a), by conducting an interview, *id.* § 208.9(b); and if an asylum officer does not grant asylum, "in the case of an applicant who appears to be inadmissible under" 8 U.S.C. § 1182, the officer "shall refer the application to an immigration judge," *id.* § 208.14(c)(1). Under Defendants' own regulations, an

27

affirmative asylum applicant may be placed into expedited removal in only one circumstance: where the applicant was previously paroled into the United States and their parole has expired or been terminated. *Id.* § 208.14(c)(4)(ii) (citing *id.* § 235.3(b)(5)). By applying expedited removal to people outside this specific class, the Guidance is contrary to the regulations.

Defendants also cite an expedited removal regulation, 8 C.F.R. § 235.3(b)(5), *see* Opp. 50, but it merely describes the "prompt review" the statute already requires when someone claims certain lawful status. *See* 8 U.S.C. § 1225(b)(1)(C). And, contrary to Defendants' argument, Opp. 48-49, this reading of the regulations is consistent with the asylum statute. *See* Mot. 38-39.

At a minimum, the Guidance is arbitrary and capricious because it never acknowledges the break with past practice or the significant tension with the asylum regulations; considers the alternative of exempting affirmative asylum seekers from expedited removal; or meaningfully addresses affirmative asylum seekers' reliance interests. Mot. 39-40. Defendants do not respond on the merits,[11] instead asserting only that this argument is barred by *Make the Road N.Y.* Opp. 50-51 (citing 962 F.3d at 632-33). But that decision concerned statutory language providing that the "*designation* shall be in the sole and unreviewable discretion of the [Secretary]," which says nothing about any other agency actions. 8 U.S.C. § 1225(b)(1)(A)(iii)(I) (emphasis added). Plaintiff's claim concerns the Guidance, not the "designation" (that is, the Rule). Had Congress "wanted the jurisdictional bar to encompass" *other* agency actions, it "could easily have said so." *Kucana v. Holder*, 558 U.S. 233, 248 (2010). Section 1225(b)(1)(A)(iii)(I) therefore does not provide the "clear and convincing evidence" necessary to overcome the "presumption favoring

---

[11] Defendants note elsewhere that the Guidance contains a cursory assertion that expedited removal "includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum." Opp. 47 n.13 (italics removed). But "an agency must "provide a more detailed justification . . . when its prior policy has engendered serious reliance interests that must be taken into account." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

judicial review of administrative action." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (cleaned up). Nor did "Plaintiff concede[]" that *Make the Road N.Y.* bars an arbitrary-and-capricious claim as to the Guidance, Opp. 50-51; that acknowledgment was limited to "the Rule," ECF No. 44 at 39.[12]

### IV.    The Equitable Factors Favor A Stay.

Plaintiff's members, who are subject to expedited removal under the Rule and Guidance, *e.g.*, ECF No. 50-2 (Fontaine Decl.) ¶¶ 17-25, 35, 38, 40-42, will face irreparable harm, including detention and "separation from family members," which is "an important irreparable harm factor[]." *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 321 (D.D.C. 2020) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011)). They also face the irreparable harm of unlawful summary removal, including to countries "where they are likely to face substantial harm." *Nken*, 556 U.S. at 436.[13]

Defendants argue that Plaintiff's supposed delay in filing this motion undercuts its claim of irreparable harm. Opp. 53-55. That ignores the clearly articulated basis for Plaintiff's motion: Defendants' recent massive expansion in enforcing the Rule and Guidance, which puts Plaintiff's members at imminent risk of irreparable harm at their next court dates, at their workplaces, and in their communities. Mot. 8-12. Indeed, as part of this initiative, Defendants have moved to dismiss

---

[12] Defendants rightly do not argue that § 1225(b)(1)(A)(iii)(I) bars Plaintiff's theory that the Guidance violates the regulations, which does not implicate agency discretion. *See* Opp. 50-51.

