EXHIBIT 1

# TRANSCRIPT OF RECORD.

## SUPREME COURT OF THE UNITED STATES.

### OCTOBER TERM, 1901

No. ~~424~~ *171*

KAORU YAMATAYA, APPELLANT,

*vs.*

THOMAS M. FISHER, IMMIGRANT AND CHINESE INSPECTOR.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF WASHINGTON.

**FILED OCTOBER 2, 1901.**

**( 18,274.)**

# ( 18,274.)

## SUPREME COURT OF THE UNITED STATES.

### OCTOBER TERM, 1901.

### No. 421.

---

## KAORU YAMATAYA, APPELLANT,

*vs.*

## THOMAS M. FISHER, IMMIGRANT AND CHINESE INSPECTOR.

---

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF WASHINGTON.

---

### INDEX.

|  | Original. | Print. |
|---|---|---|
| Caption | *a* | 1 |
| Petition for writ of *habeas corpus* | 1 | 1 |
| Writ of *habeas corpus* and marshal's return. | 3½ | 2 |
| Return to writ of *habeas corpus* | 4 | 3 |
| Traverse to return | 8 | 6 |
| Motion to quash return | 12 | 8 |
| Order denying motion to quash | 13 | 9 |
| Demurrer to traverse to return. | 14 | 9 |
| Order dismissing petition and remanding petitioner | 15 | 10 |
| Petition for appeal | 16 | 10 |
| Order allowing appeal. | 17 | 11 |
| Assignment of errors | 18 | 11 |
| Order allowing appeal and granting supersedeas | 20 | 12 |
| Bond on appeal. | 22 | 13 |
| Citation and service (copy) | 25 | 14 |
| Clerk's certificate. | 26 | 15 |
| Citation (original) | 27 | 15 |
| Service of citation | 28 | 16 |

---

JUDD & DETWEILER, PRINTERS, WASHINGTON, D. C., OCTOBER 5, 1901.

*a*      In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*   No. 2086.

*Record on Appeal.*

Appeal from the district court of the United States for the district of Washington, northern division, to the Supreme Court of the United States.

1                                          *Petition.*

In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*   No. 2086.

To the Honorable C. H. Hanford, judge of the above-entitled court:

Comes now Masataro Yamataya, your petitioner, and respectfully shows and alleges:

That Kaoru Yamataya, who is a minor of the age of about sixteen years, is imprisoned, detained, confined and restrained of her liberty by Thomas M. Fisher, immigration inspector stationed at Seattle in said district, in the House of Good Shepherd in said city of Seattle.

That the alleged cause of the imprisonment and detention of the said Kaoru Yamataya is, as your petitioner verily believes, and therefore alleges the fact to be, as follows: The said Kaoru Yamataya is an alien, being a subject of the Empire of Japan; the said Fisher, as immigration inspector as aforesaid, claims that the said Kaoru Yamataya is not entitled to remain in the United States of America, and intends to and will, unless the writ hereby prayed for is granted, deport the said Kaoru Yamataya and send her back to the Empire of Japan on a vessel scheduled to leave this port at three o'clock a. m. on tomorrow, the 6th day of August, 1901.

Your petitioner further alleges that the said imprisonment of the said Kaoru Yamataya by the said Fisher is unlawful; that the said Kaoru Yamataya is not an idiot or an insane person; that she is not a pauper, and is not likely to become a public charge; that she
2           is not suffering from any loathsome disease or any disease, or any dangerous or contagious disease; that she has not been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude; that she did not come to the United States in violation of the contract labor laws passed by Congress, or in violation of any law of the United States relative to the exclusion of aliens, and that the said Kaoru Yamataya is lawfully within the United States and is entitled to remain therein.

Your petitioner further alleges that he is the uncle of the said

1—421

Kaoru Yamataya, and the only relative which she has in the United States, and that he is entitled to her care and custody; that he makes this petition for and on behalf of the said Kaoru Yamataya, for the reason that she is, by the said Fisher, detained and imprisoned, and not permitted by him, the said Fisher, to see your petitioner, or her attorneys, and therefore access to her cannot be obtained for the purpose of having her verify a petition in her own behalf.

Wherefore your petitioner prays that a writ of *habeas corpus* be granted, directed to the said Thomas M. Fisher, U. S. immigrant inspector as aforesaid, commanding him to have the body of the said Kaoru Yamataya before your honor at a time and place therein to be specified, to do and receive what shall then and there be considered by your honor concerning said Kaoru Yamataya, together with the time and cause of her detention, and said writ; and that the said Kaoru Yamataya may be restored to her liberty.

M. YAMATAYA, *Petitioner.*

W. A. KEENE,
    *Attorney for Petitioner.*

Let a writ of *habeas corpus* issue.

C. H. HANFORD, *Judge.*

3    UNITED STATES OF AMERICA, }
        *District of Washington,* } *ss:*

Masataro Yamataya being duly sworn, deposes and says that he is petitioner in the foregoing petition; that he has read the same, knows the contents thereof and that the same is true to his own knowledge.

M. YAMATAYA.

Subscribed and sworn to before me this 5th day of August, 1901.
W. A. KEENE,
[NOTARIAL SEAL.]    *Notary Public in and for the State*
            *of Washington, Residing at Seattle.*

Indorsed: Petition.    Filed in the U. S. district court dist. of Washington Aug. 5 1901    R. M. Hopkins, clerk,    H. M. Walthew, deputy.

3½    United States District Court, District of Washington.

*Habeas Corpus.*

The President of the United States of America to Thomas M. Fisher, U. S. immigration inspector, Greeting:

We command you that you have the body of Kaoru Yamataya by you imprisoned and detained, as it is said, together with the time and cause of such imprisonment and detention, by whatsoever name said Kaoru Yamataya shall be called or charged, before the Hon. C. H. Hanford, United States district judge for the district of

Washington, at the court-room of said court in the city of Seattle in the northern division of said district of Washington, on the 8th day of August A. D. 1901, at 10 o'clock in the forenoon, to do and receive what shall then and there be considered concerning her the said Kaoru Yamataya. And have you then and there this writ.

Witness the Hon. C. H. Hanford, judge of the United States district court for the district of Washington, this 5th day of August in the year of our Lord one thousand nine hundred and one.

R. M. HOPKINS, *Clerk,*
By H. M. WALTHEW,
*Deputy Clerk.*

PRESTON, CARR & GILMAN,
*Attorney for Petitioner.*

[Seal U. S. District Court.]

DIST. OF WASHINGTON,  }
  *Office of U. S. Marshal,* } *ss :*

I hereby certify that I received the within writ on the 5th day of August 1901, and that on said 5th day of Aug. 1901, I personally served the same on Thos. M. Fisher, by delivering to & leaving with him personally a true & correct copy thereof.

Dated at Seattle W'n, this 8th day of Aug. 1901.

C. W. IDE,
*U. S. Marshal,*
By H. W. TYLER, *Dep.*

Returned and filed this 8 day of Aug. A. D. 1901.

R. M. HOPKINS, *Clerk,*
By A. N. MOORE,
*Deputy Clerk.*

4    In the United States District Court for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*   No. 2086.

*Return of Thomas M. Fisher, Immigration and Chinese Inspector, to Writ.*

To the honorable judge of the above-entitled court:

Thomas M. Fisher, immigration and Chinese inspector, and respondent herein, for return to the writ of *habeas corpus* in the above-entitled cause upon him served, says:

I.

That I am, and at all the times hereinafter mentioned was, a duly appointed, qualified and acting immigrant and Chinese inspector under the laws of the United States, charged with the execution of the laws of Congress approved February 26th, 1885, February 23rd, 1887, October 19th, 1888, and March 3rd, 1891.

## II.

That in pursuance of the duties in said acts prescribed, and under the rules and regulations of the honorable Secretary of the Treasury of the United States, that I did heretofore, to wit, on or about the 15th day of July, 1901, make investigation and inquiries and collect evidence respecting one Kaoru Yamataya, petitioner herein, and from said inquiries so made and evidence so gathered, and the admissions of her, the said Kaoru Yamataya, did find that she, the said Kaoru Yamataya, had on or about the 11th day of July, 1901, surreptitiously, clandestinely, unlawfully and without any authority come into the United States of America, and that she, the said Kaoru

5      Yamataya, was a pauper and a person likely to become a public charge, and that one year since the landing of her, the said Kaoru Yamataya, petitioner herein, had and has not elapsed.

## III.

That in pursuance of said testimony, admissions of the petitioner, Kaoru Yamataya, evidence, facts and circumstances, I did as such immigrant and Chinese inspector, decide that she, the said Kaoru Yamataya, had no right to be within the territory of the United States and was a proper person for deportation, and thereafter made report of the same to the proper immigration officers of the United States of America, and pending final decision therein did take her, the said Kaoru Yamataya, into custody.

## IV.

That upon said report and evidence and after due and regular investigation in the manner prescribed by law, that the proper officers charged with the execution of the various acts of Congress heretofore mentioned, also did decide that she, the said Kaoru Yamataya, petitioner herein, was within the United States contrary to the provisions of said acts of Congress, and that she should be deported. Whereupon, the honorable Secretary of the Treasury did issue his certain warrant of deportation, which said warrant was in words and figures as follows, to wit:

UNITED STATES OF AMERICA,
TREASURY DEPARTMENT,
WASHINGTON, D. C., *July 23rd*, 1901.

