## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Make the Road New York, *et al.*,

          Plaintiffs,

v.

Noem, *et al.*,

          Defendants.

Case No. 1:25-cv-00190-JMC
Judge Jia M. Cobb

### IMMIGRATION REFORM LAW INSTITUTE'S PROPOSED AMICUS BRIEF IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION TO POSTPONE EFFECTIVE DATE OF AGENCY ACTION

CHRISTOPHER J. HAJEC
D.C. Bar No. 492551
MATT A. CRAPO
D.C. Bar No. 473355
Jonathon P. Hauenschild*
D.C. Bar No. 90024004
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Ave., NW, Ste 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
mcrapo@irli.org

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

*Not admitted to this Court

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* the Immigration Reform Law Institute ("IRLI") is a 501(c)(3) not for profit charitable organization incorporated in the District of Columbia. IRLI has no parent corporation. It does not issue stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................................ i

TABLE OF AUTHORITIES................................................................................................. iii

INTEREST OF *AMICUS CURIAE* ................................................................................... 1

SUMMARY OF ARGUMENT.............................................................................................. 1

ARGUMENT .................................................................................................................... 2

    I.    Plaintiffs identify no legally protected liberty interest other than a vague right to procedural due process under the Fifth Amendment ................................................. 2

    II.    Even if Plaintiffs could point to a legally protected liberty interest, Congress has provided ample procedural protections in the expedited removal statute.................................. 6

CONCLUSION................................................................................................................... 9

ii

# TABLE OF AUTHORITIES

## CASES

*American Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998), *aff'd* 199 F.3d 1352 (D.C. Cir. 2000) ................................................................................................... 5

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ................................................................ 3, 4

*DA's Office v. Osborne*, 557 U.S. 52 (2009) ..................................................................... 2, 3

*Den Ex Dem Murray v. Hoboken Land & Improv. Co.*, 59 U.S. 272 (1855) ............................... 6

*Dep't of State v. Munoz*, 602 U.S. 899 (2024) ............................................................ 3, 4, 6, 7

*Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) ...................................... 5, 6, 7

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1952) ................................................................. 5

*Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989) ............................................ 3

*Landon v. Plasencia*, 459 U.S. 21 (1982) ......................................................................... 4, 8

*Nelson's Cabinetry, Inc. v. Blinken*, 2025 U.S. Dist. LEXIS 6550 (D.D.C. 2025) ....................... 7

*Paul v. Davis*, 424 U.S. 693 (1976) .................................................................................... 2

*Roberts v. United States*, 741 F.3d 152 (D.C. Cir. 2014) ......................................................... 3

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) ............................................. 8

*United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950) ........................................... 7

*Washington v. Glucksberg*, 521 U.S. 702 (1997). ................................................................. 3

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ............................................................................. 8

## STATUTES

8 U.S.C. § 1182(a)(7) ..................................................................................................... 5

8 U.S.C. § 1225(a)(1) ..................................................................................................... 8

8 U.S.C. § 1225(a)(3) ..................................................................................................... 5

8 U.S.C. § 1225(b) ........................................................................................................ 4

8 U.S.C. § 1225(b)(1) ..................................................................................................... 5

8 U.S.C. § 1225(b)(1)(A)(i), (ii) ...................................................................................... 6

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ...................................................................................... 6

8 U.S.C. § 1225(b)(1)(A)(iii)(II) .................................................................................. 5, 6

8 U.S.C. § 1225(b)(1)(B)(iii)(III) ..................................................................................... 8

8 U.S.C. §§ 1225(a)(1) ................................................................................................... 5

8 U.S.C.§ 1182(a)(6)(c) .................................................................................................. 5

Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104-208 (1996) ............. 5

Immigration and Naturalization Act, 8 U.S.C. §§ 1101, et seq. ................................................ 4

## OTHER AUTHORITIES

Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures; 62 Fed. Reg. 10312 (Mar. 6, 1997) ...................... 5

**REGULATIONS**

8 C.F.R. § 1003.42(d) ............................................................................................................... 8

8 C.F.R. § 235.3(b)(2)(i) ........................................................................................................... 8

8 C.F.R. § 235.3(b)(7) ............................................................................................................... 8

8 C.F.R. §1208.30(g) ................................................................................................................ 8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. V ............................................................................................................... 6

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3)

public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the

interests of, United States citizens, and to assisting courts in understanding and accurately

applying federal immigration law.[1] IRLI has litigated or filed *amicus curiae* briefs in a wide

variety of cases, including: *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599

U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All.

Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-

Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

## SUMMARY OF ARGUMENT

To show a likelihood of success, Plaintiffs must allege a legally protectable liberty

interest, and that interest must be rooted in something more than the Fifth Amendment's Due

Process Clause. Plaintiffs must, instead, identify some substantive liberty interest protected by

either the Constitution or statute. Here, Plaintiffs fail to do so and their due process claims are

therefore likely to fail.

Even if Plaintiffs were able to show that they have a protected liberty interest at stake, the

procedures established by Congress for expedited removal comport with due process under the

Fifth Amendment. Under the expedited removal process, aliens have the opportunity to make

their case before an immigration officer, and that officer's supervisor must approve the officer's

removal decision. If the alien is dissatisfied, he or she may appeal that adverse decision to an

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

Immigration Judge who will review the case de novo. This process, established by Congress, comports with due process under the Fifth Amendment.

## ARGUMENT

Plaintiffs' due process claims are unlikely to succeed. Defendants show that Make the Road, as an organization, and the individual Plaintiffs likely do not possess standing. Defendant's Motion to Dismiss, ECF 36 at pp. 12-14, Memorandum of Points and Authorities in Support of Defendants' Opposition to Plaintiff's Motion to Postpone Effective Date of Agency Action, ECP 56, at pp. 20-22. In addition, Plaintiffs fail to identify a protectable liberty interest upon which to base their due process claims and also fail to show that they will be accorded deficient procedural protections in the expedited removal process. For these reasons, too, the Court should deny Plaintiffs' Motion to Postpone Effective Date of Agency Action.

**I.      Plaintiffs identify no legally protected liberty interest other than a vague right to procedural due process under the Fifth Amendment**

Plaintiffs point to no specific liberty interest other than a vague Fifth Amendment right to Due Process. Am. Complaint, ECF 27 at ¶¶ 107-108, Memorandum in Support of Motion to Postpone Effective Date of Agency Action ("Motion to Postpone"), ECF 50-1 at pp. 14, 16-18. Because they claim "no specific constitutional guarantee safeguarding" a recognized liberty interest, they are unlikely to succeed on their due process claims. *DA's Office v. Osborne*, 557 U.S. 52, 67 (2009) (observing in a Fourteenth Amendment case that "[p]rocess is not an end in itself, so a necessary premise of this argument is that he has an entitlement (what our precedents call a 'liberty interest') … to determine what process (if any) is due"); *accord, Paul v. Davis*, 424 U.S. 693, 700 (1976) (discussing Fourteenth Amendment Due Process Clause).

The Supreme Court has pointed out that "the procedural guarantees of the Due Process Clause cannot be the source" of a legally protected liberty interest. *Paul*, 424 U.S. at 701. Where

plaintiffs claim a liberty interest and rest that claim solely in procedural due process, their claim must fail. To succeed, they must articulate some liberty interest guaranteed either by law or the Constitution. *DA's Office*, 557 U.S. at 67; *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014). *See also, e.g., Dep't of State v. Munoz*, 602 U.S. 899, 908-09 (2024) (noting that a U.S. citizen plaintiff alleged that she had a "fundamental right to live with her spouse in her country of citizenship").

Thus, in evaluating procedural due process claims, courts ask two questions: 1) whether plaintiffs possess a liberty or property interest that has been interfered with by the government; and 2) whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).[2]

To "have a [protected] interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). While *Board of Regents* addresses a property rather than a liberty interest, the logic is instructive. The Court determined that a plaintiff must have a "legitimate claim of entitlement" to a benefit before constitutional protections apply. A "unilateral expectation" is insufficient to create a liberty interest for purposes of procedural due process.

Plaintiffs do appear to suggest that they have a liberty interest in avoiding removal. *See* Motion to Postpone at p. 14. But the Supreme Court has expressly rejected the existence of such

---

[2] For substantive due process, on the other hand, the Court's two different factors are:
(1) Whether the Due Process Clause of the Fourteenth Amendment "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition;" and
(2) A "careful description of the asserted fundamental liberty interest."
*Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997).

an interest. *See, e.g., Munoz*, 602 U.S. at 912. Indeed, Plaintiffs cannot derive a "right" not to be removed from the country from either statute or the Constitution. Congress, when enacting the Immigration and Naturalization Act (INA), Pub. L. No. 82-414 (1952), codified, as amended, at 8 U.S.C. §§ 1101, *et seq.*, ensured that Plaintiffs lack any "legitimate [statutory] claim of entitlement" to remaining in this country. *See Board of Regents*, 408 U.S. at 577 (requiring that plaintiffs must have more than an abstract need, desire for, or even unilateral expectation of a right). The expedited removal process described in 8 U.S.C. § 1225(b), moreover, itself establishes that certain classes of aliens, including Plaintiffs here, may be lawfully removed under that streamlined process. In a word, Congress has accorded Plaintiffs no "right" to remain, or liberty interest in remaining, in the country.

