IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mirta Amarilis Co Tupul, | No. CV-25-02748-PHX-DJH (JZB) |
| Petitioner, | **ORDER** |
| v. | |
| Kristi Noem, et al., | |
| Respondents. | |

The Court has reviewed the Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief and Motion for Temporary Restraining Order.[1] (Docs. 1-2.)  The Court grants a temporary restraining order without notice.

Petitioner names Department of Homeland Security Secretary Kristi Noem; United States Attorney General Pam Bondi; Immigrations and Customs Enforcement Acting Director Todd Lyons and Field Office Director John Cantu; and Eloy Detention Center Warden Fred Figueroa as Respondents.  (Doc. 1 ¶¶ 10-14.)

Petitioner is a noncitizen who entered the United States at the age of nine and has lived continuously in the United States since that time.  (Doc. 1 ¶ 2.)  She has three United States citizen children, ages 8, 16, and 18.  (*Id.*)  On July 22, 2025, Petitioner alleges she was driving in an area of Phoenix, Arizona that is predominantly Latino. (Doc. 1 ¶ 17.)  She was pulled over by an officer believed to be a Customs and Border Patrol agent who inquired about her immigration status.  Petitioner did not respond, the

---

[1] The Court notes Petitioner filed both a Petition and Complaint but will refer to the pleading as a Petition for clarity.

officer contacted ICE and then arrested Petitioner. (Doc. 1 ¶¶ 17-18.) She was transported to the Florence Processing Center and was transferred to the Eloy Detention Center, where she remains in immigration detention. (Doc. 1 ¶ 19.) Three days later, counsel for Petitioner contacted Petitioner's removal officer and was informed Petitioner was placed in expedited removal proceedings and would be removed in one to three weeks. (Doc. 1 ¶ 20.) The removal officer explained ICE had a "'new policy' of utilizing Expedited Removal for non-citizens with 'their first contact with ICE.'" (Doc. 1 ¶ 21.) Petitioner's counsel submitted evidence of Petitioner's continuous decades-long presence in the United States, including vaccination records, other official records, and sixteen signed affidavits, but ICE continues to subject Petitioner to expedited removal. (Doc. 1 ¶¶ 22–25.) Based on these facts, Petitioner presents five claims for relief: her traffic stop violated her Fourth Amendment rights as it lacked reasonable suspicion and, as a result, any evidence obtained must be excluded from her immigration proceedings; she is statutorily ineligible to be placed in expedited removal proceedings as she has been physically present in the United States for 30 years; her placement in expedited removal proceedings violates her due process rights; Respondents' policy to subject noncitizens to expedited removal irrespective of their length of physical presence is beyond their authority; and to the extent § 1252(e) applies to Petitioner's claims, such application violates the Suspension Clause (Doc. 1 at 9-13).

In the Ninth Circuit, "a petitioner seeking a stay of removal must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (discussing application of *Nken v. Holder*, 556 U.S. 418, 444 (2009)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).[2]

---

[2] Where a party "can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the [party]'s favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*,

Unlike a preliminary injunction, *see* Fed. R. Civ. P. 65(a), a temporary restraining order (TRO) may be entered "without written or oral notice to the adverse party." Fed. R. Civ. P. 65(b). A TRO may issue, *ex parte*, if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before* the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b) (emphasis added).[3]

In her Petition, Petitioner seeks an order vacating the expedited removal order and requiring Respondents to provide Petitioner with a hearing under 8 U.S.C. § 1229(a) and to release her from custody. She further moves to enjoin her removal from the United States pending adjudication of her habeas petition. In the interests of justice, the Court finds it necessary to issue a temporary stay of removal. Petitioner alleges she has been present in the United States for 30 years and, as a result, is statutorily ineligible for expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (conditioning the Attorney General's ability to apply expedited removal procedures to non-arriving noncitizens on those noncitizens' having been present in the United States for under two years); *see also* 8 C.F.R. § 235.3(b)(1)(2) (providing that expedited removal proceedings may only be applied to "arriving aliens" and "as specifically designated by the Commissioner, aliens who have not established to the satisfaction of the immigration officer that they have been physically present in the United States continuously for the two-year period immediately prior to the date of determination of inadmissibility"). At this juncture, the Court finds a temporary restraining order appropriate as the evidence creates a serious question whether Petitioner is eligible for expedited removal

---

709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this Ninth Circuit "serious questions" test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

[3] Petitioner attaches an affidavit from counsel indicating her requests to Respondents to comply with their statutory obligations, but those requests were denied.

- 3 -

proceedings given her decades long presence in the United States.  Because removal would deprive Petitioner of her rights to judicial review of her removal, she has alleged that it is probable that she would suffer irreparable harm absent a stay.  She has also shown that he has a substantial case on the merits, without prejudice to Respondents demonstrating the contrary.[4]  Lastly, the balance of hardships tips sharply in Petitioner's favor.  A stay will maintain the status quo until Respondents have had an opportunity to brief the Petition and Motion for Preliminary Injunction and will facilitate a considered review of the parties' arguments by the Court and a reasoned decision on the issues presented.

Accordingly,

**IT IS THEREFORE ORDERED** Petitioner's Motion for a Temporary Restraining Order without notice is **granted**.  Respondents are enjoined from removing Petitioner Mirta Amarilis Co Tupul from the United States pending further order of this Court.  Petitioner's request for a Preliminary Injunction remains pending.

**IT IS FURTHER ORDERED** the Clerk of Court must immediately transmit by

---

[4] The Ninth Circuit has held, pursuant to 8 U.S.C. § 1252(a)(2)(A), that "Congress has clearly and unambiguously precluded [the courts] from asserting jurisdiction over the merits of individual expedited removal orders, even with regard to constitutional challenges to such orders." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1149 (9th Cir. 2022); *see also Lamare v. Garland*, 2023 WL 8666044, No. 20-71358, at *1 (9th Cir. Dec. 15, 2023) ("Congress has stripped [the courts] of subject matter jurisdiction to review expedited removal proceedings that involve aliens who . . . have not yet effected entry into the United States."). In those Ninth Circuit cases, the petitioner was subjected to expedited removal proceedings and expedited removal orders pursuant to Section 1225(b). District courts in the Ninth Circuit have consistently held that the jurisdictional bar under Section 1252(a)(2)(A) applies to the expedited removal proceedings that are brought under Section 1225(b). *C.f. United States v. Avalos-Perez*, No. 3:16-CR-02827, 2017 WL 1400018, at *3 (S.D. Cal. Apr. 19, 2017) ("As to a meaningful opportunity for judicial review, that too is foreclosed by expedited removal proceedings brought under 8 U.S.C. § 1225."); *United States v. Arizmendi-Depaz*, No. 18-CR-4949, 2019 WL 3945459, at *2 (S.D. Cal. Aug. 21, 2019) (holding "the INA precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order under 8 U.S.C. § 1225"). The Supreme Court has confirmed that the jurisdictional bar under Section 1252(a)(2)(A) is "aimed at protecting the Executive's *discretion* from the courts." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) (emphasis added).  Whether an individual physically present in the United States for more than two years is eligible to be placed in expedited removal proceedings is not a matter of discretion.  Judicial review of such decision, therefore, is not barred by Section 1252(a)(2)(A).

email a copy of this Order and a copy of Petitioner's Petition and Motion (Docs. 1, 2) to the United States Attorney for the District of Arizona, to the attention of Katherine Branch at katherine.branch@usdoj.gov, Melissa Kroeger at melissa.kroeger@usdoj.gov, and Lon Leavitt at lon.leavitt@usdoj.gov.

