BRETT A. SHUMATE
*Assistant Attorney General*
*Civil Division*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
BRIAN C. WARD
*Acting Assistant Director*
CAROLINE MCGUIRE
ELISSA P. FUDIM
JOSEPH A. MCCARTER
*Trial Attorneys*
U.S. Department of Justice
Office of Immigration Litigation
General Appeals and Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAKE THE ROAD NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-00190 (JMC)<br><br>Hon. Jia M. Cobb |

## DEFENDANTS' MOTION TO STAY THE COURT'S AUGUST 29, 2025 ORDER GRANTING  STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

LEGAL STANDARD ..................................................................................................... 3

ARGUMENT .................................................................................................................. 3

    I.      Plaintiff's Claims are Time-Barred ................................................................ 3

    II.     Other Jurisdictional Barriers Bar the Relief the Court Granted ..................... 6

    III.    Defendants are Likely to Prevail on the Merits. ............................................. 7

    IV.    Plaintiff's Stay Request Is Prohibited by 8 U.S.C. § 1252(f)(1) ................... 13

    V.     Defendants Will Suffer Irreparable Harm and The Remaining Equitable Factors Favor a Stay. ............................................................................................... 14

    VI.    The Court's Remedy is Overbroad. .............................................................. 16

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*A.A.R.P. v. Trump*,
   145 S. Ct. 1367 (2025) ...................................................................................................... 9

*American Immigration Lawyers Ass'n v. Reno*,
   199 F.3d 1352 (D.C. Cir. 2000) ...................................................................................... 3, 5

*American Immigration Lawyers Ass'n v. Reno*,
   18 F. Supp. 2d 38 (D.D.C. 1998)*,* ............................................................................ 3, 4, 15

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ........................................................................................................ 17

*Coalition for Humane Immigrant Rights v. Noem*,
   25-872-JMC, 2025 WL 2192986 (D.D.C. Aug. 1, 2025) ............................................... *passim*

*Cruz v. DHS*,
   19-CV-2727, 2019 WL 8139805 (D.D.C. Nov. 21, 2019) ................................................. 8

*Dave v. Ashcroft*,
   363 F.3d 649 (7th Cir. 2004) ........................................................................................... 11

*DHS v. Thuraissigiam*,
   591 U.S. 103 (2020) ..................................................................................................... *passim*

*Dugdale v. U.S. CBP*,
   88 F. Supp. 3d 1 (D.D.C. 2015) ....................................................................................... 4

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ......................................................................................................... 13

*Immigrant Defs. L. Ctr. v. Noem*,
   145 F.4th 972 (9th Cir. 2025) .............................................................................. 2, 3, 16, 18

*Kaplan v. Tod*,
   267 U.S. 228 (1925) ........................................................................................................... 8

*Kiakombua v. Wolf*,
   498 F. Supp.3d 1 (D.D.C. 2020) ................................................................................ 4, 5, 6

*Knauff v. Shaughnessy*,
   338 U.S. 537, 544 (1950),338 U.S. ................................................................................. 10

*Landon v. Plasencia,*
    459 U.S. 21 (1982) .................................................................................. 9, 13

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................................. 17

*M.M.V. v. Garland,*
    14 F.4th 1100 (D.C. Cir. 2021) ................................................................. 5

*Maryland v. King,*
    567 U.S. 1301 (2012) ............................................................................... 14

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) .................................................................................. 8, 13

*Nat'l Treasury Emps. Union v. Trump,*
    2025 WL 1441563 (D.C. Cir. May 16, 2025) ........................................... 3

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell,*
    467 F.3d 999 (6th Cir. 2006) .................................................................... 7

*Nken v. Holder,*
    556 U.S. 418 (2009) .................................................................................. 3

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO,*
    473 U.S. 1301 (1985) ............................................................................... 7

*Texas v. Biden,*
    646 F. Supp. 3d 753 (N.D. Tex. 2022) ..................................................... 14

*Trump v. CASA, Inc,*
    145 S. Ct. 2540 (2025) ............................................................................. 2, 16, 17

*Trump v. J.G.G.,*
    145 S. Ct. 1003 (2025) ............................................................................. 9

*United States v. Salerno,*
    481 U.S. 739 (1987) .................................................................................. 11, 12

*Washington State Grange v. Washington State Republican Party,*
    552 U.S. 442 (2008) .................................................................................. 11

*Yamataya v. Fisher,*
    189 U.S. 86 (1903) .................................................................................... 9

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ................................................................................................ 8

## Statutes

5 U.S.C. § 701(a)(2) ................................................................................................... 7

5 U.S.C. § 705 ................................................................................................... *passim*

