APPEAL,TYPE–C

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–00190–JMC</u>
### *Internal Use Only*

| | |
|---|---|
| MAKE THE ROAD NEW YORK et al v. NOEM et al | Date Filed: 01/22/2025 |
| Assigned to: Judge Jia M. Cobb | Jury Demand: None |
| Related Cases:  1:19–cv–02369–JMC | Nature of Suit: 890 Other Statutory Actions |
| 1:25–cv–00872–JMC | Jurisdiction: U.S. Government Defendant |
| Cause: 05:0706 Judicial Review of Agency Actions | |

**Plaintiff**

| | | |
|---|---|---|
| **MAKE THE ROAD NEW YORK** | represented by | **Amy Belsher** |
| | | NEW YORK CIVIL LIBERTIES UNION |
| | | 794 President St. Apt. 2R |
| | | Brooklyn, NY 11215 |
| | | 805–550–5591 |
| | | Email: abelsher@nyclu.org |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Robert Hodgson** |
| | | NEW YORK CIVIL LIBERTIES UNION |
| | | 125 Broad St. |
| | | Ste 19th Floor |
| | | New York, NY 10004 |
| | | 212–607–3317 |
| | | Email: rhodgson@nyclu.org |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Aditi Shah** |
| | | AMERICAN CIVIL LIBERTIES UNION OF DC |
| | | 529 14th Street NW |
| | | Ste 722 |
| | | Washington, DC 20045 |
| | | 202–457–0800 |
| | | Email: ashah@acludc.org |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Anand Balakrishnan** |
| | | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| | | 125 Broad Street |
| | | 18th Floor |
| | | New York, NY 10004 |

212–549–2536
Email: abalakrishnan@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
ACLU OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW
Suite 722
Washington, DC 20045
202–601–4266
Email: aspitzer@acludc.org
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street
Suite 7th Floor
San Francisco, CA 94104
415–343–0785
Email: cwofsy@aclu.org
*ATTORNEY TO BE NOTICED*

**Grace Choi**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
770–880–5592
Email: gchoi@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hannah Schoen Steinberg**
ACLU IMMIGRANTS' RIGHTS
PROJECT
425 California Street
94104
San Francisco, CA 94104
332–204–2777
Email: hsteinberg@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
125 Broad Street, 18th Floor

New York, NY 10004
212–519–7848
Email: m.tan@aclu.org
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street
Ste 7th Floor
San Francisco, CA 94104
415–343–0776
Email: mrussell@aclu.org
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
(212) 549–2620
Fax: (212) 549–2654
Email: ojadwat@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sidra Mahfooz**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, NY 10004
631–741–3383
Email: smahfooz@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
AMERICAN CIVIL LIBERTIES UNION
425 California Street
Suite 7th Floor
San Francisco, CA 94104
415–343–0783
Fax: 415–395–0950
Email: skang@aclu.org
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
AMERICAN CIVIL LIBERTIES UNION
125 Broad St.
18th Floor
New York, NY 10004

212–549–2616
Fax: 212–549–2654
Email: lgelernt@aclu.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARY**                                        represented by  **Amy Belsher**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *PRO HAC VICE*
                                                *ATTORNEY TO BE NOTICED*

                                                **Robert Hodgson**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *PRO HAC VICE*
                                                *ATTORNEY TO BE NOTICED*

                                                **Aditi Shah**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Anand Balakrishnan**
                                                (See above for address)
                                                *PRO HAC VICE*
                                                *ATTORNEY TO BE NOTICED*

                                                **Arthur B. Spitzer**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Cody H. Wofsy**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Grace Choi**
                                                (See above for address)
                                                *PRO HAC VICE*
                                                *ATTORNEY TO BE NOTICED*

                                                **Hannah Schoen Steinberg**
                                                (See above for address)
                                                *PRO HAC VICE*
                                                *ATTORNEY TO BE NOTICED*

                                                **Michael King Thomas Tan**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Morgan Russell**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sidra Mahfooz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Bonggyun Kang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JOHN**                                    represented by  **Amy Belsher**
*Son to Mary*                                              (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

**Robert Hodgson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anand Balakrishnan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Grace Choi**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Hannah Schoen Steinberg**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Morgan Russell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sidra Mahfooz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**KRISTI NOEM**
*Acting Secretary of the U.S. Department of Homeland Security, in her official capacity*

represented by **Caroline McGuire**
U.S. DEPARTMENT OF JUSTICE
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
202–532–4268
Email: caroline.mcguire@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**TODD M. LYONS**
*Acting Director of the U.S. Immigration and Customs Enforcement, in his official capacity*

represented by **Caroline McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

represented by

**JENNIFER B. HIGGINS**
*Acting Director of U.S. Citizenship and*
*Immigration Services, in her official*
*capacity*

**Caroline McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**PETE R. FLORES**
*Senior Official Performing the Duties of*
*the Commissioner for U.S. Customs and*
*Border Protection, in his official capacity*

represented by **Caroline McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**PAMELA J. BONDI**
*Acting Attorney General of the United*
*States, in her official capacity*

represented by **Caroline McGuire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**BENJAMINE HUFFMAN**
*Acting Secretary of the U.S. Department*
*of Homeland Security, in his official*
*capacity,*
*TERMINATED: 03/22/2025*

<u>**Defendant**</u>

**CALEB VITELLO**
*Acting Director of the U.S. Immigration*
*and Customs Enforcement, in his official*
*capacity*
*TERMINATED: 03/22/2025*

<u>**Defendant**</u>

**JAMES MCHENRY**
*Acting Attorney General of the United*
*States, in his official capacity*
*TERMINATED: 03/22/2025*

<u>**Amicus**</u>

**IMMIGRATION REFORM LAW**
**INSTITUTE**

represented by **Matt A. Crapo**
IMMIGRATION REFORM LAW
INSTITUTE
25 Massachusetts Avenue, NW
Suite 335
Washington, DC 20001
571–435–3582
Email: <u>mcrapo@irli.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Joseph Hajec**
IMMIGRATION REFORM LAW
INSTITUTE
25 Massachusetts Avenue, NW
Suite 335
Washington, DC 20001
(202) 232–5590
Fax: (202) 464–3590
Email: chajec@irli.org
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/22/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC–11423914) filed by MAKE THE ROAD NEW YORK. (Attachments: # 1 Civil Cover Sheet, # 2 Summons AG, # 3 Summons Commissioner of CBP, # 4 Summons Director of ICE, # 5 Summons Director of USCIS, # 6 Summons Secretary of DHS, # 7 Summons USAO DC)(Gelernt, Lee) (Entered: 01/22/2025) |
| 01/22/2025 | 2 | NOTICE OF RELATED CASE by MAKE THE ROAD NEW YORK. Case related to Case No. 19–cv–02369. (Gelernt, Lee) (Entered: 01/22/2025) |
| 01/22/2025 | 3 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by MAKE THE ROAD NEW YORK (Gelernt, Lee) (Entered: 01/22/2025) |
| 01/22/2025 | 4 | NOTICE of Appearance by Lee Gelernt on behalf of MAKE THE ROAD NEW YORK (Gelernt, Lee) (Entered: 01/22/2025) |
| 01/22/2025 | 5 | NOTICE of Appearance by Cody H. Wofsy on behalf of MAKE THE ROAD NEW YORK (Wofsy, Cody) (Entered: 01/22/2025) |
| 01/22/2025 | 6 | NOTICE of Appearance by Stephen Bonggyun Kang on behalf of MAKE THE ROAD NEW YORK (Kang, Stephen) (Entered: 01/22/2025) |
| 01/22/2025 | 7 | NOTICE of Appearance by Arthur B. Spitzer on behalf of MAKE THE ROAD NEW YORK (Spitzer, Arthur) (Entered: 01/22/2025) |
| 01/23/2025 | | Case Assigned to Judge Jia M. Cobb. (zsl) (Entered: 01/23/2025) |
| 01/23/2025 | 8 | SUMMONS (6) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsl) (Entered: 01/23/2025) |
| 01/31/2025 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Grace Choi, Filing fee $ 100, receipt number ADCDC–11447363. Fee Status: Fee Paid. by MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration Attorney Declaration, # 2 Supplement Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order)(Gelernt, Lee) (Entered: 01/31/2025) |
| 01/31/2025 | 10 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Hannah Steinberg, Filing fee $ 100, receipt number ADCDC–11447386. Fee Status: Fee Paid. by MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration Attorney Declaration, # 2 Supplement Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order)(Gelernt, Lee) (Entered: 01/31/2025) |
| 01/31/2025 | 11 | |

| | | |
|---|---|---|
| | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Morgan Russell, Filing fee $ 100, receipt number ADCDC–11447418. Fee Status: Fee Paid. by MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration Attorney Declaration, # 2 Supplement Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order)(Gelernt, Lee) (Entered: 01/31/2025) |
| 01/31/2025 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Omar Jadwat, Filing fee $ 100, receipt number ADCDC–11447439. Fee Status: Fee Paid. by MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration Attorney Declaration, # 2 Supplement Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order)(Gelernt, Lee) (Entered: 01/31/2025) |
| 01/31/2025 | 13 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Sidra Mahfooz, Filing fee $ 100, receipt number ADCDC–11447446. Fee Status: Fee Paid. by MAKE THE ROAD NEW YORK. (Attachments: # 1 Declaration Attorney Declaration, # 2 Supplement Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order)(Gelernt, Lee) (Entered: 01/31/2025) |
| 01/31/2025 | | MINUTE ORDER granting 9 Motion for Leave to Appear Pro Hac Vice: Attorney Grace Eunhye Choi is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Jia M. Cobb on January 31, 2025. (lcjmc3) (Entered: 01/31/2025) |
| 01/31/2025 | | MINUTE ORDER granting 10 Motion for Leave to Appear Pro Hac Vice: Attorney Hannah Steinberg is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Jia M. Cobb on January 31, 2025. (lcjmc3) (Entered: 01/31/2025) |
| 01/31/2025 | | MINUTE ORDER granting 11 Motion for Leave to Appear Pro Hac Vice: Attorney Morgan Russell is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Jia M. Cobb on January 31, 2025. (lcjmc3) (Entered: 01/31/2025) |
| 01/31/2025 | | MINUTE ORDER granting 12 Motion for Leave to Appear Pro Hac Vice: Attorney Omar Jadwat is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Jia M. Cobb on January 31, 2025. (lcjmc3) (Entered: 01/31/2025) |
| 01/31/2025 | | MINUTE ORDER granting 13 Motion for Leave to Appear Pro Hac Vice: Attorney Sidra Mahfooz is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Jia M. Cobb on January 31, 2025. (lcjmc3) (Entered: 01/31/2025) |
| 02/21/2025 | 14 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Anand Balakrishnan, Filing fee $ 100, receipt number BDCDC–11496905. Fee Status: Fee Paid. by MAKE THE ROAD NEW YORK. (Attachments: # 1 Attorney Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Gelernt, Lee) (Entered: 02/21/2025) |
| 02/24/2025 | | MINUTE ORDER granting 14 Motion for Leave to Appear Pro Hac Vice: Attorney Anand Balakrishnan is hereby admitted pro hac vice to appear in this matter. **Counsel** |

| | | |
|---|---|---|
| | | **should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Jia M. Cobb on February 24, 2025. (lcjmc3) (Entered: 02/24/2025) |
| 02/24/2025 | 15 | NOTICE of Appearance by Anand Balakrishnan on behalf of All Plaintiffs (Balakrishnan, Anand) (Entered: 02/24/2025) |
| 02/24/2025 | 16 | NOTICE of Appearance by Sidra Mahfooz on behalf of All Plaintiffs (Mahfooz, Sidra) (Entered: 02/24/2025) |
| 02/24/2025 | 17 | NOTICE of Appearance by Morgan Russell on behalf of All Plaintiffs (Russell, Morgan) (Entered: 02/24/2025) |
| 02/24/2025 | 18 | NOTICE of Appearance by Omar C. Jadwat on behalf of All Plaintiffs (Jadwat, Omar) (Entered: 02/24/2025) |
| 02/25/2025 | 19 | NOTICE of Appearance by Grace Choi on behalf of All Plaintiffs (Choi, Grace) (Entered: 02/25/2025) |
| 02/25/2025 | 20 | NOTICE of Appearance by Hannah Schoen Steinberg on behalf of All Plaintiffs (Steinberg, Hannah) (Entered: 02/25/2025) |
| 02/25/2025 | 21 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert Andrew Hodgson, Filing fee $ 100, receipt number ADCDC–11503974. Fee Status: Fee Paid. by MAKE THE ROAD NEW YORK. (Attachments: # 1 Attorney Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Gelernt, Lee) (Entered: 02/25/2025) |
| 02/25/2025 | 22 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Amy Belsher, Filing fee $ 100, receipt number ADCDC–11503979. Fee Status: Fee Paid. by MAKE THE ROAD NEW YORK. (Attachments: # 1 Attorney Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Gelernt, Lee) (Entered: 02/25/2025) |
| 02/26/2025 | | MINUTE ORDER granting 21 Motion for Leave to Appear Pro Hac Vice: Attorney Andrew Hodgson is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Jia M. Cobb on February 26, 2025. (lcjmc3) (Entered: 02/26/2025) |
| 02/26/2025 | | MINUTE ORDER granting 22 Motion for Leave to Appear Pro Hac Vice: Attorney Amy Belsher is hereby admitted pro hac vice to appear in this matter. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Jia M. Cobb on February 26, 2025. (lcjmc3) (Entered: 02/26/2025) |
| 03/19/2025 | 23 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. PETE R. FLORES served on 2/27/2025; JENNIFER B. HIGGINS served on 3/11/2025; BENJAMINE HUFFMAN served on 2/20/2025; JAMES MCHENRY served on 2/21/2025; CALEB VITELLO served on 2/20/2025 (Gelernt, Lee) Modified docket text on 3/24/2025 (zdp). (Entered: 03/19/2025) |
| 03/19/2025 | 24 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 2/21/2025., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 1/23/2025. ( Answer due for ALL FEDERAL DEFENDANTS by |