[13] Reiterating their earlier arguments, Opp. 20-22, Defendants argue that Plaintiff has not identified a member that would suffer harm. Opp. 53. However, as explained above, Plaintiff is only required to identify a member with standing, not provide that member's legal name, and Plaintiff has identified at least six members subject to expedited removal under the Rule and Guidance, ECF No. 50-2 (Fontaine Decl.) ¶¶ 17-25, 40-42, as Defendants concede, Opp. 55 n.15 (referencing members "actually identified by Plaintiff in this suit").

the regular removal proceedings of at least one of Plaintiff's members to subject him to expedited removal. ECF No. 50-2 (Fontaine Decl.) ¶¶ 35, 38; *id.*, Ex. A (John Doe 4 Decl.) ¶ 4.[14]

The public interest also strongly favors a stay. Thousands of people living in the United States with their families, including U.S. citizens and young children, are being separated from their families and communities and unlawfully deported, many to countries where they face persecution or torture. Mot. 24-25, 42-44. The public interest favors upholding due process, *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020), and preventing noncitizens "from being wrongfully removed, particularly to countries where they are likely to face substantial harm," *Nken*, 556 U.S. at 436.[15]

Defendants face no comparable harm. They argue the government suffers irreparable harm when it is enjoined "from effectuating statutes enacted by representatives of its people," Opp. 52 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). But the Rule and Guidance are not statutes. Defendants also contend that the public interest "favors the efficient administration of the immigration laws at the border." Opp. 55. But the Rule and Guidance apply in the interior, not at the border. And "[t]he Constitution . . . does not permit [the government] to prioritize any policy goal over the Due Process Clause." *Karem*, 960 F.3d at 668 (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)).[16]

---

[14] In arguing that courthouse arrests "have always been an initiative of this administration," Opp. 54, Defendants cite a lawsuit from June 12, 2025—after this motion was filed. Defendants further argue that "many of Plaintiff's declarations recount what they have always alleged are 'systemic' problems with the expedited removal process." Opp. 54. But the basis for Plaintiff's irreparable harm is the recent massive expansion in application of the Rule and Guidance. Mot. 8-12.

[15] Defendants also repeat their argument that Plaintiff's claims are foreclosed by *Make the Road N.Y.*, 962 F.3d at 632. Opp. 55. As explained above, that is incorrect. *Supra* 6.

[16] Defendants assert that relief should be limited to members "currently in expedited removal and actually identified by Plaintiff." Opp. 55 n.15. But "when an organization has . . . established associational standing as to some members, it may also assert claims on behalf of unnamed members." *Equal Rts. Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 526 (D. Md. 2011).

## CONCLUSION

This Court should grant Plaintiff's motion to postpone the effective dates of the Rule and Guidance pending adjudication of this case on the merits.[17]

---

Thus, an organization may obtain relief that "will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). Moreover, "the scope of preliminary relief under Section 705" is not "limited to [the plaintiff] or its members." *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted in part on other grounds*, 145 S. Ct. 1039 (2025). And the Supreme Court's recent decision concerning nationwide injunctions explicitly does not apply to APA relief. *Trump v. CASA, Inc.*, 606 U.S. ___, 2025 WL 1773631, at *8 n.10 (Sup. Ct. June 27, 2025).

[17] Defendants state that the Court should require Plaintiffs to post an injunction bond. Opp. 55 n.15. But Rule 65(c) authorizes a bond only for "a preliminary injunction or a temporary restraining order" and so does not apply here. And even where the rule applies, courts have "broad discretion" to "require no bond at all," *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012) (cleaned up), and have exercised that discretion in cases like this one, *e.g.*, *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020).

Dated: July 1, 2025

Cody Wofsy (D.D.C. Bar No. CA00103)
Stephen B. Kang (D.D.C. Bar No. CA00090)
Morgan Russell
Hannah Steinberg
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
*cwofsy@aclu.org*
*skang@aclu.org*
*mrussell@aclu.org*
*hsteinberg@aclu.org*

Amy Belsher
Robert Hodgson
NEW YORK CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
*abelsher@nyclu.org*
*rhodgson@nyclu.org*

Respectfully submitted,

*/s/ Anand Balakrishnan*
Anand Balakrishnan
Michael K.T. Tan (D.D.C. Bar No. NY0636)
Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat
Sidra Mahfooz
Grace Choi
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
*abalakrishnan@aclu.org*
*m.tan@aclu.org*
*lgelernt@aclu.org*
*ojadwat@aclu.org*
*smahfooz@aclu.org*
*gchoi@aclu.org*

Arthur B. Spitzer (D.C. Bar No. 235960)
Aditi Shah (D.C. Bar No. 90033136)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
*aspitzer@acludc.org*
*ashah@acludc.org*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Anand Balakrishnan*
Anand Balakrishnan
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (332) 220-1702
*abalakrishnan@aclu.org*