To Thomas M. Fisher, United States immigrant inspector, Seattle, Wash.:

Whereas, from proofs submitted to me, I have become satisfied that Kaoru Yamataya an alien immigrant who landed in the United

6      States at the port of Seattle, Wash., on the 11 day of July, 1901, came into this country from Japan, contrary to the prohibition of the act of Congress approved March 3, 1891, and whereas, the period of one year after landing has not elapsed;

I, M. E. Ailes, Assistant Secretary of the Treasury of the United States, by virtue of the power and authority vested in me by the above-cited act of Congress, do hereby command you to take into

custody the said Kaoru Yamataya alien immigrant and return her to the country whence she came at the expense of the vessel importing her.

For so doing, this shall be your sufficient warrant.

Witness my hand and seal this 23rd day of July, 1901.

M. E. AILES,  [SEAL.]
[SEAL.]                    *Assistant Secretary of the Treasury.*

And that I, Thomas M. Fisher, immigrant and Chinese inspector and relator herein, as aforesaid, am holding said petitioner, Kaoru Yamataya, for deportation in accordance with the laws hereinbefore mentioned and under the facts and circumstances hereinbefore mentioned, and in pursuance of the said warrant hereinbefore set forth, and expect to deport her, the said Kaoru Yamataya.

### V.

For further answer, I, Thomas M. Fisher, immigrant and Chinese inspector and relator herein, as aforesaid, do say that the said Kaoru Yamataya, petitioner herein, has in no way, manner or form prosecuted any appeal from my decision as immigrant and Chinese inspector, from the decision of the board of special inquiry, or in any other manner whatsoever.

7          Wherefore, having fully made answer to said writ, I, the said Thomas M. Fisher, immigrant and Chinese inspector aforesaid, do ask to be discharged, and that the writ of *habeas corpus* be quashed.

THOMAS M. FISHER,
*Immigrant and Chinese Inspector.*

WILSON R. GAY,
*United States Attorney.*
E. E. CUSHMAN,
*Assistant U. S. Attorney.*

UNITED STATES OF AMERICA,   } ss :
*District of Washington, County of King,* }

Thomas M. Fisher being first duly sworn, upon oath says: That I have read the foregoing answer to the writ of *habeas corpus* in the above cause, know the whole facts and circumstances, and that the statements therein contained are true.

THOMAS M. FISHER,
*Immigrant and Chinese Inspector.*

Subscribed and sworn to before me this 6th day of August, 1901.
W. R. GAY,
*Notary Public in and for the State of Washington,*
*Residing at Seattle.*

[NOTARIAL SEAL.]

Due and full service of within answer acknowledged this 6 day of Aug. 1901.

W. A. KEENE,
*Attorney for Petitioner.*

6            KAORU YAMATAYA VS. THOMAS M. FISHER, ETC.

Indorsed: Answer of Thos. M. Fisher to writ. Filed in the U. S. district court dist. of Washington Aug. 8 1901   R. M. Hopkins clerk,   H. M. Walthew, deputy.

8                          *Traverse of Return.*

In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*   No. 2086.

Comes now your petitioner, M. Yamataya, and traversing the return of Thomas M. Fisher, immigrant and Chinese inspector, to the writ of *habeas corpus* heretofore issued herein, says:

I.

Referring to paragraph two of said return, he admits that one year has not elapsed since the landing of said Kaoru Yamataya in the United States of America; admits that respondent, as immigrant and Chinese inspector as aforesaid, made a pretended investigation and pretended to collect evidence respecting said Kaoru Yamataya, and that he, the said respondent, made the finding in said paragraph two set forth; but your petitioner alleges that the said Kaoru Yamataya does not understand the English language; that she was at the times referred to and at all times ignorant of the fact that an investigation for the purposes of deportation was being made; that she was not, at said alleged investigation, represented by counsel, or represented at all, and did not have the assistance of any person speaking her own language, or the assistance of any person whomsoever, and did not have any opportunity to present evidence establishing her right to remain in the United States of America, or to explain the evidence which respondent claims to have collected, and did not have opportunity to present any evidence at all in her own behalf; that the evidence upon which respondent made his said finding and decision was and is garbled, incomplete, and in many respects misleading and untrue in this, to wit: that some questions which were put to said Kaoru Yamataya and to your petitioner during

9          said alleged investigation, were not understood by them, and in consequence thereof wrong answers and answers not intended to be given were given by them thereto, and said Kaoru Yamataya and your petitioner were by said respondent made to answer " Yes " and " No " to questions which they did not understand; that some of the facts stated to said respondent by your petitioner were not considered or recorded by him, he recording only such facts as when unexplained and standing alone could be construed as sustaining the alleged finding of respondent.   Petitioner denies each and every allegation in said paragraph two contained, excepting only such thereof as he has hereinbefore expressly admitted; denies that said Kaoru Yamataya is a pauper, and denies that she is likely to become a public charge, but alleges the fact to be that said Kaoru

Yamataya came to this country for the purpose of being educated;
that the parents and relatives of said Kaoru Yamataya are able,
ready and willing to provide for the necessary expense of her main-
tenance and education while she may remain in the United States;
that ample arrangements for the support and education of the said
Kaoru Yamataya were made prior to the time when she left Japan;
that the necessary funds for the support and maintenance of the
said Kaoru Yamataya will be supplied pursuant to such arrange-
ments, and she, the said Kaoru Yamataya, will not become a pauper
or a public charge.

## II.

Referring to paragraph four of said return petitioner admits
that certain officers, who are unknown to him, charged with the
execution of the acts of Congress therein referred to, did decide that
the said Kaoru Yamataya was within the United States contrary to
the provisions of said acts of Congress, and that she should be de-
ported, but denies that said decision was made after due and regular
investigation, or after any investigation, in the manner prescribed
by law, or at all.   Admits that the Secretary of the Treasury issued
his certain warrant of deportation as set forth in said para-
10    graph, but denies that the said warrant was issued upon the
investigation contemplated by the acts of Congress, or upon
any investigation.

Further answering your petitioner denies that said Fisher is
holding said Kaoru Yamataya for deportation in accordance with
the laws, facts and circumstances in said return mentioned, and in
pursuance of the said warrant of deportation in said return set
forth, but alleges the facts to be, that your petitioner M. Yamataya,
has been bound over by United States Commissioner James Kiefer
to await the action of the grand jury on a criminal charge; that
the name of said Kaoru Yamataya is endorsed upon the complaint
made against your petitioner, as a witness for the United States;
that at the preliminary hearing of your petitioner before the said
United States commissioner, respondent stated that he intended to
hold said Kaoru Yamataya as a witness, and thereupon said Com-
missioner Kiefer, upon application made to him, fixed the amount
of the recognizance of the said Kaoru Yamataya as such witness in
the sum of $250.00; that your petitioner and said Kaoru Yamataya
relied upon the statement of respondent that he intended to hold
her, said Kaoru Yamataya, as a witness in said criminal matter,
and did not know that any investigation for the purposes of deporta-
tion had been made or would be made, or that any decision regard-
ing the deportation of said Kaoru Yamataya had been made, and
had no notice whatever of any such proceedings or decision until a
few hours before the sailing of the vessel upon which respondent
intended to deport said Kaoru Yamataya, and upon which he would
have deported her had the writ of *habeas corpus* not issued herein,
and for the reasons herein stated no appeal was taken or could have
been taken from the decision of respondent set forth in his return.
And petitioner alleges that said Kaoru Yamataya is being held by

8          KAORU YAMATAYA VS. THOMAS M. FISHER, ETC.

United States Commissioner James Kiefer as a witness in a criminal
charge brought for violation of the laws of the United States, and
          not otherwise, and that she, the said Kaoru Yamataya, is a
11        material witness in behalf of your petitioner should he be
          placed upon trial, and that he cannot safely go to trial with-
out her testimony.

Wherefore, petitioner prays that said return be quashed, and that
said Kaoru Yamataya may be restored to her liberty.

                                   M. YAMATAYA, *Petitioner.*

W. A. KEENE,
     *Attorney for Petitioner.*


UNITED STATES OF AMERICA, ⎰
     *District of Washington,*  ⎱ *ss :*


M. Yamataya being duly sworn, deposes and says that he is peti-
tioner in the foregoing traverse; that he has read the same and
knows the contents thereof, and that the same is true to his own
knowledge.

                                   M. YAMATAYA.


Subscribed and sworn to before me this 8th day of August, 1901.
                                   W. A. KEENE,
     [NOTARIAL SEAL.]          *Notary Public in and for the State*
                                   *of Washington, Residing at Seattle.*


Received copy of the within traverse and service of the same ad-
mitted this 8th day of August 1901.
                                   WILSON R. GAY,
                                   *U. S. Att'y, for Respondent.*


Indorsed: Traverse of return.  Filed in the U. S. district court
dist. of Washington Aug. 9 1901  R. M. Hopkins, clerk,  A. N.
Moore, deputy.


12        In the District Court of the United States for the District of
                         Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ
                    of *Habeas Corpus.*  No. 2086.

                         *Motion to Quash Return.*

Comes now Kaoru Yamataya and hereby moves the court for an
order quashing the return of Thomas M. Fisher, immigrant and
Chinese inspector, to the writ of *habeas corpus* heretofore issued
herein
     Upon the ground and for the reason that the same does not state
facts sufficient to constitute a return to said writ, or to enable him,
the said Fisher, to retain the custody of the said Yamataya.
                                   W. A. KEENE,
                                   *Attorney for Kaoru Yamataya.*

Received copy of the within motion and service of the same admitted this 8th day of August, 1901.