Nor does the Constitution give Plaintiffs such a right or liberty interest. Rather, under the Constitution, the government's authority to admit or exclude aliens is a "sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Aliens, especially those in the country illegally, thus cannot have any constitutional right to remain; rather, Congress's prerogative—which it has exercised by thoroughly regulating the field of immigration, placing conditions on aliens' remaining, and providing for the removal, and even expedited removal, of certain aliens— demonstrates its absence. *Munoz*, 602 U.S. at 907 (reciting Congress's authority over immigration and deferring to Congress's pronouncements regarding admission or exclusion of aliens), *Fiallo v. Bell*, 430 U.S. 787, 792 (1972)("Our cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control" (citations omitted)). Congress, moreover, has delegated "to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'" *Munoz*, 602 U.S. at 907 (*quoting Harisiades v.*

*Shaughnessy*, 342 U.S. 580, 588-591 (1952). When Congress, acting within its constitutional authority, delegates the responsibility to investigate and determine whether an alien is admissible to an official within the Executive, that official "is made the sole and exclusive judge of the existence of those facts." *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892).

When Congress and the Attorney General crafted the expedited removal process in the late 1990s,[3] they ensured that certain illegal aliens lacked "a legitimate claim of entitlement" to their continued presence in the United States. First, Congress has statutorily determined that any alien, whether crossing legally through a port of entry or illegally, remains an applicant for admission, a status requiring inspection by an immigration officer. 8 U.S.C. §§ 1225(a)(1), 1225(a)(3), *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108-109 (2020). Second, the expedited removal process applies only to those aliens who (1) have not been admitted or paroled into the United States and (2) have been here less than 2 years. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Third, to qualify for expedited removal, the alien must be someone who "by fraud of willfully misrepresenting a material fact, seeks to procure… a visa, other documentation, or admission into the United States" or who "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality…" 8 U.S.C.§§ 1182(a)(6)(c), 1182(a)(7). Fourth, Congress delegated complete discretionary authority to the Secretary of Homeland

---

[3] *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, § 302(a) (1996). Final regulations implementing 8 U.S.C. § 1225(b)(1) were published in 1997. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures; 62 Fed. Reg. 10312 (Mar. 6, 1997). *See also*, *American Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998), *aff'd* 199 F.3d 1352 (D.C. Cir. 2000).

Security to invoke and implement expedited removal procedures against the aliens described in 8 U.S.C. § 1225(b)(1)(A)(i), (ii) and 8 U.S.C. § 1225(b)(1)(A)(iii)(II). *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I).[4]

With that statutory regime in place, those in the country illegally for less than two years lack the requisite "legitimate claim of entitlement" to non-removal necessary to create a liberty interest to maintain their procedural due process claims. Accordingly, Plaintiffs cannot demonstrate any likelihood of success on their due process claims, and the Court should deny their motion to postpone for that reason alone.

**II.     Even if Plaintiffs could point to a legally protected liberty interest, Congress has provided ample procedural protections in the expedited removal statute**

While the Plaintiffs cannot establish that they have a liberty interest sufficient to trigger procedural due process protections, assuming *arguendo* they are due some measure of procedural protection, the expedited removal process is sufficient to satisfy the Fifth Amendment.

The Fifth Amendment provides that the government may not deprive anyone "of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V, *see also Munoz*, 602 U.S. at 909-910 (2024). Procedural due process can take several different forms, including – relevantly for the expedited removal process – the opportunity to be heard by Executive Branch immigration officials. *Thuraissigiam*, 591 U.S. at 139, *Nishimura Ekiu*, 142 U.S. at 660.

Discussing the history of the concept of procedural due process, the Court in *Den Ex Dem Murray v. Hoboken Land & Improv. Co.*, 59 U.S. 272 (1855) noted that the words "were undoubtedly intended to convey the same meaning as the words, 'by the law of the land,' in the Magna Charta." 59 U.S. at 276. Sir Edward Coke "thoroughly described the scope of interests

---

[4] "Such designation shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time."

that could be deprived only pursuant to 'the law of the land.'" *Din*, 576 U.S. at 91. Similarly, Sir William Blackstone discussed procedural due process "in terms closer to the 'life, liberty, or property' terminology used in the Fifth Amendment." *Id*. at 91-92. Prior to the Constitution's ratification, States largely adopted the text from the Magna Charta, stating that they followed "the language of the great charter more closely, generally contain[ing] the words, 'but by the judgment of his peers, or the law of the land.'" *Murray*, 59 U.S. at 276.