**IT IS FURTHER ORDERED** if not already issued, the Clerk's Office must issue any properly completed summonses.

**IT IS FURTHER ORDERED** Counsel for Petitioner must immediately serve the Petition and Motion upon Counsel for Respondents.

**IT IS FURTHER ORDERED** Counsel for Respondents must file a response to the Motion for Preliminary Injunction no later than Wednesday August 13, 2025. Petitioner may file a Reply no later than Friday August 15, 2025.

Dated this 4th day of August, 2025.

Honorable Diane J. Humetewa
United States District Judge

Christopher Godshall-Bennett
Eric Lee
LEE & GODSHALL-BENNETT LLP
712 H St. NE, Unit 5019
Washington, DC 20002
chris@leegodshallbennett.com
eric@leegodshallbennett.com
T: (202) 240-8496

Mindy Butler-Christensen
ENCANTO LAW, LLC
20 E. Thomas Rd., Ste. 2200
Phoenix, AZ 85012
mindy@encantolaw.com
T: (602) 848-0207

Rekha Nair
PHOENIX LEGAL ACTION NETWORK
P.O. Box 33364
Phoenix, AZ 85067
rekha@planphx.org
T: (602) 341-3457

*Attorneys for Petitioner-Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mirta Amarilis CO TUPUL, <br><br> *Petitioner-Plaintiff*, <br><br> v. <br><br> Kristi NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security; <br><br> Pamela BONDI, in her official capacity as Attorney General of the United States; <br><br> Todd M. LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; <br><br> John CANTU, in his official capacity as Field Office Director, ICE Phoenix Office of Detention and Removal; and | Case No. 25-at-99908 <br><br> **PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

Fred FIGUEROA, in his official capacity as
Warden, Eloy Detention Facility,

    *Respondents-Defendants.*

## INTRODUCTION

1.    Petitioner-Plaintiff Mirta Amaralis Co Tupul ("Ms. Co Tupul" or "Petitioner-Plaintiff"), by and through her undersigned counsel, hereby files this petition for writ of habeas corpus and complaint for declaratory and injunctive relief to prevent U.S. Immigration and Customs Enforcement ("ICE") from subjecting her to Expedited Removal without statutory authority and to release her from ICE detention, for which there is also presently no statutory authority.

2.    Ms. Co Tupul is a 38-year-old, single mother of three U.S. citizen children, aged 8, 16 and 18. She entered the United States on or about 1996, when she was nine years old, and has lived in the United States continuously ever since.

3.    Ms. Co Tupul is at imminent risk of being unlawfully removed from the United States. There are two independent reasons why her removal would be unlawful and why this Court should order her release forthwith. First, the Expedited Removal Order is the poisonous fruit of an unlawful arrest by an officer believed to be a Customs and Border Patrol ("CBP") agent on July 22, 2025. Second, Ms. Co Tupul's 30 years of residency clearly and unambiguously mean she cannot be subjected to expedited removal under 8 U.S.C. § 1225(b)(1), and Respondents-Defendants brazenly denied her the opportunity to establish her continuous residency.

4.      Ms. Co Tupul's arrest and the subsequent Expedited Removal Order are unlawful because the CBP agent conducted a detentive stop of Ms. Co Tupul without reasonable suspicion that she was in the country unlawfully and effected a warrantless arrest without probable cause or an individualized determination as to flight risk. Ms. Co Tupul's privileged refusal to identify her immigration status to the CBP agent during the unlawful detentive stop and subsequent arrest was unlawfully used to make an alienage determination on which the Expedited Removal Order is based.

5.      As to the second basis for ordering release, ICE failed to afford Ms. Co Tupul the opportunity to challenge the applicability and manner in which the Expedited Removal process was used against her within the interior of the United States, including a meaningful and adequate opportunity to demonstrate that she is not subject to Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(iii)(II) because of her almost thirty-year presence in the United States.

6.      ICE's detention and issuance of an expedited removal order are therefore without statutory authority and violate Ms. Co Tupul's rights under the Fourth Amendment and the Fifth Amendment's Due Process Clause. She should therefore be released immediately and the expedited removal order vacated.

## JURISDICTION & VENUE

7.      This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 2241, *et seq.* (habeas corpus); 28 U.S.C. § 1331 (federal question); 5 U.S.C. § 702 (waiver of sovereign immunity); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 2201 (Declaratory Judgment Act); and Art. 1, § 9, cl. 2 of the United States Constitution (Suspension Clause).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because the Respondents-Defendants are employees or officers of the United States, acting in their official capacities; because a substantial part of the events or omissions giving rise to this action occurred in the District of Arizona; and Ms. Co Tupul is in custody within the District of Arizona.

## PARTIES

9. Petitioner-Plaintiff Mirta Amaralis CO TUPUL has resided in the United States since she was nine years old—almost thirty years. She has three U.S. citizen children, aged 8, 16, and 18. She is a single mother. She has been detained by Respondents-Defendants since July 22, 2025 under the purported authority of an expedited removal order. She is currently in custody at Eloy Detention Center in Eloy, Arizona.

10. Respondent-Defendant Kristi NOEM is named in her official capacity as Secretary of the Department of Homeland Security ("DHS"). In this capacity, she is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a); is legally responsible for pursuing any effort to confine and remove Petitioner-Plaintiff; and as such is a custodian of Petitioner-Plaintiff.

11. Respondent-Defendant Pamela BONDI is named in her official capacity as Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(g), and as such is a custodian of Petitioner-Plaintiff.

12. Respondent-Defendant Todd M. LYONS is named in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"). As the senior

official performing the duties of Director of ICE, he is responsible for the administration and enforcement of the immigration laws and is legally responsible for pursuing any effort to confine and remove Petitioner-Plaintiff; and as such is a custodian of Petitioner-Plaintiff.