8 U.S.C. § 1225(b) ....................................................................................................... 9

8 U.S.C. § 1225(b)(1) ............................................................................................... 14

8 U.S.C. § 1252(e)(1) .............................................................................................. 1, 6

8 U.S.C. § 1252(e)(3) ................................................................................................... 6

8 U.S.C. § 1252(e)(3)(B) ......................................................................................... 1, 3

8 U.S.C. § 1252(f)(1) .............................................................................................. 1, 13

8 U.S.C. § 1225(b)(1)(C) ........................................................................................... 12

## Rules

Fed. R. App. P. 8(a)(1) ................................................................................................ 1

## Regulations

*Inspection and Expedited Removal of Aliens,*
  62 Fed. Reg. 444 (Jan. 3, 1997) ......................................................................... 12

*Designating Aliens for Expedited Removal,*
  84 Fed. Reg. 35411 (July 23, 2019) .................................................................... 8

*Designating Aliens for Expedited Removal,*
  90 Fed. Reg. 8139 (Jan. 24, 2025) ....................................................................... 4

## INTRODUCTION

The Court's August 29, 2025 Order stays "implementation and enforcement of the January 21 Designation Notice and the January 23 Huffman Memorandum, insofar as it implements the January 21 Designation Notice." ECF No. 65; *see also* ECF No. 64 ("Op."). The Court's order effectively prevents the Government from expeditiously removing aliens who are encountered away from the border that have no lawful basis to remain in the country. Defendants have now appealed the Court's Order and Opinion. *See* ECF No. 66. This Court should stay its order pending this appeal.[1] Defendants respectfully request a ruling on this motion by Friday, September 5, 2025, at 12pm EST, after which, if this Court has not granted a stay pending appeal, Defendants intend to seek similar relief from the Court of Appeals.

As Defendants have explained in prior briefing and below, the Government is likely to succeed on appeal. *First*, the Court misconstrued the statutory time bar for raising systematic challenges to expedited removal. 8 U.S.C. § 1252(e)(3)(B). That 60-day clock ran from April 1, 1997—the date the expedited removal procedures were "first implemented," *see id.*, and the Court therefore lacks jurisdiction. *Second*, multiple other jurisdictional barriers bar the Court's jurisdiction: namely, 8 U.S.C. § 1252(e)(1) prohibits the interim relief the Court granted; 5 U.S.C. § 705 does not permit a stay of agency guidance that has already gone into effect; and 8 U.S.C.

---

[1] Defendants have conferred with Plaintiffs under Local Rule 7(m), and Plaintiffs have informed undersigned counsel that they oppose Defendants' motion.

Defendants acknowledge that the Court's opinion already denied an administrative stay to allow the Solicitor General's office time to determine whether an appeal is appropriate. Op. at 47. Now that an appeal has been filed, Defendants nonetheless move for a stay pending that appeal in an abundance of caution to comply with FED. R. APP. P. 8(a)(1). Defendants further note that other courts in this district have recently granted such requests when considering challenges to major immigration policies. *See* Order, ECF No. 73, *RAICES v. Noem*, 1:25-cv-306 (July 2, 2025) (Moss, J.) (delaying effect of order related to Presidential Proclamation 10888 for 14 days "to allow Defendants the opportunity to seek a stay in the court of appeals and implement the Court's decision in an orderly fashion").

§ 1252(f)(1), which precludes courts from enjoining or restraining agencies from enforcing the expedited removal statute, forecloses the Court's stay order because it is essentially the same as an injunction and is certainly a restraint. *Third*, Defendants are likely to succeed on the Due Process claim because, under binding Supreme Court precedent, including *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), aliens subject to the 2025 Designation are only entitled to the procedures that Congress provided in the expedited removal statute. And, even if the *Mathews* factors were applicable to this group of aliens (they are not), the procedures available here satisfy them.

Further, the Court should grant a stay because the Court's universal remedy irreparably harms Defendants by invalidating a long-established regulation allowing application of expedited removal to certain inadmissible aliens—aliens who indisputably have no right to remain in the United States. Expedited removal is a critical enforcement tool that allows DHS to remove aliens expeditiously as Congress intended without the more cumbersome and duplicative proceedings under section 240. *Thuraissigiam*, 591 U.S. at 108–09. Indeed, in *Trump v. CASA, Inc*, 145 S. Ct. 2540, 2561 (2025), the Supreme Court held that this sort of intrusion on the Executive Branch's enforcement policies establishes irreparable harm.