| | | |
|---|---|---|
| | | 3/24/2025.) (See docket entry <u>23</u> to view document) (zdp) (Entered: 03/21/2025) |
| 03/21/2025 | <u>25</u> | WITHDRAWN PURSUANT TO NOTICE FILED 3/23/2025....Consent MOTION to Amend/Correct <u>1</u> Complaint, by MAKE THE ROAD NEW YORK. (Attachments: # <u>1</u> Exhibit Amended Complaint, # <u>2</u> Exhibit Redlined Complaint, # <u>3</u> Exhibit Proposed Order)(Balakrishnan, Anand) Modified on 3/24/2025 (zdp). (Entered: 03/21/2025) |
| 03/21/2025 | <u>26</u> | SEALED MOTION to Proceed Under Pseudonym and to File Supporting Exhibits Under Seal by MAKE THE ROAD NEW YORK. (Attachments: # <u>1</u> Exhibit Mary Do Declaration, # <u>2</u> Exhibit John Doe Declaration, # <u>3</u> Text of Proposed Order Proposed Order)(Balakrishnan, Anand) Modified docket text on 3/25/2025 (zdp). (Entered: 03/21/2025) |
| 03/22/2025 | <u>27</u> | AMENDED COMPLAINT against PETE R. FLORES, JENNIFER B. HIGGINS, BENJAMINE HUFFMAN, JAMES MCHENRY, CALEB VITELLO filed by MAKE THE ROAD NEW YORK. (Attachments: # <u>1</u> Exhibit Red Line of Amendment)(Balakrishnan, Anand) (Entered: 03/22/2025) |
| 03/23/2025 | <u>28</u> | NOTICE OF WITHDRAWAL OF MOTION by MAKE THE ROAD NEW YORK re <u>25</u> Consent MOTION to Amend/Correct <u>1</u> Complaint, (Balakrishnan, Anand) (Entered: 03/23/2025) |
| 03/24/2025 | <u>29</u> | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MAKE THE ROAD NEW YORK (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Exhibit)(Balakrishnan, Anand) (Entered: 03/24/2025) |
| 03/24/2025 | | MINUTE ORDER granting <u>26</u> Motion for Leave to Proceed Under Pseudonyms: Having considered the unopposed motion, and for good cause shown, the Court GRANTS the motion. It is hereby ORDERED that the individual Plaintiffs are given leave to proceed under the pseudonyms Mary and John, and to file their subsequent declarations under seal. Signed by Judge Jia M. Cobb on March 24, 2025. (lcjmc3) (Entered: 03/24/2025) |
| 03/24/2025 | <u>30</u> | SEALED DECLARATION filed by MAKE THE ROAD NEW YORK. re <u>26</u> Sealed Motion to Proceed Under Pseudonym,. (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Declaration)(zdp) (Entered: 03/25/2025) |
| 03/25/2025 | <u>35</u> | SEALED DOCUMENT Redline Complaint filed by MAKE THE ROAD NEW YORK. re <u>29</u> Sealed Motion for Leave to File Document Under Seal, <u>31</u> Order on Sealed Motion for Leave to File Document Under Seal. (This document is SEALED and only available to authorized persons.)(zdp) (Entered: 04/11/2025) |
| 03/27/2025 | <u>32</u> | First MOTION for Extension of Time to File Answer re <u>27</u> Amended Complaint by KRISTI NOEM, TODD LYONS, JENNIFER B. HIGGINS, PETE R. FLORES, PAM BONDI. (Attachments: # <u>1</u> Text of Proposed Order)(McGuire, Caroline) (Entered: 03/27/2025) |
| 03/31/2025 | <u>33</u> | RESPONSE re <u>32</u> First MOTION for Extension of Time to File Answer re <u>27</u> Amended Complaint *And Request to Adopt Plaintiffs' Proposed Schedule* filed by MARY, JOHN, MAKE THE ROAD NEW YORK. (Balakrishnan, Anand) (Entered: 03/31/2025) |
| 03/31/2025 | <u>34</u> | REPLY to opposition to motion re <u>32</u> Motion for Extension of Time to File Answer filed by KRISTI NOEM, TODD LYONS, JENNIFER B. HIGGINS, PETE R. FLORES, PAMELA J. BONDI. (McGuire, Caroline) (Entered: 03/31/2025) |

| 03/31/2025 | | MINUTE ORDER granting 32 Motion for Extension: Having considered the motion, and for good cause shown, the Court GRANTS the motion. It is further ORDERED that Defendants shall respond to the complaint in this action by April 18, 2025. The Court understands Plaintiffs' proposal for a schedule they believe will be more efficient, but the Court will not preclude Defendants from filing a motion to dismiss in response to Plaintiffs' complaint if that is what they choose to do. Signed by Judge Jia M. Cobb on March 31, 2025. (lcjmc3) (Entered: 03/31/2025) |
|---|---|---|
| 04/18/2025 | 36 | MOTION to Dismiss by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (Attachments: # 1 Text of Proposed Order)(McGuire, Caroline) (Entered: 04/18/2025) |
| 04/25/2025 | 37 | NOTICE of Appearance by Matt A. Crapo on behalf of IMMIGRATION REFORM LAW INSTITUTE (Crapo, Matt) (Entered: 04/25/2025) |
| 04/25/2025 | 38 | NOTICE of Appearance by Christopher Joseph Hajec on behalf of IMMIGRATION REFORM LAW INSTITUTE (Hajec, Christopher) (Entered: 04/25/2025) |
| 04/25/2025 | 39 | Unopposed MOTION for Leave to File Amicus Brief*in support of Defendants' Motion to Dismiss* by IMMIGRATION REFORM LAW INSTITUTE. (Attachments: # 1 Proposed Amicus Brief, # 2 Proposed Order)(Crapo, Matt) (Entered: 04/25/2025) |
| 04/26/2025 | 40 | Unopposed MOTION for Extension of Time to File Response/Reply *in support of Defendants' motion to dismiss* by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (Attachments: # 1 Text of Proposed Order)(McGuire, Caroline) (Entered: 04/26/2025) |
| 04/27/2025 | 41 | Consent MOTION for Extension of Time to File Response/Reply as to 36 MOTION to Dismiss by JOHN, MAKE THE ROAD NEW YORK, MARY. (Attachments: # 1 Text of Proposed Order)(Wofsy, Cody) (Entered: 04/27/2025) |
| 04/28/2025 | | MINUTE ORDER granting 39 Motion for Leave to File Amicus Brief: Having considered Immigration Reform Law Institute's unopposed motion for leave to file a brief as amicus curiae in support of Defendants' motion to dismiss, the Court GRANTS the motion. It is further ORDERED that the proposed brief accompanying the motion, ECF 39–1, be filed. Signed by Judge Jia M. Cobb on April 28, 2025. (lcjmc3) (Entered: 04/28/2025) |
| 04/28/2025 | | MINUTE ORDER granting 40 Motion for Extension: Having considered the unopposed motion, and for good cause shown, the Court GRANTS the motion. It is further ORDERED that Defendants' reply in support of their 36 motion to dismiss is due by May 13, 2025. Signed by Judge Jia M. Cobb on April 28, 2025. (lcjmc3) (Entered: 04/28/2025) |
| 04/28/2025 | | MINUTE ORDER granting 41 Motion for Extension: Having considered the unopposed motion, and for good cause shown, the Court GRANTS the motion. It is further ORDERED that Plaintiffs' opposition to Defendants' 36 motion to dismiss is due by May 12, 2025 and Defendants' reply is due by May 19, 2025. Signed by Judge Jia M. Cobb on April 28, 2025. (lcjmc3) (Entered: 04/28/2025) |
| 04/28/2025 | 42 | AMICUS BRIEF by IMMIGRATION REFORM LAW INSTITUTE. (zdp) (Entered: 04/29/2025) |
| 05/05/2025 | 43 | NOTICE of Appearance by Aditi Shah on behalf of All Plaintiffs (Shah, Aditi) (Main Document 43 replaced on 5/6/2025) (zdp). (Entered: 05/05/2025) |

| 05/12/2025 | 44 | RESPONSE re 36 MOTION to Dismiss filed by JOHN, MAKE THE ROAD NEW YORK, MARY. (Balakrishnan, Anand) (Entered: 05/12/2025) |
| --- | --- | --- |
| 05/14/2025 | 45 | Unopposed MOTION for Extension of Time to File Response/Reply as to 36 MOTION to Dismiss by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (Attachments: # 1 Text of Proposed Order)(McGuire, Caroline) (Entered: 05/14/2025) |
| 05/15/2025 | | MINUTE ORDER granting 45 Motion for Extension: Having considered the unopposed motion, and for good cause shown, the Court GRANTS the motion. It is further ORDERED that Defendants' reply in support of their 36 motion to dismiss is due by May 21, 2025. Signed by Judge Jia M. Cobb on May 15, 2025. (lcjmc3) (Entered: 05/15/2025) |
| 05/21/2025 | 46 | REPLY to opposition to motion re 36 Motion to Dismiss filed by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (McGuire, Caroline) (Entered: 05/21/2025) |
| 05/23/2025 | 47 | NOTICE of Appearance by Amy Belsher on behalf of All Plaintiffs (Belsher, Amy) (Entered: 05/23/2025) |
| 05/23/2025 | 48 | NOTICE of Appearance by Robert Hodgson on behalf of All Plaintiffs (Hodgson, Robert) (Entered: 05/23/2025) |
| 06/04/2025 | 49 | NOTICE of Appearance by Michael King Thomas Tan on behalf of All Plaintiffs (Tan, Michael) (Entered: 06/04/2025) |
| 06/10/2025 | 50 | MOTION to Postpone Effective Date of Agency Action by MAKE THE ROAD NEW YORK. (Attachments: # 1 Memorandum in Support of Motion to Postpone Effective Date of Agency Action, # 2 Declaration of Sienna Fontaine, # 3 Declaration of Siomara Umana, # 4 Declaration of Rachel Levenson, # 5 Declaration of Ariel Sims, # 6 Declaration of Andres Cortes, # 7 Declaration of Mary Doe, # 8 Declaration of Rosanna Eugenio, # 9 Declaration of Gillian Rowland–Kain, # 10 Declaration of Lisa Koop, # 11 Declaration of Audrey Gilliam, # 12 Declaration of Vanessa Dojaquez–Torres, # 13 Declaration of Yael Schacher, # 14 Declaration of Edna Yang, # 15 Declaration of William Botsch, # 16 Declaration of Kara Hartzler, # 17 Declaration of Timothy Warden–Hertz, # 18 Declaration of Laura Lunn, # 19 Declaration of Gracie Willis, # 20 Declaration of Stacy Tolchin, # 21 Declaration of Holly Cooper, # 22 Declaration of Joanna Delfunt, # 23 Declaration of Hannah Steinberg – Part 1 (Ex. nos. 1–20), # 24 Declaration of Hannah Steinberg – Part 2 (Ex. nos. 21–41), # 25 Text of Proposed Order)(Balakrishnan, Anand) (Entered: 06/10/2025) |
| 06/12/2025 | 51 | MOTION to Stay re 50 MOTION to Postpone Effective Date of Agency Action *Defendants' Deadline to Respond to Plaintiffs' Motion [ECF No. 50]* by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (Attachments: # 1 Text of Proposed Order)(McGuire, Caroline) (Entered: 06/12/2025) |
| 06/12/2025 | | MINUTE ORDER: The Court ORDERS Plaintiffs to respond to Defendants' 51 motion to stay Defendants' deadline by Monday, June 16, 2025. Signed by Judge Jia M. Cobb on June 12, 2025. (lcjmc3) (Entered: 06/12/2025) |
| 06/13/2025 | 52 | RESPONSE re 51 MOTION to Stay re 50 MOTION to Postpone Effective Date of Agency Action *Defendants' Deadline to Respond to Plaintiffs' Motion [ECF No. 50]* |

| | | |
|---|---|---|
| | | filed by MAKE THE ROAD NEW YORK. (Balakrishnan, Anand) (Entered: 06/13/2025) |
| 06/13/2025 | | MINUTE ORDER denying 51 Motion to Stay: Defendants move to stay their deadline to respond to Plaintiffs' 50 motion to stay agency action pending this Court's resolution of their 36 motion to dismiss. Having considered the 51 motion, and Plaintiffs' 52 opposition, the Court DENIES the motion. |
| | | Defendants offer two arguments in support of their motion to stay, but the Court is not persuaded by either. First, Defendants point to Plaintiffs' purported delay in filing their motion, suggesting that it undercuts Plaintiffs' assertion that they will be irreparably harmed or prejudiced by the stay. But Plaintiffs represent that they filed their motion in response to recent events, which have occurred only in the last month. So the Court cannot find that any undue delay on Plaintiffs' part justifies staying their pending request for relief. Second, Defendants argue the Court should resolve the 36 motion to dismiss first because it raises threshold issues that may result in dismissal of the case, or at least narrow the issues, before the Court need turn to Plaintiffs' 50 motion to stay. But Defendants' request that the Court potentially issue a final judgment in its favor before considering the issues on a preliminary basis on a Section 705 motion would seem to invert Section 705's textual command that a reviewing court consider a stay of the effective date of an agency action "pending conclusion of the review proceedings" whenever "necessary to prevent irreparable injury." 5 U.S.C. § 705. Plaintiffs have advanced an argument of irreparable harm, thereby triggering a Section 705 determination at this juncture. Moreover, the Court agrees with Plaintiffs that to the extent both motions present overlapping or duplicative issues, this Court can address both concurrently, as other courts have in similar circumstances. *See* ECF 52 at 4 (collecting cases). Accordingly, the Court further ORDERS the Parties to file, by June 18, 2025, a joint proposed briefing schedule for 50 Plaintiffs' motion to stay agency action. Signed by Jia M. Cobb on June 13, 2025. (lcjmc3) (Entered: 06/13/2025) |
| 06/17/2025 | 53 | ENTERED IN ERROR.....PROPOSED BRIEFING SCHEDULE re 50 MOTION to Postpone Effective Date of Agency Action –*JOINT* by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (Attachments: # 1 Text of Proposed Order)(McGuire, Caroline) Modified on 6/17/2025 (zdp). (Entered: 06/17/2025) |
| 06/17/2025 | | NOTICE OF ERROR regarding 53 Proposed Briefing Schedule,. The following error(s) need correction: Incorrect court case number. Please refile. (zdp) (Entered: 06/17/2025) |
| 06/17/2025 | 54 | PROPOSED BRIEFING SCHEDULE re 50 MOTION to Postpone Effective Date of Agency Action – *JOINT – refiled per the Court's instructions* by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (Attachments: # 1 Text of Proposed Order)(McGuire, Caroline) (Entered: 06/17/2025) |
| 06/17/2025 | | MINUTE ORDER: Having considered the Parties' joint statement regarding a briefing schedule for 50 Plaintiffs' motion to stay agency action, the Court hereby ORDERS the following briefing schedule: Defendants' opposition is due by June 24, 2025; and Plaintiffs' reply is due by July 1, 2025. Signed by Judge Jia M. Cobb on June 17, 2025. (lcjmc1) (Entered: 06/17/2025) |
| 06/23/2025 | 55 | Consent MOTION for Leave to File Excess Pages by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (Attachments: |