WILSON R. GAY,
*U. S. Att'y, for Respondent.*

Indorsed: Motion to quash return.  Filed in the U. S. district court dist. of Washington Aug. 9 1901   R. M. Hopkins, clerk,   H. M. Walthew, deputy.

13      In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*   No. 2086.

*Order.*

This matter coming on for hearing upon the petitioner's motion to quash the return of Thomas M. Fisher to the writ of *habeas corpus* herein, and E. E. Cushman, assistant United States attorney, appearing for Thomas M. Fisher, immigrant and Chinese inspector, and W. A. Keene appearing for the petitioner, and the court being fully advised, and having listened to counsel, said motion to quash is hereby denied; to which petitioner, through his counsel, excepts, and said exception is allowed.

Done in open court this 9th day of August, 1901.

C. H. HANFORD, *Judge.*

Indorsed: Order.   Filed in the U. S. district court dist. of Washington Aug. 9 1901   R. M. Hopkins, clerk,   A. N. Moore, deputy.

14                              *Demurrer.*

In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*   No. 2086.

Comes now Thomas M. Fisher, by his counsel E. E. Cushman, assistant United States attorney, and demurs to the traverse of the petitioner in this proceeding for and upon the following grounds:

That the facts and statements set forth in said traverse do not constitute and are insufficient as an answer and traverse to the return of, the said Thomas M. Fisher to the writ of *habeas corpus* heretofore made by him.

EDWARD E. CUSHMAN,
*Assistant U. S. Attorney.*

Indorsed: Demurrer.  Filed in the U. S. district court dist. of Washington Aug. 9 1901   R. M. Hopkins, clerk,   A. N. Moore, deputy.

2—421

10    KAORU YAMATAYA VS. THOMAS M. FISHER, ETC.

15    *Order.*

In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*    No. 2086.

This matter coming on regularly for hearing upon the demurrer of Thomas M. Fisher, immigrant and Chinese inspector, to petitioner's traverse on return heretofore made and filed herein, and E. E. Cushman, assistant United States attorney appearing for said Thomas M. Fisher, immigrant and Chinese inspector, and W. A. Keene appearing as attorney for petitioner, the court having listened to counsel and being fully advised, said demurrer is sustained ; and petitioner electing to stand upon her petition and traverse, said application is dismissed and petitioner remanded to the custody of Thomas M. Fisher, immigrant and Chinese inspector; to which petitioner through her counsel excepted and her exceptions were allowed.

Done in open court this 9th day of August, 1901.

C. H. HANFORD, *Judge.*

Indorsed : Order.    Filed in the U. S. district court dist. of Washington Aug. 9 1901    R. M. Hopkins, clerk,    A. N. Moore, deputy.

16    In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*    No. 2086.

*Petition for Order Allowing Appeal.*

To the Honorable C. H. Hanford, judge of the above-entitled court :

Kaoru Yamataya, feeling herself aggrieved by the order and judgment of the above-entitled court made and entered herein on the 9th day of August, A. D. 1901, dismissing said application and remanding her to the custody of the United States immigration and Chinese inspector, comes now by Harold Preston her attorney, and in order that she may obtain relief in the premises and have opportunity to show the errors complained of, prays that an order may be made by the above-entitled court which made said final order and judgment, allowing her an appeal therefrom to the Supreme Court of the United States, for the correction of the errors so complained of, under and according to the laws of the United States in that behalf provided ; and also that an order be made fixing the amount of the security which she shall give and furnish upon said appeal, and that upon the giving of said security all further proceedings by this court, and by the immigration officers of the United States, be suspended and stayed, and that she, the said Kaoru Ya-

KAORU YAMATAYA VS. THOMAS M. FISHER, ETC.          11

mataya, be discharged from the custody of the officers of said
court and from the custody of the United States immigration
and Chinese inspector for said district, until the determination
          of said appeal by the Supreme Court of the United States;
17      and that a transcript of the record, proceedings and papers
          in said matter, duly authenticated, may be sent to the said
Supreme Court of the United States.

   And your petitioner, as in duty bound, will ever pray.
                              HAROLD PRESTON,
                         *Attorney for Petitioner, Kaoru Yamataya.*

   Upon the filing and presentation of the foregoing petition it is by
the court ordered that the same be and is hereby granted, and the
appeal thereby prayed for be and is hereby allowed.
                              C. H. HANFORD, *Judge.*

   Indorsed: Petition for order allowing appeal.   Filed in the U. S.
district court dist. of Washington Aug. 10 1901   R. M. Hopkins,
clerk,   H. M. Walthew, deputy.

18                       *Assignment of Errors.*

             In the Supreme Court of the United States.

In the Matter of the Application of KAORU YAMATAYA for a Writ
                    of *Habeas Corpus.*  No. —.

   Comes now the above-named Kaoru Yamataya, appellant herein,
by Harold Preston, her attorney, and, in connection with her peti-
tion for an appeal herein makes the following assignment of errors,
and particularly specifies the following as the errors upon which
she will rely and which she will urge upon the prosecution of her
said appeal in the above-entitled matter, and which she avers
occurred upon the hearing of the said matter, to wit:

                              I.

   That the United States district court in and for the district of
Washington, northern division, erred in overruling appellant's mo-
tion to quash the return to the writ issued in said matter, which
said error was duly excepted to at said time by appellant.

                              II.

   That said court erred in making its order sustaining respondent's
demurrer to appellant's traverse of the return to the writ issued in
said matter, dismissing appellant's application, and remanding her
to the custody of Thomas M. Fisher, immigration and Chinese in-
spector, which error was duly excepted to at the time by appellant.
   Wherefore, the said Kaoru Yamataya, appellant, prays that the
said judgment and order of the district court of the United States
for the district of Washington, northern division, be reversed, and

that said court be directed to enter an order quashing the return to said writ, and restoring appellant to her liberty.

HAROLD PRESTON,
*Attorney for Appellant.*

19    Indorsed: Assignment of errors. Filed in the U. S. district court dist. of Washington Aug. 10 1901. R. M. Hopkins, clerk, H. M. Walthew, deputy.

20    *Order Granting Appeal.*

In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.*

This matter coming on this 10th day of August, 1901, to be heard in the court-room of the above-entitled court in the city of Seattle, Washington, the same being a day of the same term in which the final judgment in the above-entitled matter was rendered, the matter coming up upon the petition of the petitioner herein this day filed, accompanied by the petitioner's assignment of errors filed with said petition, praying for the allowance of an appeal to the Supreme Court of the United States, and praying also that a transcript of the record, proceedings and papers upon which said judgment was rendered, duly authenticated, may be sent to said Supreme Court of the United States; upon consideration whereof the court does allow to said petitioner the appeal prayed for.

It is further ordered that the amount of the cost bond on appeal be and the same is hereby fixed at the sum of two hundred and fifty dollars.

It is further ordered that the amount of the supersedeas bond be and the same is hereby fixed at the sum of one thousand dollars; that upon the giving of said supersedeas bond, and approval thereof, all proceedings in the matter of the deportation of said Kaoru Yamataya be suspended and stayed, and the said Kaoru Yamataya be at once discharged from the custody of the officers of this court and from the custody of the United States immigrant inspector for this district and restored to her liberty pending the determination of said appeal.

Done in open court this 10th day of August, 1901.

C. H. HANFORD, *Judge.*

21    Indorsed: Order allowing appeal, and fixing bond. Filed in the U. S. district court dist. of Washington Aug. 10 1901. R. M. Hopkins, clerk, H. M. Walthew, deputy.

KAORU YAMATAYA VS. THOMAS M. FISHER, ETC.          13

22                         *Bond on Appeal.*

In the District Court of the United States for the District of Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ of *Habeas Corpus.* No. 2086.

Know all men by these presents: that we, Kaoru Yamataya, petitioner above named, as principal, and S. Tanaka and K. Hirade, as sureties, are held and firmly bound unto Thomas M. Fisher, as immigrant and Chinese inspector, the respondent herein, in the full and just sum of two hundred and fifty dollars, to be paid to the said Thomas M. Fisher, as such inspector as aforesaid, and to his successors, for which payment well and truly to be made we do bind ourselves, our and each of our heirs, executors and administrators, jointly and severally, firmly by these presents.

Sealed with our seals and dated this 10th day of August, 1901.

The condition of the above obligation is such, that whereas, lately at the present session of the district court of the United States for the district of Washington, northern division, in a matter pending in said court wherein said principal obligor was petitioner and the said obligee was respondent, a final judgment was made and entered dismissing said petitioner's application for a writ of *habeas corpus* and remanding her to the custody of said respondent; and

Whereas, petitioner has obtained from said court an order allowing her appeal from said judgment to the Supreme Court of the United States;

Now therefore, if the said petitioner, the said Kaoru Yamataya, shall prosecute her appeal to effect and shall answer all dam-
23          ages and costs that may be awarded against her if she shall fail to make her plea good, then the above obligation shall be void; otherwise it is to remain in full force and effect.

                         KAORU YAMATAYA, [SEAL.]
                    By W. A. KEENE, *Her Attorney.*
                         S. TANAKA.          [SEAL.]
                         K. HIRADE.          [SEAL.]