First, though, procedural due process appertains only to the party, or parties, asserting the right. *E.g. Nelson's Cabinetry, Inc. v. Blinken*, 2025 U.S. Dist. LEXIS 6550, *27-29 (D.D.C. 2025) (citing *Munoz*, 602 U.S. at 916-917); Motion to Dismiss at pp. 12-14, Opposition to Motion to Postpone, ECF 56, at pp. 20-22. That is, Plaintiff Make the Road assert it only on its own behalf not on behalf of the individually named Plaintiffs.

According to long-standing jurisprudence, and even the Plaintiffs' own admission,[5] procedural due process in the immigration context does not require hearings before an Article III court. Instead, Congress may, through statute, imbue the Executive Branch, and officials within the Executive Branch, with the ability to administer due process. *Thuraissigiam*, 591 U.S. at 138.

Second, the specific measure of due process is a sliding scale due, in large part, upon which stage aliens claim it. Generally, aliens may receive some measure of due process depending on how long they have been in the country. Those seeking entry to the United States may be denied entry with few-to-no due process rights. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950), *Nishimura Ekiu*, 142 U.S. at 660. Those who have lived in the country more than a couple of years receive more in the way of traditional due process

---

[5] According to the Plaintiffs, procedural due process is the "meaningful notice and the opportunity to a fair hearing before a neutral decisionmaker." Motion to Postpone at p. 14

because they may have "develop[ed] the ties that go with permanent residence." *Landon*, 459 U.S. at 32. *See also*, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (an alien detained shortly after unlawful entry not due the same due process as "aliens who have once passed through our gates, even illegally"),  *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212-213 (1953) (alien harbored at Ellis Island may be excluded without a hearing; but "a *lawful resident alien* may not captiously be deprived of his constitutional rights to procedural due process" (emphasis added)).

Congress, through the expedited removal statute, provided not only a hearing before a neutral official but included the opportunity to appeal an adverse decision both to a supervisor and an immigration judge. All aliens must be interviewed by an immigration officer. Those who have entered the country illegally are still, by law, not admitted and are considered "applicants for admission." 8 U.S.C. § 1225(a)(1), (3). During that hearing, the immigration officer must "advise the alien of the charges against him or her" and provide "an opportunity to respond to those charges in [a] sworn statement." 8 C.F.R. § 235.3(b)(2)(i).

Once the immigration officer decides to order the alien removed, the information – including the removal order, sworn statement, and any claims concerning the alien's status – "must be reviewed and approved by the appropriate supervisor before the order is considered final." 8 C.F.R. § 235.3(b)(7). If the alien disagrees with the immigration officer's and supervisor's decisions, the alien may pursue a review of the decisions by an immigration judge, which review must be *de novo*. 8 U.S.C. § 1225(b)(1)(B)(iii)(III), 8 C.F.R. §§ 1003.42(d), 1208.30(g).

Congress, thus, has provided ample opportunity for aliens subject to expedited removal to receive "meaningful notice and the opportunity to a fair hearing before a neutral decisionmaker" prior to their actual removal. Motion to Postpone at p. 14. Not only do these opportunities

comport with the Plaintiffs' definition of procedural due process, they also more than satisfy the procedural due process demanded by the Fifth Amendment.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Postpone Effective Date of Agency Action.

Dated: July 1, 2025                          Respectfully submitted,

                                             s/ Christopher J. Hajec
                                             CHRISTOPHER J. HAJEC
                                             D.C. Bar No. 492551
                                             MATT A. CRAPO
                                             D.C. Bar No. 473355
                                             Jonathon P. Hauenschild*
                                             D.C. Bar No. 90024004

                                             Immigration Reform Law Institute
                                             25 Massachusetts Ave., NW, Suite 335
                                             Washington, DC 20001
                                             (202) 232-5590
                                             mcrapo@irli.org
                                             chajec@irli.org

                                             Counsel for *Amicus Curiae*
                                             Immigration Reform Law Institute

                                             *Not admitted to this Court

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the page limitation in D.D.C. LCvR 7(o)(4) because it contains fewer than 25 pages. I further certify that it complies with the typeface and style requirements D.D.C. LCvR 5.1(d) because it has been prepared in a proportionally spaced typeface using 12-point Times New Roman.

DATED: July 1, 2025                    Respectfully submitted,

                                        s/ Christopher J. Hajec