13.     Respondent-Defendant John CANTU is named in his official capacity as Director of the ICE Phoenix Field Office in Phoenix, Arizona. In this capacity, he is responsible for the execution of immigration confinement and the institution of removal proceedings within the Phoenix area, in which Petitioner-Plaintiff is confined. As such, he is a custodian of Petitioner-Plaintiff.

14.     Respondent-Defendant Fred FIGUEROA is named in his official capacity as Warden of the Eloy Detention Center. In this capacity, he oversees the daily administration of the detention center in which Petitioner-Plaintiff is in custody. As such, he is the immediate custodian of Petitioner-Plaintiff.

## STATEMENT OF FACTS

15.     Ms. Co Tupul has resided in the United States continuously since 1996 when she was nine years old. Decl. of Mindy Butler-Christensen, Exh. 1 ¶ 5.

16.     She has three U.S. citizen children, aged 8, 16, and 18, and is a single mother. *Id.* ¶ 6. After nearly thirty years in the United States, Ms. Co Tupul has established substantial connections here.

17.     On July 22, 2025, Ms. Co Tupul was driving in a majority-Latino area of Phoenix, Arizona, when she was pulled over by an officer believed to be a CBP agent who asked her about her immigration status. When Ms. Co Tupul did not answer, he held her there while he contacted ICE.

18.     Ms. Co Tupul's detentive stop was escalated to a warrantless arrest without an evaluation of whether she posed a flight risk.

19.     Ms. Co Tupul was transported to Florence Processing Center for temporary processing and then moved to Eloy Detention Center ("Eloy") where she remains. *Id.* ¶ 7.

20.     On July 25, 2025, at 11:40AM, Ms. Butler-Christensen, Ms. Co Tupul's attorney, contacted Eloy and spoke to Ms. Co Tupul's Deportation Officer. The officer explained to Ms. Butler-Christensen that Ms. Co Tupul was placed in Expedited Removal proceedings and would be removed in the next one to three weeks. *Id.* ¶ 10.

21.     When Ms. Butler-Christensen asked the officer why Ms. Co Tupul would be subject to Expedited Removal, he explained that ICE had a "new policy" of utilizing Expedited Removal for non-citizens with "their first contact with ICE." *Id.* ¶ 11. The officer refused to provide any documentation of this policy. *Id.* ¶ 12.

22.     After this conversation, Ms. Butler-Christensen compiled overwhelming evidence that Ms. Co Tupul has been continuously present in the United States for decades, including several official documents, Ms. Co Tupul's Maricopa County vaccination records from 1996, and sixteen signed affidavits attesting to her long-term residence. *Id.* ¶¶ 13-14.

23.     Ms. Butler-Christensen sent this evidence to several officials at Eloy and the ICE Phoenix Field Office, including Respondent-Defendant Cantu. *Id.* ¶ 15.

24.     On July 29, 2025, Ms. Co Tupul's Deportation Officer emailed Ms. Butler-Christensen, informing her that "the case was reviewed and [Ms. Co Tupul] will remain in Expedited Removal proceedings." *Id.* ¶ 18.

6

25.     She followed up with the officer later that day to ensure he was able to review the documentation she provided, but he never responded. *Id.* ¶¶ 20-21.

26.     After several phone calls to supervisors at Eloy and officers at the ICE Phoenix Field Office, a Supervising Deportation Officer responded via email that he would review the documents the following morning. *Id.* ¶ 23.

27.     On July 30, 2025, Ms. Butler-Christensen called the supervising officer to ask if he had reviewed the evidence of Ms. Co Tupul's long-term presence in the United States. *Id.* ¶ 25. He expressed confusion as to why Ms. Butler-Christensen was so concerned about Ms. Co Tupul being placed into Expedited Removal processing and why she believed a Notice to Appear ("NTA") was required in Ms. Co Tupul's matter, asking "What's the difference? Why do you need an NTA so bad?" *Id.*

28.     After she explained the difference, the supervising officer stated that Ms. Co Tupul did not disclose her immigration status at the detentive stop. *Id.* ¶ 27. When Ms. Butler-Christensen responded that Ms. Co Tupul had no obligation to do so and offered to provide the law regarding the applicability of Expedited Removal, the supervising officer became agitated, stepped away from the phone for several minutes, and, upon his return, stated that Ms. Co Tupul would remain subject to Expedited Removal. *Id.* ¶¶ 28-32.

29.     He went on to state that Ms. Co Tupul would receive a credible fear interview and associated review, but that was all the "process" she would get. *Id.* ¶ 32.

30.     Following this conversation, Ms. Butler-Christensen contacted the Assistant Phoenix Field Office Director who confirmed that Ms. Co Tupul would be subject to Expedited Removal and her process would be limited to a credible fear interview. *Id.* ¶ 35.

7

31.     As of the filing of this petition, upon information and belief, Ms. Co Tupul remains in Expedited Removal proceedings.

## LEGAL FRAMEWORK

32.     The process of Expedited Removal is laid out in 8 U.S.C. § 1225(b). Section 1225(b)(1)(A)(iii)(II) provides that Expedited Removal shall not be applied to non-citizens who have "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility[.]"

33.     The detention authority for individuals placed in Expedited Removal derives from §1225(b)(1)(B)(ii), which mandates detention pending a credible fear interview. For non-citizens physically present in the U.S. (aside from the exception not applicable here described at §1225(b)(1)(F)), this detention authority only applies to individuals who cannot meet the 2-year residency period. §1225(b)(1)(B)(iii) ("*Application* to certain other [non-citizens]") (emphasis added).

34.     For non-citizens who have been continuously present in the United States during the two years prior to an inadmissibility determination, removal proceedings are governed by 8 U.S.C. §§ 1229 and 1229(a). Unlike Expedited Removal, the general removal process provides for the opportunity to obtain legal counsel, prepare evidence, and present a case before an immigration judge.

## CAUSES OF ACTION

### Count I: Fourth Amendment
*Alienage Determinations Relied Upon by ICE to Issue Petitioner-Plaintiff's Expedited Removal Order Were Based on Evidence Obtained in Violation of the Fourth Amendment*

35.     Petitioner-Plaintiff realleges and incorporates by reference each and every allegation contained above.

36.     Evidence obtained as a result of an egregious violation of the Fourth Amendment must be excluded in immigration proceedings. *See Orhorhaghe v. INA*, 38 F.3d 488, 493 (9th Cir. 1994); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984) (suppression may be required if there are "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness.").

37.     Subjecting an individual to a detentive stop without reasonable suspicion is an egregious violation of the Fourth Amendment. *See, e.g.*, *Sanchez v. Sessions*, 904 F.3d 643 (9th Cir. 2018).