Finally, *CASA* also means that the Court's nationwide remedy is impermissibly broad. Rather, the remedy should be tailored to Plaintiff's members. To be sure, *CASA* did not resolve whether the Administrative Procedure Act ("APA") authorizes federal courts to vacate federal agency action under Section 706. But *CASA* held that traditional equitable principles required that injunctive relief should be limited to the plaintiffs before the court. 145 S. Ct. at 2562–63. And Section 705 is governed by those same traditional equitable principles. Thus, it is equally subject to *CASA*'s reasoning, as the Ninth Circuit has recently held. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025). This Court erred in holding otherwise.

## BACKGROUND

The relevant facts and law are recounted in the Legal and Procedural Background section in the Government's Motion to Dismiss, *see* ECF No. 36 at 5–10, and the Government's Opposition to Plaintiff's Motion for a Stay of Agency Action. *See* ECF No. 56 at 5–8.

## LEGAL STANDARD

In considering whether to grant a stay pending appeal, courts ask whether the applicant (1) "is likely to succeed on the merits," (2) "will be irreparably injured absent a stay," (3) whether a stay will not "substantially injure" other interested parties, and (4) whether a stay is in the "public interest." *Nat'l Treasury Emps. Union v. Trump*, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

## ARGUMENT

### I. Plaintiff's Claims are Time-Barred.

The Court lacks jurisdiction because Plaintiff's claims are time-barred under 8 U.S.C. § 1252(e)(3)(B). The Court held otherwise, incorporating its analysis from its decision in *Coalition for Humane Immigrant Rights v. Noem* (*CHIR*), No. 25-872-JMC, 2025 WL 2192986, at **13–16, **18-21 (D.D.C. Aug. 1, 2025). *See* Op. at 19. But the Court's analysis in *CHIR* did not give proper effect to Congress's directive that a suit under section 1252(e)(3) shall be filed "no later than 60 days" after the rule or agency action "is *first* implemented." *Id.* (emphasis added); *see Am. Immigr. Lawyers Ass'n v. Reno (AILA I)*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998) ("[T]he 60 days ran from a fixed point, the initial implementation of the challenged provisions"), *aff'd*, *Am. Immigr. Lawyers Ass'n v. Reno ("AILA II")*, 199 F.3d 1352, 1358 (D.C. Cir. 2000). Here, Plaintiffs challenge the constitutional sufficiency of regulatory procedures for implementing the expedited removal statute that have been in place since the statute's adoption decades ago. 8 U.S.C. § 1252(e)(3)(B); *see AILA II*, 199 F.3d at 1354 (acknowledging that expedited removal procedures

of IIRIRA were implemented in 1996); *Dugdale v. U.S. CBP*, 88 F. Supp. 3d 1, 8 (D.D.C. 2015) (rejecting a constitutional due process challenge to the expedited removal system because "[a]s the REAL ID Act was passed in May 2005, the 60-day limit on review has long since expired"), *aff'd*, 672 F. App'x 35 (D.C. Cir. 2016). Even if the Court does not use the statute's initial implementation as the triggering date, it is undisputed that the expansion of expedited removal to its statutory limit was "first implemented" on July 23, 2019. *See* 84 Fed. Reg. at 35411 (describing the 2019 designation as "[f]ully exercising DHS's statutory expedited removal authority"). The 2025 Designation simply reinstated the 2019 designation. *See* 90 Fed. Reg. 8139 ("Therefore, the designation in this Notice restores the scope of expedited removal to the fullest extent authorized by Congress, as was previously established in the July 23, 2019 Notice, *Designating Aliens for Expedited Removal*.") (emphasis in original). Thus, the 60-day jurisdictional deadline for challenging the Secretary's discretionary decision to apply expedited removal procedures to its outer limit was, at a minimum, "first implemented" on July 23, 2019. Consequently, the Court lost jurisdiction over challenges to these procedures long ago, no matter which benchmark is used. *See AILA I*, 18 F. Supp. 2d at 47 (affirming that the "60–day requirement is jurisdictional rather than a traditional limitations period").

In support of its conclusion, the Court cites another district court case, *Kiakombua v. Wolf*, 498 F. Supp.3d 1 (D.D.C. 2020) (K.B. Jackson, J.), for the proposition that "section 1252(e)(3) plainly authorizes judicial review of written policies, guidelines, or procedures that implement the expedited removal statute, without regard to whether such policies deviate substantively from an agency's prior practices." *CHIR*, 2025 WL 2192986, at *18. But in *Kiakombua*, the plaintiffs challenged USCIS's lesson plans which provided *new* credible fear adjudication standards that the court found contrary to the statute and its regulations. 498 F. Supp.3d at 36. The *Kiakombua* court

did not need to reach a timeliness question because it was not addressing an agency document that implemented a rule created decades ago.