| | | # 1 Text of Proposed Order)(McGuire, Caroline) (Entered: 06/23/2025) |
|---|---|---|
| 06/23/2025 | | MINUTE ORDER granting 55 Motion for Leave to File Excess Pages: Having considered the unopposed motion, and for good cause shown, the Court GRANTS the motion. It is further ORDERED that Defendants may file a response to 50 Plaintiffs' motion to stay agency action that exceeds the page limit by ten pages or fewer. Signed by Judge Jia M. Cobb on June 23, 2025. (lcjmc3) (Entered: 06/23/2025) |
| 06/24/2025 | | MINUTE ORDER Setting Hearing: The Parties are hereby ORDERED to appear for a hearing on 50 Plaintiffs' motion to stay agency action on July 9, 2025, at 10:00 AM in Courtroom 3– In Person before Judge Jia M. Cobb. Each side will have 30 minutes for argument. Signed by Judge Jia M. Cobb on June 24, 2025. (lcjmc3) (Entered: 06/24/2025) |
| 06/24/2025 | 56 | Memorandum in opposition to re 50 MOTION to Postpone Effective Date of Agency Action filed by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM. (Attachments: # 1 Text of Proposed Order)(McGuire, Caroline) (Entered: 06/24/2025) |
| 06/30/2025 | 57 | Unopposed MOTION for Leave to File Excess Pages by MAKE THE ROAD NEW YORK. (Attachments: # 1 Text of Proposed Order)(Balakrishnan, Anand) (Entered: 06/30/2025) |
| 06/30/2025 | | MINUTE ORDER granting 57 Motion for Leave to File Excess Pages: Having considered the unopposed motion, and for good cause shown, the Court GRANTS the motion. It is further ORDERED that Plaintiffs may file a reply in support of 50 their motion to stay agency action that exceeds the page limit by ten pages or fewer. Signed by Judge Jia M. Cobb on June 30, 2025. (lcjmc3) (Entered: 06/30/2025) |
| 07/01/2025 | 58 | REPLY re 50 MOTION to Postpone Effective Date of Agency Action filed by MAKE THE ROAD NEW YORK. (Attachments: # 1 Exhibit 1: Yamataya Supreme Court Records)(Balakrishnan, Anand) Modified docket text on 7/8/2025 (zdp). (Entered: 07/01/2025) |
| 07/01/2025 | 59 | MOTION for Leave to File Amicus Brief *in support of Defendants* by IMMIGRATION REFORM LAW INSTITUTE. (Attachments: # 1 Amicus Brief, # 2 Proposed Order)(Hajec, Christopher) (Entered: 07/01/2025) |
| 07/03/2025 | | MINUTE ORDER granting 59 Motion for Leave to File Amicus Brief: A district court "has broad discretion to allow amicus briefs when they provide unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 50 F.4th 164, 193 (D.C. Cir. 2022) (internal quotations and citations omitted). Immigration Reform Law Institute (IRLI), which represents that it is a public interest law firm dedicated "to assisting courts in understanding federal immigration law," requests leave to submit an amicus brief that "discusses the issues of liberty interest(s) and due process not fully addressed by Defendants," ECF 59 at 2, in response to Plaintiffs' 50 motion to postpone the effective date of agency action. Plaintiffs object that the brief is untimely, submitted after they have already filed their reply brief, so they will not have sufficient time to respond to it. *Id.* at 1 n.1.<br><br>The Court GRANTS the motion. IRLI's brief addresses discrete issues that it contends have not been fully explored by the Parties and thus offers "unique information or perspective" that could help the Court. *Washington All. of Tech. Workers*, 50 F.4th at 193. Despite Plaintiffs' objection, consideration of the amicus brief will not "unduly |

| | | |
|---|---|---|
| | | delay the Court's ability to rule" on the pending motion. LCvR 7(o)(2). Plaintiffs can respond to IRLI's arguments at the upcoming hearing on their motion or submit a brief written response if they wish to supplement the record after the hearing. Accordingly, the Court GRANTS the <u>59</u> motion for leave to file an amicus brief. It is further ORDERED that the proposed brief accompanying the motion be filed. Signed by Judge Jia M. Cobb on July 3, 2025. (lcjmc3) (Entered: 07/03/2025) |
| 07/03/2025 | <u>62</u> | AMICUS BRIEF by IMMIGRATION REFORM LAW INSTITUTE. (zdp) (Entered: 07/10/2025) |
| 07/04/2025 | <u>60</u> | NOTICE OF SUPPLEMENTAL AUTHORITY by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD LYONS, KRISTI NOEM (McGuire, Caroline) (Entered: 07/04/2025) |
| 07/07/2025 | <u>61</u> | RESPONSE re <u>60</u> NOTICE OF SUPPLEMENTAL AUTHORITY filed by MAKE THE ROAD NEW YORK. (Balakrishnan, Anand) (Entered: 07/07/2025) |
| 07/09/2025 | | Minute Entry for proceedin held on 7/9/2025 before Judge Jia M. Cobb: Motion Hearing re <u>50</u> Plaintiffs' motion to stay agency action. Both parties present and plead their arguments. This matter was taken under advisement. (Court Reporter Stacy Johns.) (zed) (Entered: 07/09/2025) |
| 08/08/2025 | <u>63</u> | NOTICE OF SUPPLEMENTAL AUTHORITY by MAKE THE ROAD NEW YORK (Attachments: # <u>1</u> Exhibit Order and Attachments, Co Tupul v. Noem)(Balakrishnan, Anand) (Entered: 08/08/2025) |
| 08/29/2025 | <u>64</u> | MEMORANDUM OPINION re <u>50</u> Motion to Postpone Effective Date of Agency Action: See document for details. Signed by Judge Jia M. Cobb on August 29, 2025. (lcjmc3) (Entered: 08/29/2025) |
| 08/29/2025 | <u>65</u> | ORDER granting <u>50</u> Motion to Postpone Effective Date of Agency Action: See document for details. Signed by Judge Jia M. Cobb on August 29, 2025. (lcjmc3) (Entered: 08/29/2025) |
| 09/02/2025 | <u>66</u> | NOTICE OF APPEAL TO DC CIRCUIT COURT as to <u>64</u> Memorandum & Opinion, <u>65</u> Order on Motion for Miscellaneous Relief by PAMELA J. BONDI, TODD M. LYONS, JENNIFER B. HIGGINS, PETE R. FLORES. Fee Status: No Fee Paid. Parties have been notified. (McGuire, Caroline) (Entered: 09/02/2025) |
| 09/02/2025 | <u>67</u> | MOTION to Stay *THE COURTS AUGUST 29, 2025 ORDER GRANTING STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705 PENDING APPEAL* by PAMELA J. BONDI, PETE R. FLORES, JENNIFER B. HIGGINS, TODD M. LYONS, KRISTI NOEM. (Attachments: # <u>1</u> Text of Proposed Order)(McGuire, Caroline) (Entered: 09/02/2025) |

BRETT A. SHUMATE
*Assistant Attorney General*
*Civil Division*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
BRIAN C. WARD
*Acting Assistant Director*
CAROLINE MCGUIRE
ELISSA P. FUDIM
JOSEPH A. MCCARTER
*Trial Attorneys*
U.S. Department of Justice
Office of Immigration Litigation
General Appeals and Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAKE THE ROAD NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00190 (JMC) <br><br> Hon. Jia M. Cobb <br><br> **NOTICE OF APPEAL** |

PLEASE TAKE NOTICE that all Defendants appeal to the United States Court of Appeals for the District of Columbia Circuit from the order entered on August 29, 2025, granting a stay of agency action under 5 U.S.C. § 705 (ECF No. 65), and the accompanying memorandum opinion (ECF No. 64). The order is an appealable interlocutory order of the district court. 28 U.S.C. § 1292(a)(1).

Dated: September 2, 2025                    Respectfully submitted,

                                            BRETT A. SHUMATE
                                            *Assistant Attorney General*
                                            *Civil Division*

                                            DREW C. ENSIGN
                                            *Deputy Assistant Attorney General*

                                            BRIAN C. WARD
                                            *Acting Assistant Director*

                                            JOSEPH A. McCARTER
                                            ELISSA P. FUDIM
                                            CAROLINE McGUIRE
                                            Trial Attorneys

                                            */s/ Caroline McGuire*
                                            CAROLINE MCGUIRE
                                            NY Bar No. 5854823
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Office of Immigration Litigation
                                            General Litigation and Appeals Section
                                            P.O. Box 868, Ben Franklin Station
                                            Washington, DC 20044
                                            Telephone: (202) 532-4268;
                                            Fax: (202) 305-7000
                                            caroline.mcguire@usdoj.gov
                                            *Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAKE THE ROAD NEW YORK, *et al.*, | |
| Plaintiffs, | Case No. 25-cv-190 (JMC) |
| v. | |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, | |
| Defendants. | |

## <u>ORDER</u>

For the reasons stated in the accompanying memorandum opinion, it is hereby **ORDERED** that Plaintiffs' Motion for a Stay of Agency Action under 5 U.S.C. § 705, ECF 22, is **GRANTED**.

It is further **ORDERED** that, to preserve status or rights pending conclusion of the review proceedings, the effective dates of implementation and enforcement of the January 21 Designation Notice and the January 23 Huffman Memorandum, insofar as it implements the January 21 Designation Notice, are immediately postponed and stayed.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: August 29, 2025

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MAKE THE ROAD NEW YORK, *et al.*,

               Plaintiffs,

     v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, *et al.*,

               Defendants.

Case No. 25-cv-190 (JMC)

---

## <u>MEMORANDUM OPINION</u>

For nearly three decades, the federal government has subjected noncitizens apprehended at the border to fast-paced summary removal. Using that procedure, these people are quickly turned back across the border, typically after a single conversation with an immigration officer. This process, known as expedited removal, has long been applied to noncitizens "who are apprehended immediately proximate to the land border and [who] have negligible ties or equities in the [United States]." Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004).[1]

Recently, the Government departed from this longstanding practice. In January 2025, the Government expanded the scope of expedited removal to noncitizens apprehended anywhere in the United States. And in the last few months, the Government has made aggressive use of its newly expanded expedited removal power. When people have appeared in immigration courts for their normally paced immigration proceedings, for instance, the Government has moved to dismiss

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

those proceedings, promptly arrested individuals inside of those courts, and then shuttled them into much faster moving—and much less procedurally robust—expedited removal proceedings. Days later, these people find themselves removed.

The problem, though, is that unlike the group of people who have traditionally been subject to expedited removal—those detained at or near the border shortly after crossing—the group of people the Government is now subjecting to expedited removal have long since entered our country. That means that they have a weighty liberty interest in remaining here and therefore must be afforded due process under the Fifth Amendment. When it exponentially expanded the population subject to expedited removal, the Government did not, however, in any way adapt its procedures to this new group of people.

But when it comes to people living in the interior of the country, prioritizing speed over all else will inevitably lead the Government to erroneously remove people via this truncated process. That is because most noncitizens living in the interior have been here longer than two years, rendering them ineligible for expedited removal, and many are seeking asylum or another form of immigration relief, entitling them to further process before they can be removed. The procedures the Government currently uses in expedited removal, however, create a significant risk that it will not identify these disqualifying criteria before quickly ordering someone removed. And the lack of available review means that once the removal happens, it is largely too late to correct the error.

In defending this skimpy process, the Government makes a truly startling argument: that those who entered the country illegally are entitled to no process under the Fifth Amendment, but instead must accept whatever grace Congress affords them. Were that right, not only noncitizens, but everyone would be at risk. The Government could accuse you of entering unlawfully, relegate you to a bare-bones proceeding where it would "prove" your unlawful entry, and then immediately

2

remove you. By merely accusing you of entering unlawfully, the Government would deprive you of any meaningful opportunity to disprove its allegations. Fortunately, that is not the law. The Constitution guarantees that "no person shall be removed from the United States without opportunity, at some time, to be heard." *A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025). That is equally true of those here unlawfully, who are "entitle[d] . . . to due process of law in the context of removal proceedings." *Id.*

Plaintiff Make the Road has made a strong showing that the Government's expansion of expedited removal violates the due process rights of those it affects. So too has the organization demonstrated that its members will be irreparably harmed if the designation and guidance effectuating the expansion are not stayed. Because the public interest and equities also favor Make the Road, the Court will **GRANT** the requested stay. In so holding, the Court does not cast doubt on the constitutionality of the expedited removal statute, nor on its longstanding application at the border. It merely holds that in applying the statute to a huge group of people living in the interior of the country who have not previously been subject to expedited removal, the Government must afford them due process. The procedures currently in place fall short.

## I.     BACKGROUND

In another case related to the Government's recent expansion of expedited removal, this Court detailed the statutory and regulatory framework governing expedited removal, as well as the history of its application, at length. *See Coal. for Humane Immigrant Rts. v. Noem* (*CHIR*), No. 25-cv-872, 2025 WL 2192986, at *3–6, *9–10 (D.D.C. Aug. 1, 2025). The Court offers an abbreviated account of that history and the challenged Government actions here.

3

A.  **Statutory and Regulatory Framework**

   1.  **Expedited Removal**

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA or the Act), Congress established two main processes for removing noncitizens deemed ineligible to enter or remain in the United States.[2] *See* IIRIRA, Pub. L. 104-208, 110 Stat. 3009, div. C (1996). The first, commonly referred to as "section 240" proceedings due to the section of the Act in which it appears, is the standard mechanism for removing inadmissible noncitizens. Section 240 removal proceedings take place before an immigration judge (IJ), an employee of the Department of Justice who must be a licensed attorney and has a duty to develop the record in cases before them. 8 U.S.C. § 1229a(a)(1), (b)(1); 8 C.F.R. § 1003.10(a). They are adversarial proceedings in which the noncitizen has the right to hire counsel, examine and present evidence, and cross-examine witnesses. 8 U.S.C. § 1229a(b)(4). Section 240 proceedings typically take place over the course of multiple hearings. *See CHIR*, 2025 WL 2192986, at *3. This allows time for individuals to gather and present evidence in support of petitions for relief available in immigration court (like asylum) and to seek collateral relief from other components of the Department of Homeland Security (like adjustment of status on the basis of marriage or family). *See* 8 U.S.C. §§ 1229a(b)(4)(B), (c)(4), 1229b.  After an IJ renders a decision, either party may appeal to the Board of Immigration Appeals. 8 C.F.R. §§ 1240.15, 1003.1. If the Board upholds a removal order, the noncitizen can appeal that decision to a federal court of appeals. 8 U.S.C. § 1252. The Congress that passed IIRIRA referred to the new section 240 as a "streamline[d]" removal process relative to what came

---

[2] The statute and regulations at issue typically use the term "aliens" rather than "noncitizens." However, as this Court has previously explained, *CHIR*, 2025 WL 2192986, at *3 n.3, it will use the term "noncitizen" unless quoting from a statute, regulation, or case that uses "alien."

4

before it because, among other things, it removed a layer of appellate review. H.R. Rep. 104-469(I), 12, 107–08 (1996).