UNITED STATES OF AMERICA,      } ss.:
*State of Washington, County of King,* }

S. Tanaka and K. Hirade, each for himself on his oath deposes and says: I am a resident of Seattle, King county, Washington, and one of the sureties on the foregoing bond. I am not an attorney or counsellor at law, or officer of the above-entitled court or of any court. I, S. Tanaka, am worth the sum of ten thousand dollars, and I, K. Hirade, am worth the sum of three thousand dollars, over and above all my debts and liabilities, in property situated within the State of Washington, exclusive of property exempt from execution.

                         S. TANAKA.
                         K. HIRADE.

14          KAORU YAMATAYA VS. THOMAS M. FISHER, ETC.

Subscribed and sworn to before me this 10th day of August, 1901.
                                        W. A. KEENE,
                    *Notary Public in and for the State of Washington,*
                                        *Residing at Seattle, in said State.*

        [NOTARIAL SEAL.]

24          The foregoing bond is hereby approved this 10th day of
        August, 1901.

                                        C. H. HANFORD, *Judge.*

        Indorsed: Bond on appeal.   Filed in the U. S. district court dist.
of Washington Aug. 10 1901   R. M. Hopkins, clerk,   H. M. Walthew,
deputy.

25                              *Citation.*

            In the Supreme Court of the United States.

In the Matter of the Application of KAORU YAMATAYA for a Writ
                of *Habeas Corpus.*   No. —.

UNITED STATES OF AMERICA,  }
        *Ninth Judicial Circuit,*      } *ss:*

The President of the United States to Thomas M. Fisher, immigrant
        and Chinese inspector, Greeting:

    You are hereby cited and admonished to be and appear at the Su-
preme Court of the United States on the 5th day of October, 1901,
pursuant to an appeal filed in the clerk's office of the district court
of the United States for the district of Washington, northern division,
in the matter of the application of Kaoru Yamataya for a writ of
*habeas corpus,* in which said Kaoru Yamataya is appellant and you
are respondent, to show cause, if any there be, why the judgment
rendered against said appellant, as in said appeal mentioned, should
not be corrected, and why speedy justice should not be done to the
parties in that behalf.
    Witness the Honorable Melville W. Fuller, Chief Justice of the
United States, this 10th day of August, A. D. 1901, and of the Inde-
pendence of the United States the one hundred and twenty-sixth.

        [Seal U. S. Dist. Ct.]
                                        C. H. HANFORD,
                                *United States District Judge, Ninth*
                                        *Circuit, District of Washington.*

    Received copy of the within citation and service of the same ad-
mitted this 10th day of August, 1901.
                                        EDWARD E. CUSHMAN,
                            *Assistant U. S. Att'y and Att'y for Respondent.*

    Indorsed: Citation.   Filed in the U. S. district court dist. of
Washington Aug. 10 1901   R. M. Hopkins, clerk,   H. M. Walthew,
deputy.

26                          *Clerk's Certificate.*

In the District Court of the United States for the District of
        Washington, Northern Division.

In the Matter of the Application of KAORU YAMATAYA for a Writ
        of *Habeas Corpus.*  No. 2086.

UNITED STATES OF AMERICA, }
        *District of Washington,* } *ss* :

   I, R. M. Hopkins, clerk of the district court of the United States
for the district of Washington, do hereby certify that the foregoing
twenty-five (25) typewritten pages, numbered from 1 to 25 inclusive,
are a full, true and correct copy of the record and proceedings had
in the above-entitled matter, as the same remains on file and of record
in the office of the clerk of the district court of the United States
for the district of Washington, at Seattle in the northern division of
the district of Washington; and that the foregoing pages constitute
the transcript of the record on appeal in the above-entitled matter
from the district court of the United States for the district of Wash-
ington, northern division, to the Supreme Court of the United States,
from the judgment dismissing appellant's application for a writ of
*habeas corpus,* and remanding her to the custody of the United
States immigrant inspector.
   I further certify that I hereto annex and herewith transmit the
original citation issued in said matter.
   I further certify that no opinion has been filed in said matter.
   I further certify that the cost of preparing and certifying the fore-
going record on appeal is the sum of $6.55, and that the same has
been paid to me by Mr. Harold Preston, attorney for the petitioner
and appellant above named.
   In witness whereof I have hereunto set my hand and affixed the
seal of said district court this 9th day of September, 1901.

   [Seal U. S. District Court, District of Washington.]

                                        R. M. HOPKINS,
                *Clerk U. S. District Court, District of Washington.*


27                          ·            *Citation.*

        In the Supreme Court of the United States.

In the Matter of the Application of KAORU YAMATAYA for a Writ
        of *Habeas Corpus.*   No. —.

UNITED STATES OF AMERICA, }
        *Ninth Judicial Circuit,* } *ss* :

The President of the United States to Thomas M. Fisher, immigrant
        and Chinese inspector, Greeting :

   You are hereby cited and admonished to be and appear at the Su-
preme Court of the United States on the 5th day of October, 1901,

pursuant to an appeal filed in the clerk's office of the district court of the United States for the district of Washington, northern division, in the matter of the application of Kaoru Yamataya for a writ of *habeas corpus*, in which said Kaoru Yamataya is appellant and you are respondent, to show cause, if any there be, why the judgment rendered against said appellant, as in said appeal mentioned, should not be corrected, and why speedy justice should not be done to the parties in that behalf.

Witness the Honorable Melville W. Fuller, Chief Justice of the United States, this 10th day of August, A. D. 1901, and of the Independence of the United States the one hundred and twenty-sixth..

[Seal U. S. District Court, District of Washington.]

C. H. HANFORD,
*United States District Judge, Ninth Circuit,*
*District of Washington.*

28      [Endorsed:] (Original) No. 2086. In the Supreme Court of the United States In the matter of the application of Kaoru Yamataya for a writ of *habeas corpus*. Citation. Filed in the U. S. district court, dist of Washington, Aug 10 1901 R. M. Hopkins, clerk By H. M. Walthew deputy Harold Preston, att'y for appellant, rooms 301 to 308 Pioneer block cor. First Ave. and James St. Seattle, Washington.

Received copy of the within citation and service of the same admitted this 10th day of August, 1901.

EDWARD E. CUSHMAN,
*Assistant U. S. Att'y and Att'y for Respondent.*

Endorsed on cover: File No. 18,274. Washington D. C. U. S. Term No. 421. Kaoru Yamataya, appellant, *vs.* Thomas M. Fisher, immigrant and Chinese inspector. Filed October 2nd, 1901.

*Brief of Appellant*

IN THE

## SUPREME COURT

OF THE

# UNITED STATES

OCTOBER TERM, 1901

NO. 421

---

KAORU YAMATAYA,

*Appellant,*

VS.

THOMAS M. FISHER, IMMIGRANT

AND CHINESE INSPECTOR,

*Appellee.*

---

APPEAL FROM THE DISTRICT COURT OF THE UNITED
STATES FOR THE DISTRICT OF WASHINGTON.

---

## STATEMENT OF THE CASE.

This is an appeal from a judgment of the District Court of the United States for the District of Washington, Northern division, dismissing appellant's application for a writ of habeas corpus and remanding her to the custody of appellee. Appellant, seeking discharge from the custody of appellee, presented to the said District Court her verified petition (Record p. 1), praying the issuance of a writ of habeas corpus directed to appellee, which writ was thereupon issued and served upon appellee, who thereafter served and filed his return thereto (Record, p. 3), which return contains certain affirmative allega-

2

tions, but no denials whatever of any of the allegations of appellant's petition.

Appellant moved to quash the return, and thereafter, the matter coming on for hearing upon said motion to quash, the same was by the Court denied; to which ruling appellant excepted and her exception was allowed by the court. Thereupon appellant served and filed her traverse to said return, which traverse denied certain of the allegations of the return, and in addition set up affirmative matter (Record, p. 6). Appellee then demurred to said traverse, and his demurrer was sustained by the Court to which ruling appellant excepted and her exception was allowed by the court (Record, p. 10). Appellant electing to stand upon her petition and traverse, the Court thereupon rendered final judgment dismissing her application and remanding her to the custody of appellee.

Appellee having failed to deny any of the allegations of appellant's petition, and having, by his demurrer to her traverse, admitted all of the affirmative matter therein alleged, and the Court by its rulings (which are assigned as error on this appeal) having prevented appellant from proving the falsity of the allegations of the return denied by her and the truth of the affirmative matter which she alleged, the facts, for the purpose of this appeal, may be stated in their strongest light in favor of appellant, as the same appear uncontracted and admitted as aforesaid.

The appellant is a Japanese girl of the age of about sixteen years, who landed at the port of Seattle, Washington, on the 11th day of July, 1901, from the Japanese steamship "Kaga Maru." She did not at the time of her landing belong to any of the classes of aliens forbidden entrance into the United States by the immigration laws passed by congress. She did not gain

3

entrance into the United States surreptitiously, clandestinely, unlawfully or without authority, but had a lawful right to enter the United States and to remain therein. On the 15th day of July following her arrival appellant was arrested and imprisoned by apellee. At the time of her arrest and imprisonment appellant was not a pauper and was not a person likely to become a public charge, but ample provision had theretofore been made for her support and education. Thereupon appellee proceeded to make a pretended investigation respecting appellant, and from such investigation made a finding that she surreptitiously, clandestinely, unlawfully and without authority came into the United States; that she was a pauper and a person likely to become a public charge; that one year had not elapsed since her landing; that she became a public charge within one year after her arrival,—and decided that she had no right to be within the United States, and that she was a proper person for deportation. Thereafter appellee reported his said investigation and finding to certain other officers of the United States, including the Secretary of the Treasury, which officers affirmed the decision of appellee, and the Secretary of the Treasury issued his warrant for the deportation of appellant.