38.     The detentive stop to which Ms. Co Tupul was subjected occurred without reasonable suspicion and therefore constitutes an egregious violation of the Fourth Amendment. Statements or other evidence obtained as a result of the detentive stop must be excluded and cannot be used to support the necessary alienage determination required to issue the Expedited Removal Order.

### Count II: Immigration & Nationality Act, 8 U.S.C §§ 1225(b)(1)(A)(iii)(II), 1252(e)(2)(B)

*Petitioner-Plaintiff's Expedited Removal Order Lacks a Factual Basis as Required by 8 U.S.C. § 1225(b)(1)(A)(iii)(II)*

39.     Petitioner-Plaintiff realleges and incorporates by reference each and every allegation contained above.

40.     Expedited Removal Orders may only be issued to an individual who is encountered within the interior of the United States if certain requirements are met,

including, as relevant here, the requirement that the individual has been physically present in the United States for less than two years. 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

41.     Expedited Removal Orders which at the time of issuance lack a factual basis for the determination that an individual has been physically present in the United States for less than two years are invalid.

42.     Ms. Co Tupul has been physically present in the United States for almost thirty years. As such, ICE's determination that she has been physically present for less than two years lacked any factual basis required to issue the Expedited Removal Order.

### Count III: Fifth Amendment Due Process
*Petitioner-Plaintiff Was Not Afforded an Adequate or Meaningful Process to Challenge the Use of the Expedited Removal Process, to Defend Herself, or to Offer Evidence Regarding the Length of Her Physical Presence Before Being Subjected to an Expedited Removal Order in Violation of the Fifth Amendment's Due Process Clause*

43.     Petitioner-Plaintiff realleges and incorporates by reference each and every allegation contained above.

44.     Individuals present within the interior of the United States, especially those with substantial connections therein, are unquestionably protected by the Due Process Clause. "[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

45.     Due process protections apply to individuals present within the interior of the United States in connection with Expedited Removal, even if due process protections may not apply to individuals encountered at an international border or those who have been present for less than two years.

46.     Ms. Co Tupul has resided in the United States for almost 30 years. As such, she may only be removed pursuant to an order of removal issued by an immigration judge after a hearing. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II); *see also El Gamal v. Noem et al.,* Order, ECF No. 29, at 3, Case No. SA-25-CV-00665-OLG (W.D. Tex. July 2, 2025 ("[T]he INA does not permit the use of expedited removal proceedings in Petitioners' case[] because] Petitioners have been physical present in the United States continuously [for more than two years].").

47.     The issuance of an Expedited Removal Order against Ms. Co Tupul, despite her almost thirty-year presence, and without a meaningful opportunity to challenge the Expedited Removal process' applicability violates Ms. Co Tupul's due process rights guaranteed by the Fifth Amendment.

## Count IV: *Ultra Vires* Policy
*Respondents-Defendants' Policy to Subject Individuals to Expedited Removal Regardless of Length of Physical Presence in the United States is Beyond their Authority*

48.     Petitioner-Plaintiff realleges and incorporates by reference each and every allegation contained above.

49.     This Court has authority to set aside executive actions and policies that are *ultra vires*. *See City of Arlington, Tex. v.* FCC, 569 U.S. 290, 297 (2013) (where agencies "act improperly, no less than when they act beyond their jurisdiction, what they do is *ultra vires*"); *Hawaii v. Trump*, 878 F. 3d 662, 682 (9th Cir. 2017), *rev'd on other grounds*, 585 U.S. 667 (2018) (an equitable cause of action outside of the APA "allows courts to review *ultra vires* actions" by federal officials that go beyond their statutory authority); *Mirzaie v. Dep't of State*, No. 2:24-cv-00830-MRA-AJR (C.D. Cal. Jan. 31, 2024).

50.     Respondents-Defendants assert that Ms. Co Tupul's purported expedited removal order is based on a "new policy." The issuance of the purported expedited removal and the underlying policy are *ultra vires.* Respondents-Defendants plainly lack statutory authority to subject Ms. Co Tupul to expedited removal. Congress unambiguously established that an individual may not be subject to expedited removal if they can establish that they resided in the United States continuously for two years prior to the initiation of expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Ms. Co Tupul has resided in the U.S. continuously for almost thirty years. Respondents-Defendants' attempt to implement their "new policy" by subjecting her to expedited removal is *ultra vires* and must be set aside.

### Count V: Suspension Clause
*If the INA's Jurisdiction-Stripping Provisions Foreclose Review of the Application of Expedited Removal to a Non-Citizen with Long-Term Presence, They Violate the Suspension Clause*

51.     Petitioner-Plaintiff realleges and incorporates by reference each and every allegation contained above.

52.     Respondents-Defendants are unlawfully subjecting Ms. Co Tupul to expedited removal, despite her almost three-decade-long presence in the United States.

53.     The United States Constitution provides that, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., art. I, § 9, cl. 2.

54.     No "Rebellion or Invasion" exists that would permit suspension of the writ for Ms. Co Tupul.

55.     The limitations of the Suspension Clause apply to the jurisdiction-stripping provisions of the INA.

56.     As relevant here, the INA permits judicial review of expedited removal orders to determine (1) "whether the petitioner is a[ non-citizen]," (2) "whether the petitioner was ordered removed[,]" and (3) whether the petitioner is a lawful permanent resident, refugee, or asylee. 8 U.S.C. § 1252(e)(2)(A)-(C).

57.     In *Dep't of Homeland Security v. Thuraissigiam*, the Supreme Court held that § 1252(e) did not violate the Suspension Clause as applied to non-citizens "at the threshold of initial entry[,]" but noted that non-citizens "who have established connections in this country have due process rights in deportation proceedings[.]" 591 U.S. 103, 107 (2020). *See also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (noting that non-citizens "receive constitutional protections when they have come within the territory of the U.S. and developed substantial connections with the country.").

58.     Ms. Co Tupul has resided in the United States for almost thirty years and is the single mother of three U.S. citizen children. As such, she has substantial connections in the United States. She has no criminal record beyond traffic tickets.

59.     If the INA prevents judicial review of Respondents-Defendants' expressly unlawful decision to subject Ms. Co Tupul to expedited removal after thirty years of presence in the United States, the statute renders the writ of habeas corpus an inadequate and ineffective remedy.

60.     In doing so, the government has, in effect, suspended the privilege of the writ in violation of Article I, Section 9, Clause 2 of the United States Constitution.