More fundamentally, the *Kiakombua* Court provides virtually no reasoning to support its dicta other than to state that "the 'first' implementation language … need not, and should not, be read that broadly," citing a D.C. Circuit decision applying a general presumption in favor of judicial review. *Id.* at 36. But the more relevant D.C. Circuit precedent explains the reasoning for strictly interpreting the "first implementation" rule: "Congress imposed the 60–day limit on actions in order to cabin judicial review and to have the validity of the new law decided promptly." *AILA II*, 199 F.3d at 1364. Given Congress's interest in avoiding repeat litigation over the expedited removal procedures, the 60–day deadline should be enforced and Plaintiff's claims should be missed.

The Court's appeal to policy, *see CHIR*, 2025 WL 2192986, at *18 ("If no such guidance could be challenged, most of section 1252(e)(3)(A)(ii) would be rendered nugatory"), does not and cannot override a clear statutory time limitation that the D.C. Circuit has found jurisdictional and thus not subject to equitable tolling. *See AILA II*, 199 F.3d at 1363. The D.C. Circuit has already recognized that very possibility in responding to an essentially identical objection that, under the district court's construction of the 60–day limit "there is no possibility of bringing a challenge at all," explaining: "True enough. But this is precisely what Congress intended." *Id.*; *see also M.M.V. v. Garland,* 14 F.4th 1100, 1109 (D.C. Cir. 2021) (rejecting the argument that *AILA's* holding that the 60-day period is jurisdictional has been overtaken by recent Supreme Court decisions). Thus, Defendants are likely to prevail on appeal on this threshold jurisdictional question.

## II.    Other Jurisdictional Barriers Bar the Relief the Court Granted.

The Court also lacks jurisdiction over Plaintiff's Due Process claim because 8 U.S.C. § 1252(e)(1) precludes courts from entering interim relief in actions like this one, that challenge the removal of aliens under the expedited removal statute. The Court disagreed, incorporating by reference its analysis in *CHIR*, 2025 WL 2192986, at **13–16, *18–21, and holding that Plaintiffs' challenge is excepted from section 1252(e)(1)'s jurisdictional bar because a subsequent subsection—8 U.S.C. § 1252(e)(3)—allows courts to make *determinations* on the legality of agency guidance. *See CHIR*, 2025 WL 2192986, at *16 (citing *Kiakombua*, 498 F. Supp. 3d at 51). But even if section 1252(e)(3) allows courts to make such "determinations," it does not permit the interim *remedies* that section 1252(e)(1) precludes, such as the remedy the Court issued here. *See id.* (acknowledging that section 1252(e)(1) pertains only to legal determinations, not remedies). If the Court believes the 2025 Designation and Huffman Memorandum are unlawful, section 1252(e)(1) only allows the Court to issue a remedy after making a merits decision.

Likewise, the Court lacks jurisdiction because section 705 does not permit courts to stay agency actions that have already gone into effect, like the 2025 Designation. *See* 5 U.S.C. § 705. The Court held otherwise, reasoning that section 705's text allows courts to preserve the "*status quo ante*" even though the 2025 Designation is already in effect. *CHIR*, 2025 WL 2192986, at *15. But that is not what the Court's order *does*; rather, it requires that "the *effective dates* of implementation and enforcement" of the 2025 Designation and Huffman memorandum be "immediately postponed and stayed," ECF No. 65, altering rather than preserving the status quo at the start of this suit.

In any event, even if the Court's order were to constitute a preservation of the *status quo ante*, its reasoning incorrectly focuses on the fact that section 705's text is disjunctive, permitting

reviewing courts to "postpone the effective date of an agency action *or* to *preserve status or rights* pending conclusion of the review proceedings.*" 5 U.S.C. § 705 (emphasis added); *see CHIR*, 2025 WL 2192986, at \*15. But the second clause is subject to the same temporal limitation as the first clause for the simple reason that the status quo, once a rule goes into effect, is that the rule is in effect. An order staying a rule or policy after it goes into effect does not preserve, but alters, the status quo. *See Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) (explaining an order "preventing the implementation of new regulations" would "disturb[]" rather than preserve "the status quo"); *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305 (1985) (explaining that had the district court issued an order stopping rule from taking effect, that would alter the "status quo"). Here, the status quo is that the 2025 Designation and Huffman Memorandum are operative, and Defendants' expedited removal authority has been expanded to the fullest extent authorized by Congress. The Court did not address this reading of the statutory text in its *CHIR* opinion.

## III.    Defendants are Likely to Prevail on the Merits.

The Court found that Defendants are not likely to succeed on the merits because the aliens subject to the 2025 Designation are entitled to process beyond what the expedited removal procedures provide, and even though Plaintiffs asserted a facial challenge, they need not show the designation is unconstitutional in all of their applications.[2] Respectfully, these holdings are wrong.