Still, IIRIRA included a second, even more streamlined, form of proceeding applicable only to certain noncitizens: expedited removal. Relative to section 240 removal, "[e]xpedited removal lives up to its name." *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 619 (D.C. Cir. 2020). In expedited removal, an immigration officer, not an IJ, conducts the initial fact-finding. 8 C.F.R. § 235.3(b)(2)(i). The immigration officer asks a short series of questions to determine (a) the individual's "identity, alienage, and inadmissibility," and (b) whether they intend to apply for asylum, fear persecution or torture, or fear returning to their country of origin. *Id.* § 235.3(b)(2)(i), (b)(4). Noncitizens are not entitled to counsel during this questioning. *See United States v. Guzman*, 998 F.3d 562, 567 (4th Cir. 2021) ("[I]t is undisputed that the text of the INA's expedited removal procedure does not require that the alien be advised of a right to counsel or be accommodated in an effort to obtain counsel."). If the noncitizen is inadmissible and does not indicate that they intend to apply for asylum or fear persecution, the inspecting officer issues a Notice and Order of Expedited Removal, and the noncitizen may respond in a sworn statement. 8 C.F.R. § 235.3(b)(2)(i). Once a supervising officer reviews and signs off on the inspecting officer's determination, the noncitizen is ordered removed. *See id.* The noncitizen has no right to appeal that decision to an IJ, the Board of Immigration Appeals, or (with one exception discussed below) any court. *Id.* § 235.3(b)(2)(ii); 8 U.S.C. § 1252(a)(2)(A)(i).

"The process is scarcely more involved" if the noncitizen "assert[s] an intention to apply for asylum or a fear of persecution." *Make the Rd.*, 962 F.3d at 619. If the noncitizen so indicates, the inspecting officer must refer them for a "credible fear interview," to be conducted by an asylum officer. 8 C.F.R. § 235.3(b)(4). If that asylum officer finds the noncitizen to have a credible fear

of persecution, the noncitizen will be moved either to full section 240 removal proceedings or to administrative asylum proceedings. *Id.* § 208.30(f). If, however, the officer makes a negative credible fear determination, a supervisor will review the determination. *Id.* § 208.30(e)(8). If the supervisor agrees with the negative determination, the noncitizen can then request review by an IJ. 8 U.S.C. § 1225(b)(1)(B)(iii)(III). The IJ's review "is meant to conclude within 24 hours" and is final. *Make the Rd.*, 962 F.3d at 619. With narrow exceptions discussed below, no further administrative or judicial review is available. *Id.*

Unlike section 240 proceedings, which often take place over the course of several months, the expedited removal order is "usually issued within a few days, if not hours." ECF 50-16, Hartzler Decl. ¶ 13.[3] As a result, noncitizens subject to expedited removal have "almost no opportunity to prepare a defense to the charge of removal." *Id.* Also unlike section 240 proceedings, individuals subject to expedited removal typically do not have an opportunity to review the government's evidence against them or cross-examine witnesses. *Id.* And because noncitizens are usually detained during expedited removal proceedings, often far from their families or any counsel, they face significant barriers in gathering materials that they might use as evidence in the proceedings. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii); ECF 50-21, Cooper Decl. ¶¶ 6–7 (explaining that detention centers do not provide confidential

---

[3] Make the Road put forward evidence from a large number of attorneys and organizations that have represented people in both section 240 and expedited removal proceedings, including attorneys who previously worked for the Government in those proceedings. *See, e.g.*, ECF 50-18, Lunn Decl. ¶ 2; *see generally* ECF 50-2–50-22. Make the Road also offered reports addressing these removal processes prepared by the Department of Homeland Security, congressionally authorized committees, and others, as well as public reporting on the Government's recent statements. *See, e.g.*, ECF 50-23, Steinberg Decl. at 28; ECF 50-24, Steinberg Decl. at 214; *see generally* ECF 50-23 Steinberg Decl. at 1–2 (exhibit list). The Government has not contested these materials' description of the expedited removal process, nor has it put forward *any* evidence of its own about how the process works. The Government does make a single passing reference to the inclusion of hearsay, without developing any argument about any particular piece of evidence. *See* ECF 56 at 44. Although "the Federal Rules of Evidence do not apply" to proceedings for preliminary relief, the Court has considered the "relevance and reliability" of Make the Road's evidence. *FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 313 n.29 (D.D.C. 2020) (discussing rule for preliminary injunction hearing). Having done so, the Court finds that the evidence accompanying the motion is "relevan[t] and relia[ble]" and therefore credits and relies on it in describing the expedited removal process. *Id.*

6

emails, fax, or other means of receiving documents other than mail, which on average takes 5–10 days to reach detained clients).

Key to the speed of expedited removal is the lack of almost any judicial review. The Act provides that "no court shall have jurisdiction to review" issues related to expedited removal unless they fall into a narrow set of exceptions outlined in section 1252(e). 8 U.S.C. § 1252(a)(2)(A). Under that provision, two forms of judicial review are available. First, a noncitizen may file a habeas petition to challenge their expedited removal. However, that habeas proceeding is limited to determining (a) "whether the petitioner is an alien," (b) whether the petitioner was ordered removed under the expedited removal provision, and (c) whether the petitioner can prove that they were lawfully admitted or granted asylum. *Id.* § 1252(e)(2). Second, noncitizens may challenge expedited removal determinations, as well as the implementation of the expedited removal statute, in this Court. *Id.* § 1252(e)(3)(A). In such suits, referred to in the statute as "[c]hallenges on validity of the system," a plaintiff may challenge only (i) whether the statute's expedited removal section, or any regulation implementing it, is constitutional, or (ii) "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." *Id.* § 1252(e)(3). This kind of suit must be filed within 60 days after the date the challenged statutory provision or agency action is first implemented, *id.* § 1252(e)(3)(B), and it may not be a class action, *id.* § 1252(e)(1)(B).

The expedited removal regulations provide a few additional avenues for noncitizens to prove that they are not in fact eligible for expedited removal. During the initial interview with an immigration officer, a noncitizen may "claim[] to have been lawfully admitted for permanent residence, admitted as a refugee under section 207 of the Act, granted asylum under section 208

of the Act, or claim[] to be a U.S. citizen." 8 C.F.R. § 235.3(b)(5)(i). If the immigration officer can verify any of those claims, the (alleged) noncitizen will not be removed. *Id.* § 235.3(b)(5)(ii)–(iv). If the immigration officer cannot verify the claim, but the (alleged) noncitizen makes the claim under penalty of perjury, the case is referred for review by an immigration judge. *Id.* § 235.3(b)(5)(iv). In addition, the regulations permit the noncitizen to "establish that he or she was admitted or paroled into the United States." *Id.* § 235.3(b)(6). The noncitizen must be given "a reasonable opportunity to establish to the satisfaction of the examining immigration officer that he or she was admitted or paroled into the United States following inspection at a port-of-entry." *Id.* "If the alien establishes that he or she was lawfully admitted or paroled," the regulation continues, the agency reviews whether the noncitizen's parole "has been, or should be, terminated." *Id.* If the noncitizen cannot establish that they were "lawfully admitted or paroled," they "will be ordered removed pursuant to" the expedited removal provision. *Id.*

### 2. Expedited Removal Designations

Noncitizens may be eligible for expedited, rather than section 240, removal if they are inadmissible because they either lack proper entry documents or falsified or misrepresented their application for admission. 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7) (grounds of inadmissibility). Among that set, only two still narrower categories of noncitizens are eligible for expedited removal: (1) noncitizens "arriving in the United States," and (2) noncitizens who "ha[ve] not been admitted or paroled into the United States" and cannot affirmatively show that they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* § 1225(b)(1)(A)(i)–(iii).[4] The statute

---

[4] In addition, the statute exempts from expedited removal noncitizens who are "native[s] or citizen[s] of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry." 8 U.S.C. § 1225(b)(1)(F).

permits the Attorney General (who has since delegated the authority to the DHS Secretary) to designate the population of noncitizens within that second category who will be subject to expedited removal. *Id.* § 1225(b)(1)(A)(iii)(I).

Initially, DHS's predecessor agency[5] did not make any designation, thereby limiting expedited removal only to "arriving aliens." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 10313 (Mar. 6, 1997). In so doing, the agency "acknowledge[d] that application of the expedited removal provisions to aliens already in the United States w[ould] involve more complex determinations of fact and w[ould] be more difficult to manage." *Id.* Since then, though, DHS has made designations. One of those extended expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and another to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days.[6] And that was the state of play at the beginning of this year, with the only people eligible for expedited removal being (1) "arriving aliens," (2) those who arrived by sea within the last two years, and (3) those apprehended within 100 miles of the border and 14 days of entry. Then, in January, the Government issued the designation—which the Court will refer to as the 2025 Designation—at issue here.

The 2025 Designation authorized DHS "to exercise the full scope of its statutory authority" in utilizing expedited removal. Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139,

---

[5] The Commissioner of the Immigration and Nationalization Service used to make this designation before that agency was abolished and DHS was created in 2002. *See Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 16 n.7 (D.D.C. 2019) (K.B. Jackson, J.) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002); 6 U.S.C. § 557).

[6] *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68924 (Nov. 13, 2002); Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004).

8139 (Jan. 24, 2025).[7] Thus, as of January 21, 2025, DHS asserts the authority to apply expedited removal to noncitizens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years." *Id.* In supplementing the previous designations that remained in effect with the 2025 Designation, DHS has applied expedited removal to the maximum extent permitted by section 1255(b)(1)(A). This is a significant change: Aside from a brief window in 2019,[8] expedited removal has always been limited to (at the most) those arriving by sea, or those within 100 miles of the border who had not been in the country for more than 14 days. *See CHIR*, 2025 WL 2192986, at *6 & n.9.

Days after the 2025 Designation was made, Acting Secretary of DHS Benjamine Huffman issued guidance—which is also challenged here—explaining that on "January 21, 2025, [he] signed and transmitted to the Federal Register a notice entitled Designating Aliens for Expedited Removal." Dep't of Homeland Sec., Memorandum from Acting Secretary Benjamine C. Huffman on Guidance Regarding How to Exercise Enforcement Discretion (Jan. 23, 2025), https://perma.cc/W3CL-SNDN [*hereinafter* Huffman Memorandum]. "That notice expands the scope of expedited removal to the statutory maximum under 8 U.S.C. § 1225(b)(l) which, as further

---

[7] This Notice was effective on January 21, 2025, and was published in the Federal Register on January 24, 2025. *See* 90 Fed. Reg. at 8139.

[8] That period of time in 2019 should not be overstated, either. The 2019 Designation Notice that extended expedited removal to the same population subject to the 2025 Designation was preliminarily enjoined around two months after it was issued. *See Make the Rd.*, 405 F. Supp. 3d at 72. The D.C. Circuit reversed that preliminary injunction the following year, in June 2020. *See Make the Rd.*, 962 F.3d at 635. And in February 2021, President Biden directed DHS to consider rescinding the 2019 designation, which it later did. *See* Exec. Order 14010, 86 Fed. Reg. 8267, 8270–71 (Feb. 2, 2021). During the short period the 2019 Designation was in effect, DHS used it in an "exceedingly small number of cases." ECF 50-23, Steinberg Decl. at 250–51 (data shared by DHS suggests that the 2019 Designation was used to deport around 17 people during the first Trump administration and four people during the early months of the Biden administration).

explained in the notice, includes certain aliens who have not been continuously present in the United States for two years." *Id.*

Make the Road challenges here both the 2025 Designation Notice and the Huffman Memorandum implementing the notice. ECF 50 at 1.[9] Because the 2025 Designation added to, but did not alter, prior designations covering noncitizens who arrive by sea and noncitizens apprehended within 100 miles of the border and 14 days of entry, Make the Road's challenge does not affect the application of expedited removal to either of those populations.

## B. Factual and Procedural Background

### 1. Recent Efforts to Enforce the 2025 Designation

During the first few months it was in effect, the Government was slow to implement the 2025 Designation. In May, however, enforcement efforts significantly ramped up.

Make the Road has put forward evidence—which the Government has not disputed—that the Government set a goal that month of making 3,000 immigration arrests each day. *See* ECF 50-23, Steinberg Decl. at 300. Apparently in an effort to meet that goal, the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief. *See* ECF 50-23, Steinberg Decl. at 282 (describing new initiative involving "courthouse arrests"). In its declarations, Make the Road details numerous arrests of individuals at their immigration court hearings. ECF 50-3, Umana Decl. ¶ 11; ECF 50-4, Levenson Decl. ¶ 27; *see also* ECF 50-9, Rowland-Kain Decl. ¶ 16 (arrests in the elevator of New York immigration court); ECF 50-10, Koop Decl. ¶¶ 7, 10 (arrests in hallway of Chicago Immigration Court); ECF 50-11, Gilliam Decl. ¶ 4 (arrests in hallway of Seattle Immigration

---

[9] The Huffman Memorandum also offered guidance on the implementation of other agency action. *See* ECF 50-23, Steinberg Decl. at 9–10. The Court only addresses here the Huffman Memorandum's guidance on the implementation of the January 21, 2025 "notice entitled Designating Aliens for Expedited Removal." *Id.*

Court); ECF 50-14, Yang Decl. ¶ 15–16 (arrests in hallway, lobby, and parking lot of San Antonio Immigration Court). These arrests follow a common pattern, with DHS first moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in the section 240 proceedings.[10] Using this method, the Government has deported people within days of dismissing their section 240 proceedings. *See* ECF 50-2, Fontaine Decl. ¶ 39; ECF 50-15, Botsch Decl. ¶ 4.

The record reveals that the Government's expanded expedited removal efforts have not been limited to courthouses. In June 2025, the Government also launched a series of workplace raids as part of a "new phase of the Trump administration's immigration crackdown." ECF 50-24, Steinberg Decl. at 382. White House "border czar" Thomas D. Homan warned: "You're going to see more work site enforcement than you've ever seen in the history of this nation." *Id.* And a DHS spokesperson stated that "2,000 immigrants per day were arrested" during the first week in June. *Id.* at 383. Given these enforcement efforts, Make the Road calls it a "near-certainty that even more people"—including its members—"will be placed in expedited removal pursuant to the" 2025 Designation and its implementing guidance. ECF 50-1 at 14.

### 2. Plaintiff Make the Road

Make the Road New York is a nonprofit, membership-based community organization that offers education, legal, health, and community services to low-income and immigrant New Yorkers. ECF 50-2, Fontaine Decl. ¶¶ 2, 7. Make the Road's "mission is to build the power of

---

[10] *See* ECF 50-9, Rowland-Kain Decl. ¶¶ 5, 8, 16; ECF 50-12, Dojaquez-Torres Decl. ¶ 3; ECF 50-8, Eugenio Decl. ¶¶ 7, 10, 12; ECF 50-10, Koop Decl. ¶¶ 6–7, 10; ECF 50-11, Gilliam Decl. ¶ 4; ECF 50-14, Yang Decl. ¶ 15–16.

immigrant and working-class communities to achieve dignity and justice." *Id.* ¶ 3. It has over 28,000 members "residing in New York City, Westchester County, and Long Island." *Id.* ¶ 13. Make the Road brings this lawsuit on behalf of its members, asserting associational standing to vindicate their rights. *See* ECF 44 at 12.

Make the Road's members include noncitizens who have been in the country for between 14 days and two years, and who are therefore subject to expedited removal under the 2025 Designation. *See* ECF 50-2, Fontaine Decl. ¶ 17. Those members appear regularly for section 240 proceedings and are at risk of being apprehended there or elsewhere in their communities and summarily removed under the expedited removal policies currently being implemented. *Id.* ¶¶ 23, 25, 29. They are therefore now at risk of being "removed from the United States without sufficient opportunity to show that they have the right to remain . . . or to assert claims for immigration relief for which they are eligible." *Id.* ¶ 17.