Appellant does not understand the English language. She had no notice whatever of the investigation made by appellee, and was not represented and had no opportunity to be heard thereat. After her arrest and imprisonment by appellee appellant was not permitted to see her attorneys or her relatives and she was ignorant of the fact that any investigation had been made or would be made, or that any decision of the inspection officers had been made until a few hours prior to the sailing of the vessel upon which appellee

4

intended to deport her. The evidence upon which appellee and the other inspection officers made their findings, and upon which the warrant of deportation was issued, was garbled, incomplete, misleading and in many respects untrue, in that appellant was made to answer Yes and No to questions which she did not comprehend, and answers conveying a meaning not intended were in consequence given, and only such evidence as when unexplained tended to support the finding of appellee was considered by him.

## ASSIGNMENTS OF ERROR.

### I.

The said District Court, erred in overruling appellant's motion to quash the return made by appellee.

### II.

The said Court erred in sustaining the demurrer to appellant's traverse.

### III.

The said court erred in dismissing appellant's application and rendering final judgment remanding her to the custody of appellee.

## ARGUMENT.

This appeal raises the question of the constitutionality of the act of congress of March 3, 1891, entitled, "An Act in amendment to various acts in relation to immigration and the importation of aliens under contract or agreement to perform labor," and found in 26 Statutes at Large, p. 1084, and also involves the application of the fifth amendment to the Constitution of the United States to the facts presented by the record.

We shall divide our discussion of the case into the three following heads:

5

1.  The provisions of the act of 1891 giving to inspection officers plenary power over the classes of aliens therein referred to, should be construed to extend only to aliens who have not effected an entrance into the United States.

2.  The act of 1891 is unconstitutional.

3.  Appellant is being deprived of her liberty without due process of law.

## I.

The lower court in rendering the decision which is by this appeal brought before Your Honors for review, followed the ruling of the Circuit Court of Appeals for the Ninth Circuit in the case of U. S. vs. Yamasaka, 100 Fed. 404.

We contend first that the facts in the case at bar clearly distinguish it from the Yamasaka case, and that therefore the lower court erred in following that decision. The Circuit Court of Appeals in the Yamasaka case at page 405 says: "The question presented on the appeal is whether an alien who succeeds in surreptitiously landing in the United States may, within a year from the date of such landing, be arrested and deported by the Secretary of the Treasury, *without a judicial proceeding before a court.*" It is not necessary for us on this appeal to go so far as to contend that the constitution requires that an alien shall have a "judicial trial before a *court*" before he may be deported; but the question here presented is whether an alien who does not belong to any of the prohibited classes, who has lawfully entered the United States and is entitled to remain therein, may be arrested by a ministerial officer and deported, without notice of any investigation against him or opportunity to be heard in any form of proceeding whatsoever.

6

The Yamasaka case was decided in both courts upon the assumption that the facts stated in the return of the immigration inspector were true, and it does not appear from the report of these decisions but that Yamasaka had been accorded a full hearing before the commissioner in the proceeding wherein the facts alleged in the return were found. The Circuit Court of Appeals (p. 408) says: "What we do hold is that the action of the Secretary of the Treasury was, *upon the facts stated in the return to the writ*, authorized by law" etc. We cannot but concede that upon the facts stated in the return in that case the Secretary of the Treasury was authorized to act. While it is not necessary for us to go as far as did the Circuit Court in the Yamasaka case, (95 Fed. 652) and insist that "whenever proceedings affecting the personal liberty of any person who may be found dwelling in the United States shall be instituted pursuant to this law, there must necessarily arise a cause of which the courts have full jurisdiction by virtue of the 13th section," and "he should be given the right to defend against proceedings instituted for the purpose of depriving him of his liberty, and then the question of his right to remain in this country should be determined *judicially*," however we submit that this ruling was correct, and with such an interpertation the law would be constitutional.

The point decided by the Circuit Court of Appeals in the Yamasaka case is that an alien who had unlawfully and surreptitiously entered the United States, who was a pauper, and was a person likely to become a public charge, and who belonged to one of the prohibited classes, may be arrested and deported by the Secretary of the Treasury "without a judicial trial before a court." We therefore submit that the decision

7

in the Yamasaka case did not bind the lower court to
render the judgment here appealed from, and that it
erred in following that decision in the case at bar.

But the provisions of the act of 1891 making the de-
cision of the inspection officer final, should be con-
strued to apply only to decisions affecting the right of
aliens to enter the United States, and not to aliens who
may be found dwelling therein. It appears from the
record that appellant had been dwelling in the United
States four days when arrested, and if our contention
in this respect is correct, then the decision of the Cir-
cuit court of Appeals in the Yamasaka case should be
overruled, and the decision of the lower court in the
case at bar reversed.

It will be noted that section 8 of the act of 1891
makes it the duty of officers and agents of vessels ar-
riving at any port in the United States with aliens on
board, to report to the inspection officers certain facts
concerning such aliens "*before any of them are landed*,"
and provides that the inspection officers shall there-
upon go on board the vessel and there inspect all
aliens, or the inspection officers may order a *temporary
removal* of such aliens for examination, "*but such remov-
al shall not be construed a landing during the pendency of
such examination*." And further "that all decisions
made by the inspection officers or their assistants
*touching the right of any alien to land*," shall be final
etc.; and that it shall be the duty of the aforesaid of-
ficers and agents of such vessel to adopt due precau-
tions to prevent the *landing* of any alien. And further
that the inspection officers shall have the right to take
testimony *touching the right of any such aliens to enter
the United States*."

Is it not entirely clear from the plain reading of this
statute that congress intended to make a distinction

8

between aliens who had not and those who had effected a landing in the United States? If no such distinction was intended why did congress use language which has and can be given no other meaning? Why provide that a temporary removal of an alien from a vessel "*shall not be construed a landing*" during the pendency of an examination, if this distinction was not intended? To say that no such distinction is intended by the act is to say that the provisions above referred to are meaningless and must be ignored. The act provides that the decisions of the inspection officers "*touching the right of any alien to land*," shall be final. By virtue of what authority does the Circuit Court of Appeals disregard this plain language and read into the statute the further provision that such decision touching the right of alien residents to remain in the United States shall be final?

Assuming for the sake of argument that inspection officers do possess such arbitrary powers when preventing the landing of an alien, yet we contend that after an alien has landed no such power exists. As before pointed out, this distinction is clearly and plainly made in the statute, and it is not difficult to discover reasons therefor. While a Japanese subject remains on board a Japanese vessel he is, in contemplation of law, on Japanese territory. When he lands on American soil he is subject to our laws and entitled to the protection of our constitution. The word "person" as used in the Constitution includes aliens as well as citizens.

Re Ah Fong, 3 Sawyer, 144.

Re Parrott, 1 Fed. 481.

Ho Ah Kow vs. Numan, 5 Sawyer, 552.

Fong Yu Ting vs. U. S., 149 U. S. 698.

9

By the treaty between the United States of America and the Empire of Japan, concluded at Washington, Nov. 22, 1894, it is stipulated as follows:

"Article 1. The citizens or subjects of each of the high contracting parties shall have full liberty to enter, travel or reside in any part of the territories of the other contracting party, and shall enjoy full and perfect protection for their persons and property. They shall have free access to the courts of justice in pursuit and defense of their rights. They shall be at liberty equally with citizens or subjects to choose and employ lawyers, advocates and representatives to pursue and defend their rights before such courts, and in all other matters connected with the administration of justice they shall enjoy all the rights and privileges enjoyed by native citizens or subjects."

By Section 1977 of the Revised Statutes of the United States it is provided that

"All persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and executions of every kind, and no other."

It is therefore plain that when an alien effects a landing and is found dwelling in this country he has, so far as concerns his life and liberty, all the rights of an American citizen; that congress, in recognition of this fact, when giving certain arbitrary powers to inspection officers, limited the exercise of these powers to the case of aliens who had not effected a landing.

10

## II.

The act of 1891, above referred to, is unconstitution-
al, in that it operates to deprive appellant of her lib-
erty without due process of law.

It is not our purpose to enter into an exhaustive
discussion of what is due process of law as that phrase
is used in the constitution, nor is such a discussion
deemed necessary. This provision has been copied in-
to the constitutions of every state in the Union, and in
defining its meaning volumes have been spoken and
written both by federal and state courts, and yet no
case furnishes us with a definition that will cover every
state of facts that may arise. While it may be diffi-
cult, if not impossible, to frame such a definition, it is
nevertheless easy to point out certain requisites which
must always be found in order to constitute due pro-
cess of law, and foremost among these is the require-
ment that a person shall have notice and an opportu-
nity to be heard in any proceeding affecting his rights
No principle is more firmly imbedded in our jurispru-
dence than the one which asserts that before a person
can be deprived of any of his rights he must be given
his day in court.