# PRAYER FOR RELIEF

WHEREFORE, Ms. Co Tupul prays that this Court grant the following relief:

(1)     Assume jurisdiction over this matter;

(2)     Issue an Order vacating the Expedited Removal Order and requiring Respondents-Defendants to provide Petitioner-Plaintiff with a hearing pursuant to 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1252(e)(4);

(3)     Issue a Writ of Habeas Corpus and order the release of Petitioner-Plaintiff because her detention and the process by which the Expedited Order was issued violated the Fourth and Fifth Amendments;

(4)     In the alternative, issue injunctive relief ordering Respondents-Defendants to release Petitioner-Plaintiff on the ground that her continued detention and the process by which the Expedited Order was issued violated the Fourth and Fifth Amendments;

(5)     Declare that Respondents-Defendants' application of expedited removal to Ms. Co Tupul is *ultra vires* and violates the INA and Fifth Amendment and that her arrest violated the Fourth Amendment;

(6)     Award Petitioner-Plaintiff their costs and reasonable attorneys' fees in this action under the Equal Access to Justice Act, as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified by law; and

14

(7)     Grant any other and further relief that this Court may deem just and

proper.

Dated: August 2, 2025                    Respectfully Submitted,

*/s/ Mindy Butler-Christensen*
Mindy Butler-Christensen
ENCANTO LAW, LLC
mindy@encantolaw.com

*/s/ Rekha Nair*
Rekha Nair
PHOENIX LEGAL ACTION NETWORK
rekha@planphx.org

*/s/ Christopher Godshall-Bennett*
Christopher Godshall-Bennett*
*/s/ Eric Lee*
Eric Lee*
LEE & GODSHALL-BENNETT LLP
chris@leegblaw.com
eric@leegblaw.com

*Pro Hac Vice* forthcoming

15

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of Petitioner-Plaintiff because I am one of Petitioner-Plaintiff's attorneys. I have discussed with the Petitioner-Plaintiff the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on this 2nd day of August 2025.

*/s/ Mindy Butler-Christensen*
Mindy Butler-Christensen
Attorney for Petitioner-Plaintiff
Mirta Amaralis Co Tupul

16

# EXHIBIT 1

## <u>DECLARATION OF MINDY BUTLER-CHRISTENSEN</u>

I, Mindy Butler-Christensen, hereby declare as follows:

1. I am an immigration attorney and owner of Encanto Law, LLC in Phoenix, Arizona. I have personal knowledge of the matters stated herein based on information and belief. My firm's address is 20 E. Thomas Rd. Ste 2000, Phoenix, Arizona 85012.

2. I have been practicing immigration law since 2015. I have been licensed in the State of Arizona since 2014. My Arizona bar number is 030898.

3. Aside from my professional background, I have personal knowledge of the matters stated herein because I am the immigration attorney of Ms. Mirta Amarylis Co Tupul ("Ms. Co"), representing her in custody matters.

4. I make this declaration in connection with Ms. Co's petition for writ of habeas corpus and complaint for declaratory and injunctive relief and her motion for a temporary restraining order and preliminary injunction. Because this petition and complaint are filed on an emergency basis, below are the most relevant facts.

5. Ms. Co is 38 years old. On information and belief, she entered the U.S. sometime in 1996 when she was just 9 years old. She has continuously lived in Arizona for almost 30 years.

6. Ms. Co has three U.S. citizen sons, all of whom were born in the state of Arizona. Her sons are currently 18, 16, and 8 years old. Ms. Co is a single mother.

7. On information and belief, on or around July 22, 2025, Ms. Co was pulled over while driving to work by a law enforcement officer wearing a green uniform. The officer asked her about her immigration status. When she stated that she was not required to answer that question, she was detained and placed in the custody of ICE. She was taken to the Florence Processing Center for temporary processing, and then taken to the Eloy Detention Center.

8. On July 25, 2025, Ms. Co's brother contacted my office and hired me for bond representation before EOIR on behalf of his sister.

9. On July 25, 2025, I submitted my G-28, Notice of Entry of Appearance as Attorney, to the ICE Enforcement and Removal Operations ("ERO") electronically.

1

10. Also on July 25, 2025, at 11:40AM, I spoke with Ms. Co's Deportation Officer in Eloy. During that conversation, the Deportation Officer informed me that Ms. Co was placed in Expedited Removal proceedings and would be removed in the next one to three weeks. I was surprised to hear this because I knew that Ms. Co had lived in Arizona for almost 30 years, and that Expedited Removal was improper.

11. I asked the Deportation Officer to share with me why she would be placed in Expedited Removal. He told me that this was a "new policy" that ICE would be implementing with immigrants who have just had "their first contact with ICE."

12. I asked him if he could send me any paperwork confirming this new policy, or why she was in Expedited Removal, or evidence that she was in fact in that process. He told me he could not send me anything.

13. For the next three days, Ms. Co's brother frantically assembled a large collection of documents confirming the fact that Ms. Co has lived here for 30 years, has no criminal history, has three U.S. citizen boys, and is an upstanding member of the community.

14. Ms. Co's brother was able to procure 16 signed affidavits of close friends and family, along with the IDs of each person. Those affidavits and related evidence confirm that Ms. Co had lived here continuously for decades, is a single mother of three U.S. citizen children (one in grade school), and is a law-abiding person. Particularly compelling evidence included her vaccination record that reflects vaccines issued by Maricopa County dating back to July of 1996 when she was 9 years old. The evidence also included School and Health Center IDs from when Mirta was a child here in Arizona.

15. On July 28, 2025 at 3:00PM I sent all of this evidence and an explanatory email to every Supervisory Deportation Officer (SDDO) I could find in Eloy, as well as every Assistant Field Office Director (AFOD) in Eloy, and John Cantu, the ERO Field Office Director for Eloy, Arizona. In this email, I indicated that this was an "Urgent" matter and clearly explained why my client should be placed in regular "240" proceedings, not Expedited Removal. I asked that ERO issue a Notice to Appear in order to start regular removal proceedings.

16. I did not hear back from anyone who was emailed. Knowing that "expedited removal" can mean that a person can be immediately deported, I emailed the same group the next morning on July 29, 2025 at 7:42AM, indicating that it was my second attempt, and that it was urgent. I reiterated that my client had lived in Arizona for almost 30 years. I also requested that they refer her for a credible fear interview ("CFI").

2

17. Two hours later, on July 29, 2025 at 9:06AM, I received a response saying that the email was forwarded to her Deportation Officer. I was also informed that my attachments could not be opened and that "emails to this mailbox are not monitored 24/7."

18. At 9:37AM, the same Deportation Officer with whom I had previously interacted emailed me, stating that "the case was reviewed and she will remain in Expedited Removal proceedings."

19. This felt strange because allegedly ERO "could not open my file" that included attached evidence; yet her Deportation Officer stated that the "case was reviewed," and he reified the determination to keep her in Expedited Removal.

20. That same day, at 3:26PM, I sent the Deportation Officer an email with smaller, easier-to-open electronic files of the evidence I had previously submitted to ERO. I requested that he "cite the statute or policy that ICE is using that would justify placing her in Expedited Removal." I also asked for the name of her SDDO and AFOD assigned to her case.