---

[2] As the Government argued, review of "all of Plaintiff's claims"—including their "due process" claims—is impermissible because Plaintiffs challenge a designation that is committed to the "'sole and unreviewable discretion of the [Secretary],'" ECF No. 56 at 25 (quoting 8 U.S.C. § 1225(b)(1)(A)(iii)), and the APA's waiver of sovereign immunity does not extend to any "agency action" that—as here—"is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

**(a) Aliens subject to the 2025 Designation are entitled to only the process afforded by Congress.**

This Court held that "the Due Process Clause 'applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,'" Op. at 21 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)), and that the Government's interpretation of *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020), to the contrary, is "untenable." Op. at 23. In doing so, this Court misread *Zadvydas* and violated *Thuraissigiam*.

*Zadvydas* involved the proper construction of the INA's post-order detention statute and application of the constitutional avoidance canon. In discussing the applicability of the Due Process Clause in the immigration detention context, the *Zadvydas* Court acknowledged the distinction "between an alien who has effected an entry into the United States and one who has never entered." *Zadvydas*, 533 U.S. at 693. But the Court did not address the relative nature or weight of an alien's due process interest with respect to challenging *removal*—as opposed to avoiding potentially indefinite *detention*—which interests may vary depending on particular circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) (due process is flexible and context-dependent). Moreover, the mere fact of unlawful physical presence in the United States is not synonymous with "entry"—a term of art that requires *lawful* admission. *See*, *e.g.*, *Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (despite nine years' presence in the United States, an "excluded" alien "was still in theory of law at the boundary line and had gained no foothold in the United States"); *Cruz v. DHS*, No. 19-CV-2727, 2019 WL 8139805, at *5 (D.D.C. Nov. 21, 2019) ("[A]lthough aliens seeking admission into the United States may be physically allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and, hence, never having effected entry into this country.").

Further, in *Landon v. Plasencia*, 459 U.S. 21 (1982), the Supreme Court observed that only "once an alien *gains admission* to our country and begins to develop the ties that go with permanent residence [does] his constitutional status change[]." 459 U.S. at 32 (emphasis added). And in *Thuraissigiam*, the Court reiterated that "established connections" contemplate "an alien's *lawful entry* into this country." 591 U.S. at 106–07 (emphasis added).

The Court here sought to distinguish *Thuraissigiam* on the grounds that it concerned an alien who was apprehended only 25 yards from the border. Op. at 23–24. That might have been the particularly factual circumstances of Thuraissigiam, but the Supreme Court's reasoning and holding was far broader, reaching all aliens entering the United States unlawfully: "An alien who tries to enter the country illegally is treated as an 'applicant for admission.'" *Thuraissigiam*, 591 U.S. at 139–40 ("[A]liens who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are 'treated' for due process purposes 'as if stopped at the border[.]'") (emphasis added). This Court defied those binding holdings by limiting *Thuraissigiam* to its narrow factual circumstances.

The Court further asserts that the Government's reading of *Thuraissigiam* would "undermine more than a century of precedent" holding that aliens who have entered the country— even unlawfully—have a liberty interest in remaining. Op. at 23. Citing *Yamataya v. Fisher*, 189 U.S. 86 (1903), and more recently *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025), and *A.A.R.P. v. Trump*, 145 S. Ct. 1367 (2025), the Court notes that even individuals accused of "unlawfully infiltrat[ing] the United States" must be afforded due process. But these cases did not consider the specific statutory scheme at issue here—namely, 8 U.S.C. § 1225(b)—and do not displace the more tailored rule articulated in *Thuraissigiam*: that Congress may authorize streamlined removal procedures for individuals who are treated, for legal purposes, as if they are still at the threshold of entry. 591

U.S. at 139–40. In reaffirming that aliens are entitled to due process, *J.G.G.* and *A.A.R.P.* say nothing about what that process must entail for individuals who fall within the category Congress has designated for expedited removal.

The Court reasons that "[d]istinguishing between those on the threshold and those who have effected entry makes sense." Op. at 24. But it is emphatically not the Judiciary's role to draw such policy lines based on its own intuition of what sound policy might be. The Court acknowledged that expedited removal may constitutionally apply to aliens apprehended within 14 days of arrival and within 100 miles of the border. Op. at 17. But is an alien apprehended 15 days after arrival, or 101 miles from the border, meaningfully different for constitutional purposes? Where is the line to be drawn—and who decides where it goes? The answer, under our constitutional structure and consistent with *Thuraissigiam*, is Congress.