Two such members who are newly subject to expedited removal have submitted pseudonymous declarations. John Doe 4 came to the United States in October 2023, "escaping for [his] life," and has since filed an asylum application. ECF 50-2, MRNY-John Doe 4 Decl. at 15 ¶ 2. He has "tried to do everything correctly here," but is at risk of being put into expedited removal at one of his upcoming removal proceedings prior to the processing of his pending asylum application. *Id.* at 15 ¶ 5. Jane Doe 2 came to the United States with her partner and children in March 2024, fleeing persecution and threats from "government-aligned gangs." *Id.*, MRNY-Jane Doe 2 Decl. at 18 ¶ 2. She is currently in section 240 removal proceedings. *Id.* at 18 ¶ 3. Her family has similarly "tried to do everything correctly." *Id.* at 18 ¶ 5. They applied for asylum within their first year, have received employment authorization, and have attended their appointments with ICE. *Id.* She remains at risk of being placed into expedited removal and "being detained and

13

separated from [her] children, who would have no one to care for them." *Id.* at 18 ¶ 4. She also stands to lose her "opportunity to apply for asylum and to include [her] children as derivatives on [her] asylum application and of not having the opportunity to testify and share [her] story with an immigration judge." *Id.*

Make the Road's members also include noncitizens who have been continuously present for longer than 2 years, but who "may be erroneously placed into expanded expedited removal either because they do not have, or do not carry, documentation of their continuous length of residence or would not be able to present that documentation on the short timeline envisioned by the [2025 Designation], especially if they are detained by immigration authorities." *Id.* ¶ 18. Make the Road put forward evidence confirming that this risk exists for its members who have been present for longer than two years. One Make the Road attorney, for example, recounted that a man who had been present for three years was detained at an immigration court in New York after his section 240 proceedings were dismissed. *See* ECF 50-4, Levenson Decl. ¶¶ 23–24.

Plaintiffs Mary and John—who also filed this suit with Make the Road—similarly demonstrate the risk that Make the Road's members who have been here longer than two years will be put into expedited removal. While Mary and John do not seek interim relief through this motion, *see* ECF 50-1 at 4 n.1, Mary did submit a declaration in support of the motion. Mary first entered the United States on a visa in January 2015 and had been continuously present in the country since February 8, 2015, much longer than two years. ECF 50-7, Mary Doe Decl. ¶¶ 9–10. She has five children—John, who is 18-years old and a plaintiff in this suit, and 15-, 11-, 8-, and 6-year-olds. *Id.* ¶¶ 2, 7. On January 27, 2025, Mary and John were apprehended by immigration officers after a traffic stop and detained for expedited removal processing. *Id.* ¶ 12. While detained, Mary and John were not allowed to make any calls or contact an attorney. *Id.* ¶¶ 15–18. By 9 AM

14

the next day, they were issued a Notice and Order of Expedited Removal. *Id.* ¶ 19; *see also id.* at

6. They were "never asked or given the option to sign [their] deportation orders," and were instead

taken to "a border bridge in a car and told to walk across." *Id.* ¶¶ 20–21.

### 3. This Suit

Make the Road filed a complaint in this Court on January 22, 2025, a day after the 2025

Designation Notice became effective, alleging that the designation violated the Due Process Clause

of the Fifth Amendment, exceeded DHS's statutory authority under IIRIRA, the Immigration and

Nationality Act, and the Administrative Procedure Act (APA); was arbitrary and capricious in

violation of the APA; and violated the APA's notice and comment requirements. ECF 1 ¶¶ 101–

18. Make the Road sued DHS Secretary Kristi Noem along with several other executive branch

officials, all in their official capacities. *Id.* at 1. On March 22, 2025, Make the Road amended its

complaint to add Mary and John as plaintiffs, to challenge the Huffman Guidance, and to add an

additional claim for relief that the challenged actions were not in accordance with law and

exceeded DHS's statutory authority. ECF 27.

In April 2025, the Government moved to dismiss the complaint. ECF 36. In that motion, it

argued that a variety of jurisdictional and threshold defects bar Make the Road's claims and that

the complaint fails to plausibly state a claim on the merits. *See id.* While that motion remained

pending, in June 2025, Make the Road filed a motion under 5 U.S.C. § 705 to stay "Defendants'

decision"—implemented by the 2025 Designation and the Huffman Memorandum—"to apply

expedited removal to certain noncitizens arrested anywhere in the country who cannot show 'to

the satisfaction of an immigration officer' that they have been continuously present in the United

States for longer than two years." ECF 50 at 1. In its motion, Make the Road submitted evidence

that expedited removals of its members and others in their communities had ramped up in the

weeks prior and that they therefore faced irreparable harm. *See supra* 11–12. The Government

filed an opposition, raising the same arguments as in its motion to dismiss along with some new ones, ECF 56,[11] and Make the Road replied, ECF 58. The Court then heard argument on the motion. *See* July 9, 2025 Min. Entry.

For purposes of its stay motion, Make the Road advances four claims. First, that the 2025 Designation violates the due process rights of those it affects by subjecting them to removal without constitutionally sufficient procedures.[12] ECF 50-1 at 16. Second, that the 2025 Designation violates IIRIRA by failing to provide the procedures the statute requires. *Id.* at 31. Third, that the designation contravenes the statute because the statute does not authorize the expedited removal of noncitizens who have already entered the United States on the basis that they lack valid entry documents. *Id.* at 36. And finally, that, by applying expedited removal to asylum applicants, the Huffman Memorandum violates the regulations implementing the asylum statute. *Id.* at 39. Because the Court holds, as will be explained below, that Make the Road is likely to succeed on the merits of its due process claim, it does not address the other grounds upon which it moves.

## II.    LEGAL STANDARD

Section 705 of the APA authorizes courts to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The court may do so "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury." *Id.*

---

[11] The only threshold issue raised in the Government's motion to dismiss, but not in its opposition to this motion for a stay, is an argument that Make the Road lacks organizational standing. ECF 36 at 22–25. However, Make the Road has clarified that it asserts associational standing, not organizational standing. ECF 44 at 12.

[12] Make the Road expressly disclaimed any challenge to the constitutionality of applying expedited removal proceedings to anyone covered by a previous designation. *See* Hrg. Tr. 16:4–6 (conceding that any potential constitutional issues with prior designations are "water under the bridge" and are not before the Court).

The factors governing issuance of a section 705 stay are the same as those that govern the grant of a preliminary injunction. *See District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020) (citing, *inter alia*, *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). To prevail on such a motion, the movant "must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the [stay] were not granted, (3) that a[] [stay] would not substantially injure other interested parties, and (4) that the public interest would be furthered by the [stay]." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). In a case like this one, where the Government is the non-movant, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.    ANALYSIS

Turning now to the application of those factors, the Court holds that each favors a stay. The Court will therefore stay the 2025 Designation and the guidance implementing that designation. The Court addresses the scope of the remedy at the close of this section.

### A. Make the Road Is Substantially Likely to Succeed on the Merits.

Before turning to Make the Road's likelihood of succeeding in this lawsuit, a few words about what is, and is not, before the Court. Make the Road has not challenged the constitutionality of the expedited removal statute. Nor has it challenged the lawfulness of any agency decision implementing the statute prior to 2025. *See supra* 12 n.10. Nothing in the Court's opinion, then, affects previous designations by which DHS has applied expedited removal to noncitizens who arrive by sea, or who are detained within 14 days of arriving and within 100 miles of the border. The *only* things challenged are the 2025 Designation and the Huffman Memorandum implementing that designation. The Court therefore only addresses the lawfulness of applying expedited removal to noncitizens who are detained more than 100 miles from the border and who have been present in the country for at least 14 days but less than two years. And the Court only

17

addresses the lawfulness of doing so pursuant to the 2025 Designation and the Huffman Memorandum.

In addressing the lawfulness of these two agency actions, the Court does, however, also consider the procedural due process rights of those who have been in the country for *longer* than two years. That is because, in a procedural due process case like this one, the question is whether the process provided sufficiently guards against "*mistaken or unjustified* deprivation[s] of life, liberty, or property." *A. A. R. P.*, 145 S. Ct. at 1367 (emphasis added). As the Court explains below, the record evidence (and indeed the experience of Plaintiffs Mary and John) demonstrate that people who have been here longer than two years—and who are therefore not eligible for expedited removal under the statute—are at risk of being removed this way as the Government implements the 2025 Designation. The Court therefore accounts for that group of noncitizens when determining whether the processes deployed in expedited removal are adequate.

With the issue properly framed, the Court must first decide whether there is a substantial likelihood that it has jurisdiction to hear Make the Road's constitutional claim. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). After concluding that there is, the Court turns to the merits of the due process claim. There too Make the Road has established a substantial likelihood of success.[13]

---

[13] Because the Court holds that Make the Road has established that it is likely to succeed on the merits of its due process claim, it does not address any other claim that Make the Road says also supports the grant of a stay. *See Mid-Atl. Equity Consortium v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, 2025 WL 2158340, at *14 n.6 (D.D.C. July 30, 2025). And although courts usually try to avoid answering constitutional questions by addressing non-constitutional claims first, this Court follows the lead of others that have focused on the most substantial, and seemingly strongest, claims—even if they are constitutional ones—when confronted with "the need for a prompt ruling on [a] request for preliminary . . . relief." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1182 (N.D. Cal. 2017) ("address[ing] only" the constitutional claim despite fact plaintiffs were also pressing statutory claims); *see also, e.g.*, *Media Matters for Am. v. Paxton*, 732 F. Supp. 3d 1, 12, 27 (D.D.C. 2024) (addressing only the plaintiffs' First Amendment retaliation claim and not considering two statutory claims); *Booth v. Bowser*, 597 F. Supp. 3d 1, 10 (D.D.C. 2022) (addressing only Free Exercise claim despite fact plaintiffs were also pressing a statutory RFRA claim); *W.D. ex rel. M.J.D. v. Minn. State High Sch. League*, No. 12-cv-2892, 2012 WL 5985514, at *3 n.3 (D. Minn. Nov. 29, 2012) ("The Court will only address Plaintiffs' procedural due process claim" and not other non-constitutional claims "because it appears, at this preliminary stage, to be Plaintiffs' strongest claim.").

### 1.  Neither Jurisdictional nor Procedural Bars Prevent the Court from Reaching the Merits.

At the threshold, the Government throws up a slew of barriers that it insists prevent the Court from addressing Make the Road's constitutional claim. *See* ECF 56 at 21–35. The Government argues that section 1252(f)(1) of the Immigration and Nationality Act strips this Court of its jurisdiction to grant a stay, that the Court cannot stay agency action that has already gone into effect, that a separate provision in section 1252(e)(1) of the Act bars preliminary relief, and that Make the Road's claims are time barred. The Government made identical arguments in another case that was recently before this Court challenging the same designation and memorandum that are at issue in this case. *See CHIR*, 2025 WL 2192986, at *13–16, *18–21. The Court rejects those arguments here for the same reasons it did there and incorporates its analysis in that case by reference. Section 1252(f)(1) is only a limit on "injunctive relief," but Make the Road is seeking a stay; courts can stay agency actions already in effect; binding D.C. Circuit precedent forecloses the Government's reading of section 1252(e)(1); and the claims are timely, because they were brought within 60 days of the Government's issuance of the 2025 Designation and the Huffman Memorandum. *See id.*

The Government does make one additional argument that requires a quick word. Citing the D.C. Circuit's decision in *Make the Road New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020), it says that this Court cannot reach Make the Road's due process claim "because Congress committed the designation-making authority to the agency's discretion." ECF 56 at 37. That argument, though, ignores what *Make the Road* actually held: "that there is no cause of action under the APA to scrutinize the Secretary's designation decision *so long as it falls within statutory and constitutional bounds*." 962 F.3d at 635 (emphasis added). Make the Road's due process claim here is that the designation falls *outside* of "constitutional bounds," so it is not barred by that decision. *Id.* And

Section 1225(b)(1)(A)(iii)'s delegation to the Secretary of "sole and unreviewable discretion" to make designations does not evince a sufficiently "clear expression of contrary congressional intent" to "preclude consideration of colorable constitutional claims arising out of the actions of the [Secretary] pursuant to that section." *Lincoln v. Vigil*, 508 U.S. 182, 195 (1993); *Webster v. Doe*, 486 U.S. 592, 603 (1988). In fact, quite the opposite is true. Another section of the Act expressly grants this Court jurisdiction to "review . . . determinations under section 1225(b)" for the purpose of deciding whether "any regulation[s] issued to implement [the] section [are] constitutional." 8 U.S.C. § 1252(e)(3)(A). The Government affirmatively argued at the hearing on the motion that this section "permits this Court to make determinations and have judicial review over whether a challenged provision is constitutional." Hrg. Tr. 35:18–20. The Government got it right there, and there's nothing in Section 1225(b)(1) that bars this Court's review of Make the Road's constitutional claim.[14]

### 2. The 2025 Designation Likely Violates the Due Process Clause.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. When evaluating a due process claim, courts "undertake a two-part inquiry." *Patchak v. Jewell*, 828 F.3d 995, 1004 (D.C. Cir. 2016). First, a court must "determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993). If

---

[14] The Government makes two other arguments here that it did not make in *CHIR*, insisting that Make the Road lacks standing to press one of its APA claims, and that all of its APA claims "fail because the Secretary's expedited removal designation decisions are committed to agency discretion." ECF 56 at 32, 36. The Court need not address those arguments because it does not reach Make the Road's APA claims, instead ruling only on the constitutional claim. Likewise, the Government's argument that Make the Road cannot sue because it is "outside the zone of interests of the expedited removal statute" only applies to Make the Road's APA claims. ECF 56 at 34 ("The APA does not allow suit by every person suffering injury in fact." (internal quotations omitted)). Regardless, this Court has already explained why "membership associations" like Make the Road have prudential standing to bring APA claims like the ones Make the Road brings here. *CHIR*, 2025 WL 2192986, at *20 (citing *Make the Rd.*, 962 F.3d at 628).

so, the court "ask[s] whether the procedures followed . . . were constitutionally sufficient." *Del. Riverkeeper Network v. FERC*, 895 F.3d 102, 107 (D.C. Cir. 2018) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).

The Court takes each step in turn and concludes first, that individuals subject to the 2025 Designation are entitled to due process and second, that the 2025 Designation and Huffman Memorandum fail to afford those individuals a sufficiently meaningful opportunity to be heard. Accordingly, Make the Road is likely to succeed on its due process claim.

### a. Individuals who have effected entry to the United States are entitled to due process.

Although certain constitutional protections do not extend to noncitizens "outside of our geographic borders," once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Indeed, once they are present in the United States, noncitizens have a "weighty" liberty interest in remaining, as they "stand[] to lose the right to stay and live and work in this land of freedom," and "may lose the right to rejoin [their] immediate family, a right that ranks high among the interests of the individual." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).