In Holden vs. Handy, 169 U. S. 366, the court,
speaking by Mr. Justic Brown says: "This court has
never attempted to define with precision the words 'Due
process of law,' nor is it necessary to do so in this case.
It is sufficient to say that there are certain immutable
principles of justice, which inhere in the very idea of
every free government, which no member of the Union
may disregard, as that no man shall be condemned in
person or property *without due notice and an opportunity
of being heard in his defense.*"

11

In Railway Co. vs. Iowa. 160 U. S. 389, in delivering the opinion of the court Mr. Justice White says: "but it is clear that the Fourteenth Amendment in no way undertakes to control the power of a state to determine by what process legal rights may be asserted and legal obligations be enforced, *provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided.*"

In Hovey vs. Elliott, 167 U. S. 409, Mr. Justice White in delivering the opinion of the court says: "Can it be doubted that due process of law signifies a right to be heard in one's defense? *If the legislative department of the government were to enact a statute conferring the right to condemn a citizen without any opportunity whatever of being heard, would it be pretended that such an enactment would not be violative of the constitution?*"

In McVeigh vs. U. S., 11 Wall. 259, the court uses the following language: "In our judgment the District Court committed a serious error in ordering the claim and answer of the respondent to be stricken from the files . . . The order in effect denied the respondent a hearing. It is alleged that he was in the position of an alien enemy and hence could have no *locus standi* in that forum. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject."

In Charles vs. City of Marion, 98 Fed. 166, the court says: "It is essential to due process of law that there should not only be notice of the time and place of hearing, but, more important, that there should be a tribunal clothed with power by methods and rules

12

prescribed by law to hear and determine the question involved."

In Greene vs. Briggs, 1 Curt. (Circuit Ct.) 311, Curtis, J., says in part: "The exposition of these words as they stand in the Magna Charta, as well as in the American constitution, has been that they require 'Due process of law,' and in this is necessarily implied and included the right to answer to and contest the charge." . .

In Scott vs. Toledo, 36 Fed. 385, the court says: "Due process of law demands and requires that at some stage in the proceedings before the tax charged or assessment is fixed and made final and collected, he shall have notice or an opportunity to be heard in reference thereto . . . . The owner must in some form, in some tribunal, or before some official authorized to correct errors or mistakes, have an opportunity afforded him to be heard in respect to the proceeding under which his property is to be taken or burdened, before the tax becomes final or effectual, in order to constitute such process due process of law."

In the Railroad Tax Cases, 13 Fed. 722, the court uses this language: "I shall not attempt to give an accurate definition of the term 'due process of law,' applicable to all cases. It is not necessary for the determination of this case to do so. It is enough to say that it has been settled by judicial decision, as I think, that whether the proceeding be judicial, administrative, or executive, if it affects life or liberty, or imposes a charge which becomes the basis of taking property, some kind of notice, or opportunity to be heard on his own behalf, and to defend his rights, given to the person whose life or liberty is to be affected, or whose property is to be taken, or burdened with the liability, is an indispensable element—an essential ingredient—

13

of 'due process of law.' No one, I apprehend, would for a moment contend that a man's life, or his liberty, could be legally taken away without notice of the proceeding, or without being offered an opportunity to be heard; or that a proceeding whereby his life or liberty should be forfeited, or permanently affected, without notice or opportunity to be heard in his own defense, would, by any possibility, be by 'due process of law.' In such cases there could be no just conception of 'due process of law' that would not embrace these elements of notice and opportunity to be heard. Any conception excluding these elements would be abhorrent to all our ideas of either law or justice. If these elements must enter into and constitute an essential part of due process of law, in respect to life and liberty, they must also constitute essential ingredients in due process of law, where property is to be taken; for the guaranty in the constitution is found in the same provision in the same connection, and in the identical language applicable to all. One meaning, therefore, cannot be attributed to the phrase with respect to property, and another with respect to life and liberty."

In Meyers vs. Shields, 61 Fed. 713, the court, after giving numerous definitions of due process of law says: "One principle runs through all these definitions. Webster expresses it tersely when he says: 'By the law of the land is meant the general law which hears before it condemns; which proceeds upon inquiry; and renders judgment only on trial.' The party to be affected by the process which deprives him of his life, liberty or property must have notice of the time and place of hearing, in some form or at some time, and must have the privilege of being heard. He must have his day in court."

14

In Stuart vs. Palmer, 74 N. Y. 183, the court in holding a local assessment law unconstitutional for the reason that it failed to provide for giving notice to the property owner, says: "The law requires no notice, and a provision for notice *cannot be implied* . . . . I am of the opinion that the constitution sanctions no law imposing such an assessment, without a notice to and a hearing or an opportunity of a hearing by the owners of the property to be assessed. It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. *The law must require notice to them and give them a right to a hearing and an opportunity to be heard.* It matters not upon the constitutionality of such a law, that the assessment has, in fact, been fairly apportioned. The constitutional validity of law is to be tested, not by what has been done under it, *but by what may by its authority be done.* The legislature may prescribe the kind of notice and the mode in which it shall be given, *but it cannot dispense with all notice.* . . . . It is a rule founded on the first principles of natural justice older than written constitutions, that a citizen shall not be deprived of his life, liberty or property without an opportunity to be heard in defense of his rights, and the constitutional provision that no person shall be deprived of these 'without due process of law' has its foundation in this rule. This provision is the most important guaranty of personal rights to be found in the federal or state constitution. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty or property. This the legislature cannot do nor authorize to be done. 'Due process of law' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty or property,

whether the proceeding be judicial, administrative or executive in its nature. The great guaranty is always everywhere present to protect the citizen against arbitrary interference with these sacred rights. . . A hearing or an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this."

There is much authority sustaining the proposition laid down by Chancellor Kent (2 Kent's Comm. 13) that "the better and larger definition of due process of law is that it means law in its regular course of administration through the courts of justice;" but it is not necessary for our present purpose to go to that extent. We may, for the purposes of this case, admit that it was not necessary for appellant to have been accorded a hearing before a judicial tribunal, but that had the act provided for giving her notice of the investigation made by the commissioner and an opportunity to be heard thereat, the constitutional requirement would have been met. However, we submit that (in the language of Mr. Justice Field in Hagar vs. District, 111 U. S. p. 708) "where *life and liberty* are involved, due process requires that there be a regular course of *judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard.*"

In calling to the court's attention the cases above cited, no attempt has been made to even make selection from the vast number of authorities sustaining our position; neither have we deemed it necessary to review at greater length the cases cited, inasmuch as the construction of the words "due process of law" must be the same whether they are found in the fifth or fourteenth amendments to the constitution of the United States, or the constitution of any state in the

16

Union, and whether the application of them is made to
a case involving either life, or liberty, or property.
True it is that many of the cases cited involve proper-
ty rights, but can it be said that the right to property
is, in the eyes of the law, more sacred than the right to
liberty? If the strong language used by this and
other courts is applicable to a case involving the right
to property, with much greater force may it be applied
to a case involving the right to personal liberty. It is
useless to multiply authorities upon this proposition;
but we content ourselves with the statement that in
the wilderness of authority upon this subject not one
case can be found holding that where a person's liberty
is involved notice and an opportunity to be heard is
not necessary in order to constitute due process of law.

The act of 1891 fails to provide for the giving of
notice to or an opportunity to be heard by the persons
whose right to liberty are thereby affected, and it is
respectfully submitted that the same is therefore un-
constitutional and void.

## III.

Whatever may be the ruling of this court as to the
constitutionality of the Act of 1891, it is contended by
appellant that she is, as appears by the record, being
deprived of her liberty in violation of the fifth amend-
ment to the constitution of the United States, in that
she was not given any notice or opportunity to be
heard in the proceeding in which her right to liberty
was tried. The authorities hereinbefore cited sustain
us in this contention. The fifth amendment to the
constitution guarantees that no person shall be de-
prived of life, liberty or property without due process
of law, and all the authorities hold that the right to be
heard is necessary to due process of law. Here is a

17

person found dwelling within the United States; she is arrested and imprisoned by a ministerial officer; she is not permitted to see her friends or to consult with her attorneys; she is unable to speak or understand our language, and is ignorant of the cause of her imprisonment, and ignorant of the fact that any investigation is being made concerning her right to liberty. The officer does not give her any notice of the proceedings nor any opportunity to be heard, but goes about secretly collecting evidence against her, considering only such evidence as when unexplained, will suit his purpose. He takes advantage of her ignorance of our language and makes her give unintentional answers to questions which she does not understand. He states that he is holding her to appear as a witness in a criminal case against another party, thus deceiving her attorneys as to his intention. As the result of the investigation made by this ministerial officer in his combined capacity of prosecutor, judge and jury, he makes a finding against appellant. Thereafter he removes his decision to a higher tribunal, to-wit, the Secretary of Immigration, and has it there affirmed. From here he takes another appeal to the Secretary of the Treasury and has his decision again affirmed, and a warrant of deportation issued. Of all these proceedings appellant is ignorant. A few hours before the sailing of the vessel upon which it was intended by respondent to deport her, it is by chance learned that such a step is contemplated. It is confidently asserted that our records will be searched in vain for authorities sustaining such a proceeding, and its only parralell must be sought for in the history of the times antedating *Magna Charta*. Will the highest court of the land hold this proceeding to be due process of law? It seems to us that to do so would be to strike a blow at the very foundation of free gov-