21. I did not hear back from him.

22. Shortly after this email, I called and left voice messages for, and sent emails to, each SDDO and the AFOD I could find for Eloy. I explained the facts and asserted once again that the decision to keep her in Expedited Removal was "in error," and asked them to "reconsider her placement in Expedited Removal, issue an NTA, and place her in regular 240 proceedings." I attached the most essential evidence to the email.

23. About two hours later, on July 29, 2025, Officer M.S., SDDO, responded to my email. He told me he would review the documents in the morning.

24. The next day, on July 30, 2025 at 11:25 I emailed Officer M.S. and the other officers, thanking him for being willing to read the evidence, and sending along the 16 signed affidavits.

25. Later that day, on July 30, 2025 at around 3:00PM, I called SDDO M.S. I asked if he had read the evidence. I explained why my client should be in 240 proceedings and should be issued an NTA. He asked me why I was so insistent that she get an NTA, and then asked "what is the difference? Why do you need an NTA so bad?"

26. I explained the difference between being in Expedited Removal and being in regular 240 proceedings.

3

27. He told me that during the arrest, she refused to disclose to the officers how long she had lived here. He referenced the I-213, which reportedly documented her unwillingness to share information.

28. I responded that according to the law, she doesn't have to share that information, and that I, as her lawyer, had supplied plenty of evidence to ERO regarding how long she had resided in Arizona.

29. I offered to send him the law that explains why Expedited Removal is improper if a person has lived here longer than two years.

30. He got upset, told me he felt insulted, and that I was insinuating that he didn't know the law. I assured him I did not mean to insult him.

31. He took a several minute pause on the phone, then returned and reiterated that she would not be taken out of Expedited Removal. He informed me that she would be referred for a Credible Fear Interview, and that she could later discuss the results of the CFI with a judge, and that that was the "process" she was going to get.

32. I confirmed who her AFOD was, and then I emailed the AFOD at 3:34 on July 30, 2025.

33. In the email to the AFOD, I made my case for 240 proceedings, and noted that both the DO and SDDO had mentioned that during her arrest, she had refused to produce evidence regarding how long she had lived here. I stated, "if that is true, I submit to you that she has now cured that lack of evidence by amassing a large amount of evidence that I am now sharing with you."

34. Minutes later, at 3:53PM, the AFOD emailed me, stating thus: "Upon the administrative arrest of your client, she invoked her right to not make a statement. Based on this, officers processed her as an Expedited Removal. At your request, her case was referred to USCIS for a credible fear interview. Depending on the USCIS decision, your client has the ability to see the immigration judge."

35. I then emailed the AFOD and asked for "all records relating to her arrest, her I-213, and any paperwork confirmation that she is in the expedited removal process."

36. He did not respond to this request.

37. The next day, on July 31, 2025, I emailed him again, stating that I had submitted my G-28 to the asylum office, requesting to participate in the CFI. However, I plainly stated that "while my client will express her fear, the CFI is not the proper

process for a person who has lived in the United States for almost 30 years; rather, the proper process is issuing an NTA and permitting her to bring her case via 240 proceedings. She has been improperly placed in Expedited Removal as per 8 U.S. Code 1225 (b)(1)(A)(II)."

38. As of August 1, 2025, he has not responded, and she appears to not be in 240 proceedings yet, but remains in Expedited Removal and detained in Eloy, Arizona.


Dated: August 2, 2025              Signed: s/Mindy Butler-Christensen

Christopher Godshall-Bennett
Eric Lee
LEE & GODSHALL-BENNETT LLP
712 H St. NE, Unit 5019
Washington, DC 20002
chris@leegodshallbennett.com
eric@leegodshallbennett.com
T: (202) 240-8496

Mindy Butler-Christensen
ENCANTO LAW, LLC
20 E. Thomas Rd., Ste. 2200
Phoenix, AZ 85012
mindy@encantolaw.com
T: (602) 848-0207

Rekha Nair
PHOENIX LEGAL ACTION NETWORK
P.O. Box 33364
Phoenix, AZ 85067
rekha@planphx.org
T: (602) 341-3457

*Attorneys for Petitioner-Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mirta Amarilis CO TUPUL, <br><br> *Petitioner-Plaintiff*, <br><br> v. <br><br> Kristi NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security; <br><br> Pamela BONDI, in her official capacity as Attorney General of the United States; <br><br> Todd M. LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; <br><br> John CANTU, in his official capacity as Field Office Director, ICE Phoenix Office of Detention and Removal; and | Case No. 25-at-99908 <br><br> **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** <br><br> Oral Argument Requested |

Fred FIGUEROA, in his official capacity as
Warden, Eloy Detention Facility,

      *Respondents-Defendants.*

## NOTICE OF MOTION

      Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Petitioner-Plaintiff

Mirta Amaralis Co Tupul hereby moves the Court for emergency relief in the form of a

temporary restraining order and preliminary injunction enjoining Respondents-Defendants

from removing Petitioner-Plaintiff from the United States or relocating Petitioner-Plaintiff

outside of the District of Arizona pending further Order of the Court, and ordering her

release during the pendency of this action.

      If the Court deems oral argument necessary, Petitioner-Plaintiff requests to appear

by video.

 Dated: August 2, 2025                Respectfully submitted,

                                     ***/s/ Mindy Butler-Christensen***
                                     Mindy Butler-Christensen
                                     Christopher Godshall-Bennett
                                     Eric Lee

                                     Attorneys for Petitioner-Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION & FACTUAL BACKGROUND

Petitioner-Plaintiff Mirta Amaralis Co Tupul ("Ms. Co Tupul") is in the custody of Immigration and Customs Enforcement ("ICE") at the Eloy Detention Center in Eloy, Arizona, pursuant to an Order of Expedited Removal issued following Ms. Co Tupul's detentive stop by a Customs and Border Patrol ("CBP") agent.

Ms. Co Tupul is at imminent risk of removal from the United States as a result of being unlawfully arrested on July 22, 2025, and subsequently subjected to an Expedited Removal Order pursuant to 8 U.S.C. § 1225(b)(1).

Ms. Co Tupul was subjected to a detentive stop by a CBP agent without reasonable suspicion, arrested without a warrant or probable cause, and subjected to an Expedited Removal Order. The arrest and resulting Order were unlawful because the CBP agent conducted a detentive stop without reasonable suspicion that Ms. Co Tupul was in the United States unlawfully and effected a warrantless arrest without probable cause and without making an individualized determination as to flight risk. Information obtained as a result of this unlawful detentive stop and subsequent arrest were unlawfully used to make factual determinations on which the Expedited Removal Order is based.