**(b) The *Mathews* test does not apply, and if it did, it has been satisfied.**

Applying the *Mathews* factors, the Court held that the current expedited removal procedures do not comport with due process for aliens encountered away from the border. Op. at 27. This was wrong. As to the first factor—the private interests at stake—the Court held that "individuals who have effected entry to the United States have a 'weighty' liberty interest in staying." Op. at 28. But this statement relies on the Court's previous error of equating a physical entry with a legal one. Congress has determined that aliens who have not been admitted or paroled who are present for less than two years have not effected a legal entry, and thus *as a class* lack *any* liberty interest in avoiding removal or to certain procedures. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). They are entitled only to the "procedure authorized by Congress," *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950), which authorizes the Secretary to designate certain aliens for expedited removal at her "sole and unreviewable discretion." Thus, aliens cannot assert a protected property

or liberty interest in the designation decision or additional procedures not provided by statute. *Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004).

Next, the Court devotes extensive attention to the second *Mathews* factor—the risk of erroneous deprivation—highlighting various aspects of the expedited removal process that, in its view, may produce error. Op. at 29–39. Yet the Court only acknowledges the Government's *Salerno* argument in a footnote. Op. at 39–40 n.18. Specifically, the Government argues that because Plaintiff brings a *facial* challenge to the 2025 Designation, it must demonstrate that the procedures are *unconstitutional in all their applications*. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Rather than apply that standard, the Court sidesteps it. It asserts that "procedural inadequacies apply in every case" and that it is "no defense to a procedural due process claim to argue that in some individual cases the Government reaches the right answer despite the procedural flaws." Op. at 40 n.18. But that reasoning collapses the distinction between facial and as-applied challenges and disregards controlling precedent.

To prevail on a facial due process challenge, a Plaintiff must show that the procedures in question are *categorically insufficient*—that is, that they can never be applied in a constitutional manner. *Salerno*, 481 U.S. at 745. The Court's lengthy factual critique of how the expedited removal process might lead to error in some instances—even assuming *arguendo* it were accurate—is not sufficient. The proper inquiry is not whether errors are possible (they are in any system), but whether the procedures *as a category* are constitutionally inadequate in *all* their applications. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) ("Facial challenges are disfavored...[because] they often rest on speculation.").

Even if some individuals subject to the 2025 Designation may experience difficulties asserting an intention to apply for asylum or fear of persecution, that does not render the statutory

scheme facially unconstitutional. Congress has built in procedural safeguards—credible fear interviews, supervisory review, limited review by an immigration judge—that the Supreme Court in *Thuraissigiam* implicitly found sufficient under the Due Process Clause. 591 U.S. at 138–40. And while the Court expressed particular concern that the expedited removal process lacks specific procedures for identifying or verifying claims of continuous presence exceeding two years, that concern does not render the statutory scheme facially unconstitutional. *See supra*, citing *Salerno*, 481 U.S. 739.

Congress has drawn a line: individuals who have been continuously present in the United States for fewer than two years may be subject to expedited removal. That line necessarily requires a determination of continuous presence, and Congress has placed the burden on the individual to make such a showing. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II). At bottom, the Court's critique seems aimed not at a constitutional violation but at a perceived regulatory gap. The Court notes that regulations provide for additional procedural safeguards for individuals claiming asylum, lawful status, or parole, but not for those asserting more than two years of physical presence. *See* Op. at 34. But that regulatory distinction is consistent with the expedited removal statute's allowance for "prompt review" of orders issued to certain aliens who claim they were granted lawful status as permanent residents, asylees, or refugees. *See* 8 U.S.C. §§ 1225(b)(1)(C), 1252(e)(4)(B); 62 Fed. Reg. 444, 445-46 (Jan. 3, 1997). The added safeguards for those categories are reasonable. *See* 62 Fed. Reg. 10,312, 10,315 (Mar. 6, 1997) ("[G]iven the greater interests and ties to the United States normally at stake for such aliens compared to those arriving without any previous status, the Department considers it appropriate that verified arriving permanent residents, asylees, and refugees be accorded the protections inherent in proceedings under section 240 of the Act."). Claims to asylum, refugee status, or withholding of removal implicate statutory protections against

persecution and, in some cases, international treaty obligations. Claims to citizenship or lawful permanent resident status invoke constitutional or statutory rights to remain in the United States. In contrast, a claim of two-year physical presence does not establish any right to remain; it affects only whether the individual is subject to expedited removal or section 240 removal proceedings. In effect, it is a procedural qualifier—not a substantive entitlement. To analogize one with the other is to confuse the nature of the claim itself: one is a claim to avoid removal; the other is a claim to delay it. Due process does not require that all threshold determinations in the immigration system receive the same level of procedural protection. *See Mathews*, 424 U.S. at 349 (due process is flexible and context-dependent).