That's true regardless of how someone entered the country: "[O]nce passed through our gates, *even illegally*," noncitizens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (emphasis added); *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection."). The Supreme Court has therefore "long held that no person shall be removed from the United States" without due process of law. *A. A. R. P.*, 145 S.

21

Ct. at 1367; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

The 2025 Designation plainly subjects people who have "passed through our gates"—and who therefore have a liberty interest in remaining—to expedited removal. Under the previous regime, only those who had "a close spatial and temporal nexus to the border" were eligible for expedited removal. 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004). In practice, that meant the procedure was applied to people "apprehended immediately proximate to the land border" who had "negligible ties or equities in the U.S." *Id.* The 2025 Designation sweeps much further. By design, it affects people who have neither "a close spatial [nor] temporal nexus to the border," *id.*—those who have been in the country more than 14 days, who were apprehended more than 100 miles from the border. *See* 90 Fed. Reg. at 8139. Because the 2025 Designation subjects to expedited removal those who have long since crossed the "threshold" and effected entry into the country, *Mezei*, 345 U.S. at 212, the procedures used to remove them must adequately protect their interest in remaining. Make the Road's members are among those whose liberty interests are so implicated. *See* ECF 50-2, Fontaine Decl. ¶¶ 19–26 (identifying Make the Road members who have been living in the United States for between 15 and 20 months).

The Government tries to wave away this straightforward conclusion. Relying principally on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), it claims that unless and until a person is "*admitted* or . . . *lawfully* present in this country," the only process they are due is the process that Congress has provided. ECF 56 at 39 (citing *Thuraissigiam*, 591 U.S. at 138–39). Because the individuals subject to the 2025 Designation are afforded that congressionally mandated process, the Government reasons, Make the Road's due process claim fails.

22

The Government's reading of *Thuraissigiam* is untenable. To adopt its view would be to undermine more than a century of precedent holding that those who have entered the United States have a liberty interest in remaining—no matter how they entered. *See Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (noncitizen who entered country in violation of law cannot be "deprived of [her] liberty" without receiving "due process of law"). Not only is it beyond this Court's power to disregard those Supreme Court decisions, but so too has the Supreme Court recently reaffirmed that century-old principle. In a pair of cases considering what process was due to Venezuelan nationals alleged to be members of a foreign terrorist organization and subject to removal under the Alien Enemies Act, the Supreme Court stressed the "well established" rule "that the Fifth Amendment entitles aliens to due process of law." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025); *A. A. R. P.*, 145 S. Ct. at 1367. That was so even though the executive branch claimed that these Venezuelan nationals had "unlawfully infiltrated the United States" and "engage[d] in mass illegal migration." Proclamation No. 10903, 90 Fed. Reg. 13033, 13033 (Mar. 14, 2025). In so holding, the Court cited the seminal early-20th-century decision holding that noncitizens—in that case, a woman who had entered unlawfully and was present in the country for four days before the government sought to remove her—cannot be removed "without opportunity, at some time, to be heard." *A. A. R. P.*, 145 S. Ct. at 1367 (citing *Yamataya*, 189 U.S. at 101).

In short, the Court has not departed from the settled principle. And far from an abrogation, *Thuraissigiam* is entirely consistent with this rule. That decision reflects the equally settled proposition that noncitizens "on the threshold of initial entry stand[] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. at 212. For the former, "[w]hatever the procedure authorized by Congress, it is due process as far as" the noncitizen "denied entry is concerned." *Id.* In *Thuraissigiam*, the Court held that a noncitizen detained almost immediately

after crossing the border, who had made it only 25 yards into the United States, was still "on the threshold," no matter that he had technically, but just barely, crossed. 591 U.S. at 114, 140; *see also* Br. for the United States at 2, *Thuraissigiam*, 591 U.S. 103 (No. 19-161), 2019 WL 6727092, at *2 ("CBP[] agents apprehended him almost immediately thereafter, 25 yards north of the border."). The Court in *Thuraissigiam* did not overturn more than a century of precedent; it merely held that noncitizens "*in [the] respondent's position*"—those detained close to the border "shortly after unlawful entry"—have not yet "effected an entry." 591 U.S. at 140 (emphasis added).

From that holding, the Government tries to draw a much more startling rule—that unless and until someone is lawfully admitted, they are entitled to zero process beyond whatever courtesy Congress might offer. If that was right, Congress could subject noncitizens who had spent decades in the United States to immediate removal, without any advance notice or right to a hearing, and the Constitution would have nothing to say about it. When pressed on the point at the hearing, the Government effectively conceded as much. *See* Hrg. Trans. 25:13–26:19. The Supreme Court's cases, though, say otherwise. In *Yamataya*, for instance, having spent merely four days in the country after entering unlawfully entitled the noncitizen to due process before removal. *See* 189 U.S. at 87.

Distinguishing between those on the threshold and those who have effected entry makes sense. In this context as in others, the government's power "is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) (discussing "the longstanding right of the sovereign to protect itself by stopping and examining persons and property *crossing into* this country" (emphasis added)). That is why noncitizens attempting to enter, who have not "acquired any domicil or residence within the United States," receive all the process that is required so long as executive officers "act[] within the powers expressly conferred by Congress."

24

*Thuraissigiam*, 591 U.S. at 138. And the sovereign's power at the border does not vanish because a person happens to be apprehended moments after they cross. *See id.*[15]

But in the country's interior, the Constitution requires the Government to "turn square corners." *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020). That means affording due process. Requiring anything less would pose extraordinary dangers: Recall that "[p]rocedural due process rules are meant to protect against the *mistaken* or unjustified deprivation of life, liberty, or property." *A. A. R. P.*, 145 S. Ct. at 1367 (emphasis added). As Make the Road explains, "in the mine run of cases, there is little question" that noncitizens detained at or near the border are "arriving in the United States." ECF 50-1 at 28. But when people are "arrested at courthouses or off the street" in the interior of the country—as has been happening under the 2025 Designation—it is far more likely that the Government will sweep in people who "have lived in this country for years or [who] may even be U.S. citizens." *Id.* Those people, however, are not eligible for expedited removal, and the Government must provide sufficient process to minimize the risk that they are erroneously removed that way.

The Government makes one more attempt at justifying its harsh rule, claiming that "binding precedent" from the D.C. Circuit—*American Immigration Lawyers Association v. Reno* (*AILA*), 199 F.3d 1352 (D.C Cir. 2000)—holds that anyone subject to the expedited removal statute has no liberty interest in remaining in the United States. ECF 56 at 41. That is doubly

---

[15] That is why those detained at the border and then paroled into the country are treated "as if" they remained "stopped at the border." *Mezei*, 345 U.S at 213–15. That rule reflects the historical practice of allowing ships containing noncitizens to land in American harbors rather than staying at sea—largely to serve "humanitarian ends"—while immigration authorities determined the admissibility of the noncitizens. Eunice Lee, *The End of Entry Fiction*, 99 N.C. Law. Rev. 565, 584–96 (2021). The Supreme Court held that the temporary portage, which was akin to parole, did not amount to an entry into the country. *See Mezei*, 345 U.S. at 213; *Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958). That explains the Court's statement in *Thuraissigiam*, on which the Government relies, that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *See Thuraissigiam*, 591 U.S. at 139. Just as *Thuraissigiam* cannot swallow the general rule that those who have effected entry are entitled to due process, neither can the legal fiction that the Court crafted for parolees.

wrong. For one, the government misstates what was decided by the D.C. Circuit in that case. The individual plaintiffs there did bring procedural due process claims in the district court. *See AILA*, 199 F.3d at 1356. But they did not appeal the district court's dismissal of those claims. *See id.* at 1356 n.6 (individual plaintiffs "appeal only the dismissal of their statutory claims"); *see also* Br. of Plaintiff-Appellants, *AILA*, 199 F.3d 1352 (No. 98-5463), 1999 WL 34833431, at *n.24 (The plaintiffs "do not challenge the court's ruling that" they did not "state[] a due process claim."). So the due process claims were never before the D.C. Circuit. And while that puts an end to the Government's claim of "binding precedent" that "[f]oreclose[s]" Make the Road's due process claim, ECF 56 at 41, considering the district court's resolution of the case does not help the Government, either. Like in *Thuraissigiam*, the plaintiffs in *AILA* had not effected entry into the United States, and instead remained at the threshold of "initial admission." *Am. Immigr. Laws. Ass'n v. Reno*, 18 F. Supp. 2d 38, 58–60 (D.D.C. 1998). The court therefore concluded that the plaintiffs lacked a liberty interest in *initial entry*, as "initial entrants have no due process rights with respect to their admission." *Id.* at 60. Because the 2025 Designation affects those who *have* entered, rather than just those seeking initial entry, *AILA* has little to say here.

The Court therefore rejects the Government's extraordinary request to treat as falling outside of the Constitution's due process guarantee the millions of immigrants who, although they may have entered unlawfully, have established lives here and made this country home. Instead, as the Supreme Court has long held and just recently reaffirmed, "the Fifth Amendment entitles aliens to due process of law." *J. G. G.*, 145 S. Ct. at 1006.

### b. Those subject to the 2025 Designation are entitled, at minimum, to a meaningful opportunity to contest the predicate bases for expedited removal.

Because those subject to the 2025 Designation are entitled to due process, the Court turns to the next step in the inquiry: determining whether "the procedures used by the Government in

26

effecting the deprivation 'comport with due process.'" *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (quoting *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59 (1999)).

Make the Road identifies four claimed defects in expedited removal proceedings, any one of which it says render the procedure constitutionally inadequate when applied to the population affected by the 2025 Designation. *See* ECF 50-1 at 16–17. First, individuals do not receive sufficient notice and opportunity to contest the predicate bases of eligibility for expedited removal. *Id.* Second, the process impermissibly places the burden of proof on the individual, rather than the Government. *Id.* Third, the Government is not required to allow noncitizens the time or opportunity to "hire a lawyer or seek the assistance of any third party," and, fourth, there is no neutral adjudicator, with many cases decided only by an "immigration enforcement officer who serves as both prosecutor and judge." *Id.* at 17.

Under the familiar three-part balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court holds that it is substantially likely that the expedited removal process does not include sufficient procedural safeguards when applied to those covered by the 2025 Designation. The Court does not foreclose the Government from subjecting those covered by the designation to expedited removal proceedings. Nor does it prescribe the specific process the government must use when doing so or hold that any one of the procedural safeguards proposed by Make the Road must be implemented to remedy the constitutional problem. All the Court holds is that Make the Road is substantially likely to prevail on its claim that the current procedures do not satisfy the minimal requirements of due process when applied to the population affected by the 2025 Designation.

### i.    A weighty private interest is at stake.

Courts first consider "the private interest that will be affected" by the government action. *Mathews*, 424 U.S. at 335. As discussed above, individuals who have effected entry to the United States have a "weighty" liberty interest in staying. *Landon*, 459 U.S. at 34. "[D]eportation . . . may result in poverty, persecution, and even death." *Bridges v. Wixon*, 326 U.S. 135, 164 (1945) (Murphy, J., concurring); *see also Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922) (Deportation "may result . . . in loss of both property and life, or of all that makes life worth living."). Many people subject to expedited removal risk separation from their family members or have pending asylum applications and may be persecuted if deported. *See, e.g.*, ECF 50-4, Levenson Decl. ¶¶ 18–24 (describing courthouse arrests of asylum seeker married to a U.S. citizen who had been present for three years, asylum seeker whose partner was 8 months pregnant, and gay couple who feared persecution).

The Government's only answer is to recycle its argument that, under *Thuraissigiam* and *AILA*, Make the Road's members have no liberty interest against removal.[16] ECF 56 at 45. For reasons already explained, the Court rejects this argument. *See supra* 23–24. The first factor thus weighs heavily in Make the Road's favor.

---

[16] The Government also seemingly relies on the district court's decision in *AILA* to foreclose the second step of the due process analysis. ECF 56 at 46. But the district court there rejected the due process claim at step one (finding no entitlement to due process protections) and had no occasion to consider the constitutional sufficiency of the procedures under step two. *See* 18 F. Supp. 2d at 60. At most, the court considered whether the agency's regulations implementing IIRIRA were consistent with the statute (not the Constitution). *See id.* at 56. And on those APA claims, the court relied on (former) *Chevron* deference to conclude the regulations were reasonable. *Id.* ("Because IIRIRA is silent as to the nature of any required notice and rebuttal opportunity, the Court must defer to the Attorney General's determination as to what procedures are appropriate, so long as that determination is reasonable."). That holding is immaterial to Make the Road's constitutional claim here.

### ii. There is a significant risk of the erroneous deprivation of that interest, and additional safeguards are of high value.

Make the Road has identified procedural inadequacies that create a significant risk that the 2025 Designation will lead to the unlawful removal of individuals who are not eligible for expedited removal. "[A]dditional . . . procedural safeguards" could substantially mitigate that risk, so this factor too cuts in Make the Road's favor. *Mathews*, 424 U.S. at 335.

Before removing someone through expedited removal, the Government must make several threshold determinations: whether the individual has been continually present in the United States for two years; whether they have previously been admitted or paroled; whether they are inadmissible on one of the grounds that make them eligible for expedited removal; whether they have a credible fear of persecution; and whether they are a citizen, lawful permanent resident, refugee, or asylee. *See* 8 U.S.C. § 1225(b)(1)(A), (B)(ii); 8 C.F.R. § 235.3(b)(5). If the Government finds that one of these criteria is not satisfied, it either—depending on which criteria it is—must utilize section 240 removal proceedings or cannot remove the person at all.