18

ernment.   It is difficult to conceive of a more shame-
ful assumption of arbitrary power.   If such a practice
as that resorted to by respondent will be tolerated, then
our constitutional guarantee is a mere sham, and per-
sonal liberty something unknown.   As has been before
pointed out, the appellant has, by treaty between our
government and the Empire of Japan, all the rights ac-
corded by us to the citizens and subjects of the most
favored nation.   If respondent has the power which he
has assumed to exercise with reference to appellant,
then he may exercise the same power with reference to
a citizen or subject of Great Britian, of Germany or of
any other nation.   By section 1977 of the Revised Sta-
tutes, as above stated, appellant has, so far as any ques-
tions involved in this appeal is concerned, the same
rights as an American citizen.   As stated by Mr. Jus-
tice Matthews in Wo vs. Hopkins, 118 ~~Wash.~~ U. S.
page 369, when considering the rights of a Chinese
subject, "the questions we have to consider and decide
in these cases, therefore, are to be treated as involv-
ing the rights of every citizen of the United States
equally with those of strangers and aliens who invoke
the jurisdiction of this court."   If appellee has the power
over appellant which he claims to exercise, then he pos-
sesses like arbitrary power over every American citi-
zen.   He may arrest any American citizen and confine
him in prison.   He may then, without giving such
citizen any notice of his proceeding or of his inten-
tions, go about the country secretly collecting or as-
suming to collect, evidence, using fraud and decep-
tion whenever it suits his purpose.   From this evi-
dence he may make a finding that such a citizen is a
Japanese subject, that he is a pauper, and a public
charge, and that he is a proper person for deportation.
He may then, without notice, remove his decision to

19

the Secretary of the Treasury and have it there affirmed and a warrant of deportation issued. If by chance this American citizen learns of what is transpiring before the time for his deportation, it will avail him nothing to appeal to the courts, since he will be met by the decision of the Circuit Court of Appeals above referred to, holding that the courts have no jurisdiction to determine his rights. It will be useless for him to seek in any proceeding or before any tribunal to explain or disprove the evidence taken against him *ex parte*, to prove that he is a natural born white American citizen and not a Japanese,—that he is a millionaire and not a pauper, for he will be met by the answer that the Commissioner has found against him on all of these issues, and that such finding has been affirmed on appeal, and the same is final and conclusive and that his rights are concluded thereby. If the proceeding here under review is sustained, then the liberties of the American citizen are bounded by the arbitrary will of executive officers, and not by the guarantees contained in our constitution. He may not then, when his right to liberty is assailed, seek its vindication in a court of justice, but must submit to having this sacred right determined against him fraudulently and secretly by an officer of the executive department.

It was pleaded in the return of appellee, and will doubtless be urged on this appeal, that appellant failed to prosecute any appeal from the decision of appellee, and is for that reason precluded from having such decision reviewed in any other manner, since the act provides that the decision of inspection officers touching the right of an alien to land shall be final unless appeal be taken to the Secretary of the Treasury. Whatever force such argument may have in a case where an alien has been given an opportunity to be

20

heard at the investigation contemplated by the act, or has been given notice of such proceeding and decision, or has by any means obtained knowledge of the fact that a decision has been made, it is not for us here to determine. It appears from the record not only that appellant was not given any notice of the proceedings taken against her, or any opportunity to be heard thereat, but that she had no knowledge whatever that an investigation had been conducted, that a finding had been made, or that the same had been carried to the Secretary of the Treasury and there affirmed, until long after such steps had been taken and the Secretary had issued his warrant of deportation, and she was, within the space of a few hours time, to be deported. Can it be urged before this court that under such circumstances appellant's only means of redress was by appeal to the Secretary of the Treasury after the Secretary had himself heard and decided the matter against her and issued his warrant of deportation, that by failing to appeal from a decision of which she had absolutely no knowledge, or means of knowledge, she is thereby forever deprived of her rights. It is believed that the only precedent which appellee can find for such a contention is that which history records of the ruler who posted his decrees so high that his subjects were unable to read them, yet enforced strict compliance therewith.

We respectfully submit that the judgment appealed from should be reversed and appellant discharged.

HAROLD PRESTON,
*Attorney for Appellant.*

WALTER A. KEENE.
*Of Counsel.*

# In the Supreme Court of the United States.

## October Term, 1902.

Kaoru Yamataya, appellant,
*v.*
Thomas M. Fisher, Immigrant and Chinese inspector.

} No. 171.

*APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF WASHINGTON.*

## BRIEF FOR THE UNITED STATES.

The appellant in this case, in the petition to the district court on her behalf for habeas corpus, declared that she is not a pauper, and is not likely to become a public charge, being the ground upon which the United States ordered her to be deported. There were the usual assertions that she had not come to the United States in violation of law, and was lawfully within the United States and entitled to remain (Rec., p. 1). The return to the writ (p. 3) alleges due investigation by the immigration inspector, and, by the statement that the girl clandestinely and unlawfully entered the United States, that she was a pauper

19555—03

2

and likely to become a public charge within a year,
certainly denied allegations of the appellant's petition
for habeas corpus, although counsel's brief undertakes
to say that none of her allegations was denied, and
that the truth of the affirmative matter that she alleged
appears uncontradicted and admitted. This is ob-
viously not the fact.

The inspector's return further states his decision, in
pursuance of the facts elicited by his investigation,
that the appellant had no right to be within the United
States and was a proper person for deportation; where-
upon the Secretary of the Treasury, being satisfied
from the proof submitted that the appellant was an
alien immigrant who entered this country from Japan
contrary to the act of Congress of March 3, 1891, duly
issued his warrant of deportation.

The traverse of the return says the investigation was
pretended; that advantage was taken of the petitioner's
ignorance and lack of friendly assistance and counsel;
that the evidence obtained by the inspector is garbled,
misleading, and untrue, based upon answers to ques-
tions which were erroneous because the questions were
not understood; and, in short, suggests that the in-
spector dealt with the girl unfairly and arbitrarily.
The traverse repeated the denial that the girl was a pau-
per, and asserted that ample support and maintenance
would be provided for her. The traverse contains the
further allegation that it was understood by the girl
and her uncle, the petitioner in her behalf, that the
inspector intended to hold the girl as a witness in a

3

criminal charge which was pending against the uncle, and that, being ignorant that any decision had been made or proceedings taken regarding deportation, for this reason the appeal provided by law had not been taken from the inspector's decision.

This is the case; and if such roving, experimental, and general allegations are to be heard to impeach the conclusive authority and proceedings of immigrant inspectors and the finality of the action of the Secretary of the Treasury, there is little meaning in laws which commit all such questions to the investigation and decision of these officers, and presume necessarily that the entire proceedings are honestly and fairly conducted.

The petitioner moved to quash the return, which the court below denied. The inspector then demurred to the traverse as an insufficient answer to his return, upon which the court sustained the demurrer, and then an appeal to this court was allowed with an admission to bail and a stay of execution of the warrant of deportation.

### ARGUMENT.

### I.

The law provides (act of March 3, 1891, 26 Stat., 1084) that in accordance with previous laws regulating immigration other than Chinese, all paupers or persons likely to become a public charge shall be excluded from the United States (sec. 1); that upon the arrival of alien immigrants by water the duty of report by

4

the master and agents of the vessel and of inspection
by the immigration officers shall arise:

> The inspection officers and their assistants
> shall have power to administer oaths and to
> take and consider testimony touching the right
> of any such aliens to enter the United States,
> all of which shall be entered of record. * * *
> All decisions made by the inspection officers or
> their assistants touching the right of any alien
> to land, when adverse to such right, shall be
> final unless appeal be taken to the Superintend-
> ent of Immigration, whose action shall be sub-
> ject to review by the Secretary of the Treasury.

The representatives of the vessel must adopt due
precautions to prevent unauthorized landing, and are
punishable if they knowingly or negligently permit it
(sec. 8); all aliens *who may unlawfully come* into the
United States are to be sent back on the vessel by
which they arrive, *if practicable* (sec. 10); any alien
who comes into the United States in violation of law
may be returned at any time within a year; even an
alien duly admitted, who, in fact, becomes a public
charge within a year from causes existing prior to ar-
rival, is deemed to have come in violation of law, and
shall be returned (sec. 11).

The investigation by the inspector in this case was
undertaken four days after the girl's unauthorized
landing, and the warrant of deportation was issued
within ten days later.  The girl came into the United
States in violation of law if she was a pauper or
likely to become a public charge; and so the in-

5

spector found her to be under his investigation and power of decision.

One of the "existing acts regulating immigration" referred to in section 1 of the act of 1891 is contained in the deficiency bill approved October 19, 1888 (25 Stat., 565). This amended the alien contract-labor law of 1887, and is an aid in the construction of the act of 1891. It authorized "the Secretary of the Treasury, in case that he shall be satisfied that an immigrant has been allowed to land contrary to the prohibition of that law [the said act of 1887], to cause such immigrant, within the period of one year after landing or entry, to be taken into custody and returned to the country from whence he came." * * *

The sundry civil act of August 18, 1894 (28 Stat., 390), contained the following provision, which has often been before the court:

> In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of the Treasury.

The regulations applicable (Immigration Laws and Regulations, edition of 1900) prescribe that (Art. VI) an alien refused permission to land, or pending appeal, may confer with friends or counsel in such manner as the Commissioner of Immigration or inspector (Art. III) may deem proper. Article VII allows an appeal

6

to the Treasury Department if an immigrant claims to be aggrieved by the decision of the inspection officer.

It is a fair presumption that this girl conferred with friends; presumably she was with them before and during the days when the inspector was investigating her case. The traverse to the return clearly implies as much in the statements regarding the arrangements of her parents and relatives for her support and education in this country. The petitioner for the writ is her uncle, and claims her care and custody on that ground. When she was taken into custody by the inspector, she was delivered to one of the charitable institutions which exist to care for such foreign girls and help them, often against sinister interests of relatives, so-called friends, or masters.