Moreover, after Ms. Co Tupul's arrest, ICE failed to afford her the opportunity to challenge the applicability and manner in which the Expedited Removal process was used against Ms. Co Tupul within the interior of the United States, ignoring extensive documentation provided by her attorney establishing her presence in the United States for almost thirty years.

2

As such, Ms. Co Tupul's Expedited Removal Order and detention pursuant thereto violate her rights under the Fourth and Fifth Amendments. Moreover, Respondents-Defendants may not subject Ms. Co Tupul to Expedited Removal, and the application of this "process" to her violates the Immigration and Nationality Act ("INA"), the Fifth Amendment, and is *ultra vires*.

Ms. Co Tupul therefore seeks a temporary restraining order ("TRO") and preliminary injunction enjoining Respondents-Defendants from removing her from the United States, from relocating her out of the District of Arizona pending this litigation, and ordering her release. A TRO is necessary to avoid irreparable harm to Ms. Co Tupul and to ensure that this Court is not deprived of jurisdiction over her claims should she be removed from the United States or relocated outside of this District.

## LEGAL STANDARD

Ms. Co Tupul is entitled to a temporary restraining order if she establishes that she is "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in [her] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the preliminary injunction and temporary restraining order standards are "substantially identical"). Even if Ms. Co Tupul does not show a likelihood of success on the merits, the Court may still grant a temporary restraining order if she raises "serious questions" as to the merits of her claims, the balance of hardships tips "sharply" in her favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1135 (9th Cir. 2011). As set forth in more detail below, Ms. Co Tupul overwhelmingly satisfies both standards.

## ARGUMENT

### I. Ms. Co Tupul Warrants a Temporary Restraining Order

A temporary restraining order should be issued if "immediate and irreparable injury, loss, or irreversible damage will result" to the applicant in absence of an order. Fed. R. Civ. P. 65(b). The purpose of a temporary restraining order is to prevent irreparable harm before a preliminary injunction hearing is held. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drives Local No. 70 of Alameda City*, 415 U.S. 423, 439 (1974). Ms. Co Tupul is likely to be deported via expedited removal in violation of her due process rights without intervention by this Court. Ms. Co Tupul will suffer irreparable injury if she is removed and continues to be detained without due process

*A. Ms. Co Tupul is Likely to Succeed on the Merits*

    1. Ms. Co Tupul's Expedited Removal Order Resulted from an Egregious Fourth Amendment Violation

The Expedited Removal Order issued to Ms. Co Tupul requires several determinations, including a determination of alienage and a determination that there is a factual basis for the Expedited Removal Order. The Court has jurisdiction to review Expedited Removal Orders in regard to the determination of alienage and in regard to whether a petitioner was "in fact" ordered removed. *See* 8 U.S.C. §§ 1252(e)(2)(A) and (B) and 1252(e)(5); *see also DHS v. Thuraissigiam*, 591 U.S. 103, 149 (2020), Thomas, J.,

concurring (A petitioner may seek "'[j]udicial review . . . in habeas corpus proceedings' of 'whether [he] is an alien' . . .").

While § 1252(e)(2)(A) is silent on who has the burden of establishing alienage,[1] more than fifty years ago the Supreme Court held that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." *Woodby v. INS*, 385 U.S. 276, 285-86 (1966). The Court further stated that "[t]his standard of proof applies to all deportation cases, regardless of the length of time the [non-citizen] has resided in this country." *Id.* at 286 n.19. Department of Justice regulations likewise recognize that the burden to establish alienage is on the Department of Homeland Security ("DHS"): "[Non-citizens] present in the United States without being admitted or paroled. In the case of a respondent charged as being in the United States without being admitted or paroled, the Service must first establish the alienage of the respondent. . . ." 8 C.F.R. § 1240.8.

Information regarding Ms. Co Tupul's alleged immigration status was obtained by Immigration and Customs Enforcement ("ICE") after she was arrested. This information was obtained as a result of an egregious violation of the Fourth Amendment. The Customs

---

[1] Unlike § 1252(e)(2)(A), subsection (2)(C) explicitly defines the applicable standard of proof and places the burden on the petitioner if the petitioner challenges an Expedited Removal Order based on have refugee, asylee, or lawful permanent resident status. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). The standard of proof and who has the burden of persuasion regarding establishing alienage should therefore be interpreted as required by *Woodby v. INS*.

and Border Patrol ("CBP") agent[2] who detained and questioned Ms. Co Tupul about her immigration status did so without reasonable suspicion that she was in violation of any immigration laws.

CBP does not have authority to indiscriminately stop and detain individuals to determine their immigration status. Such conduct violates the Fourth Amendment. *See U.S. v. Brignoni-Ponce*, 422 U.S. 873 (1975) (vehicle stops); *Benitez-Mendez v. INS*, 752 F.2d 1309, 1311 (9th Cir. 1983), amended, 760 F.2d 907 (9th Cir. 1983) (all detentive stops).

Additionally, DHS regulations authorize brief detention for questioning only if an officer has reasonable suspicion of an illegal act "against the United States" or is unlawfully present. *See* 8 C.F.R. § 287.8(b)(2). The Ninth Circuit in *Sanchez v. Sessions* held that an egregious violation of a regulation such as § 287.8(b)(2) designed for the benefit or protection of non-citizens may justify termination of a determination regarding removability.

The evidence relied upon by ICE to establish the alienage of Ms. Co Tupul was obtained a result of an egregious violation of the Fourth Amendment and must be excluded. *See Orhorhaghe v. INS*, 38 F.3d 488, 493 (9th Cir. 1994); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984) (suppression may be required if there are "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness.").

---

[2] It is not known for certain which law enforcement agency the officer who stopped Ms. Co Tupul was from, but, upon information and belief, it was CBP.

Therefore, Ms. Co Tupul is likely to succeed on her claim that the Expedited Removal Order should be invalidated on this basis.

2. The Application of the Expedited Removal Process to Ms. Co Tupul Violates the Fifth Amendment and is Ultra Vires

As noted in Part I.A.1, the Expedited Removal Order issued to Ms. Co Tupul also requires a determination that there is a factual basis for the Expedited Removal Order. In situations where ICE seeks to impose an Expedited Removal Order on individuals arrested *within the interior* of the United States, as was the case with Ms. Co Tupul, there must be a factual basis for ICE's determination that the individual has been physically present for less than two years. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

Ms. Co Tupul has been physically present in the United States for almost thirty years and, as such, ICE's determination that she has been physically present for less than two years lacked any factual basis required to issue the Expedited Removal Order. Moreover, Ms. Co Tupul's attorney, Ms. Butler-Christensen, provided extensive documentation of Ms. Co Tupul's long-term presence, but ICE officials utterly disregarded it. *See* ECF No. 1 ¶¶ 23-29.