## IV.    Plaintiff's Stay Request Is Prohibited by 8 U.S.C. § 1252(f)(1).[3]

The Court's analysis of 8 U.S.C. § 1252(f)(1) is lacking in at least two respects. *See* Op. at 19 (incorporating by reference the Court's analysis in *CHIR*, 2025 WL 2192986, at *13-15). First, it did not engage with the text. Section 1252(f)(1) eliminates any court's (other than the Supreme Court's) authority to issue orders "enjoin[ing]" or "restrain[ing]" implementation of the expedited removal statute, where "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549 (2022). The reference to both enjoin and restrain indicates that a court may not impose coercive relief that "interfere[s] with the Government's efforts to operate" the covered provisions in a particular way. *Id.* at 551. That meaning comfortably encompasses the stay of agency action in this case. A contrary interpretation would read the word "restrain" out of the statute. The Court relies on a district court decision for the proposition that a

---

[3] Defendants acknowledge several courts have found otherwise, albeit some of these cases arose in the context of vacatur under section 706, and not a stay of agency action under section 705. *See* op. at 27. & n.16. However, as the Court noted, the issue remains an open one in the D.C. Circuit. *Id.* at 27.

section 705 stay would not order federal officials to take or refrain from taking actions to enforce, implement or otherwise carry out the specified provisions at issue. *CHIR*, 2025 WL 2192986, at *13 (citing *Texas v. Biden*, 646 F. Supp. 3d 753, 768 (N.D. Tex. 2022)). But that is exactly the effect of the Court's order in this case. Not only does the Court stay the challenged agency actions—which by the Court's own language and analysis are directing federal officials to apply expedited removal to the maximum extent permitted by 8 U.S.C. § 1225(b)(1), *see* Op. at 10—but the Court's order invalidates the 2025 Designation and Huffman Memorandum used to implement the expedited removal statute to its maximum extent. Thus, the order impermissibly contravenes section 1252(f)(1).

Second, the Court acknowledges the on-point legislative history reflecting Congress's intent that under section 1252(f)(1), the challenged procedures would "remain in force while such lawsuits are pending." *CHIR*, 2025 WL 2192986, at *14 (quoting H.R. Rep. No. 104-469, at 161 (1996)). The Court even says, "[o]n its face, that statement supports Defendants' position," but it subsequently refuses to give weight to the legislative history because of policy concerns. Specifically, the Court was concerned that it would be unable to provide a remedy in section 1252(e)(3) cases like this one brought by organizations asserting associational standing. *See id.* But that result is hardly "bizarre;" *see id.*; it is instead precisely what Congress intended, as supported by the legislative history. The Court's policy-based rationale for rejecting section 1252(f)(1)'s bar does not withstand scrutiny.

## V.  Defendants Will Suffer Irreparable Harm and The Remaining Equitable Factors Favor a Stay.

Defendants will suffer irreparable harm from the Court's order. The order thwarts the Executive Branch's constitutional and statutory responsibility for immigration affairs on an issue potentially affecting hundreds of thousands of aliens. *See Maryland v. King*, 567 U.S. 1301, 1303

(2012) (Roberts, C.J., in chambers) (explaining the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people"). The Court's nationwide remedy irreparably harms the Executive Branch and the public interest by invalidating a long-established regulation applying expedited removal to the fullest extent authorized by Congress to certain inadmissible aliens—aliens who arguably have no right to remain in the United States.

The Court mostly failed to address the Government's irreparable harm arguments. *Compare* Op. at 41–45 *with* ECF No. 56 at 51–52. The Court did acknowledge, however, that the Government "correctly asserted its weighty interest in enforcing the immigration laws," but then said the Government failed to explain "how a stay would inappropriately interfere with that interest." Op. at 45. That is wrong. The Court's pronouncement appears to be rooted in its conclusion that there are no threshold bars to Plaintiffs' suit and that the agency's actions violate due process. *See id.* at 45–46. The Court is also incorrect in holding that the public's interest in effective measures to prevent the unlawful entry of aliens at the Nation's borders is not served by the 2025 Designation and Huffman Memorandum simply because they apply to aliens in the interior rather than at the border. Op. at 46. This holding overlooks the deterrent effect such measures may ultimately have at the border. It also creates a perverse incentive for aliens to avoid authorities at the border in hopes of gaining access to more favorable procedures available to them once they have absconded into the interior. The Court's backup analysis—that even if the 2025 Designation and Huffman Memorandum do impact the border, they do not serve the public interest because they violate due process, *id.*—fares no better because, as discussed, Defendants are likely to succeed on the merits of the due process claim. In any event, even if the Court correctly assumed that some Plaintiffs may be able to raise as-applied due process challenges to the 2025 Designation,

Defendants are still harmed because they are unable to use expedited removal for all aliens identified as being in the United States between 14 days and two years, and thus subject to the statute, as Congress expressly authorized.