Make the Road has put forward substantial evidence indicating that there is a "high risk of error" in making these determinations. ECF 50-1 at 23. That includes evidence of "recurring errors," for example, instances in which citizens, unaccompanied minors (who are not eligible for expedited removal), and those claiming asylum have been unlawfully removed. *See id.* at 24, 26–27 (citing examples from habeas cases and declarations attached in support of motion). For instance, one study found that 15% of the noncitizens who "expressed a fear of return" were not referred for a credible fear interview, as is required by statute. ECF 50-23, Steinberg Decl. at 46; 8 U.S.C. § 1225(b)(1)(A)(ii); *see also* 8 C.F.R. § 235.3(b)(4) (an "inspecting officer *shall not*

proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer" (emphasis added)).[17]

That rate of error in referring people for credible fear interviews is related to the procedural shortcomings of the process. The decision whether to refer an individual for a credible fear interview is made by an immigration officer, and that decision is not reviewable by anyone else. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (once immigration officer "order[s] the alien removed" there is no "further hearing or review"). Entrusting the entirety of that decision making process to the executive branch official prosecuting the case leads, unsurprisingly, to problems. *See Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("[T]he Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case."). Make the Road presents evidence that this structural flaw has in fact played out in predictable ways, with inspecting officers "regularly" recording "false information" during expedited removal interviews, coercing individuals to sign interview forms including false information, or otherwise rushing individuals through a cursory process. ECF 50-17, Warden-Hertz Decl. ¶¶ 6–7; *see also* ECF 50-16, Hartzler Decl. ¶¶ 10–12; ECF 50-14, Yang Decl. ¶ 7. Although the Government tries to wave these problems away as "isolated" incidents, ECF 56 at 43, both the study of the congressionally authorized Commission—identifying the 15% error rate—and the experiences of repeat player attorneys suggest otherwise. And vesting immigration officers with the unreviewable authority to refer, or not refer, noncitizens for credible fear interviews compounds other "troubl[ing] . . . problems . . . in the U.S. government's treatment of asylum seekers in expedited removal—including flawed screening and documentation practices, a lack of training and quality

---

[17] To be clear, the 15% error rate in referring individuals for credible fear interviews is neither the sole nor decisive factor in the Court's conclusion that the risk of error is too high. Instead, it is merely one of several examples of ways in which the procedures used lead to erroneous deprivations. *See Mathews*, 424 U.S. at 347 (describing an error rate as "relevant" but not "controlling" in assessing the adequacy of procedures).

control, [and] inadequate information for noncitizens in the process." ECF 50-23, Steinberg Decl. at 121 (findings from 2024 study published by congressionally authorized United States Commission on International Religious Freedom).

But even if a noncitizen is referred for a credible fear interview, there is still an intolerably high risk that they will be erroneously removed via expedited removal. *Contra* 8 C.F.R. § 208.30(e)(2)–(3), (f) (requiring DHS to refer to section 240 proceedings noncitizens who demonstrate a "significant possibility" of eligibility for asylum, withholding of removal, or protection under the Convention Against Torture). That is because noncitizens are not afforded the "opportunity to *effectively* be heard" at their credible fear interviews. *Ralls Corp.*, 758 F.3d at 318 (emphasis added).

Credible fear interviews are regularly conducted "as little as 24 hours" after a noncitizen's initial interview with an immigration officer. ECF 50-10, Koop Decl. ¶ 31. While the regulations say a noncitizen "*may* consult" with third parties prior to that interview, they also provide that such consultation "*shall* be at no expense to the Government and *shall* not unreasonably delay the process." 8 C.F.R. § 208.30(d)(4) (emphases added). Some of the detention facilities where noncitizens are held charge cost-prohibitive rates for attorney-client phone calls and have long wait-times (more than 24 hours) for scheduling calls after they are requested. ECF 50-10, Koop Decl. ¶ 32. In practice, then, the Government's procedures prevent noncitizens from "contact[ing] counsel or other support [to] gather information that they . . . need to . . . assert a credible fear" in their interview. *Id.* ¶ 31. That leaves noncitizens unable to obtain "medical records" and other proof that would substantiate their claims of fear. ECF 50-11, Gilliam Decl. ¶ 22. And even the lucky few who have counsel are often unable to rely on their help during their interviews, given the Government's regular failure to notify attorneys in advance of said interviews—even where

those attorneys have entered appearances on behalf of their clients. ECF 50-18, Lunn Decl. ¶ 20. That runs afoul of the Supreme Court's long-ago pronouncement that, "in any case, civil or criminal," to "arbitrarily . . . refuse to hear a party by counsel, employed by and appearing for him," is a "denial of a hearing, and, therefore, of due process in the constitutional sense." *Chandler v. Fretag*, 348 U.S. 3, 10 (1954).

That the noncitizen can nominally appeal an adverse decision from the credible fear interview to an immigration judge does not cure the risk of error either. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III). The lack of any meaningful opportunity to prepare for that appeal—either with the help of third parties or even on one's own—undermines the reliability of this stage of the proceeding too. The hearing before the immigration judge takes place "to the maximum extent practicable within 24 hours, but in no case later than 7 days after" the initial adverse credible fear determination is made. *Id.* In that short time, noncitizens are not provided with the records that were made in their credible fear interview and when they appear before the immigration judge they regularly "do not know the basis for their failing the credible fear interview." ECF 50-13, Schacher Decl. ¶ 14; *see also* ECF 50-19, Willis Decl. ¶ 16 ("It [is] very common for applicants to be scheduled for an Immigration Judge review of their negative [credible fear interview] without having had an opportunity to see or review the USCIS Asylum Officer's decision."). What's more, immigration judges "[t]ypically . . . do not allow noncitizens to explain discrepancies in their previous statements" during credible fear interviews "or to provide additional evidence or information not detailed in the credible fear interview." ECF 50-13, Schacher Decl. ¶ 15. Instead, the noncitizens are "frequently limit[ed] . . . to yes or no answers." *Id.* So noncitizens are not afforded a meaningful opportunity to prepare for or present evidence at their credible fear interviews, are stuck with the record they make during those interviews, and must appeal the

adverse determinations coming out of those interviews without knowing the basis for the negative findings. Given these procedural shortcomings, there is little chance that erroneous credible fear findings will be corrected by immigration judges.

Errors in correctly determining whether a noncitizen's fear of being removed disqualifies them from expedited removal are far from the only problem in the process. Equally troubling is the significant risk that the 2025 Designation will lead to the expedited removal of individuals who have been present in the United States for at least two years. According to a DHS report, the "vast majority" of undocumented immigrants in the United States have been living here for longer than two years. ECF 50-24, Steinberg Decl. at 58 (estimating that 79 percent of the undocumented population as of 2022 "entered before 2010"). Another study concluded that, as of 2022, only 12.4% of the undocumented population had been present for less than two years. ECF 50-23, Steinberg Decl. at 258. Most noncitizens, then, are not eligible for expedited removal—even if they entered unlawfully, and even if they are subject to removal.

But the expedited removal process has in place woefully inadequate procedures for accurately determining whether a noncitizen has been present for two years. The regulations require immigration officers to read individuals a statement from a form, and then ask them a series of four questions from another form. *See* 8 C.F.R. § 235.3(b)(2)(i). The recited statement does not inform individuals that they are only subject to expedited removal if they have been present less than two years, instead telling individuals only that they should inform the immigration officer if they "fear or have a concern about being removed from the United States or about being sent home." ECF 50-23, Steinberg Decl. at 94 (text of Form I-867A). The four questions officers ask do not prompt the individual to say anything about how long they have been in the country either:

1.  Why did you leave your home country or country of last residence?

2. Do you have any fear or concern about being returned to your home country or being removed from the United States?

3. Would you be harmed if you are returned to your home country or country of last residence?

4. Do you have any questions or is there anything else you would like to add?

*Id.* (questions from Form I-867B). So while both the statement and questions provide at least some "opportunity to be heard" about asylum claims, *Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991), there is nothing in the expedited removal interview process that would prompt an individual to put forward the "affirmative[]" evidence of continuous two-year presence that is required under the statute, 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

But once the interview is complete, the individual is not afforded any other opportunity to present evidence about their continual presence. If the officer determines that they are subject to expedited removal and receives supervisor sign-off, she serves the Form I-860, which combines both the notice of and order for expedited removal. 8 C.F.R. § 235.3(b)(2)(i). Individuals are then ordered removed "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). And while the regulations provide for additional layers of review for individuals who indicate an intent to apply for asylum or fear of return, 8 C.F.R. § 235.3(b)(4), who claim to be U.S. citizens, lawful permanent residents, refugees, or asylees, *id.* § 235.3(b)(5), or who claim to have been paroled into the United States, *id.* § 235.3(b)(6), there is no additional process for individuals who claim to have resided in the United States for more than two years.

Finally, even if an individual somehow knows that they can contest their eligibility for expedited removal on the basis of continual presence, and even if they know that they need to do so in the initial interview because they will not have any further opportunity, the procedures make it exceedingly difficult for them to meet their burden. While the regulations guarantee individuals the opportunity to "present evidence or provide sufficient information" to prove ineligibility for expedited removal on another basis, 8 C.F.R. § 235.3(b)(6), there is no similar requirement or

34

procedure for presenting evidence bearing on continuous presence. Nor is there an opportunity, as is provided for those claiming parole, *see id.*, to contact a third-party to assist with gathering such evidence. Nor are officers explicitly required to verify residence claims—as they must for those claiming lawful status. *See id.* § 235.3 (b)(5). Nor is there a referral to an immigration judge to review an expedited removal order based on unverified or disputed residence facts—as there is for unverified lawful status. *See id.* Nor must the supervisor review any claims of continual presence before signing off on expedited removal, as they "must" for "any claim of lawful admission or parole." *Id.* § 235.3 (b)(7).

So even though the "burden of proof" rests with the individual "to affirmatively show that he or she has the required continuous physical presence in the United States," *id.* § 235.3(b)(1)(ii), the procedures used do not afford individuals meaningful notice of a key element of the "case against" them—the allegation that they have been present in the country for less than two years—or the "opportunity to meet" that allegation. *Mathews*, 424 U.S. at 348.

That flaw in the process creates a significant risk when expedited removal is applied to people in the interior of country. Continuous presence is unlikely to be seriously contested when it comes to those apprehended in close temporal and spatial proximity to the border, who are likely to have crossed recently. Not so with those living elsewhere in the United States. The Government has previously made this point: "The Department acknowledges that application of the expedited removal provisions to aliens already in the United States will involve more complex determinations of fact and will be more difficult to manage." 62 Fed. Reg. 10313; *see also* 87 Fed. Reg. 16022, 16023–24 (recognizing that "the operational complexities of implementing" expedited removal to the full interior of the United States, as opposed to only recent entrants, "would involve complex new challenges for the ICE workforce").

35

With expedited removal no longer cabined to the border, the complete lack of process for an individual to demonstrate how long they have been present therefore creates a significant risk of erroneous removal. It is unsurprising, then, that the Government has recently swept into expedited removal proceedings, and ordered removed, people who have lived here far longer than two years. *See* ECF 50-4, Levenson Decl. ¶¶ 23–24 (courthouse arrest of person present more than two years); *Castillo Lachapel v. Joyce*, --- F. Supp. 3d ---, 2025 WL 1685576, at *1–2 (E.D.N.Y. June 16, 2025) (person present more than two years arrested at courthouse and issued expedited removal order); ECF 50-7, Mary Doe Decl. ¶¶ 2–12 (Plaintiffs Mary and John, who have lived here for ten years, discussing arrest during traffic stop); *Co Tupul v. Noem*, No. 25-cv-02748, 2025 WL 2426787, at *1 (D. Ariz. Aug. 4, 2025) (person present for 30 years arrested during traffic stop, "placed in expedited removal proceedings[,] and [ordered] removed in one to three weeks").

In short, the expedited removal process hardly affords individuals any opportunity, let alone a "meaningful" one, to demonstrate that they have been present in the United States for two years. *Contra Propert*, 948 F.2d at 1332. Such a "complete denial of the opportunity to be heard on a material issue is a violation of due process." *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022). And although this shortcoming might not create a huge risk of error when expedited removal is used at or near the border, it creates an intolerable risk when expedited removal is deployed throughout the United States. That is because *most* noncitizens have been present for more than two years, and those living far away from the border are less likely to have recently crossed. *See* ECF 50-24, Steinberg Decl. at 58 (DHS study).

Any of the additional safeguards Make the Road proposes could mitigate the risk that the Government erroneously removes people via expedited removal. The Government could, for

36

example, easily revise its forms to ensure that individuals are asked about, and have an opportunity to contest, their eligibility based on continuous presence grounds. The "opportunity for [an individual affected by government action] to present his side of the case is . . . *of obvious value* in reaching an accurate decision." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) (emphasis added); *see also Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003) ("[D]ue process require[s] the government to accord the plaintiff a hearing to prove or disprove a particular fact or set of facts . . . [that are] relevant to the inquiry at hand.").

The Government could also afford individuals with a meaningful opportunity to ask counsel or third parties for help in gathering evidence to prove either a credible fear or their continual presence. That would substantially improve the reliability of the proceedings. As Make the Road explains, many of its "members [] would have difficulty affirmatively demonstrating two years of physical presence, particularly if suddenly detained or given only a short period of time to do so." ECF 50-2, Fontaine Decl. ¶ 42. So too do people trying to substantiate their claims of credible fear need access to "medical records" or other documentation, some of which must be secured from other countries. *See* ECF 50-11, Gilliam Decl. ¶ 22. The Government's current procedures, however, make it exceedingly difficult to gather these documents. *See* ECF 50-21, Cooper Decl. ¶¶ 6–7 (explaining that detention centers do not provide confidential emails, fax, or other means of receiving documents other than mail, which takes 5–10 days to reach detained clients). Affording people a real opportunity to collect documents by calling on third parties for help would be an easy way to decrease the risk of erroneous removals that currently exists. That is the kind of fix the D.C. Circuit has previously required to remedy procedural due process problems. *See, e.g.*, *Gray Panthers v. Schweiker*, 652 F.2d 146, 148, 172 (D.C. Cir. 1980) (plaintiffs must "be informed of or have access to the evidence on which the [decision maker]

relied" and "an opportunity to present evidence (in oral or written form) in support of" their position before they can be deprived of Medicare benefits of $100 or less); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 209 (D.C. Cir. 2001) (due process "require[s] that the [government] afford to entities considered for imminent designation [as a terrorist organization] the opportunity to present, at least in written form, such evidence as those entities may be able to produce to rebut the administrative record or otherwise negate the proposition that they are foreign terrorist organizations").

The Government does not offer much in response to the procedural deficiencies and concordant risks that Make the Road has identified. In conclusory fashion, the Government asserts that "the risk of erroneous application is not high" because "[w]hether an alien may be subject to expedited removal proceedings is straightforward: the immigration officer must determine only whether an alien was admitted or paroled and has valid entry documents or has misrepresented material information about himself and then determine whether the alien has been present for fewer than two years." ECF 56 at 47.

Saying it doesn't make it so. The Government does not meaningfully engage with the evidence suggesting that the residence determination is anything but straightforward when applied to the interior, especially in communities that lack readily available documentation proving presence. *See* ECF 50-2, Fontaine Decl. ¶¶ 41–43. It does not have anything to say about the evidence that the flaws in its processes lead it to "erroneously return[] asylum seekers to countries where they could face persecution." ECF 50-23, Steinberg Decl. at 121. And its reassurances that this supposedly simple process does not lead to erroneous results ignores the "troubling reality" that, because of the general lack of oversight or any meaningful "check[s]" to ensure that individuals "underst[and] the proceedings, ha[ve] an interpreter, or enjoy[] any other safeguards,"

38

the "procedure is fraught with risk of arbitrary, mistaken, or discriminatory behavior." *Khan v. Holder*, 608 F.3d 325, 329 (7th Cir. 2010). Indeed, the Court finds the Government's hand-waving regarding the "straightforwardness" of implementing the 2025 Designation hard to square with its prior express recognition of the factual complexities associated with expanding expedited removal beyond the border and into the interior. *See* 62 Fed. Reg. 10312–13; 87 Fed. Reg. 16022, 16024.

In terms of safeguards, the Government claims that the regulations already provide individuals with protections: "[I]f the alien asserts that he should not be subject to expedited removal, because he is a lawful permanent resident, refugee, or asylee, or claims to be a U.S. citizen, the regulations require that a thorough inquiry occur prior to any removal proceedings, both before the immigration officer and an immigration judge." ECF 56 at 47, 50. But even if those procedural safeguards were sufficient to avoid erroneous determinations on those eligibility questions—as the Court has already explained, they are not—the Government does not claim that a similar "thorough inquiry" is undertaken to determine whether someone has been in the country for two years. Indeed, the Government's briefing had nothing to say about how immigration officers determine whether an individual has been present for fewer than two years and nothing in the 2025 Designation affords individuals with a meaningful opportunity to disprove that threshold element. When asked at oral argument what would happen if, for example, an individual unexpectedly apprehended at a court hearing wants "to demonstrate that they've been here for a period of two years but they don't have any paperwork on them," the Government came up empty, offering only "to take that back to the agency to give [the Court] an answer." Hr'g Tr. 26:20–27:10. The Government has yet to provide an answer.[18]

---

[18] The Government also argues that because Make the Road raises a facial constitutional attack, it must show that the 2025 Designation "is always unconstitutional—not that it may sometimes be, as applied." ECF 56 at 44 (emphasis omitted) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). But Make the Road has identified facial defects

### iii. The Government's interests are outweighed by the value of additional safeguards and the significant liberty interest at stake.

Finally, the Government's countervailing interests are insufficient to overcome the weight of the constitutional deprivation here.

Given the potential for erroneous deprivation and clear value of additional safeguards, Make the Road contends that individuals "facing expedited removal must be given a reasonable opportunity to contest whether they are actually subject to expedited removal"—no matter the countervailing governments interest at stake. ECF 50-1 at 29–31. The Government counters that any additional process would interfere with its interest in enforcing immigration law, noting that "Congress determined that expedited removal is necessary 'to expedite the removal from the United States of aliens who indisputably have no authorization to be admitted,' and for dealing with the 'crisis at the land border' that involves 'hundreds of thousands of illegal aliens' entering each year." ECF 56 at 51 (quoting H.R. Rep. 104-828 at 209; H.R. Rep. No. 104-469 at 107). The Government also claims that adding further safeguards would turn expedited removal into comprehensive removal proceedings (akin to those available in section 240 proceedings) as opposed to the truncated system Congress envisioned. *See id.*

The Government's argument depends on a false premise. The Court is decidedly *not* holding that expedited removal must emulate section 240 proceedings to satisfy due process. Nor is it barring the Government from subjecting the group of people affected by the 2025 Designation to expedited removal. It holds only that Make the Road has made a sufficiently strong showing

---

in the expedited removal process that make it unconstitutional to apply it to those subject to the 2025 Designation. These procedural inadequacies apply in every case. It is no defense to a procedural due process claim to argue that *in some individual cases* the Government reaches the right answer *despite* the procedural flaws. The whole point of procedural due process rules is that they help to "*minimize* substantively unfair or mistaken deprivations of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259–60 (1978) (emphasis added). That the Government does not make a mistake in every single case does not mean that its procedures are constitutionally adequate. *See id.* at 266 ("[T]he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions.").

that the procedures *currently in place* likely do not afford those affected by the 2025 Designation with an adequate "opportunity to challenge their removal." *J. G. G.*, 145 S. Ct. at 1006. That showing entitles Make the Road to a stay. The Government, however, remains free to issue new rules or guidance implementing any of the modest procedural safeguards Make the Road has identified (or indeed others it chooses) to ensure that this same class of people can be subjected to expedited removal through constitutionally adequate procedures.

The Court recognizes, and heeds, the Government's "weighty" "interest in efficient administration of the immigration laws at the border." *Landon*, 459 U.S. at 34. But that interest must always be "pursued in a manner consistent with the Constitution." *A. A. R. P.*, 145 S. Ct. at 1368. And the Government has not explained why it is unable to efficiently enforce the immigration laws, including the expedited removal statute, while also affording individuals with their "core" due process right: "notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). Because Make the Road has made a strong showing that the procedures can be "tailored . . . to the capacities and circumstances of those who are to be heard . . . to insure that they are given a meaningful opportunity to present their case" without substantially undermining the Government's interests, the Court concludes that Make the Road is likely to prevail on the merits of its due process claim. *Mathews*, 424 U.S. at 349.

**B.  Make the Road Faces Irreparable Harm.**

In addition to showing a likelihood of success on the merits, Make the Road must also establish that it is likely to face irreparable injury absent the requested preliminary relief. *See Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011); *Chaplaincy*, 454 F.3d at 297. To constitute irreparable injury, the injury "must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such *imminence* that there is a clear and present need

41

for equitable relief to prevent irreparable harm.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy*, 454 F.3d at 297) (emphasis in original)).

Make the Road offers evidence of three categories of ongoing or imminent irreparable harm to their members: (1) wrongful removal of individuals statutorily ineligible for expedited removal; (2) detention and family separation during expedited removal proceedings; and (3) risks of persecution and death if and when noncitizens subject to expedited removal are removed. ECF 50-1 at 43–44; ECF 58 at 31–32. The Government raises two responses. First, that Make the Road fails to identify "imminent harm" because it has not "shown that apprehension in immigration court for the purposes of expedited removal is an imminent injury for any of [its] members." ECF 56 at 65. Second, that Make the Road's purported delay in filing the stay motion—five months after the 2025 Designation took effect—undercuts its position that it will be irreparably harmed. *Id.* Both arguments miss the mark.

The first simply ignores the significant evidence Make the Road has put forward. Its declarations are replete with uncontested evidence that the Government is systematically targeting individuals attending their immigration court proceedings for placement into expedited removal, in New York and beyond. *See, e.g.*, ECF 50-9, Rowland-Kain Decl. ¶¶ 5, 8 (arrests at Varick Street and Broadway Immigration Courts in New York City and Buffalo Immigration Court beginning in May 2025); ECF 50-8, Eugenio Decl. ¶¶ 7, 10 (arrests at Federal Plaza Immigration Court in New York City). And Make the Road has identified a number of its members who are at risk of being placed in expedited removal pursuant to the 2025 Designation, some of whom have impending immigration court dates, others of whom have already had their section 240 proceedings dismissed. *See* ECF 50-2, Fontaine Decl. ¶¶ 17–25 (identifying members John Doe 1, John Doe 2, John Doe 3, John Doe 4, Jane Doe 1, Jane Doe 2 who are subject to expedited removal

42

under the 2025 Designation). Given that the Government has been dismissing section 240 proceedings as a predicate to placing people in expedited removal proceedings, the foreseeable next step is that some of these members will be put into expedited removal. *See, e.g.*, *id.* at 15–17 (Government's motion to dismiss member's section 240 case is pending); *id.* ¶ 22 (member who is in removal proceedings); *id.* ¶ 25 (same with hearing date scheduled). And merely being removed is not the only risk those members face. Jane Doe 2, for instance, risks "being detained and separated from [her] children, who would have no one to care for them" and "losing [her] opportunity to apply for asylum." *Id.* at 18 ¶ 4. "[T]he harm from detention surely cannot be remediated after the fact" and is a quintessential irreparable harm. *Ramirez v. ICE*, 310 F. Supp. 3d 7, 31 (D.D.C. 2018). And "the prospect of expulsion without any opportunity to apply for asylum or withholding of removal," after which "a judicial remedy may be unavailable," is no less irreparable. *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 172 (D.D.C. 2021), *affirmed in relevant part* 27 F.4th 718, 733–34 (D.C. Cir. 2022).

Even more fundamentally, the injury Make the Road's members face is a "threatened invasion of [their] constitutional right" to due process, and after removal there is little possibility that the Court can order the Government to provide them with the process they were denied. *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998). In these circumstances, the "prospective violation of a constitutional right constitutes irreparable injury," full stop. *Id.*; *see also Talbott v. United States*, 775 F. Supp. 3d 283, 332 (D.D.C. 2025) (collecting cases). The Court thus agrees with Make the Road that its members face imminent, irreparable injury, and rejects the Government's contrary argument as flatly inconsistent with both the record and the law.

The Government's delay argument is similarly unavailing. The Government contends that the time between issuance of the 2025 Designation (January 2025) and the filing of Make the

Road's motion (June 2025) undermines its claim of irreparable harm. ECF 56 at 65–66 (citing *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding that a delay of 44 days before bringing action for injunctive relief was "inexcusable" where plaintiff "knew" the claimed irreparable harm was impending), and *Western Watersheds Project v. Bernhardt*, 468 F. Supp. 3d 29, 50 (D.D.C. 2020) (similar)). But the caselaw the Government relies on is inapposite, as it stands only for the proposition that plaintiffs' "*unexplained delays* in seeking emergency relief undermine their contention that they will be irreparably harmed." *Bernhardt*, 468 F. Supp. 3d at 50 (emphasis added); *see also Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) (explaining that "[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm" and collecting cases to that effect). Here, Make the Road's delay is neither unexplained nor unexcused. Make the Road articulated and supported with record evidence an explanation for the timing of its motion: the Government's recent efforts beginning in May 2025 to aggressively implement the 2025 Designation, in New York and nationwide. *See e.g.*, ECF 50-23, Steinberg Decl. at 300 (reporting in May 2025 of Government's announced 3,000 daily arrests target); ECF 50-24, Steinberg Decl. at 383 (reporting on 2,000 arrests per day effectuated during the first week of June); *supra* 12 n.10 (declarations detailing massive wave of courthouse arrests in May and June 2025). Accordingly, Make the Road's sudden "urgency" is "justified by . . . new facts [and] allegations." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014). The delay therefore in no way undermines its claims of irreparable harm. And because the record fully substantiates Make the Road's claim that its members face such harm, this prerequisite for the grant of a stay is satisfied.

### C.  The Balance of the Equities and the Public Interest Favor a Stay.

The final two stay factors, which merge here, plainly cut in Make the Road's favor. For one, Make the Road has made a strong showing that the 2025 Designation is unconstitutional, and

"there is generally no public interest in the perpetuation of unlawful agency action." *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021). For another, "the public has an interest 'in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *A.B.-B. v. Morgan*, 548 F. Supp. 3d 209, 222 (D.D.C. 2020) (quoting *Nken*, 556 U.S. at 436). Absent a stay, that is likely to happen.

While the Government has correctly asserted its weighty interest in enforcing the immigration laws, it has not explained how a stay would inappropriately interfere with that interest. First, the Government claims that a stay of the 2025 Designation would "improper[ly] intru[de]" into the workings of the executive branch, especially because "Congress did not intend for judicial review in this area." ECF 56 at 67. That argument misstates the law: Congress expressly provided for judicial review of the kind of claim Make the Road presses here, and it dictated that such review occur in this Court. *See* 8 U.S.C. § 1252(e)(3); *supra* 19–20. Nor can the Government get any mileage out of its citation to Justice O'Connor's in-chambers opinion in *I.N.S. v. Legalization Assistance Project*. *See* ECF 56 at 67. In that case, Justice O'Connor reasoned that the balance of the equities tipped in favor of staying a lower-court decision that constituted an "improper intrusion by a federal court into the workings of a coordinate branch of Government." 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers). But there, the lower-court's decision was an "improper intrusion" because it permitted a suit by plaintiffs without prudential standing. *See id.* ("Moreover, if the above analysis [about standing] is correct the order is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion[.]"). Here, by contrast, Make the Road is a proper plaintiff. *See CHIR*, 2025 WL 2192986, at *19–21 (explaining reasoning on this issue). The order is therefore not an "improper intrusion" of the kind that concerned Justice O'Connor.

The Government next asserts that the public interest "favors the efficient administration of the immigration laws at the border," and that the requested stay "would frustrate the 'public interest in effective measures to prevent the entry of illegal aliens' at the Nation's borders." ECF 56 at 67 (quoting *Innovation L. Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019); *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981)). But the Government's argument, and the cases on which it relies, concern the public interest in enforcing immigration laws "*at the border*." And, as Make the Road explains, "the [2025 Designation] and [Huffman Memorandum] apply in the interior, not at the border." ECF 58 at 32. Thus, the Government's interest in effectuating border-control would be undisturbed by this Court's stay of the 2025 Designation. And, even granting the Government's interest in enforcing immigration laws in the interior, doing so without sufficient due process violates the law. *See Shawnee Tribe*, 984 F.3d at 102.

The Government tries one final argument: "[t]he government has a substantial interest in implementing the President's policies," and "vigorous enforcement of the immigration laws and the prompt removal of inadmissible aliens is one of the President's top priorities." ECF 56 at 64. Maybe so. But "[t]he Constitution . . . does not permit [the Government] to prioritize any policy goal over the Due Process Clause, and enforcement of an unconstitutional law is always contrary to the public interest." *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020).

**D. The 2025 Designation and Implementing Guidance are Stayed in their Entirety, No Bond Is Required, and the Court Will Not Administratively Stay its Order.**

Because all four factors favor it, the Court will stay the 2025 Designation. In a footnote on the last page of its brief, the Government asks this Court to limit any stay to Make the Road's members who are "currently in expedited removal and actually identified by Make the Road in this suit." ECF 56 at 67 n.15; *but see Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 766 n.2 (D.C. Cir. 2022) ("[A]n inchoate argument made only in a footnote is forfeited."). That request

is a nonstarter. As the D.C. Circuit has repeatedly held, vacatur of the agency action—not merely exempting plaintiffs from the agency action— is the normal remedy under APA section 706. *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998). This Court and courts in this and other circuits have applied that same rule to section 705 stays. *See CHIR*, 2025 WL 2192986, at *37 (collecting cases). "Those decisions track the text of section 705, which authorizes the reviewing court to 'postpone the effective date of an agency action or preserve status or rights' full stop, not only as to plaintiffs before the court." *Id.* (quoting 5 U.S.C. § 705).

The Government also asks the Court to, if it grants relief, require Make the Road to put forward a bond pursuant to Federal Rule of Civil Procedure 65(c). The Court declines to do so. As explained in *CHIR*, that rule requires the Court when issuing a preliminary injunction or temporary restraining order to order the movant to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A stay under APA section 705 is neither a preliminary injunction nor a temporary restraining order. *See CHIR*, 2025 WL 2192986, at *38. Rule 65(c) therefore does not apply.

Finally, the Government moved at oral argument for a 14-day administrative stay of this Court's order "because this ruling will directly impact agency operations" and to "give the Solicitor General's office an opportunity to determine whether an appeal is appropriate." Hr'g Tr. 41:3–9. The Court denies that request. There is no motion before this Court that requires "time to deliberate." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring) (describing the purpose of an administrative stay).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for a stay of agency action, ECF 50, is **GRANTED**. The Challenged Actions (the January 21 Designation Notice and the January 23

47

Huffman Memorandum insofar as it implements the January 21 Designation Notice) are hereby

**STAYED**, pending conclusion of these review proceedings.

A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: August 29, 2025

48