The brief on the other side, in enlarging upon the "pretended" investigation and the alleged deception practiced, shows that attorneys had been employed in the girl's interest, because it is claimed that they were deceived as to the inspector's intention. (App. brief, p. 17.) If it is reasonable to suppose that they were deceived, or that the inspector intended to deceive them, this would simply show that they were indifferent or incapable attorneys. It was clearly their business to have taken the appeal provided by law.

The assumption invariably is in such cases that the petitioner tells the truth and the Government officer always perverts and distorts it to serve his own evil and crafty ends. But the court below, fully apprised of all the facts and surrounding circumstances, evidently thinks otherwise.

7

In any event it will not do to say that the girl and the petitioner were ignorant of the right of appeal. The man must be held to knowledge of and compliance with the law on behalf of the girl for whom he appeared. As shown by the above references he had evidently employed counsel. If such petitioners are not held to the fundamental responsibilities, such allegations would be made in every case, and the force of the law would be minimized and its scheme nullified.

It is to be remembered that the general theory of *habeas corpus* submits a naked question of law upon admitted facts. Necessarily, when the instance court takes such action as in this case, the meaning is that the official obedience to the law and orderly process sufficiently appear; that the action was thus with warrant of law, leaving the mere naked question of constitutionality; and therefore that the counter allegations or matters of confession and avoidance have been regarded by the instance court as untrue, or not sufficiently appearing, or immaterial.

The principle affecting this subject in reference to Chinese exclusion cases as well as under the general immigration laws is the same.

## II.

The appellant argues that the act of 1891 applies only to landing; that after arrival here, through whatever evasion of inspection, the Government has no remedy. This species of argument has already been heard here in Chinese cases, and has not been approved.

8

The very terms of the statute in the prior laws which we have quoted sufficiently disprove this theory. If accidental escape from the authorities, or evasion, protects, then a new premium is put upon clandestine introduction. It is difficult enough now to hold the owners and masters of vessels to their duty to be watchful and diligent in preventing aliens from illegal landing. The policy and intent as well as the language of the acts forbid this conception.

It is true that in the analogous Chinese cases special judicial jurisdiction attaches after illegal entry; but certainly neither the law nor the courts look with favor on any evasive or clandestine introduction of immigrants. And in the present case the provision for return within a year shows that the statute manifestly intends that executive control shall be retained.

The present case was necessarily ruled below by the *Yamasaka case* (100 Fed. Rep., 404), which is not distinguishable. That decision held flatly that an alien landing surreptitiously may, within a year, be arrested and deported by the Secretary of the Treasury without judicial proceeding before a court. Counsel does not demand a *court*, but makes the old plea, familiar in all such cases, that here was an arbitrary arrest by a ministerial officer, and deportation without notice, hearing, or due and just investigation. But the ministerial officer has been clothed with the authority to determine and act, and this court has in numerous cases decided that the executive determination is final. (*Nishimura* v. *United States*, 142 U. S. 651;

9

*Fong Yue Ting* v. *United States*, 149 U. S. 698;
*Lem Moon Sing* v. *United States*, 158 U. S. 538;
*Wong Wing* v. *United States*, 163 U. S. 228; *Fok
Yung Yo* v. *United States*, 185 U. S. 296.) Nor is
it necessary to pause at any uneasy doubt that wrong
has been done. Quite apart from the summary power
conferred upon the executive which is beyond review
by the courts, the charge of arbitrary, prejudiced, and
inconsiderate action is generally found to rest upon
mere assertion. I fully believe from recent records
and examples that it *always* rests upon assertion; that
the Treasury action is correct—consistent with the
purpose of the law and with fundamental rights. At
all events the court has indicated plainly enough, in a
case presenting the precise point—viz, the charge of
delusive investigation and unfair and arbitrary deci-
sion—that they will not interfere. The presumption is
that the result is proper. (*Lee Lung* v. *Patterson*, 186
U. S., 193.)

It is impossible to maintain the proposition that the
act of 1891 is unconstitutional as depriving a person
of life, liberty, or property without due process of law.
As to the authority and finality of executive action, as
to the power of Congress, as to the scope of the immu-
nity under Article V of the amendments to the Consti-
tution, the case of Fong Yue Ting and many other
familiar authorities decided that such objections to the
constitutionality of immigration laws can not be sus-
tained. Congress has the right to expel as well as to
exclude aliens. No question is now possible that such

10

proceedings as the act of 1891 provides, and as were taken in this case, are due process of law. Nor is there any doubt that the principle of security of life, liberty, and property is not involved at all. To exclude or expel does not involve liberty; to be deported to the country whence one came does not restrain liberty. Deportation merely enforces the withholding of the privilege of coming here or remaining here, which Congress has denied in its sovereign capacity for reasons of policy founded in national self-protection.

Cases like *Hagar* v. *The District* (111 U. S., 708) relate to incroachments on the immunities of citizens, and cases like *Yick Wo* v. *Hopkins* (118 U. S., 369) refer to arbitrary State or municipal discriminations against aliens who were lawful denizens of this country.

The following statement from the opinion of the court in *Nishimura Ekiu* v. *United States* (142 U. S., 651, 660) is a precise and conclusive reply to this entire line of argument in appellant's behalf:

> The final determination of those facts [on which the right to land depends] may be intrusted by Congress to executive officers; and in such a case, as in all others in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to reexamine or con-

11

trovert the sufficiency of the evidence on which
he acted. * * * It is not within the prov-
ince of the judiciary to order that foreigners
who have never been naturalized, nor acquired
any domicil or residence within the United
States, nor even been admitted into the country
pursuant to law, shall be permitted to enter, in
opposition to the constitutional and lawful meas-
ures of the legislative and executive branches of
the National Government. As to such persons,
the decisions of executive or administrative offi-
cers, acting within powers expressly conferred
by Congress, are due process of law.

### III.

Indeed, it will be found, on examination, that all the
authorities cited by counsel are wholly inapplicable.
Counsel forgets that we are dealing with a special sub-
ject, in which the clear will and sovereign competence
of Congress are paramount. On this subject the court
has held time and again that the executive proceeding is
due process of law, and that exclusion and expulsion of
aliens are the exercise of constitutional power. Judicial
statements as to property and liberty under entirely dif-
ferent circumstances do not remotely affect the present
case. It is merely necessary to glance at the authori-
ties in our opponent's brief (pp. 10–16) to perceive that
taxing laws, property rights, State charges, and assess-
ments of various kinds, without due notice and pro-
ceedings, furnish the situations which elicited the
language of this court and other courts, Federal and

12

State, respecting due process of law and the funda-
mental guarantees.  In the present case liberty is no
more involved than property or life.  So long as the
national policy and law as to immigration stand, there
is no room for opposing argument.

The treaty with Japan (treaty of 1894, Art. I, 29
Stat., 848) is necessarily subject to the special excep-
tions and qualifications of our immigration laws rela-
tive to excluded classes of aliens.   And section 1977,
Revised Statutes, granting to all persons within the
jurisdiction of the United States the equal benefit of
the laws for the security of persons and property as is
enjoyed by *white persons*, and imposing like punish-
ments and liabilities, obviously does not relate to an
alien whose right to be within the jurisdiction of the
United States is the very point at issue, and the secu-
rity of whose person and property is not in any sense
involved.   Further, the words italicized indicate the
contrast which denotes that the persons contemplated
by that statute are colored persons in the historic sense
of all our laws, that is, persons of African descent.

This alien entered the United States clandestinely
and illegally.   She wishes to remain here, it is true;
that privilege is denied her, and she is told she must de-
part.   There is nothing more than this in the case.

There is no dilemma in the suggestion that if the ex-
ecutive power here invoked can be exercised toward a
subject of Japan it may also be exercised toward a
subject of Great Britain, Germany, or any other nation.

13

That is exactly true, and the power would be promptly
exercised toward the subject of any nation who was
thus found to be a pauper or likely to become a public
charge.

It is mere rhetoric for the opposing brief to assert
that the inspector secretly collected evidence with
malicious or biased intent, or that he took advantage
of this girl's ignorance and made her give uninten-
tional answers to misunderstood questions, or that he
deceived her attorneys as to his intention, or that a
sacred right has been determined adversely by the
fraud and secrecy of an executive officer. This atti-
tude is very characteristic of such cases; but there is
nothing in the record to justify these aspersions, not
only against the particular officer, but against the
Government in whose service he is employed.

In conclusion, it is pertinent to call the court's atten-
tion to the third and fourth articles of the return to
the writ (Rec., p. 4):

> That in pursuance of said testimony, admis-
> sions of the petitioner, evidence, facts, and cir-
> cumstances, I did, as such immigrant and
> Chinese inspector, decide that she had no right
> to be in the territory of the United States, and
> was a proper person for deportation. * * *
> That upon said report and evidence, and after
> due and regular investigation in the manner
> prescribed by law, that the proper officers
> charged with the execution of the various acts
> of Congress heretofore mentioned also decided

14

that she, the petitioner herein, was within the United States contrary to the provisions of the said acts of Congress, and that she should be deported.

I respectfully submit that the orders of the court below in favor of the Government, overruling the motion to quash the return to the writ, and sustaining the demurrer to the traverse to the return, should be affirmed.

HENRY M. HOYT,
*Assistant Attorney-General.*

O