Individuals who are present within the interior of the United States, especially those with substantial connections therein, are unquestionably protected by the Due Process Clause of the Fifth Amendment. "[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process

protections apply to the Expedited Removal process for individuals encountered within the United States.

ICE denied Ms. Co Tupul an adequate and meaningful process to defend herself against the issuance of the Expedited Removal Order by (1) issuing it before providing her any opportunity to establish her long-term presence and (2) ignoring extensive documentation of her long-term presence provided to ICE after the Order's issuance.

Not only do the issues with the process by which Ms. Co Tupul's Expedited Removal Order was issued invalidate it, it is unquestionable that Expedited Removal simply does not apply to her because she has been physically present in the United States for almost thirty years. As such, no process can establish the factual basis necessary to support the Expedited Removal Order—it simply does not exist.

Therefore, Ms. Co Tupul is likely to succeed on her claim that the Expedited Removal Order should be invalidated because there is an inadequate factual basis on which it is based. Indeed, the necessary factual basis for an Expedited Removal Order against Ms. Co Tupul does not exist at all. Moreover, Ms. Co Tupul is likely to succeed on her claim that she was denied her rights to an adequate and meaningful process to challenge the Expedited Removal Order, as well as her claim that any policy to issue Expedited Removal Orders regardless of long-term physical presence clearly lacks any lawful authority and is *ultra vires*.

> **B. Ms. Co Tupul Will Suffer Irreparable Harm in the Absence of a Temporary Restraining Order**

In the absence of a TRO, Ms. Co Tupul is at imminent risk of being removed from the United States without an opportunity for her claims to be considered by the Court. Indeed, ICE claims that it intends to remove her in as few as three weeks from July 22, 2025. If she is removed, she will lose her ability to challenge the removal process to which she has been subjected.

Ms. Co Tupul's situation is significantly different from the situation faced by a petitioner who is seeking review of a removal order entered at the conclusion of "regular" 8 U.S.C. § 1229a removal proceedings. The Supreme Court has noted that while "removal is a serious burden for many [non-citizens], it is not categorically irreparable" when a removed non-citizen can "continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken v. Holder*, 566 U.S. 418, 435 (2009). Unlikely § 1229a removal proceedings, no such right to continue to pursue a challenge to an Expedited Removal Order after removal from the United States exists for Ms. Co Tupul.

### C. The Balance of Equities Weighs Heavily in Ms. Co Tupul's Favor and a TRO is in the Public Interest

Because the government is a party, these two factors are considered together. *Nken*, 556 U.S. at 435. Ms. Co Tupul has established that the public interest factor weighs in her favor because her claims assert that the government has violated federal law in several respects. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). The Ninth Circuit has also stated that "[a] plaintiff's likelihood of success on the merits of a

constitutional claim also tips the merged third and fourth factors decisively in his favor."

*Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).

## CONCLUSION

For the foregoing reasons, the Court should grant Petitioner-Plaintiff's motion for a temporary restraining order and a preliminary injunction ordering that Respondents-Defendants (1) refrain from removing her from the United States, (2) refrain from removing her from the District of Arizona, and (3) release her from her unlawful custody.

Dated: August 2, 2025

Respectfully Submitted,

*/s/ Mindy Butler-Christensen*
Mindy Butler-Christensen
ENCANTO LAW, LLC
mindy@encantolaw.com

*/s/ Rekha Nair*
Rekha Nair
PHOENIX LEGAL ACTION NETWORK
rekha@planphx.org

*/s/ Christopher Godshall-Bennett*
Christopher Godshall-Bennett*
*/s/ Eric Lee*
Eric Lee*
LEE & GODSHALL-BENNETT LLP
chris@leegblaw.com
eric@leegblaw.com

*Pro Hac Vice* forthcoming

10

**CERTIFICATE OF COUNSEL**

Pursuant to Rule 65(b)(1)(B) of the Federal Rules of Civil Procedure, I hereby certify that on August 2, 2025, I provided a copy of this Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum of Points and Authorities, the Petition for Writ of Habeas Corpus and Complaint, and supporting exhibits to Interim U.S. Attorney Timothy Courchaine and AUSA Denise Faulk by emailing copies to timothy.courchaine@usdoj.gov and denise.faulk@usdoj.gov.

Dated: August 2, 2025                    Respectfully Submitted,

*/s/ Christopher Godshall-Bennett*
Christopher Godshall-Bennett
LEE & GODSHALL-BENNETT LLP
chris@leegblaw.com

Attorney for Petitioner-Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2025, I served a copy of this Motion for a Temporary Restraining Order and Preliminary Injunction by email to the following individuals:

Timothy Courchaine
Interim U.S. Attorney
U.S. Attorney's Office
40 N. Central Ave., Ste. 1800
Phoenix, AZ 85004
timothy.courchaine@usdoj.gov

Denise Faulk
Assistant U.S. Attorney
U.S. Attorney's Office
40 N. Central Ave., Ste. 1800
Phoenix, AZ 85004
denise.faulk@usdoj.gov

*/s/ Christopher Godshall-Bennett*
Christopher Godshall-Bennett

Attorney for Petitioner-Plaintiff

Christopher Godshall-Bennett
Eric Lee
LEE & GODSHALL-BENNETT LLP
712 H St. NE, Unit 5019
Washington, DC 20002
chris@leegodshallbennett.com
eric@leegodshallbennett.com
T: (202) 240-8496

Mindy Butler-Christensen
ENCANTO LAW, LLC
20 E. Thomas Rd., Ste. 2200
Phoenix, AZ 85012
mindy@encantolaw.com
T: (602) 848-0207

Rekha Nair
PHOENIX LEGAL ACTION NETWORK
P.O. Box 33364
Phoenix, AZ 85067
rekha@planphx.org
T: (602) 341-3457

*Attorneys for Petitioner-Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mirta Amarilis CO TUPUL, | Case No. 25-at-99908 |
| *Petitioner-Plaintiff*, | |
| v. | **[PROPOSED] TEMPORARY RESTRAINING ORDER** |
| Kristi NOEM, et al., | |
| *Respondents-Defendants*. | |

Pending before the Court is Petitioner-Plaintiff's Motion for a Temporary Restraining Order. After reviewing the Motion, the record, and the applicable law, the Court is of the opinion that it should be **GRANTED** and ORDERS:

1. Respondents-Defendants shall not remove Petitioner-Plaintiff from the United States.

2. Respondents-Defendants shall not relocate Petitioner-Plaintiff outside of the District.

3. Respondent-Defendants shall release Petitioner-Plaintiff from custody during the pendency of this action.

It is SO ORDERED.

DATED this _____ day of _____, 20__.

_____

United States District Judge