The Court's irreparable harm analysis is also undermined by the Supreme Court's recent decision in *CASA*, which found that the Government had established irreparable harm sufficient to grant "interim relief." 145 S. Ct. at 2561. *CASA* reasoned that "when a federal court enters a universal injunction against the Government, it improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties." *Id.* (cleaned up). In this case, the Court's issuance of a stay has similar nationwide impact because it stays the "implementation and enforcement" of the 2025 Designation and Huffman Memorandum not just against Plaintiff, but against anyone subject to the Designation. *See* ECF No. 65. This alone constitutes irreparable harm. *See CASA*, 145 S. Ct. at 2561; *cf. Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 996 (9th Cir. 2025) (granting in part the Government's emergency motion for a stay pending appeal by limiting the district court's section 705 stay order to Plaintiffs' "current and future clients").

The harm to Defendants and the public interest outweighs Plaintiff's harms. The streamlined processes for removing individuals through expedited removal is a necessary result of Congress's decision to allow DHS to remove aliens *expeditiously* without the burden and harm to Defendants from requiring the more cumbersome and duplicative proceedings under section 240 for this group of aliens who have entered the country unlawfully. *Thuraissigiam*, 591 U.S. at 108–09, 118. As such the balance of harms tips in the Defendants favor.

## VI. The Court's Remedy is Overbroad.

Defendants are likely to prevail on their argument that the Court's remedy is improperly broad. Plaintiff brings this lawsuit on behalf of its members, and complete relief is provided by an

appropriate remedy that applies to those members who the organization can identify as being affected by the challenged agency actions. Although the Supreme Court's recent decision in *CASA*, 145 S. Ct. 2540, did not "resolve[] the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action," *see id.* at 2554 n.10, its complete-relief principle for crafting injunctive relief provides some useful guidance, *id.* at 2557. In *CASA*, the Court held the Government was likely to succeed on the merits of its argument that federal courts lack statutory authority to issue "universal injunctions." *Id.* at 2550. The Court explained that under the complete-relief principle, "the question is not whether an injunction offers compete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 2557 (emphasis in original) (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.")).

The Court's analysis in *CASA* counsels against a universal stay in this case. Section 705 of the APA grants courts the power to issue all "necessary and appropriate process" tailored to the circumstances of a particular case to "preserve status or rights." Section 705 thus is guided by the very same traditional equitable principles that governed the injunctions at issue in *CASA*. 145 S. Ct. at 2561–62. This Court can provide Plaintiff "complete relief" by granting an appropriately tailored remedy to *Plaintiff's members* who Plaintiff identifies and demonstrates have been harmed by the alleged unlawful conduct; complete relief does not extend to other nonparty aliens. *See CASA*, 145 S. Ct. at 2557; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (requiring a showing of injury). The Court, however, concluded otherwise, not even addressing *CASA. See* Op. at 46-47 (focusing instead on vacatur of agency action under the APA). While the Supreme

Court did not reach the issue of universal injunctions in APA contexts like here, *CASA's* reasoning is still instructive, and the Court erred in failing to apply its principles.

A recent Ninth Circuit decision illustrates the point. That Court granted in part the Government's motion to stay the district court's grant of a stay of agency action under section 705 of the APA because the district court's remedy was too broad. *Immigrant Defs. L. Ctr.*, 145 F.4th at 980. The court explained that *CASA's* "complete-relief principle for crafting injunctive relief provides some useful guidance for crafting interim equitable relief" in section 705 cases. *Id.* at 995. *CASA* is especially "informative [] because the factors used to determine whether to issue a § 705 stay under the APA are the same equitable factors used to consider whether to issue a preliminary injunction." *Id.* The Ninth Circuit proceeded to "limit the district court's § 705 Stay order" to the plaintiffs' clients (current and future), *id.* at 996, and the Court should have done the same here. In sum, this Court's remedy is overbroad under principles set forth in *CASA*.

## CONCLUSION

This Court should grant Defendants motion for a stay pending appeal.

Dated: September 2, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
*Civil Division*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

JOSEPH A. McCARTER
ELISSA P. FUDIM
CAROLINE McGUIRE
Trial Attorneys
*/s/ Caroline McGuire*
CAROLINE MCGUIRE
NY Bar No. 5854823
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4268;
Fax: (202) 305-7000
caroline.mcguire@usdoj.gov
*Attorneys for